UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  **CV 23-06191-MWF (Ex)**                    **Date:  March 20, 2025**

**Title:**    Matthew Spatola v. Jason Desrouleaux et al.

**Present:**  The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| | |
|---|---|
| Deputy Clerk:<br>Rita Sanchez | Court Reporter:<br>Not Reported |
| Attorneys Present for Plaintiff:<br>None Present | Attorneys Present for Defendants:<br>None Present |

**Proceedings (In Chambers):**  ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [60]

Before the Court is a Motion for Summary Judgment or in the Alternative for Partial Summary Judgment (the "Motion"), filed by Defendants Jason Desrouleaux p/k/a Jason Derulo ("Derulo"), and Sony Music Entertainment d/b/a Columbia Records ("Sony").  (Docket No. 60).  Plaintiff Matthew Spatola filed an Opposition on November 4, 2024.  (Docket No. 86).  Defendants filed a Reply on November 11, 2024.  (Docket No. 89).

The Court has read and considered the papers on the Motion and held a hearing on **November 25, 2024**.

The Motion is **DENIED**.  While Defendants have demonstrated what a reasonable jury may ultimately conclude is a strong case, determination of whether joint authorship exists depends on a three-part test that does not readily lend itself to summary adjudication.   Even though Defendants may have demonstrated the lack of a genuine dispute as to control, it is for the jury to weigh the importance of the evidence regarding control alongside the other *Aalmuhammad* factors which are in legitimate dispute.  Granting partial summary judgment would be inappropriate as to one factor in such a fact-bound and context-dependent determination.

Additionally, because there is a genuine dispute of material fact regarding co-authorship, there is a genuine dispute regarding Plaintiff's alternative claim of co-authorship over the *Savage Love* session files.  The Motion is likewise **DENIED** to the extent it seeks to foreclose that claim.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 23-06191-MWF (Ex)**                        **Date:  March 20, 2025**
**Title:       Matthew Spatola v. Jason Desrouleaux et al.**

## I.      **BACKGROUND**

This action arises out of the relationship between Derulo, a popular singer, and Plaintiff, an instrumentalist, who claims that he is a co-author of a song released by Derulo in June 2020, *Savage Love (Laxed – Siren Beat)* ("*Savage Love*"). (Motion at 1).  *Savage Love* is a derivative work of the song *Laxed*.   Plaintiff's Statement of Uncontroverted Facts ("Plaintiff's SUF") (Docket No. 86-1) ¶ 3). Jawsh 685 ("Jawsh"), a musician based in New Zealand, released the song *Laxed*, which went viral on TikTok in early 2020.  (Motion at 1).  On April 21, 2020, Jawsh sent Derulo the "stems" of *Laxed*, which are the individual audio tracks that comprise the completed song.  (Plaintiff's SUF ¶ 8).  The same day, Derulo contacted his songwriting partner Jacob Kasher Hindlin to ask if Hindlin would co-write the lyrics to a remix of *Laxed* with Derulo.  (*Id.* ¶ 9).  The next day, Derulo contacted his engineer, Ben Hogarth, to send Hogarth the *Laxed* stems.  (*Id.* ¶¶ 15, 17).  Derulo contacted his regular session guitarist, Charles Gibson, to play guitar on the new song.  (*Id.* ¶ 22).  Gibson was unable to attend, so Derulo contacted Spatola to work on the song.  (*Id.* ¶ 23).  The parties agree that Spatola never explicitly asked Derulo for writing and producing credit for his work on *Savage Love*—the parties agree that Spatola asked for credit for providing "additional guitar and bass," but disagree as to what this connoted.  (*See, e.g.,* ¶ 26).  In Plaintiff's version, at the time of these requests, Spatola understood "additional guitar and bass" credit to mean "production" credit.  (Opposition at 20).  Before working on *Savage Love*, Spatola acted as a producer on several tracks for other artists, including (at least) for the popular musician A Boogie Wit Da Hoodie.  (Motion at 11; Plaintiff's SUF ¶ 115).

Derulo conducted at least nine recording sessions at his home studio to record *Savage Love*, and Spatola attended two of them, the First Spatola Session and the Second Spatola Session.  (Plaintiff's SUF ¶ 34).  Spatola worked with Derulo and Hogarth at the sessions.  (*Id.* ¶ 37).  Spatola listened to the beat and melody stems of *Laxed* in preparation for the sessions.  (*Id.* ¶ 36).  Spatola played guitar and bass throughout *Savage Love*, and apparently added a pre-hook section that was not present in the original *Laxed*.  (Opposition at 8).  Plaintiff does not dispute that Derulo had the authority to reject any and all of Spatola's contributions, and that had the ultimate decision over whether which, if any, of Spatola's work would appear in

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 23-06191-MWF (Ex)**                    **Date:  March 20, 2025**
Title:       Matthew Spatola v. Jason Desrouleaux et al.

*Savage Love*.  (Plaintiff's SUF ℙℙ 42-43).  Spatola was not sent the session files from the First or Second Spatola Sessions (Motion at 12-14) and learned about what occurred at the other sessions through his presence at Hogarth's deposition.  (Plaintiff's SUF ℙ 64).

According to Spatola, at the First Spatola Session Derulo, Hogarth, and Spatola collaborated on what drums would work best.  (Opposition at 7).  Then, Spatola would play sequences on electric guitar, and Derulo would tell Spatola which of the guitar parts he liked the most and wanted to include.  (*Id.*).  According to his statements, Spatola then added bass parts, apparently without feedback from Derulo.  (*Id.* at 7-8).  According to Plaintiff, the Second Spatola Session was "much less collaborative" and was aimed at "finishing *Savage Love* from a vocal standpoint."  (*Id.* at 8).  Following the sessions, Derulo finished *Savage Love* with Phil Greiss, a songwriter with whom Derulo has worked before.  (Plaintiff's SUF ℙℙ 54-56).  Derulo, Greiss, Hindlin, and Jawsh are the credited songwriters for *Savage Love*.  (*Id.* ℙ 71).  Without Derulo's knowledge, Sony signed Jawsh as an artist on April 27, 2020, before the release of *Savage Love*.  (*Id.* ℙ 66).  Sony threatened Derulo with legal action for his use of *Laxed*, which resulted in Sony obtaining at least Derulo's rights in *Savage Love*.  (Plainff's SUF ℙℙ 68-69).  Sony registered its copright in *Savage Love* with an effective date of July 1, 2020.  (*Id.* ℙ 70).  Upon his request or the request of his representative Ghena Nasser, Spatola received "additional guitar and bass" credit for his work on *Savage Love*.  (*Id.* ℙℙ 74-75, 85-93).  The parties dispute whether Spatola is bound by the terms of the Sound Recording Labor Agreement, a union contract.  (*See* Motion at 4; Opposition at 21-23).

Based on the foregoing allegations, Plaintiff initiated this action on July 31, 2023.  (*See generally* Complaint (Docket No. 1)).  Plaintiff filed the Amended Complaint ("FAC") on December 21, 2023.  (*See generally* FAC (Docket No. 28)).  The FAC asserts three claims for relief:  (1) declaratory judgment establishing that Spatola is a co-writer and co-producer of *Savage Love* sound recording, musical composition, session files, and all variations, and is entitled to royalties therefrom; (2) an accounting of Defendants' revenues from *Savage Love*, for which Plaintiff is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 23-06191-MWF (Ex)**                    **Date:  March 20, 2025**
**Title:      Matthew Spatola v. Jason Desrouleaux et al.**

allegedly entitled to a *pro rata* share; and (3) the creation of a constructive trust for the profits owed to Plaintiff.  (*See* FAC ⁋⁋ 68-92).

Defendants now move for summary judgment or, in the alternative, partial summary judgment.

## II.    **LEGAL STANDARD**

In deciding a motion for summary judgment under Rule 56, the Court applies *Anderson*, *Celotex*, and their Ninth Circuit progeny.  *Anderson*, 477 U.S. at 255; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The Ninth Circuit has defined the shifting burden of proof governing motions for summary judgment where the non-moving party bears the burden of proof at trial:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact.  Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case.  Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial.  This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence.  The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue.  In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor.

*Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1259 n.2 (9th Cir. 2016) (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 23-06191-MWF (Ex)**                    **Date:  March 20, 2025**
Title:      Matthew Spatola v. Jason Desrouleaux et al.

"A motion for summary judgment may not be defeated, however, by evidence that is 'merely colorable' or 'is not significantly probative.'" *Anderson*, 477 U.S. at 249–50.  "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

### III.    <u>EVIDENTIARY OBJECTIONS</u>

Both parties raise objections to the evidence submitted in connection with the Motion and the Opposition.  (*See generally* Plaintiff's Objection to Evidence (Docket No. 86-2); Defendants' Evidentiary Objections (Docket No. 89-10)).  The objections are largely garden variety evidentiary objections such as foundation, relevancy, and hearsay.

While these objections may be cognizable at trial, the Court is concerned only with the ***admissibility*** of the relevant ***facts*** at trial, and not the ***form*** of these facts as presented on a motion for summary judgment.  *See Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021) ("[A]t the summary judgment stage, we do not focus on the admissibility of the evidence's form.  We instead focus on the admissibility of its contents." (citations omitted)).  Where "the contents of a document can be presented in a form that would be admissible at trial — for example, through live testimony by the author of the document — the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment." *Id.* (citations omitted); *see also Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (holding that plaintiff's diary could be considered on summary judgment because she could testify consistent with its contents at trial); *Hughes v. United States,* 953 F.2d 531, 543 (9th Cir. 1992) (IRS litigation adviser's affidavit may be considered on summary judgment despite hearsay and best evidence rule objections; facts underlying affidavit were of type admissible as evidence even though affidavit itself may not be).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-06191-MWF (Ex)                    Date:  March 20, 2025
Title:       Matthew Spatola v. Jason Desrouleaux et al.

To the extent that the Court relies upon evidence to which the parties object, the objections are **OVERRULED**.  To the extent the Court does not, the objections are **DENIED** *as moot*.

## IV.    DISCUSSION

As Defendants point out (Motion at 1), and as Plaintiff effectively acknowledges (Opposition at 23), Plaintiff's accounting and constructive trust claims rise and fall with the success of Plaintiff's claim for declaratory judgment.  Although Plaintiff attempts to argue that these are independent claims for relief (*id.* at 23-24)—and they are in a technical sense—ruling in Defendants' favor regarding the declaratory judgment claim would necessarily mean that Plaintiff is not a co-writer or co-producer of *Savage Love*.  If that is the case, Plaintiff has articulated no basis on which he would be entitled to an accounting or a constructive trust.  Accordingly, all of Plaintiff's claims depend in large part upon whether he is a joint author of *Savage Love*.

To establish joint authorship, each putative co-author must make an independently copyrightable contribution to the work.  *Eagle Rock Ent. Inc. v. Coming Home Prods., Inc.*, No. CV 03-00571-FMC (AJWx), 2004 WL 5642002, at \*12 (C.D. Cal. Sept. 1, 2004); *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 968 (9th Cir. 2008).  To determine whether a plaintiff has asserted a valid claim of joint authorship, the Court looks to the three factors articulated by the Ninth Circuit in *Aalmuhammad v. Lee*: 1) whether the alleged joint author "'superintend[s]' the work by exercising control"; 2) whether the alleged joint author and the "putative coauthors make objective manifestations of a shared intent to be coauthors"; and 3) "the audience appeal of the work" and whether "'the share of each in its success cannot be appraised.'"  *Aalmuhammad v. Lee*, 202 F.3d 1227, 1234 (9th Cir. 2000) (first quoting *Burrow-Giles v. Sarony*, 111 U.S. 53, 61 (1884); then quoting *Edward B. Marks Music Corp. v. Jerry Vogel Music Co.*, 140 F.2d 266, 267 (2d Cir. 1944)).  "Control in many cases will be the most important factor."  *Id.*

However, the *Aalmuhammad* factors "cannot be reduced to a rigid formula, because the creative relationships to which they apply vary too much."  *Aalmuhammad¸* 202 F.3d at 1235.  That is, while control is usually the most important

---

**CIVIL MINUTES—GENERAL**                                                              6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-06191-MWF (Ex)                    Date:  March 20, 2025
Title:       Matthew Spatola v. Jason Desrouleaux et al.

factor, it is not the *sine qua non* of joint authorship.  In the Ninth Circuit Model Jury Instructions regarding joint authorship, jurors "may consider" control, objective manifestations of shared intent, and audience appeal, in the absence of a written agreement between the two parties stating that the copyright is jointly owned.  Ninth Circuit Model Jury Instruction 17.9.  The Model Instruction provides the jury with no guidance regarding which, if any, of the factors is to be considered more important than the others.

While Defendants may have established by undisputed evidence that Derulo controlled the sessions, there are genuine disputes of material fact regarding whether Plaintiff is a joint author.  And because the *Aalmuhammad* factors do not constitute a "rigid formula," as further expressed in the Ninth Circuit Model Jury Instructions, summary adjudication is simply inappropriate in a case such as this one, where there are genuine disputes of material fact as to at least two factors.  It is for the jury to decide how to weigh the factors.

There are two issues that prevent the granting of the Motion:

*First*, Derulo plainly had control over whether Spatola's guitar and bass parts were included in *Savage Love*.  Plaintiff does not dispute that "Derulo 'did not have to accept any and all recommendations made by [Spatola],'" or that Derulo "had authority to accept or reject whatever Spatola played."  (Plaintiff's SUF ¶¶ 42-43) (citing Declaration of Joshua M. Rosenberg ("Rosenberg Dec.") (Docket Nos. 70-3, 70-4) Exs. 43-44).  Instead, Plaintiff claims that he is a co-author because Spatola exercised control over the contributions made during the First Spatola Session, which he personally attended, that Spatola exercised control over the pre-hook which differed from the *Laxed* instrumental, that Derulo stated that he "collabed" with Spatola, and that Derulo (who does not play guitar) merely sang notes that he wanted Spatola to play, while Spatola turned those notes into chords which cannot be mimicked by singing.  (Opposition at 14-17).  In short, Spatola argues that the joint control factor is satisfied because "both parties had creative control over separate and indispensable elements of the completed product."  *Reinsdorf v. Skechers*, 922 F. Supp. 2d 866, 872

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 23-06191-MWF (Ex)**                    **Date:  March 20, 2025**
Title:        Matthew Spatola v. Jason Desrouleaux et al.

(C.D. Cal. 2013) (quoting *Morrill v. Smashing Pumpkins*, 157 F. Supp. 2d 1120, 1124 (C.D. Cal. 2001)).

Defendants have established that there is no genuine dispute of material fact as to this issue.  Spatola did not have joint creative control—even crediting the notion that Spatola came up with his own guitar and bass parts, including the pre-hook, Spatola does not contest that Derulo had the ultimate authority to reject any and all of Spatola's contributions.  Even if Plaintiff created the pre-hook entirely himself and added a modifying third chord in many sections of *Savage Love*, the law in the Ninth Circuit on this point is clear:  "[Plaintiff] could make extremely helpful recommendations, but [defendant] was not bound to accept any of them, and the work would not benefit in the slightest unless [defendant] chose to accept them.  [Plaintiff] lacked control over the work . . . ."  *Armes v. Post*, No. 20 CV-03212-ODW (PJWx), 2020 WL 6135068, at *6 (C.D. Cal. Oct. 19, 2020) (citing *Aalmuhammad*, 202 F.3d at 1235).  The same argument is responsive to Plaintiff's point that Derulo cannot play guitar, and therefore could not sing chords which Plaintiff would then play on guitar—even if true, Derulo need not be able to sing chords in order to determine whether or not he would include them in his song.

Plaintiff cites several cases to establish that joint control may exist where "both parties had creative control over separate and indispensable elements of the completed product."  *Reinsdorf*, 922 F. Supp. 2d at 872 (quoting *Morrill*, 157 F. Supp. 2d at 1124).  Those cases are distinguishable.  In *Reinsdorf*, the plaintiff, a photographer, conducted five photo shoots of Skechers products and delivered Skechers the raw photographs.  *Id.* at 870.  Skechers then made modifications ranging from "slight modifications in models' skin tone to the substitution of models' body parts and the addition of substantial graphic effects."  *Id.*  The modified versions were then used in Skechers advertisements.  *Id.*  The court found it important that neither party had supervisory control over the other's contributions during their half of the process.  *Id.* at 872-73.  The parties essentially agreed that no one at Skechers directed the plaintiff how to take the photographs, and the plaintiff did not tell Skechers how to edit his photographs.  Here, in contrast, the uncontroverted evidence is that Plaintiff made certain contributions—perhaps very important contributions—but that ultimately,

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-06191-MWF (Ex)                    Date:  March 20, 2025
Title:       Matthew Spatola v. Jason Desrouleaux et al.

Derulo accepted them or rejected them as he saw fit, and Plaintiff did not have the
same standing.

In *Morrill*, the plaintiff created a "music video/documentary" titled *Video
Marked* about a band called The Marked, which featured the popular musician Billy
Corgan.  *Morrill*, 157 F. Supp. 2d at 1121.  There, the court found that Morill and
Corgan were joint authors of *Video Marked* because the plaintiff "was shooting a
***music*** video."  *Id.* at 1124 (emphasis in original).  Morrill contributed the filming,
editing, and producing, but he ultimately had no say in the way the songs were written
and performed.  *Id.*  Morrill and Corgan were both the "'master mind[s]' whose work
[came] together to produce a unitary whole."  *Id.* (quoting *Aalmuhammad*, 202 F.3d at
1229).  Here, unlike *Morrill* and *Reinsdorf*, the parties did not create separate elements
which were bound together into a cohesive whole.  Rather, the uncontroverted
evidence suggests that Derulo controlled his own contributions and Spatola's
contributions.  Crediting the idea that Spatola determined which notes and chords he
would play, those contributions were indisputably subject to Derulo's final approval.
In *Reinsdorf* and *Morrill*, that simply was not the case.

However, as explained below, genuine disputes of material fact exist as to the
other two factors articulated in *Aalmuhammad*.  Because the *Aalmuhammad* analysis is
not a "rigid formula," it is for the jury to decide how much emphasis to place on the
issue of control when the other factors are subject to genuine dispute.

***Second***, the *Aalmuhammad* analysis focuses on whether there exist objective
manifestations of shared intent that the putative co-authors operate as co-authors.
*Aalmuhammad*, 202 F.3d at 1234.  Courts look to outward, objective statements and
actions of the participants to determine whether a co-authorship exists.  *Morrill*, 157 F.
Supp. 2d at 1124.  Most importantly as to this factor, both Plaintiff and Defendants
acknowledge that Plaintiff expressed only a desire to be credited for his work in
providing "additional guitar and bass," and did not explicitly ask to be credited as a co-
author or co-producer.  (Plaintiff's SUF ⁋ 97).  Spatola attempts to create a dispute of
material fact over this issue by claiming that he was not at the time aware that seeking
credits for guitar/bass work was distinct from seeking credit for writing/production

CIVIL MINUTES—GENERAL                                                    9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-06191-MWF (Ex)                    Date:  March 20, 2025
Title:      Matthew Spatola v. Jason Desrouleaux et al.

work.  (Opposition at 20 (citing Werge Dec. Ex. 8 at 33:11-18; Ex. 2)).  But even if Plaintiff did in fact believe this, the second *Aalmuhammad* factor focuses on **objective** manifestations of shared intent, not subjective personal beliefs.  This argument is therefore both irrelevant and foreclosed by the evidence.

However, Plaintiff has put forward just enough evidence such that granting summary judgment is inappropriate.

According to Plaintiff in his deposition, Derulo manifested an objective intent to proceed as co-authors when he asked Plaintiff to record at his home because Derulo "want[ed] to create this song with [Spatola]."  (Werge Dec., Ex. 8 at 165:17).  Plaintiff cites this statement as the "most important[]" evidence regarding objective manifestations of shared intent.  (Opposition at 18).  Though this may not be the most persuasive evidence—both because it is only offered by Plaintiff and because it is highly ambiguous—a reasonable jury could conclude that Derulo meant that he intended to be a coauthor with Plaintiff when Derulo said he wanted to "create" the song with Plaintiff.

Plaintiff cites other scattershot communications as evidence of shared intent, but again, many of these communications are evidenced only by Plaintiff's statements. (*See* Opposition at 18-19 (citing, among others, Spatola's comments to Hogarth that he wanted to retry certain instrumental parts and Derulo's lack of interjection during those comments)).  Derulo also asked Plaintiff whether he knew of a saxophonist who could be hired for the song.  (*Id.* at 18-19).  Viewed in the light most favorable to Plaintiff as the non-moving party, these communications could lead a reasonable jury to find that Plaintiff and Derulo both engaged in outward communications demonstrating that Plaintiff was a co-author.  In the Motion itself and the Reply, Defendants point to a litany of evidence that may certainly be persuasive to a jury—Plaintiff was not part of any contracts regarding the authorship of *Savage Love*; Plaintiff did not identify himself as the producer of *Savage Love* in the session reports; and Plaintiff was never sent the "stems" of *Savage Love*.  (Reply at 15-19).  But it is not for the Court to weigh the competing evidence on a motion for summary judgment.  *Balint v. Carson City*, 190 F.3d 1047, 1054 (9th Cir. 1999).  Defendants argue that the Court should not

CIVIL MINUTES—GENERAL                                                      10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  **CV 23-06191-MWF (Ex)**                **Date:  March 20, 2025**
Title:       Matthew Spatola v. Jason Desrouleaux et al.

consider Plaintiff's own statements because they are self-serving.  (Reply at 10-11).  However, the Court finds that there is enough evidence outside of Spatola's own statements that his statements are not a "sham."

For instance, the most persuasive of Spatola's communications is an Instagram post in which Spatola wrote "[s]uch a pleasure working with @jasonderulo @jawsh_685 on this one #savagelove #jasonderulo #staytuned #music #musician #producer #la #ny."  (Werge Dec., Ex. 17).  In response, Derulo commented two emojis commonly referred to as "prayer hands emojis," thanking Spatola for his contribution to the song.  (*Id.*).  A reasonable jury could find that in this post, Plaintiff publicly held himself out as a producer of *Savage Love* and that, instead of disputing the characterization publicly or privately, Derulo let the characterization stand.  Of course, a jury may also find that this is not strong evidence—on other occasions, Plaintiff unambiguously and objectively referred to himself as a producer on the specific referenced songs.  (*See* Rosenberg Dec., Ex. 61 (Docket No. 70-14) ("I produced 2 songs on Artist 2.0 'Thug Love' and 'Till [t]he Wheels Fall Off' . . ."); Ex. 65 (Docket No. 70-15) ("So hyped to be part of this legendary record!  I co[-]produced #17 'started wit nothin' with my brotha @206derek . . ."); Ex. 66 (Docket No. 70-16) ("I produced this one with my bros . . .")).

A jury may well have problems with Plaintiff's presentation of the evidence— the referenced communications are ambiguous, and Plaintiff requested only guitar and bass credit for several years.  But again, the Court will not weigh the evidence on a summary judgment motion, and Plaintiff has put forward just enough facts that there is a genuine dispute of material facts regarding whether the parties manifested an intent to proceed as co-authors of *Savage Love*.

*Third,* in the shortest section of the Opposition, Plaintiff states that the audience appeal of *Savage Love* "turn[ed] on Spatola's invaluable contribution."  (Opposition at 21 (cleaned up)).  This is substantiated by the expert report of Dr. Ethan Lustig, which found that "Spatola's contributions completely replace [*Laxed's*] chords layer for 38% of [*Savage Love*], and completely replace [*Laxed's*] bass layer for 46% of [] [*Savage Love*]."  (Opposition at 21 (citing Werge Dec., Ex. 19 at 5, 11-12)).  Dr. Lustig also

---

**CIVIL MINUTES—GENERAL**                                      **11**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-06191-MWF (Ex)                    Date:  March 20, 2025
Title:      Matthew Spatola v. Jason Desrouleaux et al.

found that the guitar parts are an "absolutely indispensable" part of *Savage Love*'s pre-choruses.  (*Id.* (citing Werge Dec., Ex. 19 at 17-18)).  Although this expert report would not itself be admissible, the information it contains would be admissible through the testimony of Dr. Lustig.  The Court therefore finds the matter appropriate for consideration.

The Court finds that there is a genuine dispute of material fact here.  This issue is a quintessential example of an issue that is much more appropriate for consideration by the jury.  As a practical matter, a concept like "audience appeal" seems to necessarily invoke and be dictated by the tastes of the community.

In addition, while Defendants put forward several reasons that the "audience appeal" of *Savage Love* was due to the contributions of Jawsh and Derulo, they fail to put forward specific reasons why a jury could not ***also*** find that Plaintiff contributed to the audience appeal of the work.  As the Court understands Plaintiff's argument, he was responsible for the audience appeal because he created the pre-hook section of the song and his contributions replaced 38% of the *Laxed* chords and 46% of the bass layer.  (Opposition at 21).  The Court does not understand Plaintiff to be arguing that Jawsh and Derulo are not ***also*** responsible for the success of the song.  In the Motion, Defendants argue that the appeal was created by Jawsh and Derulo because *Laxed* was already successful, and because Derulo has had many hit songs and has a large following.  (Motion at 12).  Even if credited, these arguments fail to explain why the pre-hook, chord layer, and bass layer are not important aspects of the audience appeal such that "the share of each in [the song's] success cannot be appraised." *Aalmuhammad*, 202 F.3d at 1234 (quoting *Edward B. Marks Music Corp.*, 140 F.2d at 267).  Additionally, as Plaintiff argued at the hearing, this line of argument fails to explain why ***this*** song became popular as opposed to any other song that Derulo recorded—as Plaintiff represented, Derulo had not released a #1 song for several years preceding the release of *Savage Love*.

***Finally***, the Court turns briefly to the parties' arguments regarding the Sound Recording Labor Agreement ("SRLA").  In the Motion, Defendants claim that Plaintiff's claims are precluded as a matter of contract.  (Motion at 14-17).  Pursuant to

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-06191-MWF (Ex)                    Date:  March 20, 2025
Title:       Matthew Spatola v. Jason Desrouleaux et al.

a collective bargaining agreement, the American Federation of Musicians ("AFM") is the entity for ensuring that session musicians receive benefits and payment.  (*Id.* at 14).  The applicable AFM contract in this matter is the SLRA.  (*See* Plaintiff's SUF ⁋ 78).  AFM "B forms" memorialize the work performed by musicians involved in a session and aid in determining the musicians' payment and benefits.  (Motion at 14).

Defendants' claim is essentially that when filling out his B-4 forms, Plaintiff listed himself as the "LDR" or "leader," that he played guitar and bass in the sessions, and that Jawsh was the producer.  (*Id.* at 16).  Under the terms of the SRLA, "services provided under this agreement, whether in writing or recorded, are and shall be deemed 'works-made-for-hire' for the Company."  (*Id.* at 15).  In this case, that "Company" is Sony.  (*Id.*).  Defendants claim that because Plaintiff submitted two B-4 forms and received benefits as a result, his contributions were works-made-for-hire on behalf of Sony, and that otherwise copyrightable work performed by Plaintiff are owned by Sony.

Plaintiffs dispute this account on several grounds, including whether Spatola is a covered individual under the terms of the SRLA.  (Plaintiff's SUF ⁋ 104).  The evidence shows that though he submitted AFM forms, Plaintiff is not an AFM member, and accordingly may not be a "Covered Individual" under the terms of the SRLA.  Under 17 U.S.C. § 101, a work-made-for-hire is created when the work was prepared "within the scope of [a musician's] employment."  A jury could certainly find that no employment relationship existed here.  Defendants also have not pointed to a single case in which a court has held that an otherwise independently-copyrightable contribution is foreclosed because it was a work-made-for-hire under the SRLA in like circumstances.  (*See generally* Motion).

Most importantly, Plaintiff has raised a genuine issue of fact regarding whether he was paid for the whole of his contributions when he submitted his B-4 forms.  Where there has been a dispute about whether all of a musician's contributions were compensated, courts have denied summary judgment on that ground for co-authorship claims.  In *Johnson v. Arista Holding, Inc.*, No. 05 Civ. 9645 (LBS), 2006 WL 3511894, at *6 (S.D.N.Y. Dec. 5, 2006), for example, the plaintiff submitted evidence

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  **CV 23-06191-MWF (Ex)**                  **Date:  March 20, 2025**

Title:      Matthew Spatola v. Jason Desrouleaux et al.

that he participated in a studio session for some period of time before the window of 1 A.M. to 5 A.M. for which he was paid.  The court found this to create a triable issue of fact regarding whether the plaintiff made contributions which did not fall under the SRLA's work-made-for-hire provision.

Here, Plaintiff has raised a triable issue of fact regarding this defense.  Plaintiff performed at two sessions—on April 23 and April 27, 2020—and Sony did not process Plaintiff's April 23, 2020 B-4 form.  (*See* Declaration of Thomas E.M. Werge (Docket No. 88) Exs. 21 (showing Plaintiff was paid for only three hours of work), 22 (same), 26 (same)).  The initial April 23, 2020 session included three hours of work, just as the April 27, 2020 session did.  (Plaintiff's SUF ₱ 35).  The Court therefore finds it doubtful that Plaintiff's allegedly copyrightable contributions resulted in a work-made-for-hire because they were made during the course of an employment relationship for which Plaintiff was fully compensated.  Rather, Plaintiff apparently was not employed by Sony, and to the extent he was paid, it was only for the second half of his contributions to *Savage Love*.

Accordingly, the Motion is **DENIED**.

IT IS SO ORDERED.