**WERGE & CORBIN LAW GROUP**
Thomas E.M. Werge (State Bar # 362485)
*tom@werge.law*
Joseph A. MacHatton (*pro hac vice*)
*joseph@werge.law*
Veronica A. Phifer *(pro hac vice)*
*veronica@werge.law*
1736 Race Street
Denver, CO 80206
Telephone: (303) 586-4900
Facsimile: (720) 554-8042
**FROST, LLP**
Christopher Frost (State Bar No. 200336)
*chris@frostllp.com*
10960 Wilshire Blvd., Suite 2100
Los Angeles, CA 90024
Telephone: (424) 254-0441
Facsimile: (424) 600-8504

*Attorneys for Plaintiff*
MATTHEW SPATOLA p/k/a
MATTY SPATS

UNITED STATES DISTRICT COURT
**CENTRAL DISTRICT OF CALIFORNIA**

MATTHEW SPATOLA p/k/a MATTY SPATS,

Plaintiff,

v.

JASON DESROULEAUX p/k/a JASON DERULO; and SONY MUSIC ENTERTAINMENT d/b/a COLUMBIA RECORDS,

Defendants.

CASE NO. 2:23-cv-06191-MWF-E

**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 3 TO EXCLUDE TESTIMONY OF DEFENDANTS' PROPOSED REBUTTAL EXPERT DR. WILLIAM RAYNER**

*(Concurrently Filed with Declaration of Nico Brancolini; [Proposed] Order)*

Action Filed: July 31, 2023
FAC Filed: December 21, 2023
Final Pretrial Conf.: March 30, 2026
Trial Date: April 21, 2026

**NOTICE OF MOTION AND MOTION**

TO THE COURT, THE PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 2, 2026, or as soon thereafter as the matter may be heard in Courtroom 5A of Honorable Michael W. Fitzgerald, United States District Court, Central District of California, Western Division located at 350 W First Street, Los Angeles, California, Plaintiff Matthew Spatola p/k/a Matty Spats, will, and hereby does, move this Court for an order precluding Defendants Jason Desrouleaux p/k/a Jason Derulo and Sony Music Entertainment d/b/a Columbia Records (collectively, "Defendants") from calling Dr. William Rayner to testify at trial. Plaintiff Matthew Spatola brings this Motion in Limine on the grounds that Dr. Rayner's testimony is duplicative and attempts to take the proverbial "other bite of the apple" by using a second musicological expert to testify on information that Defendants failed to raise earlier in their principal musicologist, Dr. Lawrence Ferrara's Initial Report and Rebuttal Report.

This Motion is based on the Notice of Motion, the following Memorandum of Points and Authorities, any accompanying declarations and exhibits filed concurrently herewith, any further briefing in connection with this Motion, all pleadings and other records on file in this action, and upon such further evidence and arguments as may be presented to the Court at the time of the hearing, and any and all other materials the Court deems proper.

This Motion made is made following the conference of counsel pursuant to Central District Local Rule 7-3, which occurred on January 12, 2026.

Dated: February 2, 2026

Respectfully submitted,

*/s/ Thomas E.M. Werge*

**WERGE & CORBIN LAW GROUP**
Thomas E.M. Werge

**FROST, LLP**
Christopher Frost

*Attorneys for Plaintiff*
MATTHEW SPATOLA p/k/a MATTY SPATS

3

Case No. 2:23-cv-06191-MWF-E
Plaintiff's Motion in Limine No. 3
to Exclude Dr. William Rayner

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On June 20, 2025, the very last day of an extended discovery period belatedly agreed to by the parties for other purposes, Defendants Jason Desrouleaux p/k/a Jason Derulo ("Derulo") and Sony Music Entertainment d/b/a Columbia Records ("Sony") (collectively, "Defendants"), disclosed for the first time that they intend to proffer the rebuttal testimony from a second musicologist, Dr. William Rayner, despite the fact that they already have an expert musicologist who has already provided a principal and rebuttal expert report. (Exh. 5.) This motion is brought on the grounds that Dr. Rayner's testimony is untimely, unauthorized, and duplicative, intended to bolster arguments Defendants failed to raise through their principal musicological expert, Dr. Ferrara.

Defendants' introduction of Dr. Rayner constitutes a blatant act of gamesmanship, violating Federal Rules of Civil Procedure and the spirit of the Parties' discovery agreements. Following a meet-and-confer on April 30, 2025, Plaintiff agreed to a limited reopening of discovery, including to allow Defendants to depose a third party, T-Mobile. Defendants never once suggested that they intended to hire an entirely new expert. (Brancolini Decl. ¶ 10). Defendants instead waited until June 20, 2025—the very last day of the extended discovery period—to disclose Dr. Rayner. This delay left Plaintiff with no opportunity to investigate or depose Dr. Rayner before the close of discovery, creating significant and incurable prejudice as trial is now only three months away.

Federal Rule 26 does not contemplate a right to surrebuttal reports, and legal authority establishes that each party is generally entitled to only one opportunity to rebut an opposing expert. Defendants already exercised this opportunity when they filed Dr. Ferrara's rebuttal report on October 25, 2024. (*See* Exh. 2.) Even if a surrebuttal report was permissible, Dr. Rayner's report is flagrantly overbroad: Dr. Rayner's own admissions reveal that his analysis impermissibly reaches back to

rebut Dr. Lustig's initial and rebuttal reports, yet he offers four entirely new arguments. Assuming, arguendo, Dr. Rayner's report was intended to solely address Dr. Lustig's supplemental report, it is still impermissible. A surrebuttal report is limited to new theories outlined in a supplemental report; Dr. Lustig does not raise new opinions in his supplemental report. Rather, to the extent that he did include a new opinion, the Court had it stricken. (Doc. 137.)

Because Defendants cannot demonstrate that this late disclosure was substantially justified or harmless, Dr. Rayner's testimony and report must be excluded under Rule 37(c)(1) to prevent the disruption of trial and to protect the integrity of the discovery process.

## II.    LEGAL STANDARD

### A. Standard for Expert Disclosures and Rebuttal Reports

Rule 26(a) requires a party to disclose the identity of such experts they intend to call at trial, the reports concerning their opinions, the basis for those opinions, and the expert's qualifications and backgrounds. Fed. R. Civ. P. 26(a)(2)(A)-(C). The disclosures must be made "at the times and in the sequence that the court orders." When there is no stipulation or court order, rebuttal reports must be submitted at least 90 days before the trial date or within 30 days after the other party's disclosure. Fed. R. Civ. P. 26(a)(2)(D).

Rule 26(a)(2) addresses the disclosure of both initial and rebuttal expert testimony. *See* Fed. R. Civ. P. 26(a)(2). The Rule defines rebuttal expert evidence in subsection (a)(2)(D)(ii): "a rebuttal report as one intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (c)." Courts have held that "the phrase 'same subject matter' should be read narrowly because a broad reading that encompasses any possible topic that relates to the subject matter at issue will blur the distinction between affirmative expert and rebuttal expert." *Diamond Resorts U.S. Collection Dev., LLC v. Pandora*

*Mktg., LLC*, No. CV 20-5486 DSF (ADSx), 2023 U.S. Dist. LEXIS 235412, at *30 (C.D. Cal. July 26, 2023).

Federal Rule 37 holds that if a party fails to provide required information under Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Courts have "particularly wide latitude" in exercising their "discretion to issue sanctions [precluding this evidence] under Rule 37(c)(1)." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (citation omitted). A party in violation of Rule 26(a) bears the burden of proving any delay was substantially justified or harmless. *See R&R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1246 (9th Cir. 2012).

There are several factors a district court should consider in its "determination of whether substantial justification and harmlessness exist, including (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022) (citation omitted).

## III. LEGAL ARGUMENT

### A. Dr. Rayner's Testimony and Expert Report Should Be Excluded from Trial.

#### 1. Procedural Posture

Prior to the Parties' Joint Stipulation extending discovery to June 13, 2025, and again to June 20, 2025, Defendants expressed frustration that they could not seek testimony and produce documents from T-Mobile, a third party, as the discovery deadline already passed. (Exh. 6.) In response, Plaintiff's counsel explained that reopening discovery on this issue was impermissible without the Court's approval. (*Id.*) Ultimately, Plaintiff's counsel raised the idea of entering a

joint stipulation for the primary purpose of allowing Defendants to engage in this third-party discovery. (Exh. 6); (Docs. 134, 135.)

During the conferral call, Defendants never suggested, nor did Plaintiff's counsel agree, to reopen discovery to permit Defendants to hire an entirely new expert. It was Plaintiff's reasonable understanding at the time that the limited reopening of discovery was, again, for the primary purpose of allowing Defendants to pursue discovery from T-Mobile. On the final day of discovery, Defendants introduced Dr. Rayner as a new rebuttal expert. As this was the last day of the extended discovery deadline, Plaintiff could no longer depose or otherwise investigate Dr. Rayner without the Court's permission.

**2. Defendants were not permitted to submit Dr. Rayner's surrebuttal report.**

Legally, Defendants are not entitled to proffer Dr. Rayner's surrebuttal report. The relevant events occurred as follows: On the same day that Dr. Ferrara submitted his initial expert report, Plaintiff submitted Dr. Lustig's Initial Expert Report on October 11, 2024. (Exh. 1.) Defendants submitted Dr. Ferrara's rebuttal report to Dr. Lustig's initial report on October 25, 2024. (Exh. 2.) On the same day, Plaintiff also submitted Dr. Lustig's rebuttal report in response to Dr. Ferrara's initial expert report. (Exh. 3.) Later to address new arguments made by Defendants attempting to identify an inaccuracy in Dr. Lustig's reports, Plaintiff submitted Dr. Lustig's supplemental report on February 7, 2025. (Exh. 4.) Defendants filed a Motion to Strike Dr. Lustig's Supplemental Report on March 17, 2025. (Doc. 123.) The Court granted, in part, Defendants' Motion to Strike Dr. Lustig's Supplemental Expert Report on June 26, 2025, forbidding "an additional opinion that was absent from both the Initial and Rebuttal reports." (Doc. 131.) Finally, on June 20, 2025, Defendants submitted Dr. Rayner's Rebuttal Report, the subject of this Motion, which was Defendant's *second* rebuttal report. (Exh. 5.) During the Parties' meet and confer regarding this Motion, Defendants' counsel confirmed that Dr. Rayner's

report addressed all three of Dr. Lustig's reports, attempting to justify the same by arguing Dr. Lustig's supplemental report "could not be read in isolation." (Brancolini Decl. ¶ 5.).

Defendants impermissibly submitted Dr. Rayner's report by failing to first seek stipulation or leave from the Court. *See e.g.*, *Houle v. Jubilee Fisheries, Inc.*, No. C04-2346JLR, 2006 U.S. Dist. LEXIS 1408, at *5 n. 4 (W.D. Wash. Jan 5, 2006) (requiring party seeking surrebuttal expert evidence to seek stipulation or leave of court prior to submission). Even if Defendants were entitled to file their surrebuttal report, they were not entitled to do so by ambushing Plaintiff with a previously undisclosed expert rather than using their existing expert. *See William Hablinski Architecture v. Amir Const. Inc*., No. CV 03 6365 CAS(RNBX), 2005 U.S. Dist. LEXIS 50559, at *9 (C.D. Cal. Feb. 27, 2005) (barring expert testimony when Defendants "sought to introduce a *wholly new rebuttal expert* possessing no affiliation with the rebuttal experts already disclosed") (emphasis added).

**3. Dr. Rayner's report is untimely.**

Even beyond the requirement to obtain leave from the Court, Dr. Rayner's report is untimely for two reasons: (1) Defendants had already filed a rebuttal report to Dr. Lustig's initial report, and (2) Defendants' tardy filing did not meet any cognizable deadline that would bring Dr. Rayner's in line with Rule 26.

Defendants' attempt at a second bite at the apple to rebut Plaintiff's expert by filing a second rebuttal report cuts against legal authority. *Gramercy Grp., Inc. v. D.A. Builders, LLC*, No. CV 16-00114 JMS-KSC, 2018 U.S. Dist. LEXIS 39038, at *2 (D. Haw. Dec. 5, 2017) ("Each party gets one opportunity to rebut the opposing party's expert"). Defendants' likely excuse is they wanted the opportunity to rebut the new information contained in Dr. Lustig's supplemental report. However, as the Court's order on Defendants' Motion to Strike makes clear, there were no new opinions, information, or arguments advanced that could have been subject to rebuttal. The Court held that the "limited new opinion" was stricken. (Doc. 131.)

Dr. Rayner's report is also untimely because Defendants did not disclose Dr. Rayner's report "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2). As previously noted, Defendants are not entitled to submit Dr. Rayner's report to rebut Dr. Lustig's rebuttal or supplemental report without leave from the court. *Supra* Section III(B)(2) (citing *Houle v. Jubilee Fisheries, Inc.*, No. C04-2346JLR, 2006 U.S. Dist. LEXIS 1408, at *5 n. 4). This report can, therefore, only be cognizable as a rebuttal to Dr. Lustig's initial report, which must have been filed within 30 days after Plaintiff submitted Dr. Lustig's initial report. Instead, Defendants filed Dr. Rayner's report 252 days after Plaintiff submitted Dr. Lustig's initial report.

Even if Defendants were somehow entitled to sur-rebut the rebuttal and supplemental reports, Dr. Rayner's report is still untimely. Defendants did not submit Dr. Rayner's report within 30 days after Plaintiff submitted Dr. Lustig's rebuttal report; nor did they submit the report within 30 days after Plaintiff submitted Dr. Lustig's supplemental report. Defendants have failed to meet every cognizable deadline. *See* Fed. R. Civ. P. 26(a)(2)(D) ("Absent a stipulation or court order," a rebuttal report must be filed "within 30 days after the other party's disclosure.").

**4. Dr. Rayner's report is impermissibly overbroad.**

Dr. Rayner's report is additionally improperly overbroad. Courts in the Ninth Circuit have found that surrebuttal reports, when allowed, are limited to responding to another party's supplemental report's opinions. *See Rhead v. Mundy*, 2005 U.S. Dist. LEXIS 47633, at *53 (S.D. Cal. 2005) ("The sur-rebuttal report was to be limited to a response to [expert's] supplemental report opinions."). By Dr. Rayner's and Defendants' own admission, Dr. Rayner's report seeks to rebut Dr. Lustig's Initial, Rebuttal, *and* Supplement reports. (Exh. 5, at 2) ("This memorandum provides my expert rebuttal to the opinions and transcriptions presented by . . . Dr. Ethan Lustig in his initial, rebuttal, and supplemental reports"). Dr. Rayner's

rebuttal report exceeds the permissible scope under the Federal Rules by rebutting more than Dr. Lustig's new—and barred—opinion. *See* Fed. R. Civ. P. 26(a)(2)(D) (A rebuttal expert is "one intended solely to contradict or rebut evidence on the same subject matter identified by another party"); (expert's disclosures must be made "at the times and in the sequence that the court orders.").

Dr. Rayner's report offers four new arguments that are not the subject of Dr. Lustig's supplemental report: (1) Dr. Lustig's allegedly inaccurate ear transcriptions; (2) Dr. Lustig's allegedly inaccurate opinion that Spatola introduced a novel chord; (3) Dr. Lustig's alleged oversimplification of his "four-part arrangement layer;" and (4) Dr. Lustig's allegedly speculative analysis that "Spatola's chord voicings 'magnetically guided' Derulo's vocal choices." (Exh. 5, at 2-3.) Dr. Rayner's independent analysis is not "intended solely to contradict or rebut" Dr. Lustig's supplemental report, and thus he has far exceeded any permissible scope. *Speaks v. Mazda Motor Corp.*, No. CV 14-25-M-DWM, 2018 U.S. Dist. LEXIS 24361, at *5-6 (D. Mont. 2018) (holding rebuttal report to supplemental report impermissibly discussed additional opinion). Accordingly, the Court should strike Dr. Rayner's report and prevent the advancement of these new, belated opinions.

**5. Defendants cannot prove Dr. Rayner's report is substantially justified or harmless.**

For Defendants to avoid the exclusion of this testimony, they must prove that the untimely expert witness testimony is either substantially justified or harmless. *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1061-62 (C.D. Cal. 2010) (emphasis added) ("[Rule 37(c)(1)] excludes untimely expert witness testimony, unless the 'parties' failure to disclose the required information is substantially justified or harmless.'") (citation omitted); *Torres v. City of Los Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008) ("[T]he burden is on the party facing the sanction") (citation omitted). Defendants cannot do so.

The Court may consider several factors when determining whether a party's untimely disclosure is substantially justified or harmless, "including (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022) (citation omitted).

First, Defendants' late expert disclosure prejudices and creates an unfair surprise to Plaintiff because Defendants filed Dr. Rayner's report on the last day of the extended discovery period. The Parties never agreed to extend the discovery deadline to permit Defendants to hire a previously undisclosed expert, nor would Plaintiff have agreed to the extension had he known Defendants' ulterior motive. Furthermore, unlike the circumstances surrounding Dr. Lustig's Supplemental Report, for which Defendants had months of opportunity to depose Dr. Lustig to investigate the contents of his supplemental report, Plaintiff has had no opportunity to engage in any discovery related to this new expert. *Cf. Amos v. Makita U.S.A., Inc.*, No. 2:09-CV-01304-GMN-RJJ, 2011 U.S. Dist. LEXIS 158103, at *9 (D. Nev. Jan. 6, 2011) ("A party is not harmed where, even though an expert disclosure fails to satisfy [Rule] 26, the party knew about the expert, knew about the content of the expert's testimony, and had an opportunity to depose the expert."). Only now, a mere three months before trial, have Defendants offered to allow Plaintiff to depose Dr. Rayner, but the prejudice towards Plaintiff remains. *Mansur Props. LLC v. First Am. Title Ins. Co.*, 635 F. Supp. 3d 1116, 1133-34 (W.D. Wash. 2022) (finding prejudice and surprise since discovery already closed so too late for plaintiff to depose new expert about methodology and opinions).

Second, Plaintiff is unable to cure the prejudice because, again, Defendants disclosed this expert report on the final day of the extended discovery period. The only way to cure this prejudice is to reopen discovery, which is not harmless. *Taser Int'l v. Bestex Co.*, 2007 U.S. Dist. LEXIS 80775, at *31 (C.D. Cal. Feb. 9, 2007)

("[T]he only way that [plaintiff] could cure the defect would be for the Court to reopen discovery; such a disruption of the schedule of the Court is not harmless.").

Third, this untimely disclosure will disrupt trial. If the Court permits Defendants to introduce this new expert, Plaintiff will now have to engage in additional discovery to properly prepare for the quickly approaching trial. *Alfaro v. D. Las Vegas, Inc.*, No. 2:15-CV-02190-MMD-PAL, 2016 U.S. Dist. LEXIS 113949, at *45-46 (D. Nev. Aug. 24, 2016) ("A party that fails to timely comply with its . . . disclosure requirements unfairly interferes with opposing counsel's ability to properly prepare the case for deposition and trial.").

Fourth, Defendants engaged in bad faith or willfulness in failing to timely disclose their new expert. As previously described, the ongoing conferral efforts were solely tailored to permit Defendants to engage in third-party discovery; Defendants never indicated they intended to use the extended discovery deadline to add a new expert. (*See* Exh. 6; Brancolini Decl. ¶ 10.) Defendants engaged in the very unfair misconduct conferral meetings are designed to avoid.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court issue an order precluding Defendant's expert, Dr. William Rayner, from offering any testimony or opinions.

Date: February 2, 2026

Respectfully submitted,

**WERGE & CORBIN LAW GROUP**
Thomas E.M. Werge *(Pro hac vice)*

**FROST, LLP**
Christopher Frost

*/s/ Thomas E.M. Werge*

______________________________
Thomas E.M. Werge

*Attorneys for Plaintiff*
MATTHEW SPATOLA p/k/a MATTY SPATS

10
Case No. 2:23-cv-06191-MWF-E
Plaintiff's Motion in Limine to Exclude Dr. William Rayner

# EXHIBIT 1

Ethan Lustig, Ph.D.

October 9, 2024

**MUSICOLOGICAL REPORT 1:**

**ON THE ROLE OF MATTHEW SPATOLA P/K/A MATTY SPATS IN "SAVAGE LOVE"**

**Background and Qualifications**

1. Dr. Ethan Lustig specializes in systematically comparing and analyzing musical passages, holding three degrees in music theory: a Ph.D. and M.A. from the Eastman School of Music, University of Rochester; and a B.A. from the University of British Columbia. He currently teaches at the Faculty of Music at UNAM (widely considered the top university in Latin America), Anáhuac University (consistently ranked in the top 5 private universities in Mexico), and CENTRO (an elite private arts school). Dr. Lustig's research has been published in academic peer-reviewed journals, where he used statistical approaches to vocal melody, rhythm, and groove in popular music; and he writes Expert Analysis columns for *Law360*. He has presented his research internationally and has been recognized by the Social Sciences and Humanities Research Council, receiving their prestigious Fellowship for his research contributions. Dr. Lustig was the editor for the music theory encyclopedia, *The Architecture of Music* and has provided forensic musicology services for numerous law firms. A seasoned educator, Dr. Lustig has taught music theory, production, composition, audio engineering, and ear training to hundreds of students. Dr. Lustig has provided his music-analytical opinion on TV networks including ABC and CBS. Dr. Lustig also has extensive experience as a

professional composer and audio engineer, with his music featured by companies such as Adobe.

## Introduction

2. I have been retained by the Werge & Corbin Law Group to assess the extent of Matthew Spatola's (p/k/a Matty Spats) musical contributions to the song "Savage Love (Laxed - Siren Beat)"[1] (henceforth referred to as *SL*) by artists Jason Derulo and Jawsh 685, both from the perspective of *SL* as a sound recording and as a composition. In what follows, I have transcribed[2] by ear all musical examples.

3. *SL* heavily samples the instrumental "Laxed (Siren Beat)" (henceforth referred to as *LSB*) by Jawsh 685.[3]

4. *SL* is at a tempo of 75 bpm and in the key of Eb major (=Eb F G Ab Bb C D). It has a duration of 2:51.

5. Figure 1 shows the musical form of "Savage Love", with bar numbers and timepoints. The arches group bars into meaningful formal sections.[4]

[1] This report takes as canonical the version and timings of the "Savage Love" single found on streaming platforms Spotify and Apple Music (https://open.spotify.com/track/5T490vvoFNU6psep0NPmxs?si=e6440752dbea4d19; https://music.apple.com/us/album/savage-love-laxed-siren-beat/1517696097?i=1517696110). Some YouTube uploads are of an unauthorized version of the song, with some differences in the composition, mix sonics, and runtime (see for example https://www.youtube.com/watch?v=8gNjgMznL3M).
[2] Definitions for technical musicological terms can be found in Appendix A of this document.
[3] https://open.spotify.com/track/3BJiF37kmX4HCfYSO7qBnQ?si=7a87d8bb24014edc
[4] Pre-Chorus is synonymous with Pre-Hook.



Figure 1: Overall form of "Savage Love"

Ethan@EthanLustig.com
EthanLustig.com/Forensic-Musicology

6. Spatola performed electric guitar, acoustic guitar, and electric bass in *SL*. Table 1 shows the musical form of *SL* including Spatola's contributions in each section.

Table 1: Form of "Savage Love" with Spatola's contributions

| **Formal section** | **Number of bars**[5] | **Timepoint of section beginning** | **Spatola's contributions** |
|---|---|---|---|
| Intro | 4 | 0:00 | Electric guitar; bass |
| Verse 1 | 8 | 0:15 | Electric guitar; bass; acoustic guitar |
| Pre-Chorus 1 | 4 | 0:41 | Electric guitar; bass; acoustic guitar |
| Chorus 1 | 8 | 0:53 | Electric guitar; bass; acoustic guitar |
| Verse 2 | 4 | 1:19 | Electric guitar; bass; acoustic guitar |
| Pre-Chorus 2 | 4 | 1:32 | Electric guitar; bass; acoustic guitar |
| Chorus 2 | 8 | 1:44 | Electric guitar; bass; acoustic guitar |
| Bridge | 4 | 2:10 | Electric guitar; bass; acoustic guitar |
| Chorus 3 | 8 | 2:23 | Electric guitar; bass; acoustic guitar |

7. It should be noted that all of Spatola's contributions to the final record were recorded in the night/early morning of April 22/23, 2020 (Version 1 - "SOMEBODY ELSE (TIC TOC).ptx") and on the evening of April 27, 2020 (Version 7 - "SAVAGE LOVE V7.ptx"). The final version of the song (Version 9 - "SAVAGE LOVE V9.ptx") was then sent to the mix engineer as "stems". Version 9 therefore serves as the definitive instance of what actually made it to the final record.

[5] The record begins with a reversed cymbal functioning as a "riser" that precedes bar 1 and which can be considered as a pick-up or "anacrusis" bar 0. Technically, the third chorus exceeds 8 bars, spilling over into the first beat of a ninth bar with the lyric "love". Both of these details (the record starting slightly before bar 1, and ending slightly after bar 52) are shown in Figure 1.

**The Sound Recording Perspective**

8. From a sound recording perspective, Spatola's contributions can be heard throughout the entire record of *SL*, as there is not a single musical section devoid of his performance.

9. From a sound recording perspective, Spatola's bass and guitars are indispensable to *SL*, and distinguish it sonically from *LSB*, adding an organic feel to an otherwise digital-feeling record. The addition of Spatola's guitars broadens the record's appeal, moving it beyond the regional "Siren Kings" genre of *LSB* and into the accessible soundworld of global hit records by artists such as Ed Sheeran.

10. How might we quantitatively ascertain Spatola's performance contributions? Let us consider a rough breakdown of a sound recording's musical arrangement layers into four equal parts:

a. Vocals Layer (25%)

b. Chords Layer (25%)

c. Bass Layer (25%)

d. Percussion/fx[6] Layer (25%)

Spatola contributes to the chords (via the acoustic and electric guitars) and bass layers in all sections of *SL*. Therefore, his playing contributes to 100% of the recording's chords layer, and 100% of the recording's bass layer: that is, 50% of the total arrangement layers.[7]

[6] By "fx", I am referring to risers, delay throws, and so forth.

[7] Disclaimer: In this report's discussions of percentages, I caution that I am not a royalties/damages expert, though I understand that these percentages will be provided to a royalties/damages expert. I calculated these figures based upon my musicological estimations. They are the result of the dividing of a recording or composition into arrangement layers for the purpose of ascertaining my opinion of percentages attributable to Mr. Spatola's work.

11. However, what about Spatola's *unique* contributions to the recording's four arrangement layers—that is, sections where only Spatola is contributing to an arrangement layer and *LSB* is not playing? In the following paragraphs I will answer this question.

12. The chord progression of *LSB* (vi-IV-I-V) is articulated by three harmonic elements: bass, piano, and horns. Figure 2 illustrates:

Figure 2: Harmonic elements at 0:15 of "Laxed (Siren Beat)"

13. In some sections of *SL*, the piano, horns, and/or bass from *LSB* are sampled. However, in many other sections of *SL* those elements are muted and Spatola takes over their role, being the sole provider of harmonic material. Table 2 demonstrates.

Table 2: Spatola's contributions in "Savage Love" compared with "Laxed (Siren Beat)" harmonic elements sampled

| **Formal section** | **Number of bars** | **Timepoint of section beginning** | **Spatola's contributions** | **"Laxed (Siren Beat)" harmonic elements sampled** |
|---|---|---|---|---|
| Intro | 4 | 0:00 | Electric guitar; bass | - |
| Verse 1 | 8 | 0:15 | Electric guitar; bass; acoustic guitar | Piano, horns, bass |
| Pre-Chorus 1 | 4 | 0:41 | Electric guitar; bass; acoustic guitar | - |
| Chorus 1 (first half) | 4 | 0:53 | Electric guitar; bass; acoustic guitar | - |
| Chorus 1 (second half) | 4 | 1:06 | Electric guitar; bass; acoustic guitar | Piano, horns, bass |
| Verse 2 | 4 | 1:19 | Electric guitar; bass; acoustic guitar | Piano, horns, bass |
| Pre-Chorus 2 | 4 | 1:32 | Electric guitar; bass; acoustic guitar | - |
| Chorus 2 (first half) | 4 | 1:44 | Electric guitar; bass; acoustic guitar | - |
| Chorus 2 (second half) | 4 | 1:57 | Electric guitar; bass; acoustic guitar | Piano, horns, bass |
| Bridge | 4 | 2:10 | Electric guitar; bass; acoustic guitar | Piano, horns |
| Chorus 3 | 8 | 2:23 | Electric guitar; bass; acoustic guitar | Piano, horns, bass |

From Table 2 we can see that in 20/52 bars (38% of the record), Spatola alone provides chords (guitars), without any *LSB* harmonic elements present in the arrangement. And because in the Bridge, the *LSB* bass is muted and only Spatola's bass is heard, Spatola provides sole bass support in 24/52 bars (46% of the record).

14. Therefore, far from simply thickening the musical texture by playing on top of *LSB*, Spatola's contributions in fact completely replace *LSB*'s chords layer for 38% of *SL*, and completely replace *LSB*'s bass layer for 46% of *SL*.

Thus, in terms of the sound recording, Spatola uniquely contributes:

a. 0% of the vocals layer

b. 38% of the chords layer

c. 46% of the bass layer

d. 0% of the percussion/fx layer

Averaging between the four layers, this means that a grand total of **21% of the sound recording** is purely Spatola.

## The Compositional Perspective

15. In what follows, I will treat each formal section of *SL* in turn, assessing the extent of Spatola's compositional contributions.

16. **The Intro** (4/52 bars, ~8% of the song): Right from the intro, Spatola's contributions alter the harmonic progression from that of the *LSB* source material. In the electric guitar, Spatola plays an EbM(add6) chord instead of a regular EbM triad, as had been the case in *LSB*.[8] Figure 3 demonstrates:

Figure 3: "Savage Love", Intro - Spatola's electric guitar

17. Spatola also goes on to employ the EbM(add6) chord throughout the Pre-Choruses, Choruses, and Bridge, as I will discuss below.

[8] The EbM(add6) chord for the Intro, Choruses, and Bridge can be heard in the audio file "ELEC GTR_03.wav" at 0:19. For the Pre-Choruses, the chord can be heard in the audio file "AC GTR.01_07.wav" at 0:10. Both were recorded during the first session (April 22/23, 2020) and therefore present since the first version, right through the final version. (The "shoot date" feature in Pro Tools allows for the viewing of recording times for files.)

18. **The Verses** (12/52 bars, ~23% of the song): In the Verses of *SL*, Spatola's guitars (both acoustic and electric) present completely different rhythms than those found in *LSB*'s simple off-beat piano chords. While *LSB*'s piano chords land squarely on each off-beat, Spatola introduces complex, triplet sixteenths into the chord layer of the song.[9] Figure 4 demonstrates:

Figure 4: "Savage Love", Verses - Spatola's guitars (top) vs. "Laxed (Siren Beat)" piano (bottom)

19. "Voicing" refers to the specific configuration of a chord's notes. (See Appendix A of this document for more details). Especially important and salient aurally is which note of the chord the musician places on the top of the voicing (as the highest-sounding pitch of the voicing).

20. Spatola voices his chords in the Verses such that the top notes of his chords play C in bars 1-2 of the 4-bar loop, and then Bb in bars 3-4 of the loop. In the Verses, there appear to be correspondences between Spatola's chord voicing decisions and Derulo's vocal melody. See Figure 5. We can see that the top note of the guitars in bars 1-2 (C) provides the scaffolding for how Derulo begins the melody of both bars 1 and 2

[9] While Spatola's rhythms in the chord layer of the verses are a logical result of the groove in *LSB*'s siren, they do add a new dimension of rhythmic complexity to the song previously not present in *LSB*'s harmonic elements.

(red squares). Meanwhile, in bars 3-4 of the loop, Spatola places Bb at the top of his voicing: in those bars Derulo's melody features a highly distinctive leap up to none other than that exact note Bb. Spatola's unique voicing decisions acted as "magnet" notes for Derulo's vocal, guiding the latter's decisions.[10]

Figure 5: "Savage Love", Verses - Spatola's guitar voicings (top) and Derulo's vocal (bottom)

21. The chronology of file recording times supports the idea that Spatola's guitar voicings in the Verses shaped Derulo's vocal melody, rather than the converse. Versions 1-6 of *SL* feature quite a different vocal melody in the Verses. It is not until Version 7 (April 27, 2020) that the Verse vocal melody suddenly took its final form. That night was, not coincidentally, also when Spatola's syncopated electric and acoustic guitar parts for the Verses (the top part of Figure 5) first appear in the recording history, with a

[10] Although only four bars are notated, the Verses consist of repetitive, 4-bar looping material, such that the figure is equally relevant for the remaining 8 bars of Verse material in *SL*.

timestamp before 7pm.[11] Meanwhile, the Verse vocal melody (the bottom part of Figure 5) was recorded a few hours later, starting around 10pm. Therefore, in my opinion, it is quite likely that Spatola's guitar parts in the Verses were the impetus for Derulo's sudden updating of the Verse vocal melody later that same night.

22. The defense attempted to write off Spatola's syncopated guitars in the Verses as simply a "tresillo" rhythm and therefore not original (Spatola deposition[12], pp. 414-416). However, this is not true, and fails to consider the fact that unlike the tresillo, Spatola's Verse rhythms use triplets. Figure 6 compares the rhythm of Spatola's Verse guitars (above) with the tresillo rhythm (below), with red boxes showing shared notes:

Figure 6: Spatola's guitar rhythms in the "Savage Love" Verses (top) and the tresillo rhythm (bottom)

[11] The files in question that make up the syncopated Verse electric and acoustic guitar parts are:
"AC GTR .12-VAProj_19.wav" (April 27, 2020 7:07pm),
"GTR.dup4.08_01.wav" (April 27, 2020 6:46pm),
"GTR.dup4.08-VAProj_01.wav" (April 27, 2020 6:54pm),
"AC GTR .07_14.wav" (April 27, 2020 6:59pm),
"AC GTR .10_17.wav" (April 27, 2020 7pm),
"AC GTR .03-VAProj_10.wav" (April 27, 2020 11:01pm),
"AC GTR .01-VAProj_06.wav" (April 27, 2020 11:01pm).

[12] In this report, all "Spatola deposition" citations are with reference to the Spatola Deposition, July 16, 2024; all "Derulo deposition" citations are with reference to the Desrouleaux Deposition, April 15, 2024; all "Hogarth deposition" citations are with reference to the Hogarth Deposition, June 18, 2024; and all "Kasher deposition" citations are with reference to the Jacob Kasher Hindlin Deposition, July 17, 2024.

As can be seen, there is only about a 50% similarity between the two rhythms to begin with. Spatola, however, uses triplets, while the tresillo does not involve this rhythmic distinction.

23. Further differentiating Spatola's guitar work from tresillo, it should be noted that Figure 6 is in fact generous to the defense, since the actual Verse guitar rhythms are in fact supplemented with quieter, unaccented "ghost" notes in his strumming that add more details and fill in the gaps between the accented notes. Therefore, Spatola's playing in reality also implicates further triplet subdivisions of the beat, and a much higher note density than tresillo.

24. The defense also commits a significant error when it comes to their claims about Spatola's bass contributions in the Verses. Pp. 418-431 of the Spatola deposition is dedicated to Exhibit 103, which purportedly notates Spatola's bass at 0:15 of *SL* (Verse 1). The defense goes to great lengths to emphasize that Spatola's bass is, according to Exhibit 103, nearly identical to *LSB*'s bass. However, this is simply not true. They have mistakenly transcribed the *LSB* bass instead of Spatola's actual bass contribution.[13] Figure 7 corrects the errors of Exhibit 103 (*LSB* bass above, Spatola's bass below):[14]

---

[13] Specifically, the file in question, as found in the final v9 Pro Tools project, is "SL BASS.L.wav" (there is also "SL BASS.R.wav" but they are the exact same audio). This file is itself largely a sample of "BASS.02-PnTPro_07.wav" which was recorded on April 27, 2020 at 8:13 pm and first found in the v7 Pro Tools project.

[14] Note that I am considering *SL* to be at a tempo of 75bpm, while the defense apparently considers it to be at 150bpm, which explains why their Exhibit 103 is 8 bars long while mine is 4. However, this difference (counting at half-time vs. double-time) is immaterial.

Figure 7: A rectified Exhibit 103 - Bass at 0:15-0:28 in "Laxed (Siren Beat)" (top)

and Spatola's bass at 0:15-0:28 in "Savage Love" (bottom)



25. As can be seen, Spatola's bass is highly distinct from the simple, straightforward LSB bass: he uses a "galloping" sextuplet rhythm throughout, injecting life into the bassline, while even playing a bluesy "wrong" note (E natural for what would have usually been E flat), adding soul and an analog touch. Spatola's bass also has a significantly higher density of notes compared with *LSB*'s bass. Although they both activate the root notes of the chord progression, *LSB*'s bass emphasizes roots and fifths, while Spatola's bass emphasizes mostly the roots only. Note that these four notated bars loop such that this same material appears throughout all of the Verse bars (~23% of the song's runtime).

26. **The Pre-Choruses** (8/52 bars, ~15% of the song): More than any other section, Spatola's electric and acoustic guitar parts are absolutely indispensable from a compositional perspective in the Pre-Choruses.

27. First of all, Spatola appears to have made the decision in both Pre-Choruses to change up the rhythmic feel, departing from the 16th triplet subdivisions (sometimes described as a "galloping" or "jig" feel) that characterize *LSB.* Unlike the other sections of *SL*, which very much adhere to the 16th triplet feel of *LSB*, in the Pre-Choruses, Spatola's acoustic guitar strumming pattern uses straight 16th subdivisions, creating a fundamentally different groove.

28. Figure 8 demonstrates, with red boxes showing correspondences between Spatola's acoustic guitar strumming rhythm (top) and Derulo's vocal rhythm (bottom):

Figure 8: "Savage Love", Pre-Choruses - Acoustic guitar rhythm (top) vs. vocal rhythm (bottom)

In the other sections of *SL*, Derulo's vocal uses a triplet feel (cohering with *LSB*), but here in the Pre-Choruses, Derulo switches to a straight-sixteenth feel. It is highly unlikely that this catchy rhythmic contrast would have worked in the Pre-Choruses without Spatola's acoustic guitar contribution guiding the way for Derulo's vocal choices.

29. Spatola's Pre-Chorus acoustic guitar rhythm has precedent in his earlier work; for example, a very similar strumming pattern to that of the *SL* Pre-Choruses can

be heard in his guitar playing with Jessie J in September 2019 (whereas the first *SL* studio session was not until April 2020).[15] Figure 9 demonstrates:

Figure 9: Guitar rhythm in "Nobody's Perfect" (live) (top) vs. Acoustic guitar rhythm in "Savage Love", Pre-Choruses (bottom)

30. Given this clear precedent in Spatola's own work, there is a very low likelihood that the Pre-Chorus acoustic guitar rhythms would have been of Derulo's invention nor direction. (For a discussion of Spatola's agency in his musical contributions, please see the section *On Spatola's Agency* below.)

31. Just as Derulo's Pre-Chorus vocal derives its rhythmic coherence from the acoustic guitar, the vocal derives its pitch coherence from the electric guitar. The sustained electric guitar chords that Spatola plays during the Pre-Chorus sections are voiced in such a way that their top notes outline a distinctive melody: C - Ab - G - Bb. In Figure 10, we see Spatola's sustained guitar chords above, and Derulo's vocal below. The red arrows show the directed correspondences, while the circles draw our attention to the structural notes (C - Ab - G - Bb) shared between the guitar and vocal.

[15] https://www.youtube.com/watch?v=bOZm-XFfJoI; 0:13-0:54. In fact, Spatola plays the exact same rhythm as the *SL* Pre-Choruses in some of his strumming here; see for example 0:16-0:20.

Figure 10: "Savage Love", Pre-Choruses - Electric guitar (top) vs. vocal melody (bottom)

Note also that the opening and closing notes of the Pre-Choruses' vocal melody both match the electric guitar's top notes, with Spatola's voicings essentially bookending the vocal melody for this section. There is a "call and response" relationship here: Spatola's guitar notes are played, and Derulo's vocal follows after, embellishing the notes already established by the guitar. It can be seen from instances such as Figure 10 that Spatola is a master of his craft, creating electric guitar voicings that provide a perfect framework for Derulo to create his vocal melody.

32. It is clear that in the Pre-Choruses, the top notes of Spatola's distinctive electric guitar voicings function perfectly to reinforce the pitches of the vocal melody, which are reflective of Spatola's unique structural choices.[16]

33. Furthermore, Spatola again introduces the EbM(add6) chord in the third bar of both Pre-Choruses, using the acoustic guitar to modify the harmony from what had been present in *LSB*. Figure 11 demonstrates:

[16] It is telling that *LSB* is entirely muted for the *SL* Pre-Choruses—I believe this is because the straight-sixteenths of the *SL* Pre-Choruses would have clashed with the triplet rhythms of *LSB.* This distinction highlights the uniqueness and importance of Spatola's creation of and contributions to the Pre-Chorus section of *SL*.

Figure 11: "Savage Love", Pre-Choruses - Acoustic guitar



34.  Note that the Pre-Choruses are the only sections in *SL* that do not feature the ska/reggae style offbeat chordal hits inherited from *LSB*, with Spatola creating a fundamentally different groove (and even genre) for those sections.

35.  **The Choruses** (24/52 bars, ~46% of the song): In the Chorus sections, Spatola again introduces the EbM(add6) chord (in the electric guitar). Figure 12 demonstrates:

Figure 12: "Savage Love", Choruses - Electric guitar



36. As we saw in Table 2, Spatola alone carries the harmonic material in the first halves of Choruses 1 and 2, as *LSB*'s piano, horns, and bass are muted. Spatola therefore provides sole chord and bass support for 8/24 bars (33%) of the Choruses.

37. The vocal melody in the Choruses is derived largely from the *LSB* siren and I do not find correspondences between Spatola's playing and the Chorus vocal.

38. **The Bridge** (4/52 bars, ~8% of the song): Figure 13 presents the Bridge section (electric guitar on top, vocal melody below). It can be seen that Spatola's guitar voicings acted as "anchoring" or "magnet" notes determinative of some of Derulo's vocal melody.

Figure 13: "Savage Love", Bridge - Electric guitar (top), vocal melody (bottom)



39. In the first bar of the Bridge, Spatola places a C at the top of his electric guitar voicing, and the vocal melody begins by sustaining this same note (inherited from the end of the Chorus). Almost the entirety of the third bar vocal melody is dedicated to arpeggiating the specific EbM(add6) harmony that Spatola plays in that bar, and the vocal melody even articulates the same voicing of the harmony as Spatola. Finally, in the fourth bar of the Bridge, Spatola places Bb on the top of his voicing, and Derulo follows suit, using Bb to structure his vocal runs: Bb is the terminus note of his vocal run on "me"; then in a dramatic octave leap, he continues on Bb to begin "baby"; finally, he again ends this elaborate run on Bb before merging with Chorus 3.

40. The recording chronology also supports the idea that Spatola's electric guitar in the Bridge influenced Derulo's vocal melody. While the final Bridge vocal takes were not recorded until April 23-25, the final Bridge electric guitar was recorded on April 22 (right from Version 1). Besides, even the Version 1 Bridge vocals (which to some extent influenced the final Bridge vocal part) were recorded in the morning of April 23, hours after Spatola had already laid down his electric guitar tracks for the Bridge.

41. In terms of quantitatively ascertaining Spatola's contributions to the composition, we can consider a 4-part scheme of:

a. Vocal melody (25%)

b. Lyrics (25%)

c. Harmonic elements (chords, bass) (25%)

d. Percussion/fx (25%)

This scheme is based on the classic split wherein the vocal aspects (melody and lyrics) are 50% of the composition, and the instrumental aspects are the other 50%. (This is especially clear in hip-hop, for example, where the vocals vs. the "beat" are from two different sources and are considered equal partners.) Note that this scheme is in fact generous to the defense, given that in actual fact *SL* allocates only 20% of its composition royalties to its primary lyric writer, J Kash, not 25% (Kasher deposition, p. 112).

42. Spatola does not compose lyrics nor percussion/fx.

43. Spatola composes harmonic elements (chords, bass) in every section of the composition. In other words, he contributes to 100% of the piece's harmonic elements.

44. More useful, however, is a breakdown in terms of Spatola's *unique* harmonic elements, that is, sections where solely Spatola contributes harmonic elements. From Table 2, we see that Spatola is the sole provider of harmonic elements (via guitars and bass) in 20/52 bars, or 38% of the piece.

45. As discussed above, Spatola's guitar writing also heavily influenced the course of, especially, the Verse vocal melody, which is 23% of the total vocal melody. All else equal, if we assume an even split between Spatola and Derulo in the creation of the Verse vocal melody, this means that Spatola contributed to ~11.5% of the total vocal melody.

Therefore, compositionally Spatola uniquely contributes:

a. 11.5% of vocal melody

b. 0% of lyrics

c. 38% of harmonic elements

d. 0% percussion/fx

Averaging between the four compositional layers, this yields a grand total of **12.38% of the composition.**

**On Spatola's Agency**

46. In the previous section, I discussed multiple instances of how Spatola's musical decisions ultimately impacted Derulo's vocal melody. However, for the most part, I did not elaborate on *why* Spatola's playing should be thought of as his decisions, rather than Derulo's decisions.

47. In the present section, I will describe why Spatola's musical contributions were very much *his* decisions, rather than those of Derulo.

48. Spatola's excellence as a guitar player is obvious (as searching his name on YouTube will demonstrate). Therefore, he was easily capable of independently creating what he contributed to *SL* with little or no guidance.

49. More importantly, after assessing the evidence in the depositions of Derulo, Spatola, Hogarth, and Kasher, I believe that Derulo could *not* have instructed Spatola as to specific guitar voicing decisions, as his deposition demonstrates that he is quite confused in the domain of harmony.

50. In my experience as a music educator (having taught hundreds of students across all levels, ages, and genres) it is not uncommon that a student's aptitudes vary widely depending on the specific musical ability in question. For instance, someone may have a very accurate sense of timing, but struggle to sing in tune (or vice versa). This is the essence of why we collaborate: we cannot do it all ourselves.

51. Derulo states that he plays little in the way of instruments, saying in response to the question, "In addition to using your voice, what instruments do you also use to create music?" that "I don't play instruments" and that he plays "very little." (Derulo deposition, 31:4-10) The fact that Derulo doesn't play instruments is further confirmed by the depositions of both Hogarth (pp. 265-266) and Kasher (120:1-3).

52. Derulo claims that since he doesn't play instruments, he works instead by singing the desired notes to his collaborators, and that they "help me to play the notes that I'm thinking." (Derulo deposition, 35:18-21)

53. However, his collaborators' "help" may be more than simply playing the exact notes that Derulo sings for them. In fact, he directly demonstrates that what he sings for them is expressly *not* what they end up playing: "I sing them the notes and they play what I sing. For instance, if I'm hearing a violin part and I want the violin part to go de-de-de, I sing de-de-de, and they play de-de-de." (36:2-5; 49:21 of Video 1). Figure 14 notates his singing. His intention surely was to have all three melodies be the same notes. Instead, for the third "de-de-de" (representing what the violins play for him) it is on completely different notes. This discrepancy on the third melody demonstrates two things: first, a lack of pitch stability; and second, that he is so used to musicians taking his so-called "direction" and then *modifying* it to better fit the music, that he has (I believe unconsciously) modified the melody on the third iteration.

Figure 14: Derulo Deposition, 36:2-5 (49:21 of Video 1), in musical notation



Yet Derulo claims that there is little "back and forth" in the process: "I typically will know...exactly what I want, so I'll sing it exactly." (36:7-11)

54. Derulo states that in the case of *SL* it was "easy" to determine what guitar chords to play because "the notes were already played by someone else [i.e. Jawsh 685]" (37:21-22) and that "Jawsh 685 made the chords already. So we utilized the same ones." (38:6-8) However, this overlooks two points: first, that the specific chord voicings must still be decided by the musician, something Derulo seems unaware of; and second, that in fact Spatola doesn't just play the chords of *LSB*, but rather modifies the third chord of the loop in many sections of *SL*, playing an EbM(add6) chord, a fact that Derulo also seems unaware of.

55. Derulo claims to be "really good with music theory" (31:20-21) but then is unable to answer rudimentary questions such as how many major chords exist (38:19-20), how many minor chords exist (39:2-5), what chords are used in *SL* (39:12-6), and how many chords are used in *SL* (39:18-23). A lack of music theory knowledge doesn't necessarily preclude excellent musicianship; the problem here is that claiming to be "really good with music theory" and yet failing on basic knowledge questions, coupled with the other issues I discuss in this section, indicates a pattern wherein his self-perception may not be the reality of the matter.

56. Meanwhile, Spatola under deposition is able to accurately spell most of the chords in *SL*, and correctly describe it as a "6-4-1-5" (=vi IV I V) progression (p. 405). He also demonstrates fluency with music theory concepts such as inversions and syncopation (pp. 432-433).

57. It is telling that when asked, "how would you sing what you asked [Spatola] to play for the electric guitar part?" (148:19-20) Derulo simply sings a repeated rhythm

on a single note (11:15 of Video 3); he does not provide something sufficient to have specified the voicings of the chords. In fact, given the chord progression in *SL*, it's impossible to voice the chords in such a way that the same note would be present over all four chords—therefore, *any* meaningful instruction regarding the chord voicings' top notes would have necessarily involved more than a single repeated note.

58. Derulo claims that there was no "back and forth with ideas" (149:1-5), and that he sang 100% of every guitar and bass part that he wanted Spatola to play (149:21-150:1). In short, that "everything that is new on that song is an idea from me." (159:14-15) However, when asked to demonstrate how he would have sung the bass to Spatola (150:6, 12:57 of Video 3), what Derulo sings is utterly different from the song's bassline, and shows a fundamental misunderstanding of the harmonic progression of the song. He simply arpeggiates the C minor harmony, not engaging with the four different harmonies involved in the song's chord progression. Figure 15 compares what Derulo sings (bottom) with the song's actual bassline in the Choruses (top); this discrepancy serves as further evidence of Derulo's confusion in the domain of harmony.

Figure 15: "Savage Love" - Spatola's bassline at 1:05 (top) vs. Derulo's rendition in deposition (12:57 of Video 3) (bottom)



59. Derulo claims that "if I'm going to show you a chord, I would go to the root note and sing the root note. And if it doesn't feel right, we'll try different chords based

on my root note." (151:20-24) A "root" is a musical harmony concept referring to the note at the base (not to be confused with the instrument "bass") of a chord, upon which the chord is constructed and receives its name—for instance, the four root notes in *SL* are C, Ab, Eb, and Bb: one for each of the four respective chords in its progression.

60. However, the notes that Derulo sings as alleged instances of "root notes" (15:51 of Video 3) are anything but, and it seems likely that he is confusing "root" here with the idea of the top note of each chord voicing. This misunderstanding of nomenclature would have seemed trivial were it not for the fact that what he sings also bears little relation to the top notes of any of the voicings that Spatola actually provides in *SL*. Figure 16 demonstrates. In short, what Derulo sings here are neither harmonic roots, nor a meaningful top line of chord voicings that made their way into *SL*. It is not clear what his intention was here, other than to sing some notes that fit into the key of the song. Yet Derulo claims that he gave Spatola "the exact pattern with the root note...we utilize my voice to demonstrate exactly what root note." (152:19-153:3)

Figure 16: "Savage Love", Pre-Choruses: Spatola's acoustic guitar top notes (top) vs. Derulo's sung "root" notes in deposition (15:51 of Video 3) (bottom)



61. It is clear that Derulo is a successful artist with a good ear for hit songs. But, like most musicians, he has his deficits, on which he surely has relied on collaborators to supplement over the course of his career. Namely, it seems clear from his deposition

that harmony is not his strong suit. Throughout the deposition, he demonstrates fundamental gaps in both his comprehension and production of harmony. Like most successful artists, his success has almost certainly been attained by leveraging his unique talents in some areas (i.e. his voice), while wisely relying on collaborators such as Spatola for support in other areas (i.e. harmony).

62. Given this backdrop, it is my opinion that Spatola's testimony is more consistent with the musical record. As Spatola says of Derulo: "His input was "Yes, I like that." That was his input. I would play something. He'd be like, "Oh, yeah, I like that. That's" -- and then we would record it." (135:18-21) This places Derulo much more in the role of a passive curator, rather than an active composer, which appears musically consistent with his abilities demonstrated during his deposition. While Derulo may have *thought* that he was singing the notes to Spatola, the reality was likely consistent with the way Spatola described it: "Q. Mr. Derulo sang to you for how he wanted you to play; is that correct? A. He was just mimicking what he heard, and then I was adding things that wasn't [sic] there." (136:1-4)

63. Throughout his deposition, recording engineer Ben Hogarth repeatedly claims that he saw Derulo sing to, and try to direct, Spatola in the studio. While I do not doubt at all that this was the case, the extent to which Derulo's efforts were actually musically *useful* or related to what Spatola actually played, is another matter. It is my opinion that it is far more likely that Spatola, a deeply skilled musician, simply gracefully let Derulo fit into his self-perceived role as ringleader, let Derulo sing away, but made essentially all of his own key musical choices. In some parts, Hogarth's deposition in fact corroborates Spatola's recollection of Derulo as giving essentially "yeses" or "nos" and not much else. Hogarth describes the process of Derulo singing to Spatola as: "I believe Matthew started playing ideas. And Jason told him certain ways to

play what he played or came up with...He would say, "Yes, I like the idea," or "No, try it this way."" (144:4-9) Hogarth also describes it as "more of a collaboration between them...Matthew would come up with the idea and Jason would tell him to play it how he wanted it on the song." (145:7-14) Hogarth further recalls that "for most of the sessions that Matty came in, it was kind of Matty figuring out an idea, and Jason would say, "I like that," "I don't like that." (270:6-9)

64. In short, although Hogarth repeatedly asserts that he saw Derulo directing Spatola via singing, based upon my analysis of Derulo's contributions including during his deposition, it is not likely that Derulo's "direction" could have ever been particularly meaningful to Spatola's musical choices. For anyone with divided attention (as Hogarth was busy in his duties as recording engineer) watching a confident, charismatic star such as Derulo singing to someone, and acting in a perceived role as "director", it would be easy to mistakenly perceive Derulo as having been "in charge" and determining Spatola's decisions, even if Derulo's notes may have been as unrelated to the end result as Figures 14-16 are. Couple this with the fact that Hogarth seems to be unaware that Spatola even used unique voicings[17], and we begin to see that Hogarth was not a reliable witness to assess the musicological relationship between what Derulo sang and what Spatola played during the studio sessions of April 22/23 and April 27, 2020.

[17] "Q. And there's no way to communicate what type of voicing that you would want by singing just the root chord; correct?...A. Yeah, it's just typically you just play the regular chord. Pop music, they don't do voicings too often." (276:18-25) Hogarth appears to think of "voicings" here as special chords that go beyond the standard lexicon: seventh chords, sus4 chords, chromatic chords, and so on. But in fact "voicings" refers to the unique configuration of the given notes in a chord; any set of notes can be presented in myriad different voicings, and this aspect cannot be portrayed via merely singing the root note of a chord.

65. Given Derulo's issues with harmony, his lack of instrument-playing, and Spatola's world-class proficiency on his instruments, it is my opinion that Spatola made many, if not all, bass and guitar playing and voicing decisions in *SL* unaided by Derulo. Though it can be acknowledged that Derulo was singing to Spatola, this does not at all mean that anything Derulo sang was actually useful or determinative of what Spatola played.

66. The critical significance of Spatola's agency is that his contributions to the composition and sound recording would have been entirely of his own ideation.

**The BTS Remix**

67. In this section I will assess the extent of Spatola's contributions to the song "Savage Love (Laxed - Siren Beat) [BTS Remix]" (henceforth referred to as *SLBTS*) by artists Jason Derulo, Jawsh 685, and BTS, both from the perspective of *SLBTS* as a sound recording and as a composition.[18]

68. Although I was not provided individual stems/Pro Tools project files for *SLBTS*, to the best of my knowledge, Spatola's contributions in each section are unchanged from *SL*. The vocal melody is essentially the same as in *SL* as well.

69. Because the vocal melody and instrumentation is essentially unchanged, all previous claims in this report regarding the extent of Spatola's contributions to *SL* on a sound recording and compositional level, including their influence in shaping the course of the vocal melody in *SL*, also apply equally to *SLBTS*.

[18] The version of *SLBTS* taken as canonical for this report is: https://open.spotify.com/track/4TgxFMOn5yoESW6zCidCXL?si=5911f876cf204be7

70. The only notable difference between *SL* and *SLBTS* (other than featuring a thicker vocal texture via various guest vocals from the members of BTS), is that SLBTS features an 8-bar instead of a 4-bar Verse 2, which means that the song's bar structure and timepoints (along with Spatola's performance contributions) are as follows:

Table 3: Form of "Savage Love" [BTS Remix] with Spatola's contributions

| **Formal section** | **Number of bars** | **Timepoint of section beginning** | **Spatola's contributions** |
|---|---|---|---|
| Intro | 4 | 0:00 | Electric guitar; bass |
| Verse 1 | 8 | 0:15 | Electric guitar; bass; acoustic guitar |
| Pre-Chorus 1 | 4 | 0:41 | Electric guitar; bass; acoustic guitar |
| Chorus 1 | 8 | 0:53 | Electric guitar; bass; acoustic guitar |
| Verse 2 | 8 | 1:19 | Electric guitar; bass; acoustic guitar |
| Pre-Chorus 2 | 4 | 1:44 | Electric guitar; bass; acoustic guitar |
| Chorus 2 | 8 | 1:57 | Electric guitar; bass; acoustic guitar |
| Bridge | 4 | 2:23 | Electric guitar; bass; acoustic guitar |
| Chorus 3 | 8 | 2:36 | Electric guitar; bass; acoustic guitar |

71. Given that Verse 2 in *SLBTS* is 4 bars longer than in *SL*, the Verses in *SLBTS* now constitute 16/56 bars, or 29% of the song (compared with 12/52 bars, or 23% of *SL*). This only emphasizes Spatola's creative role even more than in *SL*, since the Verses showcase Spatola's unique bassline, voicings, and syncopated rhythms—of which the voicings in particular were demonstrably influential in shaping the vocal melody for the Verses (see ¶¶ 20-21).

## Conclusion

72. In conclusion, from a sound recording perspective, Spatola's contributions are present in 100% of *SL*'s sections. The addition of guitars potentially changes the genre and increases the marketability and accessibility of the record. Spatola's playing contributes to 50% of the record's arrangement layers (under a 4-part scheme of vocals-

chords-bass-percussion/fx), and he *uniquely* carries **21% of the sound recording** under that scheme.

73. From a compositional perspective, Spatola contributes harmonic elements to 100% of *SL*'s sections, and is the sole provider of harmonic elements in 38% of the piece. It is also estimated that he determined approximately half of the Verse vocal melody. In sum, he is estimated to have *uniquely* contributed to **12.38% of the composition** (under a 4-part scheme of vocal melody-lyrics-harmonic elements-percussion/fx).

74. From a compositional perspective, Spatola introduces a harmonic modification via the EbM(add6) chord that he plays in the Intro (electric guitar), Pre-Chorus (acoustic guitar), Chorus (electric guitar), and Bridge (electric guitar), in lieu of the regular EbM triad from *LSB*.

75. I also presented multiple examples of correspondences between Spatola's unique guitar decisions and Derulo's vocal melody, suggesting that the former was determinative of the latter. These claims are supported by the session history from the Pro Tools projects, where Spatola's parts were recorded first.

76. Particularly noteworthy contributions are the Verses, where Spatola's bassline is (contrary to what the defense mistakenly claimed with Exhibit 103) completely distinct to that of *LSB*, and his guitar voicings are demonstrably determinative of Derulo's vocal melody; and, perhaps most importantly, the Pre-Choruses, where Spatola's acoustic and electric guitars completely change the rhythmic feel of the record.

77. I find that the same claims in this report applied to *SL* also apply equally to *SLBTS*, if not more so, given that the only real compositional difference between *SL* and *SLBTS* is that the latter song adds an extra 4 bars of Verse material, only highlighting even more Spatola's unique contributions in those sections.

78. Finally, in the section titled *On Spatola's Agency*, I explained that given Derulo's confusion regarding harmony, his lack of instrument-playing abilities, and Spatola's own world-class musicianship, Derulo would not have directed Spatola regarding specific musical decisions—decisions which not only enhanced the record and composition, but in turn shaped the course of Derulo's vocal melody and are foundationally critical and indispensable to *SL*.

Report submitted on October 9, 2024 by:

Ethan Lustig, Ph.D.

## Appendix A: Glossary of Musicological Terms

*For a musicology primer geared towards legal practitioners, see my article at [www.law360.com/articles/1712559](www.law360.com/articles/1712559)*

BAR (aka. MEASURE) - A unit of musical time consisting of a certain number of beats. In the music under consideration in this report, all bars contain four beats (the "meter" or "time signature" is said to be in "4/4" time). Bars are shown in musical notation by vertical lines called “bar lines.”

BEAT - A recurring pulse or rhythmic unit in music; usually this is at a pace comfortable to tap or clap along to. Most songs have four beats per bar, such that it is useful to count it as "one two three four / one two three four...".

CHORD (aka. HARMONY) - Two or more pitches that sound simultaneously or in close proximity. Chords are often numbered using Roman numerals (I, II, III, etc.). The numeral refers to the scale degree that the chord is built on. For example, in the key of C major, a I chord would be built on C (because C is scale degree 1), a II chord is built on D, a III chord on E, and so forth, up to a VII chord which would be built on B. [An upper-case Roman numeral (e.g. IV) represents a major chord, while a lower-case Roman numeral (e.g. iv) represents a minor chord.]

CHORD PROGRESSION (aka. HARMONIC PROGRESSION) - A series of multiple chords over time. For example, I-V-vi-IV ("one five six four") is a very common chord progression consisting of 4 different chords. In the key of C major, these chords would be: C major - G major - A minor - F major.

KEY (aka. SCALE) - A collection of pitches, with a specific hierarchy. For instance, “D major” means that the central note of the collection is D (aka. scale degree 1), and that the scale is "major", such that a specific pattern of whole-steps and half-steps will proceed above D, generating the D major scale: D-E-F#-G-A-B-C#(-D).

MUSICAL FORM - The overall structure/layout of a piece of music over time, broken into several sections, such as introduction, verse, chorus, bridge, or outro.

OCTAVE - An interval of 12 semitones. For example, from "middle C" on the piano to the C above it is an octave, as is any C# to the next C# above or below it, etc. The note names from octave to octave are the same. They just sound lower or higher depending on which octave they occur in.

PITCH - "Pitch" refers to notes, of which there are 12 in the standard chromatic scale used in Western music: A, A#/Bb, B, C, C#/Db, D, D#/Eb, E, F, F#/Gb, G, G#/Ab.

QUARTER NOTE - A rhythmic duration such that in a standard 4/4 bar, there are four quarter notes per bar (each quarter note lasting for one beat); an eighth note is a rhythmic duration such that there are eight per bar (two per beat).

RHYTHM - The pattern of sounds and silences in a piece of music as determined by the sequence and duration of the notes being performed.

SCALE DEGREES - The standard musicological numbering system for a note's membership within a given scale. For example, for a song in the key of C major, the note C is scale degree 1, D is scale degree 2, E is scale degree 3, and so on up to B as scale degree 7.

SEMITONE (aka. HALF-STEP) - The smallest musical interval between pitches in Western music. For instance, from C to C# is a semitone.

SIXTEENTH (aka. 16TH) NOTE - A rhythmic duration of which there are 16 in a 4/4 bar, that is, there are four 16th notes per beat.

TEMPO - The pace of the music's beat, as measured for example on a metronome. Beats per minute (BPM) is a common way to describe tempo: the higher the BPM, the faster the tempo.

TRANSCRIPTION - The process of converting sounding music into written music notation, in this case for the purposes of analysis and demonstration.

TRANSPOSITION - Shifting a pitch series by a certain number of semitones higher or lower in pitch. Transposition to the same key for purposes of comparison is a musicologically standard practice. Transposing a tune doesn't change the actual identity of the tune. For example, you can still sing and recognize "Happy Birthday" starting on any of the 12 pitches.

TRIAD - A chord consisting of three different pitches, typically structured in "thirds" - that is, using every other letter. C E G; D F A; and A C# E are all examples of triads.

TRIPLET - A rhythmic device where three events are played in what is typically the time of two events. Usually creates a "galloping" or "jig" feel. A common instance of triplets is to subdivide a beat into three parts instead of two parts, as for example in songs such as "Yellow Submarine" by The Beatles. (Triplets can also, however, apply at smaller or larger levels of structure than the beat.)

VOICING - While a chord is an abstract concept, a voicing allocates a chord to specific pitches, in a specific order and in a specific octave. For example, the chord C E G could be voiced in many ways: with C, E, or G as the highest-sounding pitch; with C, E or G as the lowest-sounding pitch; and with any number of doublings of any of those pitches at the octave.

# ETHAN LUSTIG, Ph.D.

585-210-0688
Ethan@EthanLustig.com
EthanLustig.com

## Education

2016-21 Ph.D., Music Theory, Eastman School of Music, University of Rochester (Advisor: David Temperley)

- Dissertation on a new cognitive model and algorithm for predicting music taste.

2014-16 M.A., Music Theory, Eastman School of Music, University of Rochester

- Schenkerian analysis, music perception & cognition, post-tonal music, history of theory, pedagogy, keyboard skills, counterpoint, statistics, and experimental design.

2014 Study abroad, Université de Mons, Belgium

- Created new performance environments by integrating motion capture, dance, and new musical interfaces. Collaboration with engineering students.

2010-14 B.A., Music Theory (Honors), University of British Columbia (Advisor: John Roeder)

- Pop analysis, composition, film scoring, rhythm & meter, world music, and acoustics.

## Publications

2023 "Comparing Christmas Carols: IP Issues In Mariah Carey Case." In *Law360: Expert Analysis*. www.law360.com/articles/1774541

2023 "The FAV Corpus: An audio dataset of favorite pieces and excerpts, with formal analyses and music theory descriptors." With David Temperley. *Proceedings of the 24th International Society for Music Information Retrieval (ISMIR)*, Milan.

2023 "Copyright Cheat Sheet: Finding Substantially Similar Songs." In *Law360: Expert Analysis*. www.law360.com/articles/1712559

2021 "The effect of perceived complexity and formal location on musical preference." Ph.D. Dissertation, Eastman School of Music. Advisor: David Temperley.

2020 "All about that bass: Audio filters on basslines determine groove and liking in electronic dance music." With Ivan Tan. *Psychology of Music* 48/6, 861-875.

2019 "Anticipatory syncopation in rock: A corpus study." With David Temperley and Ivan Tan. *Music Perception* 36/4, 353-370.

2018      "Part-invariant model for music generation and harmonization." With Yujia Yan,
          Joseph VanderStel, and Zhiyao Duan. *Proceedings of the 19th International Society for
          Music Information Retrieval (ISMIR),* Paris.

## Presentations

2024      "AI and the future of music and audio." *AI CDMX,* Art/Works Creative Co-Working,
          Mexico City.

2023      "The FAV Corpus: An audio dataset of favorite pieces and excerpts, with formal
          analyses and music theory descriptors." With David Temperley. *24th International
          Society for Music Information Retrieval (ISMIR),* Milan.

2018      "Part-invariant model for music generation and harmonization." With Yujia Yan,
          Joseph VanderStel, and Zhiyao Duan. *19th International Society for Music Information
          Retrieval (ISMIR),* Paris.

2017      "Anticipatory syncopation in rock." With Ivan Tan and David Temperley. *Society
          for Music Perception and Cognition (SMPC)*, San Diego.

2016      "All about that bass: Timbre and groove perception in synthesized bass lines."
          With Ivan Tan. *International Conference for Music Perception and Cognition
          (ICMPC)*, San Francisco.

2016      "Groove perception in music." Research presentation, Eastman School of Music.

2014      "Toward a naive analysis: Transcribing Western art music." *Joint Meeting of
          Analytical Approaches to World Music (AAWM) and the British Forum for
          Ethnomusicology (BFE)*, London.

## Grants, scholarships, & fellowships

2015-19   Social Sciences and Humanities Research Council (SSHRC) Doctoral
          Fellowship ($80,000)

2014-19   Robert L. and Mary L. Sproull Fellowship, Eastman School of Music, University
          of Rochester ($90,000)

2011      Student Scholarships in Arts, University of British Columbia

2010      President's Entrance Scholarship, University of British Columbia

## Disciplinary and university service

2020-      Music Theory Tutor, *JMTP* (*Journal of Music Theory Pedagogy) Tutoring Program*

2019       Reviewer, *Psychology of Music*

2016       Volunteer, *Society for Music Theory/American Musicological Society*

2015-18   Publicity Manager, *Intégral*
- *Intégral* is a music theory journal run by Eastman graduate students. I designed and distributed flyers, e-announcements, calls for papers, and ad exchanges with other journals.

## Work experience

2022-      Artificial intelligence trainer (Online)
- Optimizing artificial intelligence chatbots through iterative conversations, correcting its music theory reasoning, etc. Clients include Anthropic, Meta, Google.

2020-      Forensic musicologist
Some cases/clients include:
- *Johnson and Johnson, LLP Law Firm* (Beverly Hills, CA): In 2020, I was the musicology expert for plaintiffs in the Bad Bunny "Safaera" case, which settled out of court (AOM Music, Inc. v. Benito Antonio Martínez Ocasio et al., 2:21-cv-07691, US District Court, Central District of California). (Client: Neville L. Johnson)
- *Billionaire Burke* (NYC): In 2021, I assessed the similarity of two hip-hop songs. (Client: Billionaire Burke)
- *Heninger Garrison Davis, LLC Law Firm* (Birmingham, AL): In 2022, I provided my in-depth expert opinion on music used in a Fortune Top 5 corporation's TV commercial. (Client: W. Lewis Garrison, Jr.)
- *McLaughlin & Stern, LLP Law Firm* (NYC): In 2023, I was retained to produce an opinion letter on alleged infringement in rap music. (Client: Chester R. Ostrowski)
- *Landry Legal, PLLC* (NYC): In 2023, I opined on the similarity of two R&B songs. Client: James Landry.
- *Werge & Corbin Law Group* (Denver, CO): In 2024, ongoing expert consulting involving a global Billboard #1 hit song. Client: Tom Werge.

2019-      Music and audio professional (Online)
- Music consulting, sonic branding/jingle creation, audio engineering (mixing & mastering), custom production, songwriting, and composition for music libraries (incl. ScoreKeepers, Triple Scoop Music) for film & TV. Music featured by companies including Adobe.

2019-      Director, Talent Speaks Voice-Over Agency (Online)
- TV spots, radio spots, audio books, explainer videos, phone trees. Client communication, audio editing, and post-production. Recruiting, training, and managing voice artists in four languages (English, Spanish, Italian, German).

2018-      Music educator (Online students)

- Lessons and tutoring in production, composition, mixing & mastering, music theory, ear training, sight-singing, piano. Creating custom lesson plans and homework assignments for my students. Ranging from kids to advanced doctoral students.

2021-22  Music licensing, EtherWorks Media (Palm Springs, CA)
- Synch licenses, cue sheets, liaison for cable TV music-documentary series.

2019-21  Artist management & audio engineer, MXU Beats (Los Angeles)
- Production, mixing & mastering, promotion (blogs, radio, playlists).

2019-20  Consultant, Avec Audio (Los Angeles)
- Avec Audio is a startup bridging the production music library and custom music request spaces. I developed a criteria/quality-rating system for uploads, as well as consulting on the UX and building the FAQ and explainer video.

2019  Recording studio manager (Los Angeles)
- Assisted with recording sessions. Managed scheduling. Oversaw a media campaign (content, ads, outreach, discount codes) to promote the studio and gain clients. Kept studio clean, handled food & gear orders. Recruited, trained, and managed interns.

2019  Private English tutor (Guadalajara, Mexico)
- Taught lessons in grammar, business English, conversational English.

2018  Composer & arranger (Rochester, New York)
- Edited and arranged a high school musical, prepared scores and parts.

2018  Church pianist (Rochester, New York)
- Played hymns, classical, and pop music in Episcopal, Baptist, and progressive churches. Sunday services, weddings, and funerals.

2018  Editor & proofreader for *The Architecture of Music* by Greg Aranda (Online)
- Edited the prose for clarity; proofread the figures; penned the foreword.

2017-18  Music Cognition Lab Assistant (Eastman School of Music, University of Rochester)
- Marketing and facilitating symposia and meals; office maintenance.

2016-17  Coder, Natural History of Song Discography team (Online)
- Analyzed transcriptions of field recordings from around the world; made decisions about musical features (key, meter, form, etc.).

2015-18  DJ & promoter (Rochester, New York)
- DJ'ed in bars, clubs, raves, fundraisers, private parties. Marketed and organized events. DJ crew featured on front cover of newspaper with over 200,000 weekly readers.

2013  Research Assistant, German Department (University of British Columbia)

- Edited and formatted the bibliography of German Professor Kyle Frackman.

2006-14  Rock and jazz musician (Victoria & Vancouver, Canada)
- Played drums and keyboards in five rock and jazz groups, completed three albums, and played live shows.

## Media appearances

2021    "PlaneTones" (ABC, CBS)
- TV series about electronic music. I provided musicological commentary.

## Teaching experience

2024-    Instructor, Faculty of Music, UNAM (Mexico City)
- UNAM (Universidad Nacional Autónoma de México) is often considered the top teaching and research institution in Mexico, indeed in all of Latin America. I teach English in the Music Faculty to undergraduates.

2024-    Instructor, Faculty of Communication, Universidad Anáhuac (Mexico City)
- Anáhuac is consistently ranked in the top five best private universities in Mexico. I teach Sound Design (in English) to undergraduates in the Faculty of Communication.

2023-    Instructor, CENTRO (Mexico City)
- CENTRO is an elite private arts university in Mexico City. I teach audio post-production (in Spanish) to undergraduates.

As a teaching assistant at the Eastman School of Music, I taught:

2017-18  Model Composition & Tonal Analysis III/IV
- Sophomore written theory. Chromatic harmony; composition of fugue, sonata expositions, art song; popular music harmony and form.

2016-17  Aural Musicianship III/IV
- Sophomore aural skills. Chromatic dictation and sight-singing; keyboard skills; tenor and soprano clef; performing complex rhythms; hearing sonata form.

2015-16  Model Composition & Tonal Analysis I/II
- Freshman written theory. Harmonic counterpoint; keyboard skills; diatonic harmony; sequences; binary and ternary form; composition of minuets.

2014-15  Aural Musicianship I/II
- Freshman aural skills. Dictation of diatonic melody and harmony; scale-degree skills; sight-singing; alto clef.

2014-    Private tutor

- Years of experience with one-on-one tutoring of dozens of different students, ranging from kids to advanced doctoral students.

## Additional experience

Won multiple tournaments and championships as a debater, attending the Nationals, Provincials, & the World championship qualifier.

## Technological skills

Ableton Live, AI Prompting, Audacity, Adobe Illustrator, ChatGPT, iZotope Ozone, iZotope RX, Logic Pro X, Max/Msp, Music21, Photoshop, Praat, Python, Sonic Visualizer, SPSS, SubmitHub, Traktor, Zotero.

# RATE SHEET

## Dr. Ethan Lustig

**Initial Consult/Touch Base** — Free
Phone or Zoom call to discuss your needs. (If I reach out to you, it's also free.)

**Subsequent Consults** — $100/hr
$50 minimum.

**Copyright Registration** — $25/song
Properly registering your music with the US Copyright Office (USCO fees extra). $100 minimum.

**Copyright Research** — $75/song
Investigating current USCO and/or PRO status of songs.

**Prior Art Research** — $300/hr
Leveraging my searchable database of hundreds of thousands of notes, chords, rhythms across many genres and centuries. $300 minimum.

**Document Review** — $50/page
For example, reviewing demand letters or other musicologists' work. $200 minimum. CV and title pages not included.

**Trial Preparation** — $300/hr
I.e. crafting & anticipating questions for direct and cross, identifying weaknesses in opposition's position.

**Deposition Testimony** — $500/hr
Plus travel, lodging, and $100/hr travel time, paid in advance. I spend most of the year in Mexico City (4 hr direct flight to Los Angeles; 5 hrs to NYC).

**Other Services** — Please inquire

Contact:
Ethan@EthanLustig.com
585-210-0688
EthanLustig.com/Forensic-Musicology

**Expert Assessment Letter** — $1000
Brief, preliminary assessment letter (or oral report) with initial analysis of the pieces in question. This document is then yours to quote, dismantle, or attach as an exhibit to a demand letter, lawsuit, etc. Recommended when you want an initial expert opinion to see if we have a case worth pursuing.

**Full Musicology Report** — $5000
In-depth, detailed, & comprehensive report. Recommended when you want solid documentation and the best foot forward in your case.

**Court Testimony** — $2500/day
Plus travel, lodging, and $100/hr travel time, paid in advance. I spend most of the year in Mexico City (4 hr direct flight to Los Angeles; 5 hrs to NYC).

## PAYMENT INFO

# EXHIBIT 2

**VENABLE LLP**
Joshua M. Rosenberg (SBN 274473)
*jmrosenberg@venable.com*
Rodney S. Lasher (SBN 307462)
*rslasher@venable.com*
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: 310.229.9900
Facsimile: 310.229.9901

Attorneys for Defendants
JASON DESROULEAUX p/k/a JASON DERULO; and SONY MUSIC ENTERTAINMENT d/b/a COLUMBIA RECORDS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MATTHEW SPATOLA p/k/a MATTY SPATS,

Plaintiff,

v.

JASON DESROULEAUX p/k/a JASON DERULO; and SONY MUSIC ENTERTAINMENT d/b/a COLUMBIA RECORDS,

Defendants.

Case No. 2:23-cv-06191 MWF-E

Assigned to the Honorable Michael W. Fitzgerald

**DEFENDANTS' REBUTTAL EXPERT WITNESS DISCLOSURE**

Action Filed: July 31, 2023
FAC Filed: December 21, 2023
Trial Date: January 21, 2025

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

**DISCLOSURE OF RULE 26(a)(2)(D)(ii) REBUTTAL EXPERT**

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(D)(ii) and this Court's Amended Scheduling Order (*see* Dkt. No. 54), Defendants Jason Desrouleaux p/k/a Jason Derulo and Sony Music Entertainment d/b/a Columbia Records (collectively, "Defendants") hereby disclose the following rebuttal expert witness whom Defendants intend to call at trial:

Dr. Lawrence Ferrara, Ph.D.
17 Hobart Avenue
Short Hills, New Jersey 07078

In accordance with the Court's Order and Rule 26(a)(2), Dr. Ferrara's written rebuttal report, which is attached hereto as Exhibit A (the "Rebuttal Report"), is being served concurrently with this disclosure. As set forth in Defendants' Initial Expert Witness Disclosure, including Exhibit A thereto, Dr. Ferrara is an expert in musicology, and his complete curriculum vitae was produced in connection therewith, which is incorporated herein by reference. Dr. Ferrara charges $495 per hour for his work relating to this matter.

**RESERVATION OF RIGHTS**

Defendants disclose the aforementioned expert subject to the following reservation of rights:

1. Defendants have not yet decided which exhibits they intend to utilize at trial and reserve the right to supplement this disclosure with any exhibits that may be used at trial to summarize or support their expert's or experts' opinions.

2. Defendants reserve the right to challenge the qualifications and/or expertise of the individuals designated by any other party.

3. Defendants reserve the right to offer the testimony of additional persons as percipient fact witnesses regarding their various professional fields.

4. Defendants reserve the right to call any expert designated by any other party.

5. Defendants reserve the right to alter, amend, and/or supplement this designation pursuant to and in accordance with Fed. R. Civ. P. 26(e) and this Court's Orders, procedures, and any applicable rules.

6. The above-designation is based on the information that has been reviewed and the documents that have been produced to date; therefore, and because expert depositions in this case have not yet concluded and because any testimony elicited from other experts may affect the further opinions offered by Defendants' rebuttal expert witness (or any other witnesses), Defendants reserve the right to supplement this disclosure should additional information be learned through expert discovery.

Dated: October 25, 2024

VENABLE LLP

By: */s/ Joshua M. Rosenberg*
Joshua M. Rosenberg
Rodney S. Lasher

Attorneys for Defendants
JASON DESROULEAUX p/k/a
JASON DERULO; and SONY
MUSIC ENTERTAINMENT d/b/a
COLUMBIA RECORDS

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

# EXHIBIT A

**(BY) LAWRENCE FERRARA, Ph.D.**
**(FOR) LAWRENCE FERRARA, INC.**

**REBUTTAL REPORT OF THE ETHAN LUSTIG REPORT REGARDING**

**MATTY SPATS v. JASON DERULO, *ET AL.***

## I. INTRODUCTION AND SUMMARY

1. After being asked to perform musicological analyses of the compositions in "Laxed (Siren Beat)" by Jawsh685 ("Laxed"), the June 2020 commercially released Defendants' song "Savage Love (Laxed – Siren Beat)" ("Savage Love"), and music allegedly performed by Plaintiff[1] that is embodied in "Savage Love" and which I understand was recorded at Defendant Jason Derulo's home studio on April 23, 2020 and April 27, 2020,[2] I prepared and submitted a report dated October 4, 2024 (the Ferrara Report).

2. On October 11, 2024, I received and reviewed a report by Dr. Ethan Lustig dated October 9, 2024 (the Lustig Report). The Lustig Report has not changed my opinions as presented in the Ferrara Report. It continues to be my opinion that:

(a) the harmonies and melodies in the instrumental and vocal music in "Savage Love" are based upon and copy melodies and harmonies in "Laxed";

(b) the music performed by Plaintiff does not embody or create any of the vocal or instrumental melodies in "Savage Love";

(c) the music performed by Plaintiff does not embody or create any of the lyrics in "Savage Love";

---

1 To facilitate reading, all references to "music performed by Plaintiff" in this report should be read as "music allegedly performed by Plaintiff".

2 According to Plaintiff's First Amended Complaint ¶ 5:2 dated December 21, 2023, and with the understanding that Plaintiff's participation in the April 23, 2020 session began around 11pm PST on April 22, 2020.

(d) the music performed by Plaintiff does not add any significant modification or transformation of the harmonies that already existed in “Laxed” but instead, consists of standard and common guitar and bass guitar practices; and

(e) after filtering out expression that represents standard and common practices in the music performed by Plaintiff, the expression that remains does not embody any significant modification or transformation of the music in “Savage Love” as compared with “Laxed”.

3. As explained more fully below, the Lustig Report:

- fails to show that the harmonies in the instrumental music in “Savage Love” are based upon and copy the music performed by Plaintiff;
- fails to show that the melodies in the instrumental and vocal music in “Savage Love” are based upon and copy the music performed by Plaintiff;
- fails to show that the music performed by Plaintiff embodies or creates any of the lyrics in “Savage Love”, and concedes as such;
- fails to show that the music performed by Plaintiff adds any significant modification or transformation of the harmonies that already existed in “Laxed”;
- fails to analyze the music performed by Plaintiff within the context of preexisting standard and common guitar and bass guitar practices including chord spacing (“voicing”) and guitar strum and bass guitar rhythms;
- fails to filter out expression that represents standard and common practices in the music performed by Plaintiff;
- fails to identify any expression that remains after a filtration process;

- fails to show that any expression that remains after a filtration process embodies any significant modification or transformation of the music in "Savage Love" as compared with "Laxed"; and
- is speculative and makes assumptions regarding the Plaintiff's working dynamic with Derulo.

4. My detailed responses to claims in the Lustig Report are presented below. Portions of the Lustig Report are copied and pasted in *italics* to facilitate the reading of this report.

## II. RESPONSES TO THE LUSTIG REPORT

> *4. SL is at a tempo of 75 bpm and in the key of Eb major (=Eb F G Ab Bb C D). It has a duration of 2:51.* [Lustig, p. 2]

5. The Ferrara Report assigns a tempo of 150 BPM (beats per minute) to "Savage Love", which is "double time" compared to the 75 BPM analysis in the Lustig report. Consequently, the total number of bars in the Ferrara Report (at 150 BPM) is double the total number of bars in the Lustig Report. For example, the 8-bar chord progression in in Musical Example 1 on page 12 of the Ferrara Report is represented as a 4-bar chord progression in Figure 2 on page 6 of the Lustig Report. Therefore, while each respective Cm, Ab, Eb, and Bb chord has a harmonic rhythm of 2 bars per chord in the Ferrara Report, each respective Cm, Ab, Eb, and Bb chord has a harmonic rhythm of 1 bar per chord in the Lustig Report. The harmonic rhythm relationship from chord to chord in the Lustig and Ferrara Report is thereby the same, namely, each chord has a duration that is equal to the other chords in the progression: 2 bars per chord in the Ferrara Report and 1 bar per chord in the Lustig Report. This is not a meaningful difference. Nonetheless, it is notable that the Lustig Report fails to concede that "Laxed" and "Savage Love" have an <u>identical tempo</u>. Thus, the tempo in "Laxed" was copied, not modified, in "Savage Love".

6. Staying with paragraph 4 in the Lustig report cited above, I disagree that "Savage Love" is in the key of Eb major. The musicological reasons for analyzing

"Savage Love" in the key of C minor are presented in paragraph 15 of the Ferrara Report. Nonetheless, whether "Savage Love" is analyzed in the key of Eb major or in its "relative" minor key of C minor, the harmonies and melodies in the instrumental and vocal music in "Savage Love" are based upon and copy the melodies and harmonies in "Laxed". Moreover, the music performed by Plaintiff does not add any significant modification or transformation of the harmonies and melodies that already existed in "Laxed" but instead, consists of standard and common guitar and bass guitar practices, whether analyzed in Eb major or C minor.

7. The duration of "Savage Love" is 2:50 (two minutes and fifty seconds) as noted in the Ferrara Report and 2:51 as noted in the Lustig Report. That 1-second difference is not meaningful.

> *5. Figure 1 shows the musical form of "Savage Love", with bar numbers and timepoints. The arches group bars into meaningful formal sections.* [Lustig, p. 2]

> *6. Spatola performed electric guitar, acoustic guitar, and electric bass in SL. Table 1 shows the musical form of SL including Spatola's contributions in each section.* [Lustig, p. 4]

8. The structure of "Savage Love" presented in Figure 1 on page 3 and in Table 1 on page 4 of the Lustig Report corresponds with the structural chart of "Savage Love" on page 7 of the Ferrara Report, except:

(a) the tempo is counted as 75 BPM instead of 150 BPM, so each section in the Lustig Report has half the number of bars (as explained above);

(b) the initial pickup bar with the reverse cymbal at the opening of "Savage Love" is not counted as part of the Introduction, and the final sung "love" lyric is not counted as the last bar of "Savage Love"[3]; and

[3] These items are addressed in footnote 5 on page 4 of the Lustig Report.

(c) what is termed the "Post-chorus" in the Ferrara Report is considered to be the second half of the Chorus in the Lustig Report.

These differences between the Lustig and Ferrara Reports that are specified in (a), (b), and (c) above are not substantive.

9. The identification of "Spatola's contributions" in the right column of Table 1 on page 4 of the Lustig Report is consistent with the chart on pages 9-10 of the Ferrara Report when the number of bars are halved in the Lustig Report as compared to the number of bars in the Ferrara Report which, as explained above, is a function of the Lustig Report finding that the tempo of "Savage Love" is 75 BPM, which is half of the designated 150 BPM tempo of "Savage Love" in the Ferrara Report.

***The Sound Recording Perspective*** [Lustig, ¶ 8-14:5-8]

10. The section on the sound recording in the Lustig Report is highly speculative and internally inconsistent.

> *10. How might we quantitatively ascertain Spatola's performance contributions? Let us consider a rough breakdown of a sound recording's musical arrangement layers into four equal parts:*
>
> *a. Vocals Layer (25%)*
>
> *b. Chords Layer (25%)*
>
> *c. Bass Layer (25%)*
>
> *d. Percussion/fx Layer (25%)*
>
> *Spatola contributes to the chords (via the acoustic and electric guitars) and bass layers in all sections of SL. Therefore, his playing contributes to 100% of the recording's chords layer, and 100% of the recording's bass layer: that is, 50% of the total arrangement layers.* [Lustig, p. 5]

11. The Lustig Report's own assessment of the assignment of percentages to "arrangement layers" is that these percentages are merely "rough" and idiosyncratic to

Dr. Lustig's own "musicological estimations". [see footnote 7, p. 5 of the Lustig Report] This unsupported quantification speculation has no place in an expert report.

12. In Figure 2 on page 6 of the Lustig Report is a transcription of the "Harmonic elements" of "Laxed", namely, the piano, horns and bass. Figure 2 represents a portion of the *composition* in "Laxed" that is in "Savage Love" and thereby conflates the purported analysis of the *sound recording* in this section of the Lustig report with an analysis of the *composition*.

13. Table 2 on page 7 of the Lustig Report includes a list of the instruments performed by Plaintiff in each section of "Savage Love" (under the heading "Spatola's contributions") and, in the far-right column, lists the "harmonic elements sampled" from "Laxed". Table 2 can be compared to the chart on page 8 of the Ferrara Report which lists the sampled materials from "Laxed" in "Savage Love". First, in delimiting the list of sampled elements from "Laxed" that are in "Savage Love" to "harmonic elements", the Lustig Report omits the very important synth saxophone (synth sax) *melody* in "Laxed". Second, the Lustig Report fails to present any Table that is comparable to the chart on pages 8 of the Ferrara Report which includes all of the sampled elements from "Laxed" that are in "Savage Love" and thereby, <u>in addition to the synth sax</u>, should include: (1) the kick/snare rhythm, (2) the reverse cymbal, (3) the whistle sound effect, and (4) the "685 baby" vocal. Third, even with the delimitation to "harmonic elements", Table 2 in the Lustig Report misses and omits the sampled synth brass (which the Lustig Report labels "horns") in the Introduction of "Savage Love". Therefore, contrary to the Lustig Report's finding, the music performed by Plaintiff is <u>not</u> "the sole provider of harmonic material" [Lustig ¶ 13:6] in the Introduction of "Savage Love".

14. In ¶ 14:7-8, the Lustig Report's speculation regarding the percentages of the sound recording that the Plaintiff contributes continues, which, based on its own assessment, is merely "rough" [¶ 10:5] and idiosyncratic to Dr. Lustig's own "musicological estimations". [see footnote 7, p. 5]

***The Compositional Perspective* [Lustig, p. 8]**

15. While the Lustig Report, in its purported analysis of the "sound recording", conflates analyses of the *sound recording* with the *composition* in ¶ 8-14:5-8, the Lustig Report moves to an analysis of the composition starting in ¶ 15:8.

16. In Figure 3 and in ¶ 16-17 on page 8 regarding the Introduction in "Savage Love", the Lustig Report goes to great pains in an attempt to create an unsupportable significance regarding the addition of a single pitch (the pitch C) to the E-flat (Eb) chord.[4] First, adding this single pitch to a basic Eb chord does not, by any musicological measure, add any significant modification or transformation of the harmonies that already existed in "Laxed". Indeed, an Eb6 chord, like an Eb chord (without the added 6), is a musical building block. Second, the C pitch that is notated as part of the Eb major chord in bar 3 in Figure 3 in the Lustig Report is barely audible in the isolated electric guitar stem. To the extent that it is barely audible in the stem, it can only be heard very faintly in the left channel. Importantly, this added C pitch is inaudible in the final mix in the commercially released "Savage Love" and thus does not contribute to the overall harmony at all. It is incorrect to label the Eb chord in "Savage Love" as an Eb6 (or Eb(add6)) chord because the "6" (the C pitch) is not audible in the commercially released "Savage Love". Moreover, as shown in the Ferrara Report and not contradicted in the Lustig Report, there is no melody in any of the acoustic or electric guitar parts performed by Plaintiff in "Savage Love".

17. I disagree with the transcription of the spacing[5] (what the Lustig Report terms "voicing") of the chords played on the electric guitar by Plaintiff (which are actually

---

[4] The Ab, Eb, and Bb chord symbols in the Lustig Report add an uppercase "M" after each chord to show that each is a "major" chord. However, that additional "M" is redundant because, in keeping with transcriptions of letter named chords in popular music and as explained in footnote 12 on page 10 of the Ferrara Report: an uppercase letter represents a major chord. A lowercase "m" denotes the word "minor". Thus, "Cm" is a "C minor chord", "Ab" denotes an "A-flat major chord", "Eb" denotes an "E-flat major chord, and "Bb" denotes a "B-flat major chord".

[5] See "spacing" in *The Harvard Dictionary of Music* (Fourth Edition, 2003, Harvard University Press, p. 834) and see "harmonic analysis" in *Harvard* at p. 375.

a hybrid of chords from two different overdubbed guitar performances) in Figure 3 of the Lustig Report. In a comparison with Musical Example 1 on page 12 of the Ferrara Report, the Cm chord played by Spatola consists of four notes (not three as in the Lustig Report) and the highest note is Eb, not C. The 2nd, 3rd, and 4th iterations of the Ab chord consist of four notes (not three as in the Lustig Report) with an Ab pitch as the lowest pitch. As explained above, there is no audible "added 6" in the commercially released Eb chord and the lowest note in the Eb chord is a Bb pitch, not an Eb pitch. Finally, the Bb chord played by Plaintiff consists of four notes (not three as in the Lustig Report) and the lowest note is Bb, not D.

18. For argument's sake, even if the transcription of the chords played by Plaintiff in the Introduction of "Savage Love" in the Lustig Report were completely accurate, and they are not, as transcribed in the Lustig Report the chords played by Plaintiff do not add any significant modification or transformation of the harmonies that already existed in "Laxed" and, as shown in the Ferrara Report and not contradicted in the Lustig Report, there is no melody in any of the guitar chords performed by Plaintiff in "Savage Love".

19. Notably missing from the Lustig Report's analysis of the Introduction in "Savage Love" is the fact that as shown in Musical Example 10 on page 22 of the Ferrara Report, 100% of the total of 48 notes are identical in pitch, rhythmic duration, and metric placement between the synth sax starting at 0:53 of "Laxed" and the instrumental melody in the Introduction of "Savage Love", in addition to 8 miniature "grace" notes which are also identical. Thus, as shown in the Ferrara Report, the instrumental melody and the harmony in the Introduction of "Savage Love" are based on and copy "Laxed".

> *18. **The Verses**….: In the Verses of SL, Spatola's guitars (both acoustic and electric) present completely different rhythms than those found in LSB's simple off-beat piano chords. While LSB's piano chords land squarely on each off-beat, Spatola introduces complex, triplet sixteenths into the chord layer of the song. Figure 4 demonstrates:* [Lustig, p. 9]

20. As shown in ¶ 17-18:12-14 of the Ferrara Report, the harmony in the Verses of “Savage Love” is based on and copies the harmony in “Laxed”. The purportedly “complex, triplet sixteenths” are not as interesting, let alone “complex”, as the Lustig Report description implies. In fact, as explained in the Ferrara Report, the “triplet” rhythm is simply a result of the “swung”[6] rhythm and is marked ♫=♩♪ (triplet 3) in the Ferrara Report. This “swung” rhythm is a musical building block and is well known in iconic songs such as the main melody in Glenn Miller’s 1939 “In the Mood”.

21. Moreover, as shown in Musical Example 2 on page 13 of the Ferrara Report, the Plaintiff’s guitar strummed rhythm in “Savage Love” grows out of the combined synth piano and drums rhythm in “Laxed”, which have a kick drum attack on beat 1 and snare drum attacks on beats 2& (i.e., the second half of beat 2) and 4. In addition, the Plaintiff’s strummed rhythmic pattern in the guitars in the Verses in “Savage Love” is commonplace: a “tresillo”[7] rhythm in the even # bars and a Charleston[8] rhythm in the odd # bars as shown in the Ferrara Report’s Musical Example. Furthermore, as shown in Musical Example 3 on page 14 of the Ferrara Report, the Plaintiff’s guitar strum pattern of the chords on the downbeat (beat 1) in the “Savage Love” Verses mirrors the synth brass notes on the downbeat in “Laxed”. Thus, Musical Examples 2 and 3 in the Ferrara Report demonstrate that there are no significant modifications or transformations of the harmony and strum pattern in the Verses in “Savage Love” as compared to “Laxed”. The Lustig Report itself acknowledges in footnote on page 9 that “Spatola’s rhythms in the chord layer of the verses are a logical result of the groove” in “Laxed”.

> *20. Spatola voices his chords in the Verses such that the top notes of his chords play C in bars 1-2 of the 4-bar loop, and then Bb in bars 3-4 of the*

---

6 “Swung” eighth notes have uneven durations as compared with straight eighth-notes which evenly divide a beat into two equal eighth notes. (See “swing” in *Harvard*, p. 852.)

7 A “tresillo” is a three-note rhythm, for example, on beats 1, 1a, and 2&, which is a musical building block rhythm in Latin music.

8 See the two-note “Charleston” rhythm in *Harvard*, p. 163.

*loop. In the Verses, there appear to be correspondences between Spatola's chord voicing decisions and Derulo's vocal melody. See Figure 5.* [Lustig, p. 9]

22. Out of 53 notes in the Verse melody excerpted in Figure 5 on page 10 of the Lustig Report, only 7 notes in Derulo's vocal melody correspond (i.e., are placed in boxes) with the top note of the accompanying guitar chord. This is hardly evidence that Derulo's vocal melody was shaped by the "voicing" of the chords. In bar 1, the note C is the root note of the harmony, so it is unsurprising to find C in the melody. More generally, melodies tend to contain pitches from the accompanying chords, so it is unsurprising that some of the pitches in Derulo's vocal melody happen to be the same as some of the pitches in the guitar chords. Moreover, as shown in the Ferrara Report and not contradicted in the Lustig Report, there is no melody in any of the guitar parts performed by Plaintiff in "Savage Love".

23. Further undermining the Lustig Report's strained and stretched analysis of the source of vocal melody in the Verses in "Savage Love" is the analysis in ¶ 35:25-26 of the Ferrara Report. As shown in the comparative transcription in Musical Example 13 on page 27 of the Ferrara Report, the vocal melody in the Verse of "Savage Love" is based on and copies the synth sax melody starting at 0:15 in "Laxed". Out of a total of 109 notes (including two unpitched notes) in the Verse 1 melody of "Savage Love", the melodic rhythm (i.e., rhythmic durations and metric placements) in the synth sax melody in "Laxed" is identical in ninety-one (91) notes. As to the pitches and as identified with connecting detached lines in Musical Example 13 of the Ferrara Report, twelve of the 16 bars have at least two identical corresponding pitches that occur on the same metric placements, and 7 of the 16 bars have at least three identical corresponding pitches that occur on the same metric placements. The Lustig Report's finding that "Spatola's guitar voicings in the Verses shaped Derulo's vocal melody" [Lustig, ¶21:10] is without substance and far-fetched and is thoroughly undercut in the Ferrara Report.

*21. The chronology of file recording times supports the idea that Spatola's guitar voicings in the Verses shaped Derulo's vocal melody, rather than the converse.* [Lustig, p. 11]

24. In fact, (1) Derulo was interested in "Laxed" and received the audio stems prior to any performances by the Plaintiff and (2) the "Laxed" audio stems were uploaded prior to any performances by the Plaintiff. As detailed below, it is my understanding that the chronology of the use of the "Laxed" audio stems and the Spatola performed music is as follows:

(a) April 21st, Derulo contacts Jawsh685 letting him know that he loves "Laxed (Siren Beat)".

(b) April 21st, Derulo sends the YouTube link of "Laxed (Siren Beat)" to JKash and asks JKash if he would like to co-write the lyrics.

(c) April 22nd in the morning, Jawsh685 sends audio stems of "Laxed (Siren Beat)" to Derulo via email.

(d) April 22nd in the afternoon, Derulo sends audio stems of "Laxed (Siren Beat)" to lyricist, JKash.

(e) April 22nd in the afternoon, Derulo sends audio stems of "Laxed (Siren Beat)" to his recording engineer, Ben Hogarth.

(f) April 22nd around 9:50pm PST, Ben Hogarth arrives at Derulo's home studio and uploads the audio stems of "Laxed (Siren Beat)".

(g) April 22nd around 11pm PST, Spatola arrives at Derulo's home studio.

(h) Spatola spends approximately 3 hours at this session starting in the late evening on April 22nd and ending in the early morning hours on April 23rd during which Spatola was asked to add to the already existing "Laxed (Siren Beat)" audio stems.

(i) Spatola returned in a second and final session on April 27th.

Thus, the chronology and the substantial use of the digital samples from “Laxed” in “Savage Love” (as transcribed and analyzed throughout the Ferrara Report) establishes that interest in and use of “Laxed” preceded any music performed by Plaintiff in “Savage Love”.

> *22. The defense attempted to write off Spatola's syncopated guitars in the Verses as simply a "tresillo" rhythm and therefore not original (Spatola deposition12, pp. 414-416). However, this is not true, and fails to consider the fact that unlike the tresillo, Spatola's Verse rhythms use triplets*. [Lustig, p. 11]

25. As explained above and in the Ferrara Report, the “triplets” in Spatola’s Verse guitar rhythms are merely a by-product of a “swung” eighth-note rhythmic pattern, the use of which is an unremarkable musical building block and clearly derived from “Laxed”. The similarity to the “tresillo” rhythm in Spatola’s Verse guitar rhythms is unmistakably valid because the tresillo rhythm is played with “swung” notes therein and the notes in Spatola’s rhythm line up with notes in the tresillo pattern as shown in Musical Examples 2 and 3 respectively on pages 13 and 14 in the Ferrara Report.

> *Paragraphs 23-25 including Figure 7* [Lustig, pp. 12-13]

26. Regarding paragraph 23 on page 12 of the Lustig Report, the “unaccented ‘ghost’ notes” in the Verse guitar referred to are unpitched muted notes that are not audible in the final mix in the commercially released “Savage Love”. Thus, they should not be included in a transcription of the Verse guitar in “Savage Love” as commercially released.

27. Regarding paragraphs 24-25 on pages 12-13 of the Lustig Report, the transcription in Exhibit 103 of the Spatola deposition is not in the Ferrara Report.

28. Regarding the supposed “bluesy ‘wrong’ note” (see paragraph 25 and Figure 7 in the Lustig Report), the actual note played is Eb, not E. Thus, there is no

"bluesy 'wrong' note and, for argument's sake, a single note E would not be a substantive or significant "wrong note" played by Plaintiff.

29. What is notably not addressed in the Lustig Report's analysis of this bass line in the Verse of "Savage Love" is that this bass line is practically inaudible in the commercially released "Savage Love", so its contribution to the overall composition is negligible at best. This proper analysis of the bass line in the Verse of "Savage Love" is presented in the Ferrara Report and summarized therein as follows: "Notably, the bass guitar in 'Savage Love' plays simultaneously with, and is almost entirely obscured by, the synth bass part sampled from 'Laxed'. Since the bass guitar is so quiet and largely hidden under the synth bass sampled from 'Laxed' as to be almost undetectable, it does not contribute significantly at all to the harmony, melody, or rhythm of the Verses of 'Savage Love'." [Ferrara Report, ¶ 22:18]

30. The rhythms in the bass line in "Spatola's bass" in Figure 7 on page 13 of the Lustig Report seek to create a visual rhythmic complexity that is merely a function of the "swung" rhythmic pattern, which, as explained above and in the Ferrara Report, is an unremarkable musical building block and clearly derived from "Laxed". As noted above, this bass line in the Verse of "Savage Love" performed by Spatola is analyzed in paragraph 22 and transcribed in Musical Example 7 on page 18 of the Ferrara Report.

*Paragraphs 26-28 and Figure 8* [Lustig, pp. 13-14]

31. The Lustig Report turns to Spatola's electric and acoustic guitar parts in the Pre-choruses of "Savage Love" starting in paragraph 26. Figure 8 on page 14 of the Lustig Report fails to include any pitches in the Spatola acoustic guitar part and in the Derulo vocal melody part in the Pre-choruses in "Savage Love". Thus, the analysis is not informative as to the pitches in the acoustic guitar and vocal melody in the Pre-choruses of "Savage Love". Indeed, as shown in the Ferrara Report and not contradicted in the Lustig Report, there is no melody in any of the acoustic or electric guitar parts performed by Plaintiff in the Pre-choruses of "Savage Love".

32. Moreover, the rhythms represented in the Lustig Report's Figure 8 are very simplified, especially Derulo's vocal rhythms on the bottom staff of Figure 8. By way of completion (i.e., adding the missing pitches) and correction (i.e., correcting rhythms), Rebuttal Report Musical Example 1 immediately below is an accurate transcription of the acoustic guitar chords performed by Plaintiff (on the top staff) and the Derulo vocal melody (on the bottom staff) in the Pre-choruses of "Savage Love" with red boxes showing corresponding metric placement (but not rhythmic duration).

**Rebuttal Report Musical Example 1**

As shown in Rebuttal Report Musical Example 1 above, out of 24 notes in Derulo's vocal melody, only 10 vocal melody notes line up metrically with notes in the Plaintiff's acoustic guitar part. Moreover, only 4 out of those 10 notes are the same in rhythmic duration, i.e., the rhythmic durations are different in 6 of the 10 notes that have corresponding metric placements in the vocal melody. This is hardly evidence that the rhythm (not the pitches) of Derulo's Pre-chorus melody was derived from the acoustic guitar part in the Pre-chorus. Indeed, the sparse purported similarity and significant differences demonstrate that the Plaintiff's acoustic guitar part was not copied in Derulo's Pre-chorus melody.

33. Importantly and as analyzed in paragraph 36 and shown in Musical Example 14 on page 28 of the Ferrara Report, the vocal melody in the Pre-choruses of "Savage Love" is based on and copies the sax synth melody (starting at 0:02) in "Laxed".

34. In addition, as analyzed in paragraph 19 and shown in Musical Example 4 on pages 14-15 of the Ferrara Report, the acoustic guitar part played by Plaintiff in the Pre-chorus of "Savage Love" does not include any melody. Moreover, the chord progression and the harmonic rhythm are identical between the Pre-chorus acoustic guitar in "Savage Love" and in the synth piano in "Laxed". The Pre-chorus acoustic guitar played by Plaintiff in "Savage Love" (1) copies the chord progression and harmonic rhythm from "Laxed" and (2) the Plaintiff's acoustic guitar chord spacing uses a commonplace "barre chord" spacing ("voicing") as explained in paragraph 68 on pages 51-52 and in **Visual Exhibit B** in the Ferrara Report. Moreover, similar guitar strum rhythm patterns are found in prior art as shown in paragraphs 70-81 and Musical Examples 34-43 on pages 52–62 and in **Visual Exhibit A** in the Ferrara Report.

35. Indeed, as shown in pages 52-62 of the Ferrara Report, after filtering out the acoustic guitar chords played by Plaintiff in the Pre-chorus of "Savage Love" that are similar to guitar chords in prior art, all that remains of Plaintiff's Pre-chorus acoustic guitar part are fragmentary chords and a commonplace and barely audible slide. These are not remotely significant modifications in the Pre-chorus acoustic guitar part performed by Plaintiff.

*Paragraphs 29-30 and Figure 9* [Lustig, pp. 14-15]

36. Paragraphs 29-30 and Figure 9 on pages 14-15 of the Lustig Report compare Spatola's acoustic guitar (strum) rhythm pattern to his playing in an unrelated 2019 song. This is immaterial because as noted immediately above and as shown in pages 50-62 of the Ferrara Report, after filtering out the acoustic guitar chords played by Plaintiff in the Pre-chorus of "Savage Love" that are similar to guitar chords in prior art, all that remains of Plaintiff's Pre-chorus acoustic guitar part are fragmentary chords and a commonplace and barely audible slide. These are not remotely significant modifications or transformations in the Pre-chorus acoustic guitar part performed by

Plaintiff. Having played a similar pattern 2019 does not change the commonplace status of that acoustic guitar strum rhythm pattern.[9]

> *31. Just as Derulo's Pre-Chorus vocal derives its rhythmic coherence from the acoustic guitar, the vocal derives its pitch coherence from the **electric guitar**.* [Lustig, p. 15, emphasis added]

37. Contrary to the finding in paragraph 31 of the Lustig Report cited immediately above, there is no evidence (and it is highly unlikely) that the top notes of the electric guitar chords in the Pre-chorus inspired the vocal melody in the Pre-chorus of “Savage Love”. First, as analyzed in paragraph 36 and in Musical Example 14 on page 28 of the Ferrara Report, there is strong musicological evidence that the Pre-chorus vocal melody in “Savage Love” was derived from the synth sax melody starting at 0:02 of “Laxed”. The melodic similarities between the synth sax melody starting at 0:02 in “Laxed” and the Pre-chorus vocal melody in “Savage Love” include: (a) the first note of the first phrase is “C”, (b) the first note of bar 2 is “F”, (c) the last note of bar 2 is “G”, (d) the last note of the first phrase is “Eb”, (e) there is an “Ab” on beat 3 of bar 4 which is the only melodic note in bar 4, (f) the pitches in bar 5 are identical, (g) the pitches on beats 1 and 3 of bar 6 are identical, (h) there is an “F” on the downbeat of bar 7, (i) the first articulated pitch in bar 8 (omitting the grace note in “Laxed”) is “D”, and (j) the last note is “Bb”.

---

9 Regarding the change in “rhythmic feel” addressed in paragraph 27 on page 14 of the Lustig Report, there are many examples of songs that switch from a “swing” rhythm to a straight rhythm and then back to a swing rhythm such as: (1) “Girl” by the Beatles is swung except for the guitar solo at 2:02-2:22 https://youtu.be/qHyAtXPWQwM, (2) “God Only Knows” by the Beach Boys includes a switch from swung to straight eighths at 1:04, then back to swung eighths at 1:12 https://youtu.be/M0lj3WX_5ps, and (3) “I Got the Sun in the Morning” from the 1999 revival of *Annie Get Your Gun* starts with straight eighths, switches to swung eighths at 1:43, then returns to straight eighths at 2:16, switches to swung eighths at 2:31, and switches to straight eighths at 2:46 https://youtu.be/_dqSM-Dzm5U, to name only three prior art songs that embody this commonplace rhythmic device.

38. Second, all 4 notes circled in the vocal melody in Figure 10 of the Lustig Report correspond to notes in the "Laxed" synth sax melody (compare with Musical Example 14 on page 28 of the Ferrara Report) which predate the music performed by Plaintiff. In the case of the Ab and G in bars 2 and 3, these notes also line up metrically with the same pitches in the "Laxed" synth sax melody. Moreover, as shown in the Ferrara Report and not contradicted in the Lustig Report, there is no melody in any of the acoustic or electric guitar parts performed by Plaintiff in "Savage Love".

39. Third, the claim that the electric guitar chords in the Pre-chorus are evidence that Spatola is a "master of his craft, creating electric guitar voicings that provide a perfect framework for Derulo to create his vocal melody," is inconsistent with the facts. These electric guitar chords performed by Plaintiff are played as basic "barre chords", and as shown in the Ferrara Report, represent a fundamental and commonplace musical building block guitar technique. Contrary to the Lustig Report's finding and as shown in the Ferrara Report, Spatola did not "create" the barre chord spacing ("voicings"). Spatola's electric guitar chord "voicing" uses a commonplace "barre chord" "voicing" as explained and shown in the Ferrara Report's (1) paragraph 20 and in Musical Example 5 on page 16, (2) paragraph 68 on pages 51-52, (3) paragraph 83 on pages 63-64, and (4) **Visual Exhibit B**.

40. Thus, contrary to the opinion in paragraph 31 of the Lustig report, these electric guitar "barre chord" "voicings" performed by Spatola in the Pre-chorus of "Savage Love" are known by and available to any guitar player and do not evidence that Spatola is a "master of his craft" regarding "electric guitar voicings" and undercut the finding that Spatola "created" these electric guitar voicings.

> *32. It is clear that in the Pre-Choruses, the top notes of Spatola's distinctive electric guitar voicings function perfectly to reinforce the pitches of the vocal melody, which are reflective of Spatola's unique structural choices.* [Lustig, p. 16]

41. Once again, as shown in the Ferrara Report, (1) Spatola's electric guitar "voicings" in the Pre-chorus are in no way "distinctive" but are in fact very generic and

commonplace "barre chord" spacing ("voicings") and (2) there is no melody in the electric guitar parts performed by Plaintiff in "Savage Love".

> *33. Furthermore, Spatola again introduces the EbM(add6) chord in the third bar of both Pre-Choruses, using the acoustic guitar to modify the harmony from what had been present in LSB. Figure 11 demonstrates:* [Lustig, p. 16, Figure 11 on p. 17]

42. As compared with the accurate transcription of the acoustic guitar in the Pre-choruses of "Savage Love" in Musical Example 4 on page 15 of the Ferrara Report, the acoustic guitar transcription in Figure 11 in the Lustig Report is highly simplified, both with respect to rhythm and chord spacing ("voicing"). In the Lustig Report's Figure 11, a pitch, "C", is added to the Eb chord on beat 1 of bar 3, purportedly creating a commonplace, musical building block Eb6 chord (labeled EbM(add6) in the Lustig Report). This pitch "C" is barely audible in the acoustic guitar stem, and contrary to the transcription in the Lustig Report's Figure 11, it clearly only lasts for a fraction of a second and does not ring out with the rest of the chord *in the acoustic guitar stem*. Thus, the transcription of this pitch in Figure 11 is misrepresentative of its rhythmic duration. Most importantly however, is that this pitch is not audible in the final mix in the commercially released "Savage Love" and therefore does not impact the harmony.

> *35. …. In the Chorus sections, Spatola again introduces the EbM(add6) chord (in the electric guitar). Figure 12 demonstrates:* [Lustig, p. 17]

43. The pitch "C" included in the Eb major chord in bar 3 in Figure 12 in the Lustig Report is the same as the pitch "C" notated in Figure 3 on page 8 of the Lustig Report. As explained above, this "C" pitch is barely audible in the isolated electric guitar stem, and this pitch "C" is not audible in the final mix in the commercially released "Savage Love". Therefore, the added "C" ("6") not only (merely) creates a musical building block Eb(add6) chord, that chord is not heard in the commercially released "Savage Love", a fact that is omitted in the Lustig Report. Given the inaudible status of the added "C" in the final mix of "Savage Love", this is, indeed, an attempt at "much ado about nothing".

> *36. As we saw in Table 2, Spatola alone carries the harmonic material in the first halves of Choruses 1 and 2, as LSB's piano, horns, and bass are muted. Spatola therefore provides sole chord and bass support for 8/24 bars (33%) of the Choruses.* [Lustig, p. 17]

44. As shown in the Ferrara Report (see ¶ 16 and Musical Example 1 respectively on pages 11-12), the guitar chords performed by Plaintiff in the Choruses (and in the Introduction, Post-choruses, and Bridge sections) of "Savage Love" copy the piano chords in "Laxed". In addition, as shown in the Ferrara Report (see ¶ 24 and Musical Example 9 on page 20), the bass line performed by Plaintiff in the Choruses (and in the Post-choruses) copies (almost note-for-note) the bass line in "Laxed".

> *37. The vocal melody in the Choruses is derived largely from the LSB siren and I do not find correspondences between Spatola's playing and the Chorus vocal.* [Lustig, p. 17]

45. In paragraph 37 cited immediately above, the Lustig Report concedes that the vocal melody in the Choruses is derived from "Laxed". As shown in paragraphs 37-38 and in Musical Examples 15 and 16 on pages 29-31 of the Ferrara Report, out of a total of forty-six (46) pitched notes in the vocal melody in the "Savage Love" Chorus, thirty-seven (37) notes are identical in pitch, rhythmic duration, and metric placement (as shown with straight vertical connecting lines) and an additional four (4) notes are identical in pitch (as shown with slanted connecting lines) as compared to the synth sax melody in "Laxed". Moreover, the repeating "your savage love" title lyric in the Post-chorus sections of "Savage Love" copies three notes from the synth sax melody in "Laxed".

*Paragraphs 38-39 and Figure 13* [Lustig, pp. 17-18]

46. There is no musicological support in the Lustig Report for the theory that "Spatola's guitar voicings acted as 'anchoring' or 'magnet' notes determinative of Derulo's vocal melody". In Figure 13, the first circled C (sung to "love") in bar 1 is actually the last note of the preceding Chorus melody (labeled Post-chorus in the

Ferrara Report as explained in paragraph 8(c) above), so this circled C is not part of the Bridge melody in “Savage Love”. This circled pitch “C” is also the root note (or name) of the accompanying Cm chord and (according to the analysis in the Ferrara Report) this Cm chord is the “tonic” chord (built on scale degree 1 of the C minor scale), so it is natural that the last note of the Chorus melody would resolve to C, regardless of the chord “voicing” in the accompaniment guitar. Indeed, none of the notes in the vocal melody in the opening of the Bridge at the end of bar 1 nor through bar 2 in Figure 13 correspond to the top note of the guitar chord, which cuts against the theory that the vocal melody follows Spatola’s chord voicings. In bar 3, the notes enclosed in the box are supposedly chord tones. Melodies often consist of chord tones, so this is unsurprising and not remotely reliant on the “voicing” of the guitar chord. Included as a chord tone in the bar 3 vocal melody is the pitch C, which is <u>inaudible</u> in the accompanying guitar chord in the final mix in the commercially released “Savage Love”. In bar 4, there should be only two guitar chords, as the third and fourth guitar chords are muted in the final mix. The fact that the note Bb occurs three times in the vocal melody in bar 4 is unsurprising, considering that the accompanying chord is Bb. There is no evidence that these Bb notes were inspired by the guitar chord “voicing”. The circled Bb in bar 5 is nonsensical, as this note is (1) not accompanied by the Bb guitar chord and (2) doubles the first note of the subsequent Chorus melody, which, as conceded in paragraph 37 of the Lustig Report, is based on the melody in “Laxed”.

*Paragraph 40* [Lustig, p. 18]

47. Contrary to the finding regarding the “recording chronology” in paragraph 40 of the Lustig Report, as shown in paragraph 24 on pages 10-11 above, the chronology and the substantial use of the digital samples from “Laxed” in “Savage Love” establishes that interest in and use of “Laxed” preceded any music performed by Plaintiff in “Savage Love”.

*Paragraph 41* [Lustig, pp. 18-19]

48. In paragraph 41 Dr. Lustig opines: “This scheme is based on the classic split wherein the vocal aspects (melody and lyrics) are 50% of the composition”.

However, the Lustig Report fails to provide any industry research that supports this speculation that the vocal melody (often referred to as "the top line vocal" in the industry) *plus* the lyrics receive a "classic split" of 50% of the composition.

*Paragraph 42* [Lustig, p. 19]

49. In paragraph 42 on page 19, the Lustig Report concedes that "Spatola does not compose lyrics nor percussion/fx."

> *43. Spatola composes harmonic elements (chords, bass) in every section of the composition. In other words, he contributes to 100% of the piece's harmonic elements.* [Lustig, p. 19]

50. It is not accurate to claim that "Spatola composes harmonic elements (chords, bass) in every section of the composition". Spatola did not "compose" the chord progression or the harmonic rhythm, which is unequivocally copied from "Laxed"; "Laxed" preexisted all of the music performed by Plaintiff in "Savage Love". As the Ferrara Report shows, all of Spatola's guitar and bass parts are derived from the chord progression and the harmonic rhythm in the synth piano, synth bass, and synth brass in "Laxed".

> *44. More useful, however, is a breakdown in terms of Spatola's unique harmonic elements, that is, sections where solely Spatola contributes harmonic elements. From Table 2, we see that Spatola is the sole provider of harmonic elements (via guitars and bass) in 20/52 bars, or 38% of the piece.* [Lustig, p. 19]

51. Given that the chord progression played by Plaintiff in "Savage Love" is derived from "Laxed", there are no sections "where solely Spatola contributes harmonic elements" from a compositional standpoint. Even if Spatola is the only one playing harmonic elements in a given section, those harmonic elements are ultimately based on the "Laxed" chord progression and harmonic rhythm that <u>Spatola did not create</u>. This undermines the calculation that "Spatola is the sole provider of harmonic elements…in 20/52 bars, or 38% of the piece". In fact, Spatola's <u>compositional</u> contribution to the

harmonic elements in "Savage Love" is minimal. Referencing Table 2 on page 7 of the Lustig Report:

- The Intro section contains an electric guitar part that copies the piano part from "Laxed" and a bass part that is structured around the root notes of the "Laxed" chord progression.
- Verses 1 and 2 contain guitar parts that copy the chord progression and harmonic rhythm from "Laxed" and a practically inaudible bass part that consist mainly of the root notes of the "Laxed" chord progression.
- Pre-choruses 1 and 2 contain guitar parts that play the "Laxed" chord progression as basic "barre chords" and a bass part that is structured around the root notes of the "Laxed" chord progression.
- Choruses 1 and 2 (first half) contain an electric guitar part that copies the piano part from "Laxed" and a bass part that copies the bass part from "Laxed".
- The Bridge section contains guitar parts that copy the chord progression and harmonic rhythm from "Laxed" and a bass part that copies the bass part from "Laxed".

> *45. As discussed above, Spatola's guitar writing also heavily influenced the course of, especially, the Verse vocal melody, which is 23% of the total vocal melody. All else equal, if we assume an even split between Spatola and Derulo in the creation of the Verse vocal melody, this means that Spatola contributed to ~11.5% of the total vocal melody.* [Lustig, p. 19]

52. As shown above and in the Ferrara Report, the guitar performances by the Plaintiff did <u>not</u> influence the Verse vocal melody. Spatola's Verse guitar rhythms are merely a by-product of a "swung" eighth-note rhythmic pattern, the use of which is an unremarkable musical building block and clearly derived from "Laxed". Moreover, the "unaccented 'ghost' notes" in the Verse guitar referred to in paragraph 23 on page 12 of the Lustig Report are unpitched muted notes that are <u>not audible in the final mix</u> in the commercially released "Savage Love". Thus, they should not be included in a transcription of the Verse guitar in "Savage Love" as commercially released.

53. As noted above and in the Ferrara Report, it is notable that the Lustig Report's analysis of this bass line in the Verse of "Savage Love" does not address the fact that this bass line is practically inaudible in the commercially released "Savage Love", so its contribution to the overall composition is negligible at best. Since the bass guitar is so quiet and largely hidden under the synth bass sampled from 'Laxed' as to be almost undetectable, it does not contribute significantly at all to the harmony, melody, or rhythm of the Verses of 'Savage Love'." [Ferrara Report, ¶ 22:18]

54. Most importantly and as explained in paragraph 23 above, further undermining the Lustig Report's strained and stretched analysis of the source of vocal melody in the Verses in "Savage Love" is the analysis in ¶ 35:25-26 of the Ferrara Report. As shown in the comparative transcription in Musical Example 13 on page 27 of the Ferrara Report, the vocal melody in the Verse of "Savage Love" is based on and copies the synth sax melody at 0:15 in "Laxed". Out of a total of 109 notes (including two unpitched notes) in the Verse 1 melody of "Savage Love", the melodic rhythm (i.e., rhythmic durations and metric placements) in the synth sax melody in "Laxed" is identical in ninety-one (91) notes. As to the pitches and as identified with connecting detached lines in Musical Example 13 of the Ferrara Report, twelve of the 16 bars have at least two identical corresponding pitches that occur on the same metric placements, and 7 of the 16 bars have at least three identical corresponding pitches that occur on the same metric placements. The Lustig Report's finding that "Spatola's guitar voicings in the Verses shaped Derulo's vocal melody" [Lustig, ¶21:10] is without substance and far-fetched and thoroughly undercut in the Ferrara Report.

55. For the reasons articulated above, I strongly disagree that "Spatola's guitar writing also heavily influenced…the Verse vocal melody."

***On Spatola's Agency**, [Lustig, ¶s 46-66:20-27]*

56. This section of the Lustig Report is marked by excessive speculation and presumptuousness regarding Spatola and Derulo's musical abilities. The Lustig Report misses the core issues that (1) the harmonies and melodies in "Savage Love" are based upon and copy the harmonies and melodies in "Laxed", (2) the music performed by

Plaintiff does not add any significant modification or transformation of the harmonies or melodies that already existed in “Laxed” but instead consists of standard and common guitar and bass guitar practices, and (3) after filtering out expression that represents standard and common practice in the music performed by Plaintiff, the expression that remains does not embody any significant modification or transformation of the music in “Savage Love” as compared with “Laxed”.

57. Indeed, in paragraph 53 on page 21 of the Lustig Report, Dr. Lustig’s theory that Derulo “unconsciously” changed the third 3-note melody because he is “used to musicians taking his so-called ‘direction’ and then *modifying* it to better fit the music” is far-fetched. Moreover, here the Lustig Report presents psychological, not musicological, analysis.

58. Paragraph 54 on page 22 of the Lustig Report rehashes its faulty findings regarding (1) the specific chord voicings played by Plaintiff and the addition of a single pitch (C) that creates an Eb(add 6) chord. However, as shown above and in the Ferrara Report, the “chord voicings” played by Plaintiff (1) use standard, commonplace, musical building block “chord voicings” and (2) are commonly found in prior art. Moreover, as explained above, the supposed Eb(add6) chord (1) is itself a musical building block and (2) the “added 6” pitch “C” is inaudible in the final mix in the commercially released “Savage Love”.

59. In Figure 15 on page 23 of the Lustig Report, “Spatola’s bassline at 1:05” transcribed on the top staff is clearly copied from the synth bass in “Laxed” as analyzed in paragraph 24 and shown in Musical Example 9 on page 20 of the Ferrara Report. Thus, the bassline in “Savage Love” that is played by Spatola is not Spatola’s creation; it copies the synth bass starting at 0:15 in “Laxed”.

60. In Figure 16 on page 24 of the Lustig Report, the “acoustic guitar top notes” *as transcribed by Dr. Lustig* are on the top staff and the “root” notes sung by Derulo *as transcribed by Dr. Lustig* are on the bottom staff. Therein, the rhythm is very close to the rhythm of the acoustic guitar part in the Pre-chorus. If Derulo did indeed communicate this rhythm to Spatola, it would undermine the claim that Spatola is

responsible for the rhythm of the acoustic guitar in the Pre-chorus, including the "straight" (not "swung") rhythm in the Pre-chorus.

61. In paragraphs 62-66 on pages 25-27 of the Lustig Report, claims made regarding the working dynamic between Derulo and Spatola continue to be highly speculative. Much of this speculation is non-musicological. Furthermore, the assessment of Hogarth's input as a witness is inconsistent. In paragraph 63 it is claimed that "Hogarth's deposition in fact corroborates Spatola's recollection", but in paragraph 64 it is claimed that Hogarth had "divided attention" in the studio and "was not a reliable witness to assess the musicological relationship between what Derulo sang and what Spatola played…."

**The BTS Remix** [Lustig ¶ 67-71:27-28]

62. The BTS Remix is identical to the original "Savage Love" except:

- some of Derulo's vocals are replaced with vocals by BTS,

- additional background vocals by BTS are added throughout, and

- Verse 2 is twice as long, and the second half contains new lyrics and some new melodic content performed by BTS.

63. Similar to Table 1 in the Lustig Report discussed above, the structural analysis in Table 3 on page 28 omits the first pickup bar with the reverse cymbal and omits the final bar starting with the word "love" which is addressed in footnote 5 on page 4 of the Lustig Report.

64. Regarding paragraph 71 on page 28 of the Lustig Report, and as analyzed above and in the Ferrara Report in paragraph 22 on page 18 and shown in Musical Example 7 therein, the bass guitar part played by Plaintiff in the Verses of "Savage Love" merely repeats the pitches of the root of each chord with eighth notes with the exception of 1 note (on beat 4) of bar 2 and two notes (on beats 3 and 4) of bar 8. Thus, the bass guitar in "Savage Love" simply (and almost completely) plays repeated notes on the root of the chords which have been copied from the synth bass and

harmony in “Laxed”. Moreover, the bass guitar played by Plaintiff in the Verses of “Savage Love” is almost inaudible in the final commercially released mix. The bass guitar in “Savage Love” plays simultaneously with, and is almost entirely obscured by, the synth bass part sampled from “Laxed”. Since the bass guitar is so quiet and largely hidden under the synth bass sampled from “Laxed” as to be almost undetectable, it does not contribute significantly at all to the harmony, melody, or rhythm of the Verses of “Savage Love”.

**Conclusion** [Lustig, ¶ 72-78: 2830]

65. Regarding paragraph 72 on pages 28-29 of the Lustig Report, the “addition of guitars” was Derulo’s idea, not Spatola’s: Derulo decided to add guitars and invited Spatola. As to the percentages proffered in the Lustig Report in paragraph 72, as noted above, the Lustig Report’s own assessment of the assignment of percentages is that these percentages are merely “rough” and idiosyncratic to Dr. Lustig’s own “musicological estimations”. [see footnote 7, p. 5 of the Lustig Report] Thus, this quantification speculation is unsupported.

66. Regarding paragraph 73 on page 29 of the Lustig Report and regarding the *composition*, as explained above and shown in the Ferrara Report, the calculation that Spatola is the “sole provider of harmonic elements” in 38% of the piece is not correct. As shown above and in the Ferrara Report, the chord progression and the harmonic rhythm in “Savage Love” are copied from “Laxed”.

67. Regarding paragraph 74 on page 29 of the Lustig Report, this “harmonic modification” is nothing more than adding a single pitch to a basic Eb chord. First, by any musicological measure, this does not add any significant modification or transformation of the harmonies that already existed in “Laxed”. Indeed, an Eb(add6) chord, like an Eb chord (without the added 6), is a musical building block. Second, the C pitch that is notated as part of the Eb major chord in bar 3 in Figure 3 in the Lustig Report is <u>barely audible in the isolated electric guitar stem</u>. Importantly, this added C pitch is <u>completely inaudible</u> in the final mix in the commercially released “Savage Love” and thus does not contribute to the overall harmony at all. It is incorrect to label the Eb

chord in “Savage Love” as an Eb6 (or Eb(add6)) chord because the “6” (the C pitch) is not inaudible in the commercially released “Savage Love”.

68. Regarding paragraph 75 on page 29 of the Lustig Report, first, the supposed “correspondences” between Spatola’s chord voicings and Derulo’s vocal melodies are sporadic, fragmentary, and not extensive enough to serve as musicological evidence that Derulo’s melodies were in any way based on the chord voicings. Second, “Spatola’s parts were recorded” after the substantial use of the composition in “Laxed” was uploaded by Hogarth.

69. Contrary to the opinions in paragraph 76 on page 29 of the Lustig Report, Spatola’s <u>bassline</u> in the Verses is practically inaudible in the final mix in the commercially released “Savage Love” and is therefore not a “noteworthy” contribution. As analyzed above and in the Ferrara Report in paragraph 22 on page 18 and shown in Musical Example 7 therein, the bass guitar part played by Plaintiff in the Verses of “Savage Love” merely repeats the pitches of the root of each chord with eighth notes with the exception of 1 note (on beat 4) of bar 2 and two notes (on beats 3 and 4) of bar 8. Thus, the bass guitar in “Savage Love” simply (and almost completely) plays repeated notes on the root of the chords which have been copied from the synth bass and harmony in “Laxed”. Moreover, the bass guitar played by Plaintiff in the Verses of “Savage Love” is almost inaudible in the final commercially released mix. The bass guitar in “Savage Love” plays simultaneously with, and is almost entirely obscured by, the synth bass part sampled from “Laxed”. Since the bass guitar is so quiet and largely hidden under the synth bass sampled from “Laxed” as to be almost undetectable, it does not contribute significantly at all to the harmony, melody, or rhythm of the Verses of “Savage Love”.

70. Staying with paragraph 76 on page 29 of the Lustig Report, as shown above, the guitar voicings in the Verse are in no way “demonstrably determinative” of Derulo’s vocal melody. As shown in the comparative transcription in Musical Example 13 on page 27 of the Ferrara Report and analyzed in ¶ 35:25-26, the vocal melody in the Verse of “Savage Love” is based on and copies the synth sax melody at 0:15 in

"Laxed".  Out of a total of 109 notes (including two unpitched notes) in the Verse 1
melody of "Savage Love", the melodic rhythm (i.e., rhythmic durations and metric
placements) in the synth sax melody in "Laxed" is identical in ninety-one (91) notes. As
to the pitches and as identified with connecting detached lines in Musical Example 13 of
the Ferrara Report, twelve of the 16 bars have at least two identical corresponding
pitches that occur on the same metric placements, and 7 of the 16 bars have at least
three identical corresponding pitches that occur on the same metric placements.  Thus,
the Lustig Report's paragraph 76 finding that Spatola's guitar voicings in the Verse are
"demonstrably determinative" of Derulo's vocal melody is far-fetched and thoroughly
undercut in the Ferrara Report.

71.    Regarding paragraph 77 on page 29 of the Lustig Report, the "extra 4 bars
of Verse" in the BTS Remix have a different melody than the first half of the Verse,
which is omitted in the Lustig Report.  Also omitted is any supposed relationship
between the chord voicings and the changed vocal melody in the second half of the
Verse in the BTS Remix.   Moreover, not remotely "unique", as shown in the Ferrara
Report, Spatola's "contributions" (1) are based upon and copy the composition in
"Laxed", (2) do not add any significant modification or transformation of the harmonies
or melodies that already existed in "Laxed" but instead consists of standard and
common guitar and bass guitar practices, and (3) after filtering out expression that
represents standard and common practice in the music performed by Plaintiff, the
expression that remains does not embody any significant modification or transformation
of the music in "Savage Love" as compared with "Laxed".

72.    In paragraph 78 on page 30, the Lustig Report takes on the role of
advocate rather than objective expert.  No basis is provided to find that Spatola has
"world-class musicianship" and the claim that Spatola's playing "shaped the course of
Derulo's vocal melody" is speculative and is not sufficiently supported by the analyses
proffered in the Lustig Report.

## III. CONCLUSIONS

73. The Lustig Report has not changed my opinions presented in the Ferrara Report. It continues to be my opinion that:

(a) the harmonies and melodies in the instrumental and vocal music in "Savage Love" are based upon and copy melodies and harmonies in "Laxed";

(b) the music performed by Plaintiff does not embody or create any of the vocal or instrumental melodies in "Savage Love";

(c) the music performed by Plaintiff does not embody or create any of the lyrics in "Savage Love";

(d) the music performed by Plaintiff does not add any significant modification or transformation of the harmonies that already existed in "Laxed" but instead, consists of standard and common guitar and bass guitar practices; and

(e) after filtering out expression that represents standard and common practices in the music performed by Plaintiff, the expression that remains does not embody any significant modification or transformation of the music in "Savage Love" as compared with "Laxed".

74. As explained more fully above, the Lustig Report:

- fails to show that the harmonies in the instrumental music in "Savage Love" are based upon and copy the music performed by Plaintiff;
- fails to show that the melodies in the instrumental and vocal music in "Savage Love" are based upon and copy the music performed by Plaintiff and merely presents sporadic and fragmentary "correspondences" between the Derulo's vocal melody and the top

notes of guitar chord or between the melodic rhythm and the guitar rhythm;

- fails to show that the music performed by Plaintiff embodies or creates any of the lyrics in "Savage Love", and concedes as such;
- fails to show that the music performed by Plaintiff adds any significant modification or transformation of the harmonies that already existed in "Laxed";
- fails to analyze the music performed by Plaintiff within the context of preexisting standard and common guitar and bass guitar practices including chord spacing ("voicing") and guitar strum and bass guitar rhythms;
- fails to filter out expression that represents standard and common practices in the music performed by Plaintiff;
- fails to identify any expression that remains after a filtration process;
- fails to show that any expression that remains after a filtration process embodies any significant modification or transformation of the music in "Savage Love" as compared with "Laxed"; and
- is speculative and makes assumptions regarding the Plaintiff's working dynamic with Derulo.

Respectfully submitted,

October 24, 2024 By: Lawrence Ferrara, Ph.D.

______________________

For: Lawrence Ferrara, Inc.

# PROOF OF SERVICE

STATE OF CALIFORNIA )
) ss.
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is Venable LLP, 2049 Century Park East, Suite 2300, Los Angeles, CA 90067.

On **October 25, 2024**, I served a copy ☑ / original ☐ of the foregoing document(s) described as **DEFENDANTS' REBUTTAL EXPERT WITNESS DISCLOSURE** on the interested parties in this action addressed as follows:

Christopher Frost
**FROST LLP**
10960 Wilshire Boulevard, Suite 2100
Los Angeles, CA 90024
Telephone: (424) 254-0441
Email: chris@frostllp.com

*Attorneys for Plaintiff Matthew Spatola*

Thomas E.M. Werge [Pro Hac Vice]
Kelsey A. Martin [Pro Hac Vice]
Joseph McHatton [Pro Hac Vice]
**WERGE & CORBIN LAW GROUP**
1736 Race Street
Denver, CO 80206
Telephone: (303) 586-4900
Facsimile: (720) 554-8042
Email: tom@werge.law
kelsey@werge.law
joseph@werge.law

*Attorneys for Plaintiff Matthew Spatola*

☑ **BY ELECTRONIC MEANS (FRCP 5(b)(2)(E)):** Pursuant to FRCP 5(b)(2)(E), I served the above-stated document by electronic means to the interested parties in this action whose names and e-mail addresses are listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful. Service by e-mail or electronic means was agreed upon based on an agreement of the parties to accept service.

I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **October 25, 2024,** at Los Angeles, California.

*/s/ Samantha Jackson*
Samantha Jackson

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

# EXHIBIT 3



**VENABLE LLP**
Joshua M. Rosenberg (SBN 274473)
*jmrosenberg@venable.com*
Rodney S. Lasher (SBN 307462)
*rslasher@venable.com*
Alicia M. Sharon (SBN 323069)
*asharon@venable.com*
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: 310.229.9900
Facsimile: 310.229.9901

Attorneys for Defendants
JASON DESROULEAUX p/k/a JASON DERULO; and SONY MUSIC ENTERTAINMENT d/b/a COLUMBIA RECORDS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW SPATOLA p/k/a MATTY SPATS, Plaintiff, v. JASON DESROULEAUX p/k/a JASON DERULO; and SONY MUSIC ENTERTAINMENT d/b/a COLUMBIA RECORDS, Defendants. | Case No. 2:23-cv-06191 MWF-E<br>Assigned to the Honorable Michael W. Fitzgerald<br>**DEFENDANTS' INITIAL EXPERT WITNESS DISCLOSURE**<br>Action Filed: July 31, 2023<br>Trial Date: January 21, 2025 |

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

Case No. 2:23-cv-06191-MWF-E
DEFENDANTS' INITIAL EXPERT WITNESS DISCLOSURE

Ethan Lustig, Ph.D.

October 25, 2024

**SUPPLEMENTAL MUSICOLOGICAL REPORT - RE: DEFENSE'S EXPERT REPORT**

In this report, I will respond to the initial expert report by Dr. Lawrence Ferrara ("DEFENDANTS' INITIAL EXPERT WITNESS DISCLOSURE"), whose pages are reproduced for the readers' convenience in the left column. I will proceed point by point, with each numbered paragraph in this document representing the corresponding numbered paragraph in Dr. Ferrara's report. The primary goal of the present report is to clarify and correct errors of fact and differences of interpretation that I have with respect to Dr. Ferrara's report. A secondary value of the present report is to establish points in which both experts concur; to that spirit, I will

**INITIAL DISCLOSURE OF RULE 26(a)(2) EXPERT**

Pursuant to Federal Rule of Civil Procedure 26(a)(2) and this Court's Amended Scheduling Order (*see* Dkt. No. 54), Defendants Jason Desrouleaux p/k/a Jason Derulo and Sony Music Entertainment d/b/a Columbia Records (collectively, "Defendants") hereby disclose the identity of the following expert witness whom Defendants intend to call at trial:

Dr. Lawrence Ferrara, Ph.D.
17 Hobart Avenue
Short Hills, New Jersey 07078

In accordance with the Court's Order and Rule 26(a)(2), Dr. Ferrara's written report, which is attached hereto as Exhibit A (the "Report"), is being served concurrently with this disclosure. As set forth in complete detail in his Report, Dr. Ferrara is an expert in musicology, and Dr. Ferrara's opinions in this matter, along with his complete curriculum vitae, the list of materials he considered in reaching his opinions (Section IB), and other disclosures as required by Federal Rule of Civil Procedure 26(a)(2), are set forth in Dr. Ferrara's Report. His curriculum vitae (Appendix 1 to the Report) includes a list of all publications authored in the previous ten years and a list of all cases in which he has testified as an expert at trial or by deposition in the previous four years. Dr. Ferrara charges $495 per hour for his work relating to this matter.

Defendants have not yet decided which exhibits they intend to utilize at trial and reserve the right to supplement this disclosure with any exhibits that may be used as trial to summarize or support their expert's or experts' opinions.

Defendants reserve the right to call any expert witnesses duly disclosed by the other parties to this case. Defendants further reserve the right to disclose rebuttal experts as permitted by the Court's Scheduling Order, as amended, and Federal Rule of Civil Procedure 26(a)(2). Therefore, Defendants expressly reserve the right to supplement, correct, or amend this disclosure, including by disclosing

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

endeavor to clarify wherever possible in this document, the claims to which I do concur. Throughout this document, when I refer to "my report" it is to my initial expert report submitted on October 9, 2024.



rebuttal experts, as necessary, to respond to any expert witness or witnesses designated by Plaintiff.

The above designation is based on the information that has been reviewed and the documents that have been produced to date. Defendants reserve the right to supplement this disclosure should additional information be learned through discovery.

Dated: October 11, 2024

VENABLE LLP

By: */s/ Joshua M. Rosenberg*
Joshua M. Rosenberg
Rodney S. Lasher
Alicia M. Sharon

Attorneys for Defendants JASON DESROULEAUX p/k/a JASON DERULO; and SONY MUSIC ENTERTAINMENT d/b/a COLUMBIA RECORDS

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

Ethan@EthanLustig.com
EthanLustig.com/Forensic-Musicology

# EXHIBIT A

Ethan@EthanLustig.com
EthanLustig.com/Forensic-Musicology

**TABLE OF CONTENTS**

**REPORT OF LAWRENCE FERRARA, Ph.D.**

**MATTY SPATS v. JASON DERULO, *ET AL.***

**I. INTRODUCTION AND SUMMARY** 1

**I. A. Summary of Findings** 2

**I. B. Materials Used** 3

**I. C. Overall Methodology** 3

**I. D. Musical Compositions and Basic Terminology** 4

**II. ANALYSIS** 5

**II. A. Structure/Form** 5

The Sound Recording Samples from "Laxed" in "Savage Love" 7

Music Performed by Plaintiff in "Savage Love" 9

**II. B. Harmony** 10

The Harmony in the **Introduction**, **Choruses**, **Post-choruses,** and **Bridge** Sections of "Savage Love" Is Based on and Copies the Harmony in "Laxed" 11

The Harmony in the **Verses** of "Savage Love" Is Based on and Copies the Harmony in "Laxed" 12

The Harmony in the **Pre-choruses** of "Savage Love" Is Based on and Copies the Harmony in "Laxed" 14

The Bass Guitar in the **Introduction** of "Savage Love" Is Based on and Copies the Synth Bass in "Laxed" 17

The Bass Guitar in the **Verses** of "Savage Love" Is Based on and Copies the Synth Bass in "Laxed" 18

The Bass Guitar in the **Pre-choruses** of "Savage Love" Is Based on and Copies the Synth Bass in "Laxed" 19

The Bass Guitar in the **Choruses** and **Post-choruses** of "Savage Love" Is Based on and Copies the Synth Bass in "Laxed" 20

**II. C. Rhythm** 21

**II. D. Melody** 25

The Instrumental Melody in the **Introduction** of "Savage Love" Is Based on and Copies the Synth Sax Melody in "Laxed" 25

The Vocal Melody in the **Verses** of "Savage Love" Is Based on and Copies the Synth Sax Melody in "Laxed" 25

The Vocal Melody in the **Pre-choruses** of "Savage Love" Is Based on and Copies the Synth Sax Melody in "Laxed" 28

The Vocal Melody in the **Choruses** of "Savage Love" Is Based on and Copies the Synth Sax Melody in "Laxed" 29

A Portion of the Vocal Melody in the **Post-choruses** of "Savage Love" Is Based on and Copies the Synth Sax Melody in "Laxed" 30

**II. E. Lyrics** 32

**II. F. Summary of Analytical Findings** 32

**III. PRIOR ART** 33

The Guitar Part in the **Introduction** of "Savage Love" Is Based on and Copies "Laxed" and Consists of a Commonplace Rhythm 34

The Guitar Part in the **Verses** of "Savage Love" Is Based on and Copies "Laxed" and Consists of Commonplace Rhythms 38

The Acoustic Guitar Part in the **Pre-choruses** of "Savage Love" Is Based on Generic Chord Spacings, Consists of Commonplace Strum Rhythms, and the Chord Progression and Harmonic Rhythm Are Copied from "Laxed" 50

The Electric Guitar Part in the **Pre-choruses** of "Savage Love" Is Based on Generic Chord Spacings, Consists of Commonplace Strum Rhythms, and the Chord Progression and Harmonic Rhythm Are Copied from "Laxed" 62

The **Bass Guitar** Part in "Savage Love" Is Based on "Laxed" and Consists of Commonplace Rhythms and Standard Practices 67

**IV. CONCLUSIONS** 73

Plaintiff's Guitar and Bass Performances in "Savage Love" Do Not Significantly Modify or Transform "Savage Love" as Compared to "Laxed" and Are Based on Common and Standard Practices 73

(BY) LAWRENCE FERRARA, Ph.D.
(FOR) LAWRENCE FERRARA, INC.

**REPORT REGARDING**

**MATTY SPATS v. JASON DERULO, *ET AL.***

**I. INTRODUCTION AND SUMMARY**

1. I am a musicologist on the full-time faculty at New York University where my rank is Professor of Music, and my title is Director Emeritus of all studies (B.M. through Ph.D.) in Music and the Performing Arts in NYU's Steinhardt School. I have written and co-written published books and peer-reviewed journal articles regarding music analysis, methodologies in music research, and other scholarly areas related to music. I am a long-standing member of two editorial boards of peer-reviewed journals in music respectively published by Indiana University Press and University of Illinois Press. I have been an active music copyright consultant for record, music publishing, and motion picture companies, and artists and other individuals in the United States and abroad for more than 25 years, and I have given testimony at landmark trials such as on behalf of Andrew Lloyd Webber in *Repp v Webber* (1998, *The Phantom of the Opera*), on behalf of Led Zeppelin in *Skidmore v Led Zeppelin* (2016, "Stairway to Heaven"), and on behalf of Ed Sheeran in *Griffin v Sheeran* (2023, "Thinking Out Loud") to name only three. I have given invited lectures on music copyright at Harvard University Law School in each of the last fourteen years, at Columbia University Law School over a period of fifteen years, at other law schools, and for companies (such as Netflix and others) and organizations (such as the Los Angeles Copyright Society and others). I have also presented several peer-reviewed papers regarding music copyright at meetings of the American Musicological Society GNY. I have given many panel presentations for organizations such as the Copyright Society of the United States and others. My *curriculum vitae* is attached as **Appendix 1**.

2. I have been asked to complete musicological analyses of the compositions in "Laxed (Siren Beat)" by Jawsh685 ("Laxed"), the June 2020

1

1. No disagreement.

2. Plaintiff's music was recorded on April 22, 23, and 27, 2020.

commercially released Defendants' song "Savage Love (Laxed – Siren Beat)" ("Savage Love"), and music allegedly performed by Plaintiff[1] that is embodied in "Savage Love" and which I understand was recorded at Defendant Jason Derulo's home studio on April 23, 2020 and April 27, 2020.[2]

3. My musicological transcriptions, analysis, and research of the musical compositions in (1) "Laxed", (2) "Savage Love", and (3) the music performed by Plaintiff embodied in "Savage Love" includes (a) a comparative analysis of "Laxed", "Savage Love", and the music performed by Plaintiff, (b) a prior art search regarding music performed by Plaintiff, (c) filtering out of expression that represents standard and common practices in the music performed by Plaintiff, and (d) assessing the expression that remains in the music performed by Plaintiff after the filtration process described in (c) above is completed.

**I. A. Summary of Findings**

4. On the basis of my musicological analyses, which are presented below, it is my professional opinion that:

(a) the harmonies and melodies in the instrumental and vocal music in "Savage Love" are based upon and copy melodies and harmonies in "Laxed";

(b) the music performed by Plaintiff does not embody or create any of the vocal or instrumental melodies in "Savage Love";

(c) the music performed by Plaintiff does not embody or create any of the lyrics in "Savage Love";

(d) the music performed by Plaintiff does not add any significant modification or transformation of the harmonies that already existed

[1] To facilitate reading, all references to "music performed by Plaintiff" in this report should be read as "music allegedly performed by Plaintiff".

[2] According to Plaintiff's First Amended Complaint ¶ 5:2 dated December 21, 2023.

2

3. I agree that Dr. Ferrara conducts said analyses, although I disagree with his methodology and interpretation, as will be discussed amply below.

4a. I partially agree. Some harmonies and melodies in "Savage Love" (henceforth referred to as *SL*) are indeed based upon and copy those of "Laxed (Siren Beat)" (henceforth referred to as *LSB*). However, other harmonies and melodies in *SL* are not based on, nor copied from, *LSB*. This will be addressed below.

4b. I disagree. Plaintiff's musical contributions shaped both instrumental and vocal melodic aspects of *SL*. This is addressed in depth in my report.

4c. I agree.

4d. I disagree. Plaintiff modifies the harmonies in several sections via his use of the Eb-major (add 6) chord, which will be addressed below. He also uses unique

in "Laxed" but instead, consists of standard and common guitar and bass guitar practices; and

(e)    after filtering out expression that represents standard and common practices in the music performed by Plaintiff, the expression that remains does not embody any significant modification or transformation of the music in "Savage Love" as compared with "Laxed".

**I.  B.   Materials Used**

5.    The following materials were used in this report:

(a)    an audio of "Laxed" which I downloaded from iTunes and attached as Track 1 on **Audio Exhibit 1**;

(b)    an audio of "Savage Love" which I downloaded from iTunes and attached as Track 2 on **Audio Exhibit 1**;

(c)    audio "stems" (individual parts such as the electric guitar, acoustic guitar, drums, etc.) of "Savage Love" provided by Defendants' counsel;

(d)    prior art (songs that were released before 2020) with YouTube links and music student method books;

(e)    My transcriptions in musical notation; and

(f)    Plaintiff's First Amended Complaint dated December 21, 2023.

**I.  C.   Overall Methodology**

6.    I completed musicological analyses of the compositions in "Laxed", "Savage Love", and music performed by Plaintiff using the following overall methodology:

(a)    comparative analyses of form/structure, melody, rhythm, harmony, and lyrics, individually and in combination, in "Laxed", "Savage Love", and the music performed by Plaintiff;

"voicings " to realize the harmonies; said voicings not only change the musical fabric of the song, but they also directly impact the vocal melody, as demonstrated in my report.

4e. I disagree, on the grounds of Dr. Ferrara's methodology, as will be discussed below.

5a-d. No disagreement.

5e. I disagree with many of Dr. Ferrara's transcriptions, as will be discussed below.

5f. No disagreement.

6. No disagreement with these methodologies in principle, although I disagree strongly with their application, as I will discuss below.

Ethan@EthanLustig.com
EthanLustig.com/Forensic-Musicology

(b) search for prior art;

(c) filtering out the expression that represents standard and common practices in the music performed by Plaintiff; and

(d) assessing the expression that remains in the music performed by Plaintiff after the filtration process described in (c) above is completed.

**I. D. Musical Compositions and Basic Terminology**

7. A musical composition is comprised of certain distinct and identifiable elements that can be analyzed separately and in combination. When analyzing two compositions, some elements are more fundamental than others, namely: (1) structure; (2) harmony; (3) rhythm; and (4) melody; and, when present (5) lyrics.[3] On the other hand, similarities or differences in the key (e.g., if two compositions are in the same key or in different keys but in the same modality, namely both in major keys or both in minor keys), tempo (i.e., how fast or slow works are performed), meter (e.g., 4/4 time), instrumentation (e.g., the use of guitars, drums, synthesizers, etc.), and style or genre (e.g., hip hop, country, etc.) are less significant insofar as they represent musical building blocks and/or commonplace practices used in countless musical compositions. Brief definitions of the five enumerated elements listed above follow.

(a) **Structure** is the organization of musical units or musical groups, often dictated by the development of the melody and/or lyrics. The larger sections of songs are generally referred to as "Verses" and "Choruses". The material within Verses and Choruses consists of "phrases".

[3] For example, Ronald S. Rosen writes: "Thus, from the copyright perspective (and in the view of many musical professionals) …the basic elements of music are: melody, harmony, rhythm, and form/structure." (Ronald S. Rosen, *Music and Copyright*, Oxford University Press, 2008, p. 156.) In addition and as cited in Rosen (footnote 19 on page 156): "In *Tisi v. Patrick*, both experts were in agreement 'that the elements to be considered on the question of similarity between [the two songs] were structure, melody, harmony and rhythm.' 97 F.Supp.2d 539, 543 (S.D.N.Y.2000)."

7. I mostly agree. However, I disagree that "structure is often dictated by the development of the melody and/or lyrics", as I would add that instrumentation and musical texture is critical in delineating structure as well.

(b) **Harmony** refers to the tonal relationship of pitches that sound simultaneously, especially (but not exclusively) with respect to the use and organization of "chords".[4] A sequence of chords is referred to as a "harmonic (or chord) progression". "Harmonic rhythm" is the rate of change of chords.[5]

(c) **Rhythm** refers to the pattern and organization of the time values of sounds and silences as well as the overall rhythmic flow in musical time.[6]

(d) **Melody** is a single line of music that consists primarily of a succession (i.e., a sequence or order) of pitches and the rhythmic durations of those pitches within a melodic phrase structure. "Pitch" is the specific high or low placement of a musical sound, often identified within a musical scale.[7]

(e) **Lyrics** are the words (or text) that are sung or spoken in a song.

**II. ANALYSIS**

**II. A. Structure/Form**

8. A structural chart provides a map of the structural sections in a musical composition. The charts of the respective structures in the musical compositions "Laxed" and "Savage Love" presented immediately below include the number of bars[8] in each section as well as the starting time of each section within 1 second of beat 1 and the name of each structural section.

[4] See "Harmony" in *The Harvard Dictionary of Music* (Fourth Edition, 2003, Harvard University Press, p. 379) and *The New Grove Dictionary of Music and Musicians* (Oxford University Press, Second Edition, 2001, Vol. 10, p. 858).

[5] See "Harmonic rhythm" in *Harvard* (p. 376) and *Grove* (Vol. 10, p. 854).

[6] See "Rhythm" in *Harvard* (p. 723) and *Grove* (Vol. 21, p. 277).

[7] See "Melody" in *Harvard* (p. 499) and *Grove* (Vol. 16, p. 363).

[8] A "bar" (also termed a "measure") is a unit of musical time demarcated by vertical lines termed "bar lines." In 4/4 time or "meter", a bar consists of four quarter beats.

8. No substantial disagreement with the *LSB* structural chart, although I would put Section D2 at 18 bars (aka. "measures") in his chart rather than 17 bars. Note that I interpret *LSB* and *SL* to be at 75 beats per minute, while Dr. Ferrara interprets them at 150 beats per minute. However, this is entirely a question of preference and is essentially a matter of "semantics". It simply means that what under my analysis (i.e. in my report) is considered as one measure, is considered as two measures under Dr. Ferrara's analysis. What under my analysis is considered as one quarter note, is considered as two quarter notes (=one half note) under Dr. Ferrara's analysis, and so on. Therefore, note that all of our transcriptions (independently of whether there is agreement or not) will contain different rhythmic durations between the two expert reports. Nonetheless, all of the *proportional* relationships between rhythmic

"LAXED" STRUCTURAL CHART

| | | |
|---|---|---|
| 00:01 | Section A1 | 9 bars |
| 00:15 | Section B1 | 16 bars |
| 00:41 | Section A2 | 8 bars |
| 00:53 | Section C1 | 16 bars |
| 01:19 | Section D1 | 18 bars |
| 01:48 | Section B2 | 16 bars |
| 02:13 | Section A3 | 8 bars |
| 02:26 | Section C2 | 16 bars |
| 02:52 | Section D2 | 17 bars |
| | (ends at 3:22) | |

9. "Laxed" has no vocal melody and no lyrics. The only (very brief) vocal part in "Laxed is a "producer tag".[9] "Laxed' is not a "song"[10] in the traditional sense. I have identified four discrete sections in "Laxed", labeled Sections A-D in the structural chart above. The A, B, C, and D sections are based on the synthesized (hereafter, "synth") saxophone (hereafter, "sax") melodies. Thus, the difference between each section (A, B, C and D) is a different synth sax melody (as shown in transcriptions of the synth sax melodies later in this report). Consequently, all of the A sections have the same synth sax melody, all of the B sections have the same synth sax melody, etc.

[9] A "producer tag", often near the beginning of a song, is when the producer or rapper announces their name, often over instrumental music.

[10] A "song" is "A form of musical expression in which the human voice has the principal role and is the carrier of a text…." *Harvard* (p. 803).

events are maintained under either orientation (be it 75 or 150 beats per minute).

9. No substantial disagreement, although I am not sure that the brief vocal sample (a high-pitched voice) at 0:12 of *LSB* counts as a producer tag.

"SAVAGE LOVE"
STRUCTURAL CHART

| | | |
|---|---|---|
| 00:01 | Introduction | 9 bars |
| 00:15 | Verse 1 | 16 bars |
| 00:41 | Pre-chorus 1 | 8 bars |
| 00:54 | Chorus 1 | 8 bars |
| 01:06 | Post-chorus 1 | 8 bars |
| 01:19 | Verse 2 | 8 bars |
| 01:32 | Pre-chorus 2 | 8 bars |
| 01:45 | Chorus 2 | 8 bars |
| 01:58 | Post-chorus 2 | 8 bars |
| 02:10 | Bridge | 8 bars |
| 02:23 | Chorus 3 | 8 bars |
| 02:36 | Post-chorus 3 | 9 bars |
| | (ends at 2:50) | |

10. As shown in the structural chart immediately above, "Savage Love" is a "song" and has a conventional pop song structure, including Introduction, Verse, Pre-chorus, Chorus, Post-chorus, and Bridge sections.

The Sound Recording Samples from "Laxed" in "Savage Love"

11. Immediately below is a list of instruments in each section of "Savage Love" that were digitally sampled from the "Laxed" sound recording. Under each section name is an italicized list of all of the sampled instruments from "Laxed" in that section of "Savage Love". Besides the synth piano, synth brass, synth bass, synth sax, and drums, the only other parts in "Laxed" are the "685 baby, let's go" vocal producer tag (at 0:12 and 1:07), and sound effects, namely the reverse cymbal first heard at 0:01 and the descending whistle first heard at 0:02.

10. My interpretation of the form of *SL* is different (see Figure 1 and Table 1 in my report), with what Dr. Ferrara calls the "Post-chorus" sections being part of the "Chorus" sections under my interpretation. As mentioned above, I interpret *SL* at 75 beats per minute rather than 150 beats per minute, so bar numbers and bar counts in Dr. Ferrara's report will be twice those in my report. I agree that *SL* has a "conventional pop song structure", especially due to its Pre-Chorus sections.

11. From the version of *LSB* that I have on record (Spotify and file), there is no "685 baby" producer tag. Nor is it in the ProTools "stems" of *SL* (version 9) that were sent out for final mixdown. This suggests that the tag was added during mixing or mastering, because it *is* indeed present in the released version of *SL* (at 0:12). Also, the synth brass in the *SL* Introduction is not sampled from *LSB* but rather is a separate track, as can be

DIGITALLY SAMPLED MATERIAL FROM "LAXED" IN "SAVAGE LOVE"

00:01 Introduction 9 bars
*reverse cymbal, synth sax, synth brass, "685 baby" vocal*

00:15 Verse 1 16 bars
*kick/snare, rev. cymbal, synth bass, synth piano, synth brass*

00:41 Pre-chorus 1 8 bars
*(none)*

00:54 Chorus 1 8 bars
*kick/snare (at 1:06)*

01:06 Post-chorus 1 8 bars
*kick/snare, synth sax, synth bass, synth piano, synth brass*

01:19 Verse 2 8 bars
*kick/snare, rev. cymbal, synth bass, synth piano, synth brass*

01:32 Pre-chorus 2 8 bars
*(none)*

01:45 Chorus 2 8 bars
*kick/snare (at 1:57)*

01:58 Post-chorus 2 8 bars
*kick/snare, rev. cymbal, synth sax, synth bass, synth piano, synth brass*

02:10 Bridge 8 bars
*kick/snare (at 2:22), synth piano, synth brass, whistle sound effect*

02:23 Chorus 3 8 bars
*kick/snare, synth sax, synth bass, synth piano, synth brass*

02:36 Post-chorus 3 9 bars
*kick/snare, rev. cymbal, synth sax, synth bass, synth piano, synth brass*
(ends at 2:51)

8

seen in the ProTools v9 project file. Therefore, in the Introduction of *SL*, the only material sampled from *LSB* is the reverse cymbal and synth sax. For the remainder of the chart (Verse 1 and on), I am in agreement with the facts laid out (with the caveat that we have different bar counts due to different interpretations of the tempo; and that his Post-chorus sections are, by my interpretation, part of the Chorus sections).

Music Performed by Plaintiff in "Savage Love"

12. Music performed by Plaintiff includes the bass guitar, electric guitar, and acoustic guitar parts in "Savage Love". As shown in the chart below, all three instruments performed by Plaintiff are in every section of "Savage Love" except for the Introduction, which lacks the acoustic guitar.

MUSIC PERFORMED BY PLAINTIFF IN "SAVAGE LOVE"

| | | |
|---|---|---|
| 00:01 | Introduction | 9 bars |
| | *bass guitar, electric guitar* | |
| 00:15 | Verse 1 | 16 bars |
| | *bass guitar, electric guitar, acoustic guitar* | |
| 00:41 | Pre-chorus 1 | 8 bars |
| | *bass guitar, electric guitar, acoustic guitar* | |
| 00:54 | Chorus 1 | 8 bars |
| | *bass guitar, electric guitar, acoustic guitar* | |
| 01:06 | Post-chorus 1 | 8 bars |
| | *bass guitar, electric guitar, acoustic guitar* | |
| 01:19 | Verse 2 | 8 bars |
| | *bass guitar, electric guitar, acoustic guitar* | |
| 01:32 | Pre-chorus 2 | 8 bars |
| | *bass guitar, electric guitar, acoustic guitar* | |
| 01:45 | Chorus 2 | 8 bars |
| | *bass guitar, electric guitar, acoustic guitar* | |
| 01:58 | Post-chorus 2 | 8 bars |
| | *bass guitar, electric guitar, acoustic guitar* | |
| 02:10 | Bridge | 8 bars |
| | *bass guitar, electric guitar, acoustic guitar* | |
| 02:23 | Chorus 3 | 8 bars |
| | *bass guitar, electric guitar, acoustic guitar* | |

9

12. I agree; this information is also conveyed in Table 2 of my report. Again, there is a difference in terms of bar counts, and a difference in conceptualization of Chorus vs. Post-chorus, but the facts here are not in dispute.

02:36 Post-chorus 3 9 bars
*bass guitar, electric guitar, acoustic guitar*
(ends at 2:51)

**II. B. Harmony**

13. As explained in Paragraph 7(b) above, "harmony" refers to the tonal relationship of pitches that sound simultaneously, especially (but not exclusively) with respect to the use and organization of "chords". A sequence of chords is referred to as a "harmonic (or chord) progression". "Harmonic rhythm" is the rate of change of chords.

14. The "key" of a musical composition identifies "the tonal center or tonic…defined in terms of the particular major or minor scale from which its principal pitches are drawn".[11] In addition, *The Harvard Dictionary of Music* (at p. 442) explains that there are two main types of keys, "major and minor".

15. "Laxed" and "Savage Love" are recorded in the key of C minor. The chord progression in "Laxed" that is copied in "Savage Love" is Cm-Ab-Eb-Bb.[12] Supporting the analysis of "Savage Love" as in the key of C minor are: (1) the Cm chord is at the beginning of the phrase and is thereby in a strong position to establish the key as C minor, (2) the Bb chord moves to a Cm chord setting up repeated **bVII-i** (Bb-Cm)[13] cadences, and thereby making the return of the Cm chord represent a resolution, and (3) the end of the Chorus melody resolves to a C pitch (e.g., at 1:06) and the last note of

[11] See "Key" in *Harvard*, p. 442.

[12] An uppercase letter represents a major chord. A lowercase "m" denotes the word "minor". Thus, "Cm" is a "C minor chord", "Ab" is an "A-flat major chord", "Eb" is an "E-flat major chord, and "Bb" is a "B-flat major chord".

[13] Musicologists often use Roman numerals to identify chords in musical compositions. Each chord is identified by the Roman numeral corresponding to the scale degree that is its root (name). An uppercase Roman numeral represents a major chord and a lowercase Roman numeral represents a minor chord. Thus, in the key of C minor, **bVII-i** denotes the chords Bb and Cm which correspond to scale degrees b7 (flat 7) and 1.

10

13. No disagreement.

14. No disagreement.

15. I interpret *LSB* and *SL* to be in the key of Eb major, rather than C minor. I do not consider Dr. Ferrara's points to be convincing reasons to consider the songs to be in the key of C minor. However, Eb major is the "relative major" of C minor and both keys share the same key signature/collection.[1] The ambiguity between relative major and minor is common in pop music and not particularly significant here.[2] I agree that the chord progression in *LSB* is Cm-AbM-EbM-BbM. However, I disagree that this chord progression is simply copied in *SL*. In *SL* the chord progression is modified in multiple sections to be: Cm-AbM-EbM(add6)-BbM due to Plaintiff's harmonic contributions. As discussed in my

[1] See "Key Relationship" in *The Harvard Dictionary of Music* (Fourth Edition, 2003, Harvard University Press, p. 445).

[2] See "Tonal Ambiguity in Popular Music's Axis Progressions" by Mark Richards in *Music Theory Online* 23(3).

the vocal melody in "Savage Love" is also a C pitch (at 2:49), which functions like the "tonic", i.e., scale degree 1.

The Harmony in the **Introduction, Choruses, Post-choruses,** and **Bridge** Sections of "Savage Love" Is Based on and Copies the Harmony in "Laxed"

16. Musical Example 1 below places the synth piano chords in "Laxed" on the top staff and the electric guitar chords in the Introduction of "Savage Love" on the bottom staff. As shown in Musical Example 1, the Cm-Ab-Eb-Bb chord progression is identical in "Laxed" and "Savage Love". The harmonic rhythm (i.e., the rate of change of the chords) of 2-bars per chord is also identical in both works. The only difference is in the spacing[14] (sometimes called chord voicing) between the pitches.[15] This is a minimal change in the electric guitar chords as compared with the chords in "Laxed". The electric guitar in the Introduction of "Savage" does not include any melody, but it does copy the chord progression, harmonic rhythm, and rhythmic (strummed on guitar) pattern of the chords from the synth piano from "Laxed". (This electric guitar pattern in the "Savage Love" Introduction is also used in the Chorus, Post-chorus, and Bridge sections of "Savage Love".) As is standard practice for guitar notation, the guitar parts are transcribed an octave higher than the sounding octave. In order to facilitate the comparison, the synth piano has also been transposed up an octave to match the guitar. The chord symbols in the transcriptions below reflect the aggregate of notes in each bar of all of the instrumental and vocal parts including the bass guitar in "Savage Love". Analysis specifically of the bass guitar in "Savage Love" is later in this report.

[14] See "spacing" in *Harvard*, p. 834 and see "harmonic analysis" at p. 375.

[15] The most basic chords are called "triads" and consist of three pitches: (1) the root (or name), (2) the second pitch a third above the root called the "third" of the chord, and (3) the remaining pitch a third above the second pitch called the "fifth" of the chord. In the chords in "Laxed" in Musical Example 1, the lowest pitch in the chord is the root. In "Savage Love", while some chords have the root as the lowest pitch in the chord, some have either the third of the chord or the fifth of the chord as the lowest pitch.

11

report, this harmonic modification occurs in the Intro, Pre-Choruses, Choruses, and Bridge; in other words, in 77% of the song (everywhere except the Verses).

16. I disagree with the electric guitar notated in Dr. Ferrara's Musical Example 1, which has conveniently omitted an important detail: as can be seen in my own transcription (Figure 3 of my report), the third chord is not EbM but rather EbM(add6). In bars 5-6 of his Musical Example 1, Dr. Ferrara has not notated the C that Plaintiff plays. Also, he has notated Eb as the highest note of Plaintiff's voicing in bars 1-2, where I hear C (see Figure 3 in my report). By Dr. Ferrara's transcription, the upper line of Plaintiff's guitar chords is less smooth, as his guitar voicings would involve a leap from Eb in chord 1 down to Ab in chord 2; in contrast, I hear a smoother motion from C as the top note of chord 1, to Ab as the top note of chord 2. I also disagree with the claim that the chord progression is identical between *LSB* and *SL*, due

**MUSICAL EXAMPLE 1**

**“Laxed” Synth Piano at 0:02 /**

**“Savage Love” Electric Guitar (<u>Introduction</u>)**

<u>The Harmony in the **Verses** of “Savage Love” Is Based on and Copies the Harmony in “Laxed”</u>

17. The acoustic and electric guitar parts are “doubled”[16] in the Verses in “Savage Love” and do not include any melody. As shown in Musical Example 2 below, the chord progression and the harmonic rhythm are identical in the synth piano in “Laxed” and the acoustic and electric guitars in the Verse of “Savage Love”. The chord spacing is minimally different. The strummed guitar pattern in “Savage Love” has additional iterations of the chords as compared to “Laxed”, but the strummed rhythm in “Savage Love” grows out of the combined synth piano and drums rhythm in “Laxed”, which have a kick drum attack on beat 1 and snare drum attacks on beats 2& (<u>i.e.</u>, the

16 “Double” is “[t]o perform…the same note or notes by two parts, either at the same pitch level or in octaves.” See “double” in *Harvard*, p. 251.

to the aforementioned EbM(add6) chord. I disagree strongly with the claim that the spacing/chord voicing is a "minimal change"; rather, it is a critical change that even shaped the vocal melody in parts of *SL*, as I detail in my report. Therefore, Plaintiff's guitar contributions constitute more than just "spacing" or "chord voicing" decisions. It can be seen clearly, even from Dr. Ferrara's transcription, that the chord voicing decisions in Plaintiff's guitar in the *SL* Intro are quite different from the *LSB* piano; the former is smoother, more sophisticated, and more varied in chord shapes, while the latter simply moves in parallel using the same chord shape for all four chords. And as Dr. Ferrara himself points out in f.n. 15 of his report: *"in the chords in “Laxed” in Musical Example 1, the lowest pitch in the chord is the root. In “Savage Love”, while some chords have the root as the lowest pitch in the chord, some have either the third of the chord or the fifth of the chord as the lowest pitch."* This is no

second half of beat 2) and 4. The strummed rhythmic pattern in the guitars in the Verses in "Savage Love" is commonplace: a "tresillo"[17] rhythm in the even # bars and a Charleston[18] rhythm in the odd # bars as shown in Musical Example 2 below with "Laxed" on the top staff, the kick drum and the snare drum in "Laxed" on the middle staff, and the acoustic and electric guitars in "Savage Love" on the bottom staff.

**MUSICAL EXAMPLE 2**

**"Laxed" Synth Piano and Drums at 0:02 /**
**"Savage Love" Acoustic and Electric Guitars (<u>Verses</u>)**

[17] A "tresillo" is a three-note rhythm, for example, on beats 1, 1a, and 2&, which is a musical building block rhythm in Latin music.

[18] See the two-note "Charleston" rhythm in *Harvard*, p. 163.

13

mere coincidence; it is because of Plaintiff's intentional compositional decisions that create musically unique paths through the upper line of the chords. Finally, note that in Figure 3 of my report, unlike Dr. Ferrara, I do not notate the electric guitar an octave higher than it sounds; however, this is a trivial difference of presentation.

17. Dr. Ferrara's Musical Example 2, despite differences in notational technique, conveys the same musical reality as Figure 5 of my report. Dr. Ferrara describes the chord spacing between the *SL* Verses' guitars and the *LSB* piano as "minimally different", a point to which I strongly disagree. The guitar parts in the *SL* Verses were critical in shaping the vocal melody, as I detail in my report. As can be seen from Dr. Ferrara's own transcription, Plaintiff's nuanced guitar voicings in the Verses create a qualitatively different realization of the chords than the simple *LSB* piano voicings. Additionally, they occur on completely different rhythms

than the *LSB* piano, barely co-occurring with the piano and breathing new rhythmic life into an otherwise monotonous harmonic layer. While I do not disagree with Dr. Ferrara's definitions of the "tresillo" and "Charleston" rhythms, I do disagree with the idea that Plaintiff's guitar rhythms count as either. (See ¶¶ 22-23 in my report). First of all, the tresillo and Charleston do not use triplets, whereas Plaintiff does; a fact that Dr. Ferrara has conveniently minimized by relegating the triplet rhythms to in his transcriptions, thereby bringing his notation visually closer to the straight rhythms of the tresillo and Charleston. The reality, however, is that Plaintiff consistently uses triplets throughout his Verse guitar rhythms (another way in which Plaintiff contributes something different from the *LSB* piano, which uses straight, not triplet, rhythms). Another important consideration is that rhythmic

Ethan@EthanLustig.com
EthanLustig.com/Forensic-Musicology

patterns such as the tresillo and Charleston are not simply modular patterns that can be picked and chosen at will—by that logic, any rhythmic composition could be sliced and diced so as to represent exemplars of various rhythmic prototypes. Rather, these patterns are typically repeated and sustained, presented in what are called "ostinato" patterns.[3] For instance, the *Grove Music Online* article on the Charleston[4] presents the pattern in recurring, consistent form:

Ex.1 C. Mack and J.P. Johnson: Charleston (1923)

[3] The *Harvard Dictionary of Music* defines ostinato as "A short musical pattern that is repeated persistently throughout a performance or composition." (624)

[4] See "Charleston (ii)" by Pauline Norton in *Grove Music Online.*

Simply put, Plaintiff is combining multiple rhythmic durations to create something unique, as evidenced by the fact that in his report, Dr. Ferrara does not find prior art that exactly resembles Plaintiff's rhythms in the Verses of *SL*. Finally, there is also the important fact that Plaintiff's actual guitar rhythms in the Verses of *SL* use many unaccented "ghost" notes (see ¶ 23 of my report), such that his rhythms can more accurately be notated as:





With red dashed lines showing identical rhythmic events, we can see that there are 12 identical rhythmic onsets out of 38 notes, which is a rhythmic similarity of only 32%.[5] A similar analysis can be conducted for the Charleston rhythm:

[5] 38 notes is the average of 24 tresillo notes and 52 guitar chords.

18. As shown in Musical Example 3 below, the strum pattern of the chords on the downbeat (beat 1) in the "Savage Love" Verses mirror the synth brass notes on the downbeat in "Laxed". Musical Examples 2 and 3 demonstrate that there are no significant modifications or transformations of the harmony and strum pattern in "Savage Love" as compared to "Laxed". (Also see "Prior Art" later in this report.)

**MUSICAL EXAMPLE 3**
**"Laxed" Synth Piano and Synth Brass at 0:02 /**
**"Savage Love" Acoustic and Electric Guitars (<u>Verses</u>)**

<u>The Harmony in the **Pre-choruses** of "Savage Love" Is Based on and Copies the Harmony in "Laxed"</u>

19. The <u>acoustic guitar</u> in the Pre-chorus of "Savage Love" does not include any melody. The chord progression and the harmonic rhythm are identical in the Pre-

14

With red dashed lines showing identical rhythmic events, we can see that there are 8 identical rhythmic onsets out of 34 notes, which is a rhythmic similarity of only 24%.[6]

18. I disagree with Dr. Ferrara's claim that "there are no significant modifications or transformations of the harmony and strum pattern in "Savage Love" as compared to "Laxed"." As mentioned above, Plaintiff's guitar rhythms in the Verses are unique and impactful in changing the rhythmic composition of the song, contributing complexity (via triplets) for the first time to the song's harmonic layer, in contrast to the simple and straight rhythms of *LSB's* harmonic elements (piano, bass, horns), none of which use similar rhythms to Plaintiff's Verse guitars. Figure 4 in my report demonstrates this contrast, and it can be seen that

[6] 34 notes is the average of 16 Charleston notes and 52 guitar chords.

chorus acoustic guitar in "Savage Love" and in the synth piano in "Laxed". While the strummed guitar rhythm pattern and chord spacing in the Pre-chouses of "Savage Love" are not in "Laxed": (1) the acoustic guitar copies the chord progression and harmonic rhythm from "Laxed"; (2) the acoustic guitar chord spacing uses a commonplace "barre chord" spacing (explained in the section on Prior Art later in this report); and (3) similar guitar strum rhythm patterns are found in prior art (as shown below). In Musical Example 4, the synth piano in "Laxed" is on the top staff, the synth brass in "Laxed" is on the middle staff, and the acoustic guitar in "Savage Love" is on the bottom staff.

**MUSICAL EXAMPLE 4**
**"Laxed" Synth Piano and Synth Brass at 0:02 /**
**"Savage Love" <u>Acoustic</u> Guitar (<u>Pre-Choruses</u>)**

Plaintiff's Verse guitar rhythms barely line up with the *LSB* piano (see ¶ 18 of my report for further explanation).

19. In Dr. Ferrara's Musical Example 4 (which treats the Pre-Chorus acoustic guitar part shown in Figure 11 of my report), he has conveniently omitted the note C in bar 5 of his transcription (bar 3 of mine), which in fact transforms the harmony from EbM into EbM (add6). Therefore, it is in error to say that "the chord progression and the harmonic rhythm are identical in the Pre-chorus acoustic guitar in "Savage Love" and in the synth piano in "Laxed"." He also acknowledges (and I agree) that the acoustic guitar rhythm and chord spacing of the *SL* Pre-Choruses is entirely absent in *LSB*. (As a reminder, *LSB* is entirely muted (not sampled) for the *SL* Pre-Choruses.)

20. Staying with the Pre-choruses in “Savage Love” but now moving to the electric guitar (which is not doubled with the acoustic guitar in the Pre-chorus sections), the chord progression and the harmonic rhythm are identical to the synth piano in “Laxed”. The electric guitar in “Savage Love” consists merely of one sustained iteration of each chord (for 1 or 2 bars) in the progression. Playing one sustained chord per chord change is commonplace, and the spacing of the chords are commonplace “barre chords” (explained in Prior Art below). Thus, as shown in Musical Example 5 below, changes in the electric guitar in “Savage Love” from the synth piano and brass parts in “Laxed” are not significant modifications or transformations of the harmony in “Laxed”. There is no melody in the Pre-chorus electric guitar in “Savage Love”.

**MUSICAL EXAMPLE 5**
**“Laxed” Synth Piano and Synth Brass at 0:02 /**
**“Savage Love” Electric Guitar (Pre-Choruses)**

20. I agree with most of what is stated here, and do not dispute Musical Example 5 (which is similar to Figure 10 in my report); however, I do disagree with the claim that "changes in the electric guitar in "Savage Love"...are not significant modifications or transformations of the harmony in "Laxed."" Rather, the electric guitar voicings in the Pre-Choruses are distinctive, creating "the perfect framework for Derulo to create his vocal melody", as I discuss in my report in ¶¶ 31-32. Although it is technically correct that "there is no melody" in the Pre-Choruses' electric guitar parts, that does not preclude their reinforcing deeply the vocal melody.

<u>The Bass Guitar in the **Introduction** of "Savage Love" Is Based on and Copies the Synth Bass in "Laxed"</u>

21. As shown in Musical Example 6 below, the bass guitar in the Introduction of "Savage Love" plays the root of each chord as a quarter note on the downbeat of bars 1, 3, 5, and 7, with two notes on beats 3 and 4 of bars 2 and 6, and a continuous slide between two notes on beats 3 and 4 of bar 8. The pitches on the downbeat of bars 1, 3, 5, and 7 and the metric placements of all of the bass guitar notes in "Savage Love" are identical to the synth bass in "Laxed". While two <u>pitches</u> are changed in the corresponding bars 2 and 6 in "Savage Love" and "Laxed", the <u>rhythm</u> (2 quarter notes respectively on beats 3 and 4) is identical. While the pitches of the "slide" in bar 8 of "Savage Love" are changed as compared with the corresponding notes in "Laxed", the metric placements of the beginning and ending notes of the "slide" – from beat 3 to beat 4 in bar 8 – in "Savage Love" are the same as the 2 quarter notes on beats 3 and 4 in bar 8 of "Laxed". These slight changes in the bass guitar part in the Introduction of "Savage Love" are fragmentary, minimal, and insignificant.

**MUSICAL EXAMPLE 6**
**"Laxed" Synth Bass at 0:15 /**
**"Savage Love" Bass Guitar (<u>Introduction</u>)**

21. I do not disagree with the transcription (Musical Example 6), although I strongly disagree that Plaintiff's bass guitar choices in the Intro of *SL* are, compared to the bass of *LSB*, "fragmentary, minimal, and insignificant". Plaintiff's bass has a far lower note density, and the choice of silence is just as important as the choice to place a note. Plaintiff's bass (which is the only bass layer sounding in the *SL* Intro) bears a low rhythmic and pitch similarity to that of *LSB*, which can even be demonstrated using Dr. Ferrara's own transcription. In the following figure, red boxes show identical notes:





With 20 notes in *LSB* and 10 notes in *SL*, this makes an average of 15 notes. Out of those 15 notes, only 4 are identical. This is a similarity percentage of $4/15 = 27\%$, which is quite low. In other words, more than two-thirds of Plaintiff's bassline is different from LSB's bassline. It appears that Dr. Ferrara has not provided a reliable, objective methodology in terms of calculating similarity metrics, in favor of pointing out that some of Plaintiff's

bass notes co-occur with *LSB*'s bass notes. While it is true that some of Plaintiff's bass notes co-occur with LSB's bass, it is important to acknowledge that the opposite is also true: many of *LSB*'s bass notes do *not* co-occur with Plaintiff's bass notes. In other words, Dr. Ferrara in his methodology has not acknowledged that what is *not* played is just as important as what *is* played. If we ignore this critical distinction, then by his logic, any time some musical excerpt A is more minimal than some musical excerpt B, excerpt A can simply be explained away as being 100% similar to excerpt B (as being a subset of B). I would prefer that we use reliable, objective similarity metrics that factor in differences in number of notes between the two passages under consideration, as discussed in the literature.[7]

[7] See for instance Savage et al., "Quantitative evaluation of music copyright infringement", in *Proceedings of the Folk Music Analysis 2018 Workshop*, which presents a common-sense calculation in which an average number of notes is derived from the two passages under consideration; then, the similarity percentage is found by simply dividing the number of similar notes (similar pitches, rhythms, etc.; depending on what is being

The Bass Guitar in the **Verses** of "Savage Love" Is Based on and Copies the Synth Bass in "Laxed"

22. As shown in Musical Example 7 below, the bass guitar part in the Verses of "Savage Love" merely repeats the pitches of the root of each chord with eighth notes with the exception of 1 note (on beat 4) of bar 2 and two notes (on beats 3 and 4) of bar 8. Thus, the bass guitar in "Savage Love" simply (and almost completely) plays repeated notes on the root of the chords which have been copied from the synth bass and harmony in "Laxed". Notably, the bass guitar in the Verses of "Savage Love" is almost inaudible in the sonic mix. The bass guitar in "Savage Love" plays simultaneously with, and is almost entirely obscured by, the synth bass part sampled from "Laxed". Since the bass guitar is so quiet and largely hidden under the synth bass sampled from "Laxed" as to be almost undetectable, it does not contribute significantly at all to the harmony, melody, or rhythm of the Verses of "Savage Love".

**MUSICAL EXAMPLE 7**
**"Laxed" Synth Bass at 0:15 /**
**"Savage Love" Bass Guitar (Verses)**

18

measured) by that average (and then multiplying by 100 to yield a percentage).

22. Dr. Ferrara's Musical Example 7 conveys similar information to Figure 7 from my report, with some minor differences. However, I disagree with the opinion that just because Plaintiff's bass in the Verses is somewhat quiet, that it cannot "contribute significantly...to the harmony, melody, or rhythm of the Verses of "Savage Love"."

The Bass Guitar in the **Pre-choruses** of “Savage Love” Is Based on and Copies the Synth Bass in “Laxed”

23. As shown in Musical Example 8 below, the bass guitar in the Pre-chorus of “Savage Love” consists mainly of sustained root notes of the chords starting on the downbeat of bars 1, 3, 5, and 7, with two additional notes respectively in bars 2 and 6. The pitches on the downbeat of bars 1, 3, 5, and 7 are identical in “Savage Love” and the synth bass in “Laxed”. While those notes are quarter notes in “Laxed”, the rhythmic durations are extended in “Savage Love”. The chord progressions and the harmonic rhythm supported by the bass parts are identical. While the pitches are changed in bar 2, the rhythm (2 quarter notes respectively on beats 3 and 4) is identical. The first of the two eighth notes on beat 4 of bar 6 in “Savage Love” is identical in pitch (Eb) to the corresponding note on beat 4 of bar 6 in “Laxed”. These changes in the bass part in the Pre-chorus of “Savage Love” are insignificant and represent standard practices.

**MUSICAL EXAMPLE 8**
**“Laxed” Synth Bass at 0:15 /**
**“Savage Love” Bass Guitar (Pre-Choruses)**

19

23. I do not disagree with Dr. Ferrara's transcription in his Musical Example 8, and technically all the facts he states here are correct. However, we can again use similarity analysis of his own transcription to show that Plaintiff's Pre-Chorus bassline is actually quite different from the *LSB* bassline on a note-for-note basis:



<u>The Bass Guitar in the **Choruses** and **Post-choruses** of "Savage Love" Is Based on and Copies the Synth Bass in "Laxed"</u>

24. As shown in Musical Example 9 below, the bass guitar part in the Choruses and Post-choruses of "Savage Love" is almost the same as the synth bass part in "Laxed". Indeed, the bass guitar in "Savage Love" plays simultaneously with the sampled synth bass from "Laxed" in the Post-chorus. The pitch classes (<u>i.e.</u>, pitches that share the same name that are octaves apart) in all twenty (20) corresponding notes (not counting the miniature "grace" note in bar 4) are identical, the rhythmic durations and metric placements in all twenty corresponding notes are identical, and the chord progression and harmonic rhythm supported by the bass parts are identical in "Savage Love" and in "Laxed". The insignificant changes occur on beat 3 of bars 1, 3, and 7 in which the direction of the notes thereon is changed: 3 corresponding notes with identical pitch classes are in a different octave. This bass pattern is also used in the Chorus of "Savage Love" which omits the bass part in bars 7-8.

**MUSICAL EXAMPLE 9**
**"Laxed" Synth Bass at 0:15 /**
**"Savage Love" Bass Guitar (<u>Choruses and Post-Choruses</u>)**

20

Red squares show identical note events. Out of 14 notes (the average of 20 notes in the *LSB* bass and 8 notes in Plaintiff's bass), only 5 are the same, constituting a similarity percentage of only 36% between the *LSB* bass and Plaintiff's bass in the *SL* Pre-Choruses. The difference between the two is therefore anything but "insignificant".

24. No disagreement.

25. In summary, the chord progression and harmonic rhythm (and the guitar strum patterns) in the electric guitar, acoustic guitar, and bass guitar parts performed by Plaintiff in “Savage Love” do not add any significant modification or transformation to the chord progression and harmonic rhythm of the synth piano and bass synth parts that already existed in “Laxed”. Rather, the chord progression and harmonic rhythm in “Savage Love” are copied from “Laxed”, and as shown in the section on Prior Art below, any changes represent standard and common practices.

**II. C. Rhythm**

26. As shown below, outside of the Pre-chorus sections in “Savage Love”, most of the rhythms in “Savage Love” are based on and copy the drums rhythms and the melodic rhythms in the synth sax melodies in “Laxed”.

27. First, “Laxed” and “Savage Love” have an identical tempo (i.e., performance speed) of 150 BPM (beats per minute). Thus, the tempo in “Laxed” was not modified in “Savage Love”.

28. Second, the melodic rhythms (i.e., the rhythmic durations and metric placements) of the synth sax melody at 0:53 of “Laxed” and the instrumental melody in the Introduction of “Savage Love” are identical as shown in Musical Example 10 below.

29. Third, the melodic rhythms of the synth sax melody at 0:53 of “Laxed” and the “hook” vocal melody (i.e., the most memorable part of the song) in the Chorus of “Savage Love” are almost identical as shown in Musical Example 11 below.

30. Fourth, the kick and snare drums rhythms in “Laxed” and “Savage Love” are almost identical as shown in Musical Example 12 below.

31. The basic underlying rhythm in the Pre-chorus of “Savage Love” represents a departure from the rhythm in the rest of the song. The rhythm in the Pre-chorus is straight eighth notes rather than “swung”[19] eighth notes and finger snaps on

[19] “Swung” eighth-notes have uneven durations as compared with straight eighth-notes which evenly divide a beat into two equal eighth notes. (See “swing” in *Harvard*, p. 852.)

25. It is untrue that Plaintiff's guitar parts do not modify the chord progression of *LSB*, because Plaintiff plays an EbM(add6) chord for the Intro, Pre-Choruses, Choruses, and Bridge (77% of the song), modifying the song's chord progression, and even scaffolding the vocal melody (see my report for further discussion).

26. I disagree; to take but one example, we saw above in ¶ 21 how the *SL* Intro bass rhythms bore a low similarity to the *LSB* bass rhythms.

27-30. No disagreement.

Ethan@EthanLustig.com
EthanLustig.com/Forensic-Musicology

beat 3. However, as shown above, the sustained notes in the rhythm of the bass guitar in the Pre-choruses of "Savage Love" are not at all a significant departure from the rhythm of the synth bass of "Laxed" and represent a commonplace rhythm in bass parts. In addition, the harmonic rhythm is the same in the Pre-choruses of "Savage Love" and "Laxed".

32. Outside of the Pre-chorus of "Savage Love", there are drum/timbale fills in "Savage Love" at 1:03-1:06, 1:54-1:57, and 2:22 that don't have a parallel in "Laxed". There is also an eighth-note tambourine part (e.g., at 1:06) and an eighth- and quarter-note shaker part (e.g., at 1:06) that are not in "Laxed". None of these changes in "Savage Love" represent significant or unusual modifications or transformations to the rhythm in "Laxed" and none of these changes are in the music performed by Plaintiff.

**MUSICAL EXAMPLE 10**
**"Laxed" Synth Sax Melody at 0:53 /**
**"Savage Love" Instrumental Melody (Introduction)**

31. Here Dr. Ferrara states, and I very much concur, that the Pre-Chorus rhythm is fundamentally different from the rest of the song's rhythm. I would add that it's no coincidence that this section is precisely where Plaintiff is the sole instrumentalist in *SL*, as *LSB* is entirely muted in the Pre-Choruses. However, I disagree with his claim that Plaintiff's bass rhythm in the Pre-Choruses is "not at all a significant departure from" the *LSB* bass. (See ¶ 23 above).

32. No disagreement.



**MUSICAL EXAMPLE 11**

**“Laxed” Synth Sax Melody at 0:53 /**

**“Savage Love” Vocal Melody (Choruses)**

Ethan@EthanLustig.com
EthanLustig.com/Forensic-Musicology

**MUSICAL EXAMPLE 12**

**"Laxed" / "Savage Love"**

**Drums and Percussion**

Ethan@EthanLustig.com
EthanLustig.com/Forensic-Musicology

33. In summary, the rhythm in "Savage Love" is based on and copies: (1) an identical tempo from "Laxed", (2) the melodic rhythm in the synth sax melody at 0:53 of "Laxed" in the melodic rhythms in the instrumental part in the "Savage Love" Introduction, (3) the melodic rhythm in the synth sax melody at 0:53 of "Laxed" in the melodic rhythms in the "hook" vocal melody in the Chorus of "Savage Love", and (4) the kick and snare drums rhythms from "Laxed" in the kick and snare drum rhythms in "Savage Love". While the basic underlying rhythm in the Pre-choruses of "Savage Love" represents a departure from the rhythm in the rest of the song, including a change from swung eighth-notes to straight eighth notes, (1) changing from "swung" eighth-notes to "straight" eighth-notes is commonplace, (2) the rhythm of the bass guitar in the Pre-choruses of "Savage Love" is not at all a significant departure from the rhythm of the synth bass of "Laxed", and (3) the harmonic rhythm in the Pre-choruses of "Savage Love" and "Laxed" are the same as and are copied from "Laxed".

**II. D. Melody**

The Instrumental Melody in the **Introduction** of "Savage Love" Is Based on and Copies the Synth Sax Melody in "Laxed"

34. As shown in Musical Example 10 above, 100% of the total of 48 notes are identical between the synth sax at 0:53 of "Laxed" and the instrumental melody in the Introduction of "Savage Love" in pitch, rhythmic duration, and metric placement (not including the 8 miniature "grace" notes which are also identical). The chord progression and the harmonic rhythm in "Savage Love" and "Laxed" are also identical. Thus, the instrumental melody and the harmony in the Introduction of "Savage Love" are based on and copy "Laxed".

The Vocal Melody in the **Verses** of "Savage Love" Is Based on and Copies the Synth Sax Melody in "Laxed"

35. As shown in the comparative transcription in Musical Example 13 below, the 16-bar vocal melody in the Verses of "Savage Love" is based on and copies the 16-bar synth sax melody at 0:15 in "Laxed". Out of a total of 109 notes (including two unpitched notes) in the Verse 1 melody of "Savage Love", the melodic rhythm (i.e.,

25

33. I do not think that the change from swung eighth notes to straight eighth notes is "commonplace" in this genre. It is unusual for a pop song to change grooves in the manner in which Plaintiff does in the Pre-Choruses, by departing from the swung/triplets feel that characterizes both *LSB* and *SL*, in favor of straight rhythms (see ¶¶ 26-30 of my report for a discussion).

34. No disagreement, except that the chord progression in the *SL* Introduction is modified where Plaintiff presents the EbM(add6) chord instead of *LSB*'s EbM chord.

35. Although I mostly agree with the transcription that Dr. Ferrara presents as Musical Example 13 (with some extremely minor differences—see Figure 5 from my report), I disagree with his methodology and his claim that the Verses' vocal melody "is based on and copies" the synth sax from *LSB*. In his Musical Example 13 there are 104 notes in the *LSB* synth sax, and 109 in the *SL* vocal,

rhythmic durations and metric placements) in the synth sax melody in “Laxed” is identical in ninety-one (91) notes.[20] Slight and fragmentary changes of corresponding notes include: (a) one note in bar 2, (b) two notes in bar 4, (c) the duration of one note in bar 5, (d) the duration of one note in bar 7, (e) one note in bar 10, (f) three notes in bar 12, (g) the duration of one note in bar 13, (h) the duration of one note in bar 15, and (i) 5 notes in bar 16. As to the pitches and as identified with connecting detached lines, twelve of the 16 bars have at least two identical corresponding pitches that occur on the same metric placements, and 7 of the 16 bars have at least three identical corresponding pitches that occur on the same metric placements.

[20] The melody in Verse 2 (at 1:19) is slightly less similar to the instrumental melody at 0:15 in “Laxed” and is only 8 bars (not 16 bars) in duration, so the statistics in paragraph 35 above only apply to Verse 1. Nonetheless, like the 16-bar Verse 1 melody, the 8-bar vocal melody in Verse 2 of “Savage Love” is based on and copies the synth sax melody at 0:15 in “Laxed”.

26

for an average of 106.5 notes. Out of those 106.5 notes, 100 of them occur at the same rhythmic slots—that is, they have identical rhythms—yielding a rhythmic similarity percentage of 94% (in fact, even more than the 83% (91/109) that he claims, under a method which is not musicological standard practice [see ¶ 21 above]). Therefore, it is not in dispute that the *rhythms* of the Verses' vocal melody are highly similar to the synth sax's rhythm as at 0:15 of *LSB*. However, as Dr. Ferrara himself shows, in terms of *pitch*, there are only 34 identical pitches (shown by dashed lines in his Musical Example 13), constituting a pitch similarity of only 32% (34/106.5)—a metric which he conveniently does not discuss. Clearly, then, there is little pitch similarity between the *LSB* sax and the *SL* Verse melody. What, then, is the source of the pitches in the *SL* Verses? In my report (¶¶ 20-21), I demonstrate how the Verse pitches were in fact determined by Plaintiff's electric guitar

decisions, and how the recording chronology bears this

out also.



The Vocal Melody in the **Pre-choruses** of "Savage Love" Is Based on and Copies the Synth Sax Melody in "Laxed"

36. As shown in Musical Example 14 below, the 8-bar vocal melody in the Pre-choruses of "Savage Love" is based on and copies the 8-bar sax synth melody at 0:02 in "Laxed". The melodic similarities include: (a) the first note of the first phrase is "C", (b) the first note of bar 2 is "F", (c) the last note of bar 2 is "G", (d) the last note of the first phrase is "Eb", (e) there is an "Ab" on beat 3 of bar 4 which is the only melodic note in bar 4, (f) the pitches in bar 5 are identical, (g) the pitches on beats 1 and 3 of bar 6 are identical, (h) there is an "F" on the downbeat of bar 7, (i) the first articulated pitch in bar 8 (omitting the grace note in "Laxed") is "D", and (j) the last note is "Bb".

**MUSICAL EXAMPLE 14**
**"Laxed" Synth Sax Melody – at 0:02 /**
**"Savage Love" Vocal Melody (Pre-choruses)**

28

36. For his Musical Example 14, I would have liked for Dr. Ferrara to calculate an objective, note-for-note similarity percentage, which can be demonstrated using his own transcription (my added red boxes show identical notes):

The Vocal Melody in the **Choruses** of "Savage Love" Is Based on and Copies the Synth Sax Melody in "Laxed"

37. As shown in Musical Example 11 above (in the section on "Rhythm") and copied immediately below as Musical Example 15 (to facilitate the reading thereof), the 8-bar vocal melody in the Chorus of "Savage Love" is based on and copies the 8-bar synth sax melody at 0:53 in "Laxed". Out of a total of forty-six (46) pitched notes in the vocal melody in the "Savage Love" Chorus, thirty-seven (37) notes are identical in pitch, rhythmic duration, and metric placement (as shown with straight vertical connecting lines) and an additional four (4) notes are identical in pitch (as shown with slanted connecting lines) as compared to the synth sax melody in "Laxed". Slight differences include: (a) an isolated, extra note respectively in bars 1, 3, and 5 in "Laxed", (b) an isolated pitch in bar 4, (which is unpitched in "Savage Love"), (c) two notes in bar 7 in "Laxed", (d) a rest and an unpitched note in bar 7 in "Savage Love", and (f) a pitch in bar 8. In addition to the significant melodic similarities, the chord progression and the harmonic rhythm are identical.

29

[8] 19.5 is the average of 15 notes in the synth sax and 24 notes in the voice. Grace notes are omitted.

With 7/19.5 identical notes, the objective similarity is only 36%.[8] Therefore, to say that the Pre-Chorus vocal is "based on and copies" the synth sax melody, is a stretch.

37. No disagreement, except for the claim that the chord progression is identical between *LSB* and the *SL* chorus, because the latter uses Plaintiff's EbM(add6) chord which modifies the chord progression.

**MUSICAL EXAMPLE 15**
**"Laxed" Synth Sax Melody at 0:53 /**
**"Savage Love" Vocal Melody (<u>Choruses</u>)**

<u>A Portion of the Vocal Melody in the **Post-choruses** of "Savage Love" Is Based on and Copies the Synth Sax Melody in "Laxed"</u>

38. As shown in Musical Example 16 below, the repeating "your savage love" title lyric in the Post-chorus sections of "Savage Love" copies three notes from the synth sax melody in "Laxed". The comparative transcription in Musical Example 16 below

30

38. Musical Example 16 contains a titling error; it should say "Post-choruses", not "Pre-choruses". Other than this error, I do not disagree with the content of his paragraph; with the exception that, I think it is no coincidence that the vocal melody could have gone to Bb (as in *LSB*) but instead went to C, which is exactly the note that Plaintiff's electric guitar part emphasizes at that moment (see Figure 13 from my report).

shows the identity of the last three notes in bar 8 of Section C1 of "Laxed" (see the structural chart on page 6 above) with the three "upbeat"[21] notes preceding the first bar of the Post-chorus in "Savage Love". Hence, these three identical (in pitch, rhythmic duration, and metric placement) notes occur in the same melodic phrase structure in "Laxed" and "Savage Love". The corresponding fourth notes (on beat 1) continue the melodic contour (or shape) with a descent in pitch from the third corresponding notes. Hence, the melodic contour of these four notes is "up" (from the first note to the second note), "down" (from the second note to the third note), and "down" (from the third note to the fourth note). Following the first bar in the Post-chorus of "Savage Love", there are two iterations of "Your savage la, la, love", both of which start with the same three notes. Moreover, the last bar of the Post-chorus ("'Cause I still want that") in "Savage Love" is based on the last bar of the Chorus vocal melody in "Savage Love", which is in turn based on the synth sax melody in "Laxed" (see bar 8 of Musical Example 15 above).

**MUSICAL EXAMPLE 16**
**"Laxed" Synth Sax Melody at 1:06 /**
**"Savage Love" Vocal Melody (<u>Pre-choruses</u>)**

39. In summary, the instrumental and vocal melodies in "Savage Love" are based on and copy the synth sax melody in "Laxed". This is the case with the vocal melodies in the Verses, Pre-choruses, Choruses, and Post-choruses in "Savage Love" as well as the instrumental melody in the Introduction in "Savage Love". As shown

[21] An "upbeat" consists of "One or several notes that occur before the first bar line…of a work or phrase…." *Harvard*, p. 936.

39. While I agree that some aspects of *SL* are based on *LSB*, I do not agree with the general blanket statement that "the instrumental and vocal melodies in "Savage Love" are based on and copy the synth sax melody in "Laxed"." Dr. Ferrara claims that the vocal melodies in the Verses, Pre-Choruses, Choruses, and Post-Choruses in *SL* are "based on and copy" the synth sax from *LSB*. Regarding the Choruses and Post-Choruses, I agree (see ¶ 37 of my report). However, I disagree with the claim that the vocals in the Verses and Pre-Choruses are based on the *LSB* synth sax. In the Verses, the pitches of the *SL* vocal melody are only 32% similar to the *LSB* synth sax (see ¶ 35 above). In the Pre-Choruses, the objective note-for-note similarity is only 36% (see ¶ 36 above). Dr. Ferrara also claims here that the harmonies in the *SL* Verses, Pre-Choruses, Choruses, and Post-Choruses are "based on and copy" harmonies from *LSB*. I reiterate that as shown in my report, in the Intro, Pre-Choruses,

above, the vocal melody and harmony in the Verses of "Savage Love" are based on and copy the sax synth melody and harmony in "Laxed" at 0:15.  The vocal melody and harmony in the Pre-choruses of "Savage Love" are based on and copy the synth sax melody and harmony in "Laxed" at 0:02.  The vocal melody and harmony in the Choruses of "Savage Love" are based on and copy the synth sax melody and harmony in "Laxed" at 0:53.  The vocal melody and harmony in the Post-choruses of "Savage Love" are based on and copy the synth sax melody and harmony at 1:06 in "Laxed".

**II. E.   Lyrics**

40.    As noted earlier in this report, the only vocal lyric in "Laxed" is the "producer tag" "685 baby, let's go" at 0:12 and 1:07.  A digital sample of the producer tag from "Laxed" is copied and appears at 0:13 in the Introduction section of "Savage Love".

41.    Thus, outside of the "Laxed" producer tag, there is no evidence that any of the lyrics in "Savage Love" are based on or copy "Laxed".  Moreover, there are no lyrics in the music performed by Plaintiff.

**II. F.   Summary of Analytical Findings**

42.    In summary, regarding the **harmony**, the electric guitar and acoustic guitar as well as the bass guitar in "Savage Love" do not add any significant modification to the harmonies or bass synth parts that already existed in "Laxed".  Rather, the harmony and bass guitar parts in "Savage Love" are based on and copy the harmony and synth bass in "Laxed" and, as shown in the section on Prior Art below, any changes represent common and standard practices.

43.    As to **rhythm**, "Savage Love" is based on and copies: (1) an identical tempo from "Laxed", (2) the melodic rhythm in the synth sax melody at 0:53 of "Laxed" in the melodic rhythms in the instrumental part in the "Savage Love" Introduction, (3) the melodic rhythm in the synth sax melody at 0:53 of "Laxed" in the melodic rhythms in the "hook" vocal melody in the Chorus of "Savage Love", and (4) the kick and snare drums rhythms from "Laxed" in the kick and snare drum rhythms in "Savage Love".  While the underlying rhythm in the Pre-choruses of "Savage Love" represents a departure from

32

Choruses, and Bridge (77% of *SL*), Plaintiff composes an EbM(add6) chord (not present in *LSB*), which modifies the harmonic structure of *SL*.

40. See ¶ 11 above.

41. No fundamental disagreement.

42. I disagree. The harmony of *SL* is distinct due to Plaintiff's EbM(add6) chord (see my report), and the bass work is distinct (see ¶¶ 21-23 above). See also ¶ 47 below.

43. I agree that *SL* and *LSB* have the same tempo, that the *SL* intro synth and "hook" vocal melodic rhythm is based on *LSB*, and that the kick and snare drum rhythms of *SL* are based on *LSB*. I also agree that the Pre-Choruses' rhythms are, as Dr. Ferrara here says, "a departure from the rhythm in the rest of the song, including a change from swung eighth-notes to straight eighth notes". I disagree, however, with the claim that this change from swung to straight is "commonplace". Dr. Ferrara does not demonstrate via prior art analysis

the rhythm in the rest of the song, including a change from swung eighth-notes to straight eighth notes, (1) changing from swung eighth-notes to straight eighth-notes is commonplace, (2) the rhythm of commonplace sustained notes in the bass guitar in the Pre-choruses of "Savage Love" is not at all a significant departure from the rhythm of the synth bass of "Laxed", and (3) the harmonic rhythm in the Pre-choruses of "Savage Love" and "Laxed" is the same and copied from "Laxed".

44. The **melodies** in "Savage Love" are based on and copy the synth sax melodies in "Laxed". This is the case with the vocal melodies in the Verses, Pre-choruses, Choruses, and Post-choruses in "Savage Love" as well as the instrumental melody in the Introduction in "Savage Love".

45. The only vocal **lyric** in "Laxed" is the "producer tag" "685 baby, let's go" at 0:12 and 1:07. A digital sample of the producer tag from "Laxed" is copied at 0:13 in the Introduction section of "Savage Love". Thus, outside of the "Laxed" producer tag, there is no evidence that any of the lyrics in "Savage Love" draw from, are based on, or copy "Laxed". Additionally, there are no lyrics in the music performed by Plaintiff.

46. As shown above, the vocal melody and harmony in the Verses of "Savage Love" are based on and copy the sax synth melody and harmony in "Laxed" at 0:15. The vocal melody and harmony in the Pre-choruses of "Savage Love" are based on and copy the synth sax melody and harmony in "Laxed" at 0:02. The vocal melody and harmony in the Choruses of "Savage Love" are based on and copy the synth sax melody and harmony in "Laxed" at 0:53. The vocal melody and harmony in the Post-choruses of "Savage Love" are based on and copy the synth sax melody and harmony at 1:06 in "Laxed".

**III. PRIOR ART**

47. As explained above in the section on Harmony, 100% of the chords embodied in the music performed by Plaintiff in "Savage Love" are based on the harmony in "Laxed". As explained above in the section on Melody, all of the instrumental and vocal melodies in "Savage Love" are based on melodies in "Laxed". As such, none of Plaintiff's performances contribute anything new to the harmony or

33

that such a change is commonplace. I disagree with the claim that the *SL* bass rhythms in the Pre-Choruses are not a significant departure from the *LSB* bass (see ¶ 23 above). I agree with the claim that the harmonic rhythm in the Pre-Choruses of *SL* is the same as *LSB*, with the caveat that the chord progression is different between the two songs due to Plaintiff's reharmonization via the EbM(add6) chord.

44. I agree that the *SL* Intro synth melody and Choruses' (and what he calls Post-choruses') vocal melody is based on *LSB*. I disagree with the rest: the vocal melody in the *SL* Verses and Pre-Choruses is not simply "based on" nor a "copy" of *LSB*.

45. See ¶ 11 above.

46. This is all addressed above.

melody in "Savage Love". As this section will show, the rhythms embodied in the guitar and bass parts performed by Plaintiff consist of (a) commonplace practices and rhythms that can be found in prior art, (b) rhythms that are found in "Laxed", and/or (c) elements that do not represent significant modifications of the rhythm of "Savage Love". Since the harmony embodied in Plaintiff's performances copies that of "Laxed", their **harmonic content** is filtered out when considering their contribution to the entirety of "Savage Love". The analyses below will also show that the **rhythmic content** of Plaintiff's performances is also filtered out of consideration.

The Guitar Part in the **Introduction** of "Savage Love" Is Based on and Copies "Laxed" and Consists of a Commonplace Rhythm

48. As shown in Musical Example 1 above, and copied below as Musical Example 17, the electric guitar chords played in the Introduction of "Savage Love" copy the synth piano chords played "Laxed". (As noted earlier in this report, the acoustic guitar is absent during the Introduction of "Savage Love".) In both songs, the chords are played (i.e., strummed) on beats 2 and 4. The chord progression and harmonic rhythm are identical. The only difference is in the spacing between the pitches in the chords which is not remotely a significant modification.

34

47. I disagree. 100% of the chords performed by Plaintiff are not based on *LSB*, since Plaintiff plays a new harmony (EbM (add6)) in much of *SL*. I also disagree that all instrumental and vocal melodies in *SL* are based on *LSB*. Both points are discussed above and in my report. Dr. Ferrara claims that this section will show that the guitar and bass rhythms are "commonplace" in prior art, however I strongly disagree with his methodology and I differ in opinion regarding many of his transcriptions (see below). He also claims that Plaintiff's harmonies copy *LSB*, which is not true due not only to Plaintiff's contribution to the harmony via the EbM (add6) chord, but also because Plaintiff's guitar voicings are unique, not previously found in *LSB*, not demonstrated to exist previously in a single prior art composition, and were even determinative of the vocal melody in parts of *SL* (see ¶¶ 16-17, 20 above and see my report).

48. See ¶ 16 above.

**MUSICAL EXAMPLE 17**
**"Laxed" Synth Piano at 0:02 /**
**"Savage Love" Electric Guitar (Introduction)**

49. In Musical Example 18 below, notes in the "Savage Love" Introduction guitar part that have the same pitch class (i.e., pitches that share the same letter name that are octaves apart) as rhythmically corresponding notes in the "Laxed" synth piano part are filtered out using red **X**s. After these similar notes and chords are **X**d out, zero notes and chords in the guitar part in the Introduction of "Savage Love" remain.

35

49. I disagree with Dr. Ferrara's filtering criteria. Plaintiff's guitar voicings in the Intro are markedly different than *LSB*'s piano and cannot simply be filtered out as "similar chords" (as he tries to do in his Musical Example 18). In addition, see ¶ 16 above.

**MUSICAL EXAMPLE 18**
**"Laxed" Synth Piano at 0:02 /**
**"Savage Love" Electric Guitar (Introduction)**

50. In addition, the chord progression, harmonic rhythm, and strummed rhythm pattern in the electric guitar part in the Introduction of "Savage Love" is found in prior art. Musical Example 19 below is a comparative transcription of the electric guitar in the Introduction of "Savage Love" and the acoustic guitar in Luis Fonsi's "Despacito", which was a massive international hit in 2017. In both songs, the chords are played (strummed) on beats 2 and 4. The harmony and harmonic rhythm are identical. The only difference is in the spacing between the pitches in the chords which is not remotely significant. In keeping with musicological practices, "Despacito" has been transposed to the same key of C minor to facilitate the comparison.

Ethan@EthanLustig.com
EthanLustig.com/Forensic-Musicology

**MUSICAL EXAMPLE 19**

**"Despacito" Acoustic Guitar (Verse) /**

**"Savage Love" Electric Guitar (Introduction)**

51. In Musical Example 20 below, notes in the "Savage Love" Introduction guitar part that have the same pitch class as rhythmically corresponding notes in the "Despacito" acoustic guitar part are filtered out using red **X**s. After these similar notes and chords are **X**d out, zero notes and chords in the guitar part in the Introduction of "Savage Love" remain.

50. I disagree with bars 3-6 of Dr. Ferrara's transcription of "Despacito" (his Musical Example 19). Below is my transcription:

I also disagree with his claim that the harmony is identical between "Despacito" and Plaintiff's electric guitar in the *SL* Intro (see ¶ 16 above).

51. Even if they *were* the same harmonies (which they are not), I disagree with his filtering methodology because the voicings are different (see ¶ 49 above).

**MUSICAL EXAMPLE 20**
**"Despacito" Acoustic Guitar (Verse) /**
**"Savage Love" Electric Guitar (<u>Introduction</u>)**

52. Thus, after filtering out the electric guitar chords in the Introduction of "Savage Love" that are similar to the synth piano chords in "Laxed" and/or to guitar chords in prior art, zero percent of Plaintiff's Introduction guitar part remains.

<u>The Guitar Part in the **Verses** of "Savage Love" Is Based on and Copies "Laxed" and Consists of Commonplace Rhythms</u>

53. As shown in Musical Example 2 above, and copied below as Musical Example 21, the "doubled" (see footnote 16 above) acoustic and electric guitar chords played in the Verses of "Savage Love" copy the chord progression and harmonic rhythm in "Laxed". The only difference is in the spacing between the pitches in the chords which is not remotely a significant modification. Rhythmically, the strumming pattern of the guitar in the Verses of "Savage Love" grows out of and practically doubles the kick/snare drum rhythm in "Laxed". The same kick/snare rhythm in "Laxed" is sampled

52. I disagree; Plaintiff's Intro guitar in *SL* cannot be filtered out based on the *LSB* piano chords nor on "Despacito" (see preceding paragraphs).

53. I disagree with Dr. Ferrara's claim that the spacing difference is "not remotely a significant modification" (see ¶ 17 above). I also disagree with the claim that, just because Plaintiff's guitar co-occurs with the *LSB* drums at times, this somehow makes Plaintiff's rhythmic contributions "redundant and minimal" (see also ¶ 54 below).

in the Verses of "Savage Love". As a result, the rhythm of the guitar in the Verses of "Savage Love" is in sync with the sampled drums, making its rhythmic contribution to "Savage Love" redundant and minimal.

**MUSICAL EXAMPLE 21**
**"Laxed" Synth Piano and Drums at 0:02 /**
**"Savage Love" Acoustic and Electric Guitars (Verses)**

54. In Musical Example 22 below, notes in the "Savage Love" Verse guitar part that are part of the chords copied from "Laxed" and that line up rhythmically with the kick/snare pattern in "Laxed" (which is also sampled in the Verses of "Savage Love")

39

54. I disagree with the filtering methodology. The actual rhythmic similarity percentage between the kick/snare and Plaintiff's guitar in the *SL* Verses is 77% (20/26 notes).[9] Furthermore, it is misleading to conflate percussive elements with harmonic ones, and it should be observed that, as I mention in my report (¶ 18), Plaintiff's syncopated guitar rhythms in the Verses barely co-occur with the simple offbeat *LSB* piano rhythms, contributing fundamentally new rhythms to the harmonic domain of *SL*. Taking Dr. Ferrara's own transcription (his Musical Example 21), only 4 out of 18 rhythms are shared between the guitar and piano, which is a rhythmic similarity percentage of 22%[10]. See below (red dashed lines show rhythmic alignments):

[9] 26 is the average of 32 notes in the kick/snare and 20 chords in Plaintiff's guitar.

[10] 18 is the average of 16 chords in the piano and 20 chords in Plaintiff's guitar.

are Xd out. After these notes are filtered out, none of the guitar part in the Verse of "Savage Love" remains.

**MUSICAL EXAMPLE 22**
**"Laxed" Synth Piano and Drums at 0:02 /**
**"Savage Love" Acoustic and Electric Guitars (Verses)**

55. Besides growing out of and doubling the kick/snare pattern in "Laxed", the Verse guitar part in "Savage Love" consists of commonplace rhythms. The two-chord syncopated figure in the odd-numbered bars is known as a "Charleston" rhythm, named

Additionally, there is the reality that Plaintiff's guitars in the *SL* Verses are in fact further complicated by ghost notes, as shown above in ¶ 17.

55. See ¶ 17 above.

after the 1923 song of the same name.[22] The three-chord syncopated figure in the even-numbered bars is called a "tresillo", a commonplace musical building block in Latin music.

56. Musical Example 23 below is a comparative transcription of the guitar part in the Verse of "Savage Love" and a "Charleston" rhythm pattern found on page 89 of Jody Fisher's (1996) *Rhythm Guitar Encyclopedia*, excerpts of which are attached as **Visual Exhibit A**. In Musical Example 23 below, the "Charleston" pattern is repeated for the duration of the 8-bar Verse pattern in "Savage Love". As shown below, both chords in the even-numbered bars and two of the three chords in the odd-numbered bars of "Savage Love" line up exactly with the commonplace "Charleston" pattern.

**MUSICAL EXAMPLE 23**

**"Charleston" Pattern #1 in Fisher, p. 89 /**

**"Savage Love" Acoustic and Electric Guitars (Verses)**

57. In Musical Example 24 below, notes in the "Savage Love" Verse guitar part that are part of the chords copied from "Laxed" and that line up rhythmically with

22 See "Charleston" in *Harvard*, p. 163.

41

56-57. In his Musical Examples 23-32, Dr. Ferrara has now conveniently omitted the fact that Plaintiff's guitars in the *SL* Verses use a "swung" rhythm (triplets). Indeed, we have no disagreement regarding this fact; Dr. Ferrara himself uses ♫ = ♩♪ (3) to denote this elsewhere in his report (for example, his Musical Example 2). Once we remember that Plaintiff's guitars use triplets while the "Charleston" example does not, the rhythmic similarity percentage between Plaintiff's guitars in the *SL* Verses and the "Charleston" example shown is only 44% (8/18)[11]. See below:

11 18 is the average of 16 notes in the "Charleston" example and 20 chords in Plaintiff's guitar.





the “Charleston” pattern in Fisher are **X**d out. After the rhythmic similarities are **X**d out, only one isolated chord in each even-numbered bar of “Savage Love” remains.

**MUSICAL EXAMPLE 24**
**“Charleston” Pattern #1 in Fisher, p. 89 /**
**“Savage Love” Acoustic and Electric Guitars (Verses)**

58. The tresillo pattern in the even-numbered bars of the “Savage Love” Verse guitar part is a commonplace building block, especially in Latin music. In Musical Example 25 below, the guitar part in the Verse of “Savage Love” is compared with a “Bossa Nova-Brazil” (#1) rhythm pattern found on page 42 of Jody Fisher’s *Rhythm Guitar Encyclopedia* attached as **Visual Exhibit A**. In the comparative transcription immediately below, the “Bossa Nova-Brazil” pattern is repeated for the duration of the 8-bar Verse pattern in “Savage Love”. As shown below, the chords in the even-numbered bars of “Savage Love” line up exactly with the chords in the even-numbered bars of the commonplace “Bossa Nova” pattern.

Ethan@EthanLustig.com
EthanLustig.com/Forensic-Musicology

**MUSICAL EXAMPLE 25**

**"Bossa Nova-Brazil" Pattern #2 in Fisher, p. 42 /**

**"Savage Love" Acoustic and Electric Guitars (<u>Verses</u>)**

59. In Musical Example 26 below, notes in the "Savage Love" Verse guitar part that are part of the chords copied from "Laxed" and that line up rhythmically with the "Bossa Nova" pattern in Fisher are Xd out. After the rhythmic similarities are Xd out, only the commonplace "Charleston" rhythm in the odd-numbered bars of "Savage Love" remains.

58-59. As above, Plaintiff's guitars in the *SL* Verses in fact use triplets while the "Bossa Nova" example does not. Therefore, the rhythmic similarity percentage between Plaintiff's guitars in the *SL* Verses and the "Bossa Nova" example shown is only 40% (8/20).[12] See below:

[12] 20 is the average of 20 notes in the "Bossa Nova" example and 20 chords in Plaintiff's guitar.

**MUSICAL EXAMPLE 26**
**"Bossa Nova-Brazil" Pattern #2 in Fisher, p. 42 /**
**"Savage Love" Acoustic and Electric Guitars (Verses)**





    60.    Musical Example 27 below is a comparative transcription of the guitar part in the Verse of "Savage Love" and a "Mambo-Cuba" (#1) rhythm pattern found on page 58 of Jody Fisher's *Rhythm Guitar Encyclopedia* attached as **Visual Exhibit A**. In the comparative transcription, the "Mambo-Cuba" pattern is repeated for the duration of the 8-bar Verse pattern in "Savage Love". As shown below, the chords in the even-numbered bars of "Savage Love" line up exactly with the chords in the even-numbered bars of the commonplace "Mambo" pattern.

Ethan@EthanLustig.com
EthanLustig.com/Forensic-Musicology

**MUSICAL EXAMPLE 27**
**"Mambo-Cuba" Pattern #1 in Fisher, p. 58 /**
**"Savage Love" Acoustic and Electric Guitars (Verses)**

61. In Musical Example 28 below, notes in the "Savage Love" Verse guitar part that are part of the chords copied from "Laxed" and that line up rhythmically with the "Mambo" pattern on page 58 of the Fisher guitar book in **Visual Exhibit A** are Xd out. After the rhythmic similarities are Xd out, only the commonplace "Charleston" rhythm in the odd-numbered bars of "Savage Love" remains.

45

[13] 20 is the average of 20 notes in the "Mambo-Cuba" example and 20 chords in Plaintiff's guitar.

60-61. As above, Plaintiff's guitars in the *SL* Verses in fact use triplets while the "Mambo-Cuba" example does not. The rhythmic similarity percentage between Plaintiff's guitars in the *SL* Verses and the "Mambo-Cuba" example shown is only 40% (8/20):[13]

**MUSICAL EXAMPLE 28**

**"Mambo-Cuba" Pattern #1 in Fisher, p. 58 /**

**"Savage Love" Acoustic and Electric Guitars (Verses)**





62.     An example of the commonplace tresillo rhythm is the synthesizer part in Sia's "Cheap Thrills", a hit in 2013 (https://www.youtube.com/watch?v=J1b22I1kFKY). Musical Example 29 below is a comparative transcription of the guitar part in the Verse of "Savage Love" and the synthesizer part in the Introduction of "Cheap Thrills".  In keeping with musicological practices, the key of "Cheap Thrills" is transposed to C minor, and the rhythmic values are doubled to facilitate the comparison.  As shown below, every chord in the Verses in "Savage Love" lines up with one of the synthesizer chords in "Cheap Thrills".

**MUSICAL EXAMPLE 29**

**"Cheap Thrills" Synthesizer (Introduction) /**

**"Savage Love" Acoustic and Electric Guitars (Verses)**

63. In Musical Example 30 below, notes in the "Savage Love" Verse guitar part that are part of the chords copied from "Laxed" and that line up rhythmically with the synthesizer part in "Cheap Thrills" are Xd out. After the rhythmic similarities are Xd out, none of the guitar part in the Verse of "Savage Love" remains.

47

62-63. As above, Plaintiff's guitars in the *SL* Verses in fact use triplets while "Cheap Thrills" does not. The rhythmic similarity percentage between Plaintiff's guitars in the *SL* Verses and "Cheap Thrills" is only 55% (12/22):[14]

[14] 22 is the average of 24 chords in "Cheap Thrills" and 20 chords in Plaintiff's guitar.

**MUSICAL EXAMPLE 30**

**“Cheap Thrills” Synthesizer (Introduction) /**

**“Savage Love” Acoustic and Electric Guitars (Verses)**

64. A guitar part that alternates between a tresillo rhythm and a Charleston rhythm can be found in En Vogue’s “My Lovin’ (You’re Never Gonna Get It)”, a hit in 1992 (https://www.youtube.com/watch?v=6zNPfCVhWFw). Musical Example 31 below is a comparative transcription of the guitar part in the Verse of “Savage Love” and the guitar part in “My Lovin’”. In keeping with musicological practices, the key of “My Lovin’” is transposed to C minor, and the rhythmic values are doubled to facilitate the comparison. As shown below, the even-numbered bars of “Savage Love” contain the same rhythm as the odd-numbered bars of “My Lovin’”, and the odd-numbered bars of “Savage Love” contain the same rhythm as the even-numbered bars of “My Lovin’”.

**MUSICAL EXAMPLE 31**

**"My Lovin' (You're Never Gonna Get It)" Electric Guitar (Introduction/Chorus) / "Savage Love" Acoustic and Electric Guitars (Verses)**

65. In Musical Example 32 below, the bars in "My Lovin'" are shifted to highlight the rhythmic similarities with "Savage Love". Notes in the "Savage Love" Verse guitar part that are part of the chords copied from "Laxed" and that line up rhythmically with the guitar part in "My Lovin'" are Xd out. As shown in the comparative transcription, every chord in "Savage Love" lines up with a chord in "My Lovin'". After the rhythmic similarities are Xd out, none of the guitar part in the Verse of "Savage Love" remains.

49

64. As above, Plaintiff's guitars in the *SL* Verses in fact use triplets while "My Lovin'" does not. The rhythmic similarity percentage between Plaintiff's guitars in the *SL* Verses and "My Lovin' " is only 40% (8/20):[15]

[15] 20 is the average of 20 chords in "My Lovin' " and 20 chords in Plaintiff's guitar.

**MUSICAL EXAMPLE 32**

**“My Lovin’ (You’re Never Gonna Get It)” Electric Guitar (Introduction/Chorus) / “Savage Love” Acoustic and Electric Guitars (<u>Verses</u>)**

66. Thus, after filtering out the acoustic and electric guitar chords in the Verses of “Savage Love” that are similar to the kick/snare rhythm in “Laxed” and/or to guitar chords in prior art, zero percent of Plaintiff’s Verse guitar parts remain.

<u>The Acoustic Guitar Part in the **Pre-choruses** of “Savage Love” Is Based on Generic Chord Spacings, Consists of Commonplace Strum Rhythms, and the Chord Progression and Harmonic Rhythm Are Copied from “Laxed”</u>

67. As shown in Musical Example 4 above, and copied below as Musical Example 33, the acoustic guitar chords played in the Pre-choruses of “Savage Love” copy the chord progression and harmonic rhythm in “Laxed”. The only difference is in the spacing between the pitches in the chords which, as shown below, is not remotely a significant modification.

50

65-66. In his Musical Example 32, Dr. Ferrara shifts the bars of "My Lovin'" to make them look more similar to Plaintiff's guitars in the *SL* verses. However, even with this speculative transformation that doesn't reflect the musical reality, the rhythmic similarity percentage here is still only 60% (12/20)[16] because Plaintiff's guitar rhythm in fact uses triplets (see ¶¶ 56-57 above).

67. See ¶ 19 above.

[16] 20 is the average of 20 chords in "My Lovin' " and 20 chords in Plaintiff's guitar.

**MUSICAL EXAMPLE 33**

**"Laxed" Synth Piano and Synth Brass at 0:02 /**

**"Savage Love" Acoustic Guitar (Pre-Choruses)**

68. With respect to the chord spacing (i.e. the arrangement of notes in each chord) used in the Pre-chorus acoustic guitar part in "Savage Love", each chord is played as a standard "barre chord". A barre chord is a commonplace guitar technique whereby the player's index finger depresses several strings across a single fret of the fretboard. Barre chord fingerings are moveable, meaning that the same fingering can be moved up and down the fretboard to create different chords. Barre chords are explained in detail in the excerpt from Schmid and Koch's (1977/2002) *Guitar Method*

51

68. No disagreement as to the fundamental facts. However, there is no correlation between playability and creativity. To give but one example, Mozart's Piano Sonata No. 16 (K. 545) is widely considered a masterpiece and yet is a highly playable, beginner-level piece.[17] Therefore, just because something is playable (i.e. "barre chords") on an instrument does not mean that it is necessarily "commonplace", especially when the unique combination of Plaintiff's chords and particular spacings are taken as a whole. It should be noted that Dr. Ferrara has not provided any prior art examples demonstrating Plaintiff's chord progression (Cm Ab Eb(add6) Bb), nor Plaintiff's particular chord spacings.

[17] "Though...simple in terms of...the demands it places on the performer, it is far from simple-minded. Rather it is a most remarkable work...it is on the one hand very simple, but on the other hand quite sophisticated." (David Beach, "Motive and structure in the *Andante* movement of Mozart's Piano Sonata K. 545", *Music Analysis* 3:3).

*Book 3* attached as **Visual Exhibit B**. In terms of the barre chord positions explained in the book:

- The Cm chord in "Savage Love" is based on a minor A-type barre chord, similar to the Bbm chord diagramed on page 31.
- The Ab chord in "Savage Love" is based on an E-type barre chord, similar to the F chord diagramed on page 24.
- The Eb chord in "Savage Love" is based on an A-type barre chord, similar to the Bb chord diagramed on page 28.
- The Bb chord in "Savage Love" is based on an E-type barre chord, similar to the F chord diagramed on page 24.

69. The eighth note chord on the first downbeat of the Pre-chorus of "Savage Love" represents a commonplace "slide" into the Cm chord. It does not affect the overall harmony and is barely audible in the final mix.

70. The strum rhythms used in the Pre-chorus acoustic guitar part in "Savage Love" represent commonplace guitar strumming rhythms. Similar rhythms can be found in method books and in prior art.

71. For example, in Musical Example 34 below, the acoustic guitar part in the Pre-chorus of "Savage Love" is compared with a "Dixie" rhythm pattern found on page 38 of Jody Fisher's *Rhythm Guitar Encyclopedia* (see **Visual Exhibit A**). In the comparative transcription, the "Dixie" pattern is repeated for the duration of the 8-bar Verse pattern in "Savage Love". In keeping with musicological practices, the rhythmic values of the "Dixie" pattern are doubled to facilitate a comparison. As shown below, the metric placement of the acoustic guitar chords in "Savage Love" is similar to the commonplace "Dixie" pattern.

52

69. I disagree with the claim that Plaintiff's unique eighth-note acoustic guitar slide in the Pre-Chorus (as shown at the beginning of Dr. Ferrara's Musical Example 33) is "barely audible in the final mix"—it is clearly audible, especially at the beginning of the first Pre-Chorus (0:41). As for the claim that the slide is "commonplace": Dr. Ferrara has not provided any prior art examples demonstrating this.

70-72. The rhythmic similarity percentage between Plaintiff's acoustic guitar in the *SL* Pre-Choruses and the "Dixie" example is only 67% (15/22.5).[18] See below:

[18] 22.5 is the average of 20 notes in the "Dixie" example and 25 chords in Plaintiff's guitar.

**MUSICAL EXAMPLE 34**
**"Dixie" Pattern #6 in Fisher, p. 8 /**
**"Savage Love" Acoustic Guitar (Pre-Choruses)**

72. In Musical Example 35 below, notes in the "Savage Love" Pre-chorus acoustic guitar part that are part of the chords copied from "Laxed" and that line up rhythmically with the "Dixie" pattern in Fisher are **X**d out. After the strum rhythm similarities are **X**d out, all that remains are the initial slide into the Cm chord, an isolated pitched chord in each of bars 2, 4, and 6, and muted strums in bars 2, 4, and 6.

Ethan@EthanLustig.com
EthanLustig.com/Forensic-Musicology

**MUSICAL EXAMPLE 35**

**“Dixie” Pattern #6 in Fisher, p. 8 /**

**“Savage Love” Acoustic Guitar (Pre-Choruses)**

73. In Musical Example 36 below, the acoustic guitar part in the Pre-chorus of “Savage Love” is compared with the acoustic guitar part in the Introduction of Supergrass’ “Late in the Day”, a single that charted at #18 on the OCC UK Singles Chart in 1997 (https://www.youtube.com/watch?v=v8HJRVpUHQI). In keeping with musicological practices, the key of “Late in the Day” is transposed to C minor, and the rhythmic values are doubled to facilitate a comparison. As shown below, the metric placement of the acoustic guitar chords in “Savage Love” is similar to “Late in the Day”.



74. In Musical Example 37 below, notes in the "Savage Love" Pre-chorus acoustic guitar part that are part of the chords copied from "Laxed" and that line up rhythmically with the acoustic guitar in "Late in the Day" are Xd out. After the strum rhythm similarities are Xd out, all that remains are the initial slide into the Cm chord and isolated muted strums in bars 2, 4, and 6.

55

73-74. I disagree with Dr. Ferrara's transcription of the acoustic guitar in "Late in the Day" (his Musical Example 36). Here is my notation of "Late in the Day" and Plaintiff's acoustic guitar for the *SL* Pre-Choruses, with dashed red lines showing simultaneous rhythmic events:

With 21 simultaneous rhythmic attacks between the two passages, out of 28 chords on average, the rhythmic similarity percentage between "Late in the Day" and

**MUSICAL EXAMPLE 37**

**"Late in the Day" Acoustic Guitar (Introduction) /**

**"Savage Love" Acoustic Guitar (Pre-Choruses)**

75. In Musical Example 38 below, the acoustic guitar part in the Pre-chorus of "Savage Love" is compared with the acoustic guitar part in the Chorus of Colbie Caillat's "Try", a single that charted at #4 on the *Billboard* Adult Contemporary chart in 2014 (https://www.youtube.com/watch?v=GXoZLPSw8U8). In keeping with musicological practices, the key of "Try" is transposed to C minor, and the rhythmic values are doubled to facilitate a comparison. As shown below, the metric placements of the acoustic guitar chords strum pattern in "Savage Love" is similar to "Try".

56

Plaintiff's acoustic guitar in the *SL* Pre-Choruses is only 75%.[19]

[19] 28 is the average of 31 chords in "Late in the Day" and 25 chords in Plaintiff's guitar.

LUSTIG - RE: DEFENSE'S EXPERT REPORT 70

**MUSICAL EXAMPLE 38**
**"Try" Acoustic Guitar (Chorus) /**
**"Savage Love" Acoustic Guitar (Pre-Choruses)**

"Try"
1:50
(note values doubled)
"Savage Love"
0:41
Cm7
Ab(sus2)
Cm
Ab
Eb
Bb
N.C.

76. In Musical Example 39 below, notes in the "Savage Love" Pre-chorus acoustic guitar part that are part of the chords copied from "Laxed" and that line up rhythmically with the acoustic guitar in "Try" are Xd out. After the strum rhythm similarities are Xd out, all that remains are the initial slide into the Cm chord, isolated pitched chords in bars 2, 4, and 6, and isolated muted strums in bars 2, 4, and 6.

57

75-76. I disagree with Dr. Ferrara's transcription of the acoustic guitar rhythms in "Try" (his Musical Example 38). Here is my transcription, along with red dashed lines showing rhythmic alignments with Plaintiff's *SL* acoustic guitar in the Pre-Choruses:

"Try" - Acoustic guitar rhythm at 1:50
Cm
Ab
Savage Love - Acoustic guitar at Pre-Choruses

"Try" - Acoustic guitar rhythm at 1:50
EbM(add6)
Bb
N.C.
Savage Love - Acoustic guitar at Pre-Choruses

Ethan@EthanLustig.com
EthanLustig.com/Forensic-Musicology

**MUSICAL EXAMPLE 39**

**"Try" Acoustic Guitar (Chorus) /**

**"Savage Love" Acoustic Guitar (Pre-Choruses)**

77. In Musical Example 40 below, the acoustic guitar part in the Pre-chorus of "Savage Love" is compared with the acoustic guitar part in the Introduction of Oasis' "Champagne Supernova", an international hit released in 1995 (https://www.youtube.com/watch?v=MIZOFIRC9HA). In keeping with musicological practices, the key of "Champagne Supernova" is transposed to the "relative" key of Eb major,[23] and the rhythmic values are doubled to facilitate a comparison. As shown below, the metric placement of the acoustic guitar chords in "Savage Love" is similar to "Champagne Supernova".

23 There are two principal ways of comparing melodies in different (minor and major) modes: (1) in the same key signature termed "relative" keys and (2) in the same pitch center termed "parallel" keys.

With 20 rhythmic alignments out of 33 notes, the rhythmic similarity between the acoustic guitar rhythm in "Try" and Plaintiff's acoustic guitar in the *SL* Pre-Choruses is only 61%.[20]

20 33 is the average of 41 chords in "Try" and 25 chords in Plaintiff's guitar.

Ethan@EthanLustig.com
EthanLustig.com/Forensic-Musicology

77-78. I disagree with Dr. Ferrara's transcription of "Champagne Supernova" (his Musical Example 40). "Champagne Supernova" at 0:11 (which is what I assume he intended by "0:09" based on the positioning in his transcription of the Eb(sus2)/Db chord) uses at least two acoustic guitars (one panned towards the left speaker, the other panned towards the right speaker). Below, I have transcribed the rhythms of both guitars in "Champagne Supernova". As usual, dashed red lines show rhythmic simultaneities:

LUSTIG - RE: DEFENSE'S EXPERT REPORT 73

**MUSICAL EXAMPLE 40**

**"Champagne Supernova" Acoustic Guitar (Introduction) / "Savage Love" Acoustic Guitar (Pre-Choruses)**

"Champagne Supernova" 0:09 (note values doubled)
"Savage Love" 0:41
E♭(sus2)
E♭(sus2)/D♭
Cm
A♭
B♭(sus4)/C
B♭(sus4)
E♭
B♭
N.C.

78. In Musical Example 41 below, notes in the "Savage Love" Pre-chorus acoustic guitar part that are part of the chords copied from "Laxed" and that line up rhythmically with the acoustic guitar in "Champagne Supernova" are **X**d out. After the strum rhythm similarities are **X**d out, all that remains are the initial slide into the Cm chord, isolated pitched chords in bars 2 and 6, two chords in bar 4, and isolated muted strums in bars 2 and 4.

59

"Champagne Supernova" - Acoustic guitar rhythm at 0:11 (Left channel)
Cm
Ab
Savage Love - Acoustic guitar at Pre-Choruses

"Champagne Supernova" - Acoustic guitar rhythm at 0:11 (Left channel)
EbM(add6)
Bb
N.C.
Savage Love - Acoustic guitar at Pre-Choruses

With 20 rhythmic simultaneities out of 28 notes, the rhythmic similarity percentage between the "Champagne Supernova" acoustic guitar (left channel) and Plaintiff's *SL* Pre-Chorus acoustic guitar is 71%.[21]

[21] 28 is the average of 31 chords in "Champagne Supernova" (left channel acoustic guitar) and 25 chords in Plaintiff's guitar.

Ethan@EthanLustig.com
EthanLustig.com/Forensic-Musicology

Now let's look at the right channel acoustic guitar of "Champagne Supernova":

"Champagne Supernova" - Acoustic guitar rhythm at 0:11 (Right channel)
Cm
Ab
Savage Love - Acoustic guitar at Pre-Choruses

"Champagne Supernova" - Acoustic guitar rhythm at 0:11 (Right channel)
EbM(add6)
Bb
N.C.
Savage Love - Acoustic guitar at Pre-Choruses

With 21 rhythmic simultaneities out of 29 notes, the rhythmic similarity percentage between the "Champagne

**MUSICAL EXAMPLE 41**
**“Champagne Supernova” Acoustic Guitar (Introduction) /**
**“Savage Love” Acoustic Guitar (Pre-Choruses)**

79. In Musical Example 42 below, the acoustic guitar part in the Pre-chorus of “Savage Love” is compared with the acoustic guitar part in the Pre-chorus of “Hold On” by Danny Wood of New Kids on the Block from the 2016 album *Look at Me* (https://www.youtube.com/watch?v=mPU76aRkOoc). In keeping with musicological practices, the key of “Hold On” is transposed to the “relative” key of Eb major (see footnote 23 above), and the rhythmic values are doubled to facilitate the comparison. As shown below, the metric placement of the acoustic guitar chords strum pattern in “Savage Love” is similar to “Hold On”.

60

[22] 29 is the average of 33 chords in "Champagne Supernova" (right channel acoustic guitar) and 25 chords in Plaintiff's guitar.

Supernova" acoustic guitar (right channel) and Plaintiff's *SL* Pre-Chorus acoustic guitar is 72%.[22]

79-80. I disagree with Dr. Ferrara's transcription of the acoustic guitar rhythms in "Hold On" by Danny Wood, which uses at least two acoustic guitars—one panned towards the left speaker, the other panned towards the right speaker. (I believe that Dr. Ferrara intended to refer to 0:47, not 0:42). Below, I have transcribed the rhythms of both guitars in "Hold On". Dashed red lines show rhythmic simultaneities:

LUSTIG - RE: DEFENSE'S EXPERT REPORT 76

**MUSICAL EXAMPLE 42**

**"Hold On" Acoustic Guitar (Pre-Chorus) / "Savage Love" Acoustic Guitar (Pre-Choruses)**

"Hold On"
0:42
(note values doubled)
"Savage Love"
0:41
E♭
A♭(sus2)
Cm
A♭
4
Cm7
B♭(sus4)/D
A♭(sus2)
E♭
B♭
N.C.

80. In Musical Example 43 below, notes in the "Savage Love" Pre-chorus acoustic guitar part that are part of the chords copied from "Laxed" and that line up rhythmically with the acoustic guitar in "Hold On" are **X**d out. After the strum rhythm similarities are **X**d out, all that remains are the initial slide into the Cm chord, isolated pitched chords in bars 2 and 4, two chords in bar 6, and isolated muted strums in bars 2, 4 and 6.

61

"Hold On" - Acoustic guitar rhythm at 0:47 (Left channel)
Cm
Ab
"Savage Love" - Acoustic guitar at Pre-Choruses

"Hold On" - Acoustic guitar rhythm at 0:47 (Left channel)
EbM(add6)
Bb
N.C.
"Savage Love" - Acoustic guitar at Pre-Choruses

With 19 rhythmic simultaneities out of 29.5 notes, the rhythmic similarity percentage between the "Hold On" acoustic guitar (left channel) and Plaintiff's *SL* Pre-

Ethan@EthanLustig.com
EthanLustig.com/Forensic-Musicology

Chorus acoustic guitar is 64%.[23] Turning to the right channel of "Hold On", with 21 rhythmic simultaneities out of 32 notes, the rhythmic similarity percentage between the "Hold On" acoustic guitar (right channel) and Plaintiff's *SL* Pre-Chorus acoustic guitar is 66%:[24]

"Hold On" - Acoustic guitar rhythm at 0:47 (Right channel)
Cm
Ab
"Savage Love" - Acoustic guitar at Pre-Choruses

"Hold On" - Acoustic guitar rhythm at 0:47 (Right channel)
EbM(add6)
Bb
N.C.
"Savage Love" - Acoustic guitar at Pre-Choruses

[23] 29.5 is the average of 34 chords in "Hold On" (left channel acoustic guitar) and 25 chords in Plaintiff's guitar.

[24] 32 is the average of 39 chords in "Hold On" (right channel acoustic guitar) and 25 chords in Plaintiff's guitar.



**MUSICAL EXAMPLE 43**
**"Hold On" Acoustic Guitar (Pre-Chorus) /**
**"Savage Love" Acoustic Guitar (Pre-Choruses)**

81. Thus, after filtering out the acoustic guitar chords in the Pre-chorus of "Savage Love" that are similar to guitar chords in prior art, all that remains of Plaintiff's Pre-chorus acoustic guitar part are the commonplace and barely audible slide into the Cm chord and fragmentary chords and muted strums. These are not remotely significant modifications in the Pre-chorus acoustic guitar part.

The Electric Guitar Part in the **Pre-choruses** of "Savage Love" Is Based on Generic Chord Spacings, Consists of Commonplace Strum Rhythms, and the Chord Progression and Harmonic Rhythm Are Copied from "Laxed"

82. As shown in Musical Example 5 above, and copied below as Musical Example 44, the electric guitar chords played in the Pre-choruses of "Savage Love" copy the chord progression and harmonic rhythm in "Laxed". The only minor change in the electric guitar part in "Savage Love" is the chord spacing.

62

81. With respect to Plaintiff's *SL* acoustic guitar rhythms in the Pre-Choruses, Dr. Ferrara has not provided any prior art examples that exceed 75% rhythmic similarity. In fact, rhythmic guitar material more similar to anything presented by Dr. Ferrara can be found in the work of none other than Plaintiff himself in a 2019 live concert (Plaintiff's live performance rhythms are shown on top, with the rhythms of the *SL* Pre-Choruses' acoustic guitar on bottom):[25]

With 22/24.5 identical rhythmic events, the rhythmic similarity here is 90%.[26] (See ¶¶ 29-30 of my report for further discussion.)

82. See ¶ 20 above.

[25] https://www.youtube.com/watch?v=bOZm-XFfJoI; 0:16-0:27.

[26] 24.5 is the average of 24 events in "Nobody's Perfect" and 25 events in "Savage Love".

**MUSICAL EXAMPLE 44**

**"Laxed" Synth Piano and Synth Brass at 0:02 /**

**"Savage Love" Electric Guitar (Pre-Choruses)**

83. With respect to the chord spacing used in the Pre-chorus electric guitar part in "Savage Love", each chord is played as a standard "barre chord". Explained in the section of this report on the acoustic guitar part in the "Savage Love" Pre-chorus, "barre chord" positions are commonplace chord spacings. This is explained in Schmid and Koch's *Guitar Method Book 3* cited above and in **Visual Exhibit B** attached to this report. The barre chord spacing of the Cm chord on the electric guitar is different from the spacing of the Cm barre chord on the acoustic guitar. In the electric guitar:

83. See ¶ 68 above.

- The Cm chord in "Savage Love" is based on a minor E-type barre chord, similar to the Fm chord diagramed on page 26 in Schmid and Koch.

The spacing of the remaining Ab, Eb, and Bb barre chords are the same in the Pre-chorus acoustic and electric guitars in "Savage Love" which is explained above.

84. The strum rhythm in the Pre-chorus electric guitar part in "Savage Love" is very basic. Each chord is played as a single sustained strum, lasting two bars for the Cm, Ab, and Eb chords, and one bar for the Bb chord. Sustained guitar chords are commonplace in prior art.

85. For example, Musical Example 45 below is a comparative transcription of the electric guitar part in the Pre-chorus of "Savage Love" and the electric guitar part in the Chorus of Ellie Goulding's "Still Falling for You", an international hit in 2016 (https://www.youtube.com/watch?v=pvP_OwVSFpk). In keeping with musicological practices, the key of "Still Falling for You" is transposed to the "relative" key of Eb major, and the rhythmic values are doubled to facilitate a comparison. As shown below, the metric placements of the electric guitar chords in "Savage Love" are virtually the same as the metric placements of the chords in "Still Falling for You".

**MUSICAL EXAMPLE 45**
**"Still Falling for You" Electric Guitar (Chorus) /**
**"Savage Love" Electric Guitar (Pre-Choruses)**

86. In Musical Example 46 below, notes in the "Savage Love" Pre-chorus electric guitar part that are part of the chords copied from "Laxed" and that line up rhythmically with the electric guitar in "Still Falling for You" are Xd out. After the strum

64

84. No disagreement that sustained chords are found in prior art. Nonetheless, in the electric guitar for the *SL* Pre-Choruses, Plaintiff's particular path taken through the chord progression—his particular series of chord spacings—has not been shown by Dr. Ferrara to exist in prior art.

85. The chord voicings are completely different in "Still Falling for You": as can be seen from Dr. Ferrara's transcription, the top line of the electric guitar in that song stays on Eb for all four chords, whereas Plaintiff's electric guitar line goes C-Ab-G-Bb, creating a completely different melodic effect and tracing a different path through the chords due to Plaintiff's unique solution.

86. I disagree with the filtering methodology (see ¶ 49 above).

rhythm similarities are Xd out, none of the electric guitar part in the Pre-chorus of "Savage Love" remains.

**MUSICAL EXAMPLE 46**
**"Still Falling for You" Electric Guitar (Chorus) /**
**"Savage Love" Electric Guitar (Pre-Choruses)**

87. In Musical Example 47 below, the electric guitar part in the Pre-chorus of "Savage Love" is compared with the piano part in the Verse of "Black Roses", which was recorded by Clare Bowen and the cast of the TV series *Nashville* and released in 2014 (https://www.youtube.com/watch?v=0DYkkzTv-GU). In keeping with musicological practices, the key of "Black Roses" is transposed to C minor, and the rhythmic values are doubled to facilitate a comparison. As shown below, the metric placements of the electric guitar chords in "Savage Love" are virtually the same as the metrics placements of the chords in "Black Roses".

**MUSICAL EXAMPLE 47**
**"Black Roses" Piano (Verse) /**
**"Savage Love" Electric Guitar (Pre-Choruses)**

65

87. The chord voicings are completely different in "Black Roses": as can be seen from the transcription, the top line of the piano in that song goes Eb-C-Eb-Eb, whereas Plaintiff's electric guitar line goes C-Ab-G-Bb, creating a completely different melodic effect and tracing a different path through the chords due to Plaintiff's unique solution.

88. In Musical Example 48 below, notes in the "Savage Love" Pre-chorus electric guitar part that are part of the chords copied from "Laxed" and that line up rhythmically with the piano in "Black Roses" are Xd out. After the rhythmic similarities are Xd out, none of the electric guitar part in the Pre-chorus of "Savage Love" remains.

**MUSICAL EXAMPLE 48**
**"Black Roses" Piano (Verse) /**
**"Savage Love" Electric Guitar (Pre-Choruses)**

89. In Musical Example 49 below, the electric guitar part in the Pre-chorus of "Savage Love" is compared with the acoustic guitar part in the Verse of Danny Wood's "Hold On", the same 2016 song analyzed above in paragraphs 79-80. In keeping with musicological practices, the key of "Hold On" is transposed to Eb major, and the rhythmic values are doubled to facilitate a comparison. As shown below, the metric placements of the electric guitar chords in "Savage Love" are very similar to "Hold On".

**MUSICAL EXAMPLE 49**
**"Hold On" Acoustic Guitar (Verse) /**
**"Savage Love" Acoustic Guitar (Pre-Choruses)**

66

88. I disagree with the filtering methodology (see ¶ 49 above).

89. The chord voicings are completely different in "Hold On": as can be seen from the transcription, the top line of the guitar in that song goes G-Bb-Bb-Bb, whereas Plaintiff's electric guitar line goes C-Ab-G-Bb, creating a completely different melodic effect and tracing a different path through the chords due to Plaintiff's unique solution.

90. In Musical Example 50 below, notes in the "Savage Love" Pre-chorus electric guitar part that are part of the chords copied from "Laxed" and that line up rhythmically with the acoustic guitar in "Hold On" are Xd out. After the strum rhythm similarities are Xd out, none of the electric guitar part in the Pre-chorus of "Savage Love" remains.

**MUSICAL EXAMPLE 50**
**"Hold On" Acoustic Guitar (Verse) /**
**"Savage Love" <u>Acoustic</u> Guitar (<u>Pre-Choruses</u>)**

91. Thus, after filtering out the electric guitar chords in the Pre-choruses of "Savage Love" that are similar to guitar chords in prior art, zero percent of Plaintiff's Pre-chorus electric guitar part remains. There are no significant modifications in the electric guitar part in the Pre-chorus of "Savage Love".

<u>The **Bass Guitar** Part in "Savage Love" Is Based on "Laxed" and Consists of Commonplace Rhythms and Standard Practices</u>

92. As shown above in paragraphs 21-24 on pages 17-20, the bass guitar parts in "Savage Love" are based on and copy the synth bass in "Laxed". The bass guitar in the <u>Introduction</u> of "Savage Love" consists of only 10 notes over 8 bars, and those 10 notes copy pitches and or rhythms in the synth bass in "Laxed".

93. As shown in Musical Example 7 on page 18 above, the bass guitar part in the Verses of "Savage Love" merely repeats the pitches of the root of each chord with eighth notes, with the exception of 1 note (on beat 4) in bar 2 and two notes (on beats 3 and 4) in bar 8. Thus, the bass guitar in "Savage Love" simply (and almost completely)

67

90. I disagree with the filtering methodology (see ¶ 49 above).

91. Dr. Ferrara's filtering criteria in this section has only considered rhythmic similarity, but this is a misleading filtering method because it does not consider the pitch content, let alone the unique chord voicings that Plaintiff plays in the *SL* Pre-Choruses. Dr. Ferrara has not produced any examples of prior art that actually use the same distinct chord voicings with the same melodic top line of the chords played by Plaintiff in the *SL* Pre-Choruses.

92-94. See ¶¶ 21-24 above.

plays repeated notes on the root of the chords which have been copied from the synth bass and harmony in “Laxed”. In addition, the bass guitar in the Verses of “Savage Love” is almost inaudible in the sonic mix. The bass guitar in “Savage Love” plays simultaneously with, and is almost entirely obscured by, the synth bass part sampled from “Laxed”. Since the bass guitar is so quiet and largely hidden under the synth bass sampled from “Laxed” as to be almost undetectable, it does not contribute significantly at all to the harmony, melody, or rhythm of the Verses of “Savage Love”. Moreover, the changes in the bass guitar in the Verses of “Savage Love” as compared to the synth bass in “Laxed” represent common and standard practices and do not remotely represent significant modifications to the synth bass in “Laxed”.

94. As shown in Musical Example 8 above, and copied below as Musical Example 51, the bass guitar performance in the Pre-chorus sections of “Savage Love” consists mainly of sustained root notes of the chords starting on the downbeat of bars 1, 3, 5, and 7. These are the same root notes played on the downbeat of bars 1, 3, 5, and 7 in “Laxed”.

**MUSICAL EXAMPLE 51**
**"Laxed" Synth Bass at 0:15 /**
**"Savage Love" Bass Guitar (Pre-Choruses)**

95. Furthermore, playing sustained root notes in the bass is a common and standard practice. Such bass lines can be found frequently in prior art.

96. For example, Musical Example 52 below is a comparative transcription of the bass guitar part in the Pre-chorus of "Savage Love" and the upright bass part in the Chorus of Little Eva's "The Loco-Motion", the *Billboard* no. 1 hit from 1962 (https://www.youtube.com/watch?v=1Lej7aQDrGM). As shown below, there are sustained root bass notes in "Savage Love" and in "The Loco-Motion".

95. I agree. However, Plaintiff does not simply play sustained bass notes, but rather a unique pattern, of which the highest rhythmic match in prior art Dr. Ferrara produces is 67% (see below).



**MUSICAL EXAMPLE 52**
**"The Loco-Motion" Upright Bass (Chorus) /**
**"Savage Love" Bass Guitar (Pre-Choruses)**

97. In Musical Example 53 below, notes in the "Savage Love" Pre-chorus bass guitar part that are part of the chords copied from "Laxed" and that line up rhythmically with the bass in "The Loco-Motion" are Xd out. After the rhythmic similarities are Xd out, only two "upbeat" notes in each of bars 2 and 6 remain. These fragmentary "upbeat" notes do not represent a significant modification to the Pre-chorus of "Savage Love".

**MUSICAL EXAMPLE 53**
**"The Loco-Motion" Upright Bass (Chorus)**
**"Savage Love" Bass Guitar (Pre-Choruses)**

98. Further, Musical Example 54 below is a comparative transcription of the bass guitar part in the Pre-chorus of "Savage Love" and the bass guitar part in the Verse of Gloria Gaynor's 1978 classic "I Will Survive". In keeping with musicological practices, the key of "I Will Survive" (https://www.youtube.com/watch?v=FHhZPp08s74) is transposed to C minor, and the rhythmic values are doubled to facilitate a comparison. As shown below, "I Will Survive" includes sustained root bass notes.

70

96-97. Below is Dr. Ferrara's transcription (his Musical Example 52) with red dashed lines showing simultaneous rhythmic events:

With 4/9.5 simultaneities, there is a rhythmic similarity of only 42% between the two basslines.[27] (For the timepoint in "The Loco-Motion", I believe he meant 0:34, not 0:38.)

[27] 9.5 is the average of 11 bass notes in "The Loco-Motion" and 8 bass notes in "Savage Love".



**MUSICAL EXAMPLE 54**
**"I Will Survive" Bass Guitar (Verse)**
**"Savage Love" Bass Guitar (Pre-Choruses)**

99. In Musical Example 55 below, notes in the "Savage Love" Pre-chorus bass guitar part that are part of the chords copied from "Laxed" and that line up rhythmically with the bass in "I Will Survive" are Xd out. After the rhythmic similarities are Xd out, only two "upbeat" notes in each of bars 2 and 6 remain. These fragmentary "upbeat" notes do not represent a significant modification to the Pre-chorus of "Savage Love".

**MUSICAL EXAMPLE 55**
**"I Will Survive" Bass Guitar (Verse)**
**"Savage Love" Bass Guitar (Pre-Choruses)**

100. Musical Example 56 below is a comparative transcription of the bass guitar part in the Pre-chorus of "Savage Love" and the bass guitar part in the Verse of Tom Petty's "Wildflowers", which was originally released in 1994 and is one of Petty's best-known songs (https://www.youtube.com/watch?v=Kw8vBDk880k). In keeping with musicological practices, the key of "Wildflowers" is transposed to the "relative" key of Eb

98-99. Below is Dr. Ferrara's transcription (his Musical Example 54) with red dashed lines showing simultaneous rhythmic events:

With 4/6 simultaneities, there is a rhythmic similarity of only 67% between the two basslines.[28]

[28] 6 is the average of 4 bass notes in "I Will Survive" and 8 bass notes in "Savage Love".

Ethan@EthanLustig.com
EthanLustig.com/Forensic-Musicology

major, and the rhythmic values are doubled to facilitate a comparison. As shown below, Petty's "Wildflowers" includes sustained root bass notes.

**MUSICAL EXAMPLE 56**
**"Wildflowers" Bass Guitar (Verse)**
**"Savage Love" Bass Guitar (Pre-Choruses)**

101. In Musical Example 57 below, notes in the "Savage Love" Pre-chorus bass guitar part that are part of the chords copied from "Laxed" and that line up rhythmically with the bass in "Wildflowers" are Xd out. After the rhythmic similarities are Xd out, only two "upbeat" notes in each of bars 2 and 6 remain. These fragmentary "upbeat" notes do not represent a significant modification to the Pre-chorus of "Savage Love".

**MUSICAL EXAMPLE 57**
**"Wildflowers" Bass Guitar (Verse)**
**"Savage Love" Bass Guitar (Pre-Choruses)**

102. Thus, after filtering out the bass guitar notes in the Pre-choruses of "Savage Love" that are similar to bass notes in prior art, only a handful of "upbeat" notes in Plaintiff's bass guitar performance remain. The slight changes in the bass guitar

100-101. Below is Dr. Ferrara's transcription (his Musical Example 56) with red dashed lines showing simultaneous rhythmic events:

With 4/6 simultaneities, there is a rhythmic similarity of only 67% between the two basslines.[29]

102. Dr. Ferrara has not provided any prior art examples exceeding a 67% rhythmic similarity to Plaintiff's bassline in the Pre-Choruses of *SL*.

[29] 6 is the average of 4 bass notes in "Wildflowers" and 8 bass notes in "Savage Love".

notes in the Pre-choruses of "Savage Love" to the synth bass in "Laxed" do not remotely represent significant modifications or transformations.

IV. CONCLUSIONS

Plaintiff's Guitar and Bass Performances in "Savage Love" Do Not Significantly Modify or Transform "Savage Love" as Compared to "Laxed" and Are Based on Common and Standard Practices

103. In summary, as shown above and in the earlier sections of this report on Harmony and Melody, Plaintiff's guitar and bass performances do not significantly modify or transform the harmony and/or the melody in "Savage Love" as compared with "Laxed". Also as shown above, the rhythms embodied in the guitar and bass parts performed by Plaintiff consist of (a) common and standard rhythmic practices that can be found in prior art and (b) rhythms that are found in "Laxed". Specifically:

- The guitar part in the Introduction of "Savage Love" consists of simple chords played on beats 2 and 4 of each measure. This rhythm is copied directly from the synth piano part in "Laxed" and can also be found in prior art. This guitar part's contribution to the composition in "Savage Love" is thereby filtered out.
- The guitar part in the Verses of "Savage Love" consists of simple chords alternating between a "Charleston" rhythm and a "tresillo" rhythm. These rhythms grow out of the kick/snare rhythm in "Savage Love", which is sampled from "Laxed". Furthermore, Charleston and tresillo rhythms are commonplace in prior art. This guitar part's contribution to the composition in "Savage Love" is thereby filtered out.
- The acoustic guitar part in the Pre-choruses of "Savage Love" consists of basic "barre chords". The strummed rhythm of these chords is similar to a commonplace "Dixie" strumming pattern that can be found in a guitar method book, as well as to acoustic guitar strumming patterns in prior art. This guitar part's contribution to the composition in "Savage Love" is thereby filtered out.

73

103. First bullet: I agree that the *SL* Intro guitar rhythm is the same as the *LSB* piano. However, harmonically, the guitar part cannot simply be filtered out (see ¶ 16 and ¶¶ 48-52 above).

103. Second bullet: See ¶¶ 17-18, 53-66 above.

103. Third bullet: While I agree they are "barre" chords, I disagree with the rest. See ¶¶ 19, 67-81 above.

- The electric guitar part in the <u>Pre-choruses</u> of "Savage Love" consists of basic "barre chords". Each of these chords is played as a single sustained strum, which is a commonplace technique that can be found in prior art. This guitar part's contribution to the composition in "Savage Love" is thereby <u>filtered out</u>.
- The bass guitar in the <u>Intro</u> of "Savage Love" consists of only 10 notes over 8 bars, and those 10 notes copy pitches and or rhythms in the synth bass in "Laxed". This bass part's contribution to the composition in "Savage Love" is thereby <u>filtered out</u>.
- The bass guitar in the <u>Verses</u> of "Savage Love" merely repeats the pitches of the root of each chord in eighth notes with minimal exceptions, copying the synth bass and harmony in "Laxed". In addition, the bass guitar in the Verses of "Savage Love" is almost inaudible in the sonic mix. The bass guitar in "Savage Love" plays simultaneously with, and is almost entirely obscured by, the synth bass part sampled from "Laxed". Since the bass guitar is so quiet and largely hidden under the synth bass sampled from "Laxed" as to be almost undetectable, it does not contribute significantly at all to the harmony, melody, or rhythm of the Verses of "Savage Love". Moreover, the changes in the bass guitar in the Verses of "Savage Love" as compared to the synth bass in "Laxed" represent common and standard practices and do not remotely represent significant modifications to the synth bass in "Laxed". This bass part's contribution to the composition in "Savage Love" is thereby <u>filtered out</u>.
- The bass guitar in the <u>Choruses and Post-choruses</u> of "Savage Love" is an almost note-for-note copy of the synth bass in "Laxed". This bass part's contribution to the composition in "Savage Love" is thereby <u>filtered out</u>.
- The bass guitar in the <u>Pre-choruses</u> of "Savage Love" consists mainly of sustained root notes, a commonplace type of bass part that can be found in prior art. This bass part's contribution to the composition in "Savage Love" is thereby <u>filtered out</u>.

74

103. Fourth bullet: While I agree they are "barre" chords, and agree that sustained strums are common, I disagree with the filtering methodology due to the unique voicings of the chords, and the lack of prior art that uses those voicings. See ¶¶ 20, 82-91 above.

103. Fifth bullet: See ¶ 21 above.

103. Sixth bullet: See ¶ 22 above.

103. Seventh bullet: No disagreement. See ¶ 24 above.

103. Eighth bullet: See ¶¶ 23, 92-102 above.

104. Thus, as shown above, all of Plaintiff's guitar and bass performances are filtered out when considering their contribution to the composition in "Savage Love". Plaintiff's guitar and bass performances in "Savage Love" do not significantly modify or transform the harmony, melody, and/or rhythm as compared to "Laxed".

Respectfully submitted,

October 4, 2024 By: Lawrence Ferrara, Ph.D.

For: Lawrence Ferrara, Inc.

*[Remaining pages of Ferrara report (appendices and exhibits) omitted]*

104. Disagree, as amply documented in my report and above in the present document. Plaintiff's guitar and bass contributions (both compositionally and in terms of his performance on the sound recording) significantly modify and transform the harmony, melody, and rhythm of *SL* compared to *LSB*.

Report submitted on October 25, 2024 by:

Ethan Lustig, Ph.D.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 25, 2024, I served a true and correct copy of **PLAINTIFF MATTHEW SPATOLA'S REBUTTAL EXPERT WITNESS DISCLOSURE STATEMENT** via email to:

VENABLE LLP
Joshua M. Rosenberg, Esq.
*jmrosenberg@venable.com*
Alicia M. Sharon, Esq.
*asharon@venable.com*
Rodney S. Lasher, Esq.
*rslasher@venable.com*
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: 310.229.9900
Facsimile: 310.229.9901

*/s/ Hayden Oliveira*
Hayden Oliveira, Paralegal
WERGE & CORBIN LAW GROUP

# EXHIBIT 4

Ethan Lustig, Ph.D.

February 5, 2025

**SUPPLEMENTAL MUSICOLOGICAL REPORT**

**Introduction:**

1. In this document, I will address claims made by Defendants, and provide further information related to my musicological methodology, including prior art research and filtering.

**Re: the claim that I did not conduct prior art research and filtering:**

2. I am a prior art specialist; I have been subcontracted by firms and even by other musicologists specifically for my prior art research services. In a typical report addressing substantial similarity, I always discuss prior art and filtering, and it is a methodology that I am well aware of.

3. As seen in my CV, I have even published academic articles in the area of "corpus studies", which treats statistical patterns in large bodies of music: in other words, prior art.

4. In the present case, I was retained to assess the extent of Matthew Spatola's contributions to the composition and sound recording of "Savage Love" as a joint work, which is different from a "substantial similarity" analysis conducted related to a traditional copyright infringement claim. It is my expert opinion that there is no question as to whether Mr. Spatola's artistic work is present in "Savage Love". As I opined in my principal report, Spatola's performance is present in 100% of the sound

recording, of which 21% of the sound recording is purely Spatola;[1] compositionally, he contributes uniquely to approximately 12% of the work.[2]

5. Defendants suggest that I did not conduct a prior art investigation and did not engage in filtering: this is incorrect. I did conduct a prior art investigation, and did not find any precedents for Spatola's specific contributions.[3]

6. Furthermore, I believe my principal report *does* address the question of originality, including by demonstrating the unique musicological characteristics of Spatola's voicings (¶¶ 19-21, 31-32, 38-40), harmonies (¶¶ 16-17, 33, 35), and rhythms (¶¶ 18, 22-25, 27-30).

7. In addition, and as previously identified throughout my rebuttal report, Dr. Ferrara's filtering methodology is, in my opinion, fundamentally flawed. Furthermore, Dr. Ferrara has not produced any instances of prior art that wholly replicate Spatola's contributions (see my rebuttal report), which in my expert interpretation serves as further evidence of the fact that sufficiently similar prior art is simply not out there.

**Re: the claim that my opinion on Spatola's agency is a legal opinion:**

8. As a music educator who has taught hundreds of students, specifically in the areas of "musicianship"/"ear training", I am professionally qualified to assess someone's musical aptitudes. In my report, I opined on the musical aptitudes of Spatola and Derulo. I also have significant experience working in recording studios. My Discogs page[4] shows myriad credits in roles including recording engineer, mix/master engineer,

[1] Principal report, ¶ 14.
[2] Principal report, ¶ 45.
[3] As this type of review seemed external to the joint authorship issues at play, I did not discuss it in my principal report.
[4] https://www.discogs.com/artist/7563634-Ethan-Lustig

and producer. There are many more credits not showing on my Discogs as well, where I played instruments on multiple studio albums and worked as a recording studio manager (see my CV). Therefore, from both a "musical aptitude assessment" perspective and a "recording studio" perspective, I do have the qualifications to opine on the agency and aptitudes of Spatola and Derulo. Of course, it is up to the trier of fact to determine the ultimate issues, and it is never my intention to do anything other than simply present my professional expert opinion—which is precisely what I have done regarding "Savage Love". Moreover, Spatola and Derulo's agency and aptitudes *are* highly pertinent to the musicological side of this case, because the fundamental musicological questions I have been asked to answer are the extent and role of Spatola's contributions to the composition and sound recording.

**Re: the claim that my saying that Spatola's performance broadens the appeal of "Savage Love" is outside my expertise:**

9. Far from the typical academic, I have a hands-on relationship with the music industry. I have co-produced and co-written music that received radio play, and have had my music licensed by companies including Adobe. I have worked in artist management to promote songs for radio, playlists, and blog and magazine coverage. I have songs licensed with multiple "music libraries" for film and TV (see my CV). Having written, arranged, mixed, produced, and mastered dozens of records, in addition to years of experience specifically teaching music production and sound design at the university level, I believe that I am qualified to opine on what can make a commercially successful arrangement. Besides, the statement in question (found in ¶ 9 of my principal report) was merely given to contextualize Spatola's contributions, and I

believe it is a reasonable, common-sense claim to make, and one that is within the bounds of my expertise.

**Re: the claim that I "manufacture a contrary narrative":**

10. In my principal report, I provide my professional expert opinion regarding Spatola and Derulo's musical aptitudes, and my estimation of the extent and bounds of the contributions of each. In supporting my opinion, I consider Spatola's deep instrumental competency and Derulo's lack of playing any instruments; I also strongly question—by identifying serious gaps in his comprehension and reproduction of harmonic concepts in deposition—Derulo's claim that he is able to direct, via singing, the specific notes, chords, and voicings that he wants to hear instrumentally. All this is within my expertise as a musicologist with extensive professional experience in music production and recording studio sessions, as well as extensive pedagogical experience in musicianship/ear training (as detailed above in the present document and in my CV), but it is of course up to the trier of fact to decide if they agree with my opinion or not.

**Statement re: prior art research**

11. I have reviewed the existing prior art, in my extensive database of hundreds of thousands of notes, chords, and rhythms, across genres including classical, folk, rap, and rock, in order to determine if Spatola's contributions to "Savage Love" are pre-existing. In prior art, I have not found significant similarities in terms of the specific chord voicings, rhythms, and pitch patterns played by Spatola in his electric guitar, acoustic guitar, and bass contributions.

12. This null finding, coupled with the fact that Dr. Ferrara also did not find any prior art that—in my opinion and in line with my analysis and methodology—can be used to adequately filter out Spatola's contributions as unoriginal (as detailed in my rebuttal report), leads me to opine that Spatola's contributions are original.

13. As detailed in my principal report, Spatola consistently employs an Eb major (add6) harmony in "Savage Love", which was not present in "Laxed (Siren Beat)". Hooktheory is a database that includes chord progression data for 58,188 songs[5]. While it is user-edited and far from completely accurate, with such a large amount of data, random errors will cancel out (see the "law of large numbers"[6]), and even small trends with small "effect sizes" will tend to be observed, due to increased "power".[7] To use an analogy, if you look outside your window once and see that it is not raining, it would be foolish to therefore conclude that it never rains in your area. If, on the other hand, after thousands of observations on different days over the years, you observe not even one instance of rain, it would then be safe to say with substantial confidence that rain does not occur in your area.

14. The same is true with Spatola's Eb major (add6) chord in "Savage Love".[8] Although there are 1,006 Hooktheory entries containing the chord progression vi - IV - I

[5] https://www.hooktheory.com/trends
[6] See "law of large numbers" in *Encyclopedia Britannica* (last updated November 4, 2024): https://www.britannica.com/science/law-of-large-numbers.
[7] See Serdar, C. C., et al., "Sample size, power and effect size revisited: simplified and practical approaches in pre-clinical, clinical and laboratory studies", *Biochemia medica*, *31*(1), 0105022 (2021).
[8] Technically, in Hooktheory's nomenclature, the Eb major (add6) chord is expressed as a vi6/5 chord. The Eb major (add6) chord contains Eb, G, Bb, and C, which can be recast as a first-inversion C minor seventh chord (C, Eb, G, Bb). Said chord would receive Roman numeral vi in the key of Eb major (being that its root is C, the sixth scale-degree of the key), and a 6/5, which is the standard figure to denote first-inversion seventh

- V,[9,10] there is not a single entry in the database that contains the chord progression vi - IV - I(add6) - V.[11,12]

15. To give an idea of just how rare Spatola's chord is, only 0.3% of major-key songs in the Hooktheory database contain a I(add6) chord at any point, let alone in the context of the specific chord progression of "Savage Love".

16. Of the 1,006 songs on Hooktheory for the progression vi - IV - I - V (and its rotations),[13] the website lets the user hear 100 of them. I have reviewed all of them, and not a single instance contains the same chord voicings as Spatola, tracing different paths through the chords in every case. (This applies equally to the songs' guitars, synths, pianos, vocal harmonies—any pitched element tracing a path through the chord progression). That is to say, that no songs with the progression of vi - IV - I - V (nor its rotations) have been found that use the same chord voicings as Spatola in "Savage Love" (see figures 4 and 10 from my principal report). This null finding comports with Dr. Ferrara's own report, where he did not produce any prior art examples that replicate said voicings, as detailed in my rebuttal report.

chords. See "Thoroughbass, figured bass" in *The Harvard Dictionary of Music* (Fourth Edition, 2003, Harvard University Press, p. 890).

[9] And an additional 528 songs with the equivalent relative-minor progression, i - VI - III - VII.

[10] Note that Hooktheory does not distinguish between, for instance, vi - IV - I - V and I - V - vi - IV. In other words, the database only looks for a consecutive string of chords, without distinguishing between rotations. Therefore, the actual count of songs that specifically use the progression vi - IV - I - V (in other words, actually beginning the loop on a vi chord, rather than other rotations of the loop such as IV - I - V - vi etc.) will be lower than 1,006.

[11] In Hooktheory's nomenclature, vi - IV - vi6/5 - V.

[12] Nor is there a single song with the equivalent relative-minor progression, which in Hooktheory's system equates to i - VI - i6/5 - VII.

[13] https://www.hooktheory.com/trends#key=Rel&scale=major&path=6.4.1.5

Sincerely,

Ethan Lustig, Ph.D.

Ethan@EthanLustig.com
EthanLustig.com/Forensic-Musicology

# EXHIBIT 5

**VENABLE LLP**
Joshua M. Rosenberg (SBN 274473)
*jmrosenberg@venable.com*
Rodney S. Lasher (SBN 307462)
*rlasher@venable.com*
Emily J. Wilson (admitted *pro hac vice*)
*ejwilson@venable.com*
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: 310.229.9900
Facsimile: 310.229.9901

*Attorneys for Defendants*
JASON DESROULEAUX p/k/a JASON DERULO; and SONY MUSIC ENTERTAINMENT d/b/a COLUMBIA RECORDS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MATTHEW SPATOLA p/k/a MATTY SPATS,

Plaintiff,

v.

JASON DESROULEAUX p/k/a JASON DERULO; and SONY MUSIC ENTERTAINMENT d/b/a COLUMBIA RECORDS,

Defendants.

Case No. 2:23-cv-06191-MWF-E

Assigned to the Hon. Michael W. Fitzgerald

**DEFENDANTS JASON DESROULEAUX P/K/A JASON DERULO AND SONY MUSIC ENTERTAINMENT D/B/A COLUMBIA RECORDS' SUPPLEMENTAL REBUTTAL EXPERT WITNESS DISCLOSURE**

Action Filed: July 31, 2023
FAC Filed: December 21, 2023
Pretrial Conf.: Not Set
Trial Date: Not Set

**SUPPLEMENTAL DISCLOSURE OF RULE 26(a)(2) REBUTTAL EXPERT**

Defendants Jason Desrouleaux p/k/a Jason Derulo and Sony Music Entertainment d/b/a Columbia Records (collectively, "Defendants") hereby disclose the below-identified rebuttal expert witness whom Defendants intend to call at trial pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure.

Defendants make this disclosure in connection with the June 19, 2025 Joint Stipulation to Re-Open Discovery for Limited Purposes entered into by and between Defendants and Plaintiff Matthew Spatola p/k/a Matty Spats ("Plaintiff") (*see* ECF 135), the Court's Order (*see* ECF 134) on the Joint Stipulation to Re-Open Discovery for Limited Purposes dated May 7, 2025, and the related agreements between the parties, including that Defendants will not object to the admissibility at Trial of Plaintiff's February 7, 2025 disclosure of Dr. Ethan Lustig's Supplemental Report on the grounds that its disclosure was violative of, *inter alia*, Rules 16 or 26 of the Federal Rules of Civil Procedure or the Court's Scheduling Order in effect at the time (*see* ECF 54, amending ECF 25); the Court's Order (*see* ECF 113) on the parties' Joint Stipulation to Continue Trial, Final Pretrial Conference, and Related Deadlines and the Court's subsequent Scheduling Notice and Order (*see* ECF 130) vacating the Final Pretrial Conference scheduled for April 21, 2025, and the Trial Date of May 6, 2025; Defendants' pending Motion to Strike Supplemental Expert Report of Dr. Ethan Lustig (*see* ECF 123), which motion was taken under submission by the Court on April 14, 2025 (*see* ECF 131) with an order to issue in due course; Defendants' Motion *in Limine* #3 to Exclude Plaintiff's Expert Witness Dr. Ethan Lustig (*see* ECF 103), which motion was filed and served on December 16, 2024 prior to Plaintiff's February 7, 2025 disclosure of Dr. Ethan Lustig's Supplemental Report, and which motion may be re-filed by Defendants, subject to further Order of the Court, and Plaintiff's anticipated opposition thereto which is due to be filed by Plaintiff by a date to be determined pursuant to further Order of the Court; Defendants' reservation of rights asserted

and set forth in Defendants' Initial Expert Disclosure dated and served October 11, 2024 and those set forth in Defendants' Rebuttal Expert Disclosure dated and served October 25, 2024; the Court's Order to be issued in connection with the parties' Joint Status Report Pursuant to ECF 130 Re: Proposed New Trial Dates (*see* ECF 132); and any further Orders of the Court relevant to expert witnesses and/or expert discovery, or the Trial in this action.

In accordance with the foregoing, and further based on Defendants' express willingness to make the following expert witness available for deposition, Defendants disclose:

Dr. William S. Rayner, Ph.D

52 California Street

Long Beach, New York 11561

In accordance with Rule 26(a)(2) of the Federal Rules of Civil Procedure, Dr. Rayner's written rebuttal report, which is attached hereto as Exhibit A (the "Rebuttal Report"), is being served concurrently with this disclosure.  As set forth in complete detail in his Rebuttal Report, Dr. Rayner is an expert in forensic musicology and is a composer, songwriter, and guitarist, and Dr. Rayner's opinions in this matter, along with his complete curriculum vitae, the list of materials he considered in reaching his opinions (*see* Rebuttal Report at p. 11), and other disclosures required by Rule 26(a)(2) of the Federal Rules of Civil Procedure, are set forth in Dr. Rayner's Rebuttal Report.  Dr. Rayner's qualifications, including a list of all publications authored in the previous ten (10) years (*see* Rebuttal Report at p. 10 [Appendix]), are set forth in his Rebuttal Report (*see id.* [Appendix]; *see also* Curriculum Vitae appended at end of Rebuttal Report).  Dr. Rayner has not testified as an expert at trial or by deposition in any case during the previous four (4) years; nonetheless, Dr. Rayner's Rebuttal Report (*see* Rebuttal Report at p. 10 [Appendix] identifies those cases in which he served as an expert during prior years.  Dr. Rayner charges $400 per hour for his work relating to this matter.

**RESERVATION OF RIGHTS**

Defendants disclose the aforementioned expert subject to the following reservation of rights:

1. Defendants have not yet decided which exhibits they intend to utilize at trial and reserve the right to supplement this disclosure with any exhibits that may be used at trial to summarize or support their expert's or experts' opinions.

2. Defendants reserve the right to challenge the qualifications and/or expertise of the individuals designated by any other party.

3. Defendants reserve the right to offer the testimony of additional persons as percipient fact witnesses regarding their various professional fields.

4. Defendants reserve the right to call any expert duly disclosed/designated by any other party to this case.

5. Defendants reserve the right to alter, amend, and/or supplement this designation pursuant to and in accordance with Rule 26(e) of the Federal Rules of Civil Procedure and this Court's Orders, procedures, and any applicable rules.

The above-designation and disclosure are based on the information that has been reviewed and the documents that have been produced to date; therefore, and because numerous relevant Court Orders remain to be issued and further information may be revealed during depositions or otherwise, Defendants reserve the right to supplement or modify this disclosure should additional information be learned, or to the extent any of the Court's future Order(s) affect the same.

Dated: June 20, 2025

VENABLE LLP

By: */s/ Joshua M. Rosenberg*
Joshua M. Rosenberg
Rodney S. Lasher
Emily J. Wilson

Attorneys for Defendants JASON DESROULEAUX p/k/a JASON DERULO; and SONY MUSIC ENTERTAINMENT d/b/a COLUMBIA RECORDS

# EXHIBIT A

**EXPERT REBUTTAL REPORT**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**MATTHEW SPATOLA p/k/a MATTY SPATS,**
**Plaintiff,**
**v.**
**JASON DESROULEAUX p/k/a JASON DERULO;**
**SONY MUSIC ENTERTAINMENT d/b/a COLUMBIA RECORDS,**
**Defendants.**

---

**Expert Rebuttal Report of William S. Rayner, Ph.D.**
**Expert Musicologist retained by the Defendants**
**Date: June 19, 2025**

---

## I. INTRODUCTION

This memorandum provides my expert rebuttal to the opinions and transcriptions presented by Plaintiff Matthew Spatola's ("Spatola") retained expert Dr. Ethan Lustig in his initial, rebuttal, and supplemental reports concerning the alleged originality and significance of Spatola's guitar and bass contributions to *Savage Love (Laxed-Siren Beat)* (*"SL"*).

My analysis demonstrates that Dr. Lustig's conclusions are technically flawed, rely on inaccurate transcriptions, and misrepresent fundamental aspects of the song's harmony and arrangement.

I have adopted Dr. Lustig's tempo and abbreviations solely to facilitate direct comparison and to show clearly where his analysis fails.

---

## II. SUMMARY OF KEY REBUTTAL POINTS

### 1. Inaccurate Transcriptions

Dr. Lustig's ear transcriptions of the electric guitar, acoustic guitar, and bass parts are materially inaccurate. Specifically, pitches he claims alter the harmony (e.g., alleged *Eb(add6)* chords) are not audibly present in any relevant section of the master recording or isolated stems.

### 2. Mischaracterisation of Harmony

Contrary to Dr. Lustig's assertion that Spatola introduces a novel *Eb(add6)* chord, my harmonic analysis confirms that both *SL* and its source material, *Laxed (Siren Beat)* (*"LSB"*), share an unmodified, pre-existing chord progression in the key of C minor: **i – VI – III – VII** (Cm – Ab – Eb – Bb).
No meaningful deviation occurs in Spatola's performance.

### 3. Improper Weighting of Performance

Dr. Lustig's "four-part arrangement layer" framework assigns arbitrary equal weights to vocals, chords, bass, and percussion/fx. This oversimplification ignores the reality that, in pop music (the genre in which *SL* is categorized), the vocal melody and melodic hook overwhelmingly

command the listener's attention and establishes a hierarchy of musical value.
Spatola's guitar and bass parts play a generic, supportive role and do not constitute unique compositional material.

**4. Flawed Prior Art Search**

Dr. Lustig's purported prior art search, which was not reflected in his initial report, relied on an incorrect key signature (Eb major) and chord progression (vi–IV–I(add6)–V). When analyzed correctly (C minor, i–VI–III–VII), the same progression appears in hundreds of commercially released songs, including Jason Derulo's *In My Head*.
This demonstrates the generic, commonplace nature of the harmonic structure.

**5. No Causation Between Guitar Parts and Vocals**

Dr. Lustig's suggestion that Spatola's chord voicings "magnetically guided" Derulo's vocal choices is speculative and unsupported. It is routine for singers to sing chord tones, and this does not establish creative authorship by the guitarist.

---

## III. DETAILED ANALYSIS

### A. Tempo and Form Agreement

I adopt Dr. Lustig's chosen tempo (75 BPM) solely for ease of direct reference. Whether counted in half-time or double-time has no bearing on the substance of this rebuttal.

### B. Harmony and Chord Voicings

Dr. Lustig's claim that Spatola introduced an *Eb(add6)* chord is incorrect. In relevant sections—Intro, Pre-Chorus, Choruses, Bridge—my ear transcriptions and analysis of both *SL* (in it's commercially released form, i.e., the master recording) and the isolated stems confirm the additional pitch (C) is not present. Published sheet music for *SL* also does not notate an *Eb(add6)* chord. Spatola's parts replicate the harmonic rhythm and chord sequence from *LSB* without modification. My opinion in this regard is further supported through my review of *SL* using "Melodyne," a software program that recognizes chords, keys, tunings, and tempos.

**C. Rhythmic Expression**

Minor variations in guitar strumming reflect conventional performance techniques and do not constitute novel rhythmic composition. The underlying harmonic rhythm remains identical to *LSB*.

**D. Bass Guitar Part**

Dr. Lustig's bass transcription contains pitch and rhythmic errors, including misidentifying an Eb as E natural and misrepresenting phrasing. My corrected transcription is attached as *Exhibit A*.

**E. Prior Art**

Dr. Lustig's initial report fails to state that he conducted any prior art search. A prior art search is needed to determine whether any contributions could be independently copyrightable. In his supplemental report, Dr. Lustig asserts that he did a prior art search but Dr. Lustig's reliance on erroneous key and chord progression undermines his purported Hooktheory.com database search. My search, also using Hooktheory.com but using the correct progression (i – VI – III – VII in C minor), identifies over 500 songs—including *In My Head*—showing the sequence is generic.

---

## IV. CONCLUSION

Dr. Lustig's opinions are undermined by transcription errors, flawed harmonic analysis, and unsound measurement of creative contribution. The guitar and bass parts in *SL* are derivative implementations of the pre-existing *LSB* arrangement, not original compositions by Spatola.

In my opinion the song's originality stems from the vocal hook and sample—not generic accompaniment.

# EXHIBITS

**Exhibit A — Corrected Bass Transcription**

**Figure 1:** Corrected Bass Transcription (*Prepared by William S. Rayner, Ph.D.*)



**Figure 1a:** Dr. Lustig's Bass Transcription for *Savage Love*



**Exhibit B — Guitar Transcriptions (Intro, Pre-Chorus, Chorus, Bridge)**

**Figure 2:** Guitar Performance Intro for *Savage Love*
*(Prepared by William S. Rayner, Ph.D.)*

**Figure 2a:** Dr. Lustig's Guitar Performance Intro for *Savage Love*

**Figures 3, 4, 5 & 6:** *Guitar sounds are 1 octave lower than written*

**Figure 3:** Acoustic Guitar Performance for Pre-Choruses 1& 2
(*Prepared by William S. Rayner, Ph.D.*)

**Figure 4:** Guitar Performance for Chorus 1.
(*Prepared by William S. Rayner, Ph.D.*)



**Figure 5:** Electric Guitar Performance for Chorus 2
(*Prepared by William S. Rayner, Ph.D.*)



**Figure 6:** Guitar Performance for Bridge
(*Prepared by William S. Rayner, Ph.D.*)



## Exhibit C — Hooktheory.com Search Results

**Figure 7:** Hooktheory.com Search — Songs Matching i–VI–III–VII Progression

**Figure 7a:** Hooktheory.com Search — Songs Matching i–VI–III–VII Progression

**Figure 7b:** Hooktheory.com Search — Songs Matching i–VI–III–VII Progression



**William S. Rayner, Ph.D.**
*Expert Musicologist for the Defendants*

# APPENDIX

**Introduction**

I am an expert in forensic musicology and am a composer, songwriter, and professional guitarist. I provided expertise on behalf of Led Zeppelin in Skidmore v Led Zeppelin (2016, "Stairway to Heaven"), on behalf of U2 in Lester v U2 (2007, "Vertigo"), and on behalf of Dickey Betts in Betts v Allman Brothers (2000).

I am on the faculty at New York University where my rank is Professor of Music, and my title is Assistant Adjunct Professor of all studies (B.M. through Ph.D.) in Music and the Performing Arts in NYU's Steinhardt School as well as NYU's Gallatin School of Individualized Study.

**Courses Taught at NYU**

Songwriting
Playing Jazz
Understanding Jazz
Composing Music, Creating Worlds,
Private and Group Guitar
Guitar Ensemble
Guitar Practicum
Music Theory
Ear Training
Sight Singing
Electronic Music

*Independent Study and Tutorial instruction:*
Music composition
Songwriting
Music Production

**Publications: Books**

*Introduction*, Duggan, Brian *How to Jam on Guitar*
(Duggan Press) 2021

**Fee rates for Professional Services**

$400 per hour plus travel-related time and expenses

# LIST OF MATERIALS USED

1. Dr. Lustig's Initial Report
2. Dr. Lustig's Rebuttal Report
3. Dr. Lustig's Supplemental Report
4. Dr. Ferrara's Initial Report
5. Dr. Ferrara's Rebuttal Report
6. Master Recordings:
   *Savage Love,* downloaded from iTunes
   *(Laxed—Siren Beat)* downloaded from iTunes
7. Isolated audio "stems" of *Savage Love* provided by Defendants' counsel
8. HookTheory.com:
   Hooktheory provides an analysis of chord progressions from a vast user-generated database of popular songs, allowing users to see how chords are used in practice.
9. Melodyne:
   Melodyne is an audio editor software primarily used for pitch and timing manipulation of vocals and instruments. Often described as an industry standard for access to all the musical details in recordings and samples – note by note. Melodyne is also highly regarded for its more advanced features, such as the ability to edit individual notes within chords and manipulate polyphonic audio.
10. Sheet Music of "Savage Love" purchased from Musicnotes (Attached)

# SAVAGE LOVE (LAXED - SIREN BEAT)

Words and Music by
JASON DESROULEAUX, PHILIPPE GREISS,
JOSHUA NANAI and JACOB KASHER HINDLIN







© 2020 Sony/ATV Songs, Jason Derulo Publishing, Rondor Music International Inc, Irving Music,
Rap Kingpin Music, Prescription Songs LLC, Kobalt Songs Music Publishing and Sine Publishing
Sony/ATV Music Publishing LLC, Universal Music Publishing Group, Kobalt Music Services America Inc,
BMG Right Management (France) and BMG Right Management (UK) Limited
All Rights Reserved

E♭
ev - er till I met you
U - su'al - ly, don't be fall - in',
be fall - in', fall - in' fast
B♭
You got - ta way of keep-ing
me com - in' back to back
N.C. Cm
I just found out, the on - ly
rea - son that you lov - in' me
A♭
Was to get back at your ex - lov - er
N.C.
but be - fore you leave
E♭
U - su'al - ly I would nev - er,
would nev - er e - ven care
B♭
Ba - by I know she creep-in',

Cm
I feel it in the air
Ev - 'ry night and ev - 'ry day
A♭
E♭
I try
to make you stay
B♭
N.C.
But your
Cm
A♭
Sav - age love Did some-bod - y, did some-bod - y Break your heart?

E♭
Look-in' like an an-gel But your sav - age love
When you kiss me I know you don't
N.C.
give two fucks But I still want that Your sav - age

Cm
A♭
E♭
3
love
Your sav-age love, love, love
mf
Your sav-age love, love, love
You could use me

B♭
To Coda
'Cause I still want that
mp
Cm
A♭
Ba - by, I hope that this ain't kar - ma 'cause I get a - round You wan - na run it up,
N.C.
E♭
I wan - na lock it down U - su'al - ly, don't be fall - in', be fall - in', fall - in' fast
B♭
N.C.
You got a way of mak - ing me spend up all my cash

Cm Ab

Ev - 'ry night and ev - 'ry day

Eb

I try to make you

Bb N.C. *D.S. al Coda*

stay But your

*Coda*

Cm Ab

love Your sav - age love, love, love

*p*

E♭
Your sav - age love, love, love
You could use me,
B♭
N.C.
ba - by
mp
Cm
A♭
Sav - age love Did some-bod - y, did some-bod - y Break your heart
mf
E♭
Look-in' like an an - gel But your sav - age love When you kiss me I know you don't

B♭
give two fucks But I still want that Your sav - age
Cm
love, sav - age love Your sav-age
A♭
love, love, love
Your sav-age love, love, love
E♭
Girl, you could use me
B♭
'Cause I still want that your sav - age love
N.C.



# William Smith Rayner, Ph.D.

52 California Street, Long Beach, NY, 11561
Tel: 516-897-241 | 708-605-59
Email: wsr1@nyu.edu
Website: www.billyrock.com

---

## EDUCATION

**Ph.D., Music Composition**
New York University, New York, NY — *May 1997*
Dissertation: *"Igor Stravinsky: An Analysis of Canticum Sacrum"* (accompanied by an original work)
Honors: Phi Kappa Lambda Society

**M.A., Music Composition**
Long Island University, C.W. Post Center, Greenvale, NY — *October 1982*
Honors: Magna Cum Laude

**A.A., Jazz Performance**
Five Towns College, Dix Hills, NY — *June 1981*
Honors: Magna Cum Laude

**B.A., English Literature**
Emerson College, Boston, MA — *June 1979*
Honors: Gold Key Honor Society, Magna Cum Laude

---

## ACADEMIC EMPLOYMENT HISTORY

**Adjunct Guitar Faculty**
New York University, School of Education — *1985–Present*

- Music theory, songwriting, jazz and rock guitar.

**Adjunct Faculty & Academic Advisor**
Gallatin School of Individualized Study, New York University — *1998–Present*

- Courses: Songwriting, Playing Jazz, Understanding Jazz, Composing Music, Creating Worlds, and private guitar lessons.
- Develop long-term intellectual and academic goals for students, emphasizing music concentrations.
- Mentor for the Gallatin Arts Festival.

**Lecturer**
Computer Music School, New York, NY — *1987–1988*

- Electronic music, including analogue and digital synthesis techniques and audio/MIDI recording software.

**Instructor**
Five Towns College, Dix Hills, NY — *1987–1988*

- Developed core curriculum for four-year accreditation; introduced computers in music composition.
- Taught guitar studies, ear training, sight singing, music theory, electronic music, and lyric writing.
- Performed original compositions with students and faculty.

---

## PROFESSIONAL EMPLOYMENT HISTORY

**Director** — *Be On Sound — 1985–Present*

- Performances with Herbie Hancock, Philip Glass, The Temptations, Meatloaf, Kaki King, Dave Douglas, and Ted Lewand.
- Composition, performance, and production of original works on CDs (*"3"*, *Music for the People*) and live shows with the group Last Generation.
- Audio production for film, video, music, and advertising.
- Credits include collaborations with Grammy winners Jerry Harrison (Talking Heads), producer/engineer Chris Shaw, and engineer Doug McKean.
- Film scoring for *Pure Lily* (dir. Jivko Darakchiev) and *Banned* (dir. Walter Sear); sound design for Jerry Harrison and Mano a Mano Clothing commercials.

---

## ADDITIONAL INFORMATION

Portfolio and recordings available at: www.billyrock.com

## PROOF OF SERVICE

STATE OF CALIFORNIA )
) ss.
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is Venable LLP, 2049 Century Park East, Suite 2300, Los Angeles, CA 90067.

On **June 20, 2025**, I served a copy ☑ / original ☐ of the foregoing document(s) described as **DEFENDANTS JASON DESROULEAUX P/K/A JASON DERULO AND SONY MUSIC ENTERTAINMENT D/B/A COLUMBIA RECORDS' SUPPLEMENTAL REBUTTAL EXPERT WITNESS DISCLOSURE** on the interested parties in this action addressed as follows:

**FROST LLP**
Christopher Frost
Paul Ghazaryan
Nico L. Brancolini
10960 Wilshire Blvd., Suite 2100
Los Angeles, CA 90024
Telephone: (424) 254-0441
Facsimile: (424) 600-8504
Email: chris@frostllp.com
paul@frostllp.com
nico@frostllp.com
allison@frostllp.com

Attorneys for Plaintiff Matthew Spatola

**WERGE & CORBIN LAW GROUP**
Thomas E.M. Werge *[Pro Hac Vice]*
Kelsey A. Martin *[Pro Hac Vice]*
Joseph McHatton *[Pro Hac Vice]*
Austin Baxter *[Pro Hac Vice]*
1736 Race Street
Denver, CO 80206
Telephone: (303) 586-4900
Facsimile: (720) 554-8042
Email: tom@werge.law
kelsey@werge.law
joseph@werge.law
austin@werge.law
nica@werge.law
connor@werge.law

Attorneys for Plaintiff Matthew Spatola

☑ **BY ELECTRONIC MEANS (FRCP 5(b)(2)(E)):** Pursuant to FRCP 5(b)(2)(E), I service the above stated document by electronic means to the interested parties in this action whose names and e-mail addresses are listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful. Service by e-mail or electronic means was agreed upon based on an agreement of the parties to accept service.

I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **June 20, 2025,** at Los Angeles, California.

Samantha Jackson

# EXHIBIT 6

 Outlook

**Re: Spatola v. Desrouleaux, et al.; USDC Case No. 2:23-cv-06191-MWF-E | Defendants' Amended Notice of Issuance of Subpoena to Testify at a Deposition in a Civil Action as to T-Mobile US, Inc.**

**From** Austin Baxter <austin@werge.law>
**Date** Tue 5/6/2025 9:05 PM
**To** Wilson, Emily J. <EJWilson@Venable.com>; Rosenberg, Joshua M. <JMRosenberg@Venable.com>; Nico Brancolini <nico@frostllp.com>; Thomas Werge <tom@werge.law>; Jackson, Samantha <SJackson@Venable.com>; Lasher, Rodney S <RSLasher@Venable.com>
**Cc** Chris Frost <chris@frostllp.com>; Paul Ghazaryan <Paul@frostllp.com>; Allison Mayo-Andrews <allison@frostllp.com>; Kelsey Martin <kelsey@werge.law>; Joseph MacHatton <joseph@werge.law>; Hayden Oliveira <Hayden@werge.law>; Nica Yoshimura <nica@werge.law>

Thanks Emily,

The draft looks good on our end. You have authorization to file.

Best,
Austin

Austin J. Baxter
Associate Attorney
Werge & Corbin Law Group
1736 Race Street
Denver, CO 80206
303-586-4900 x5
www.werge.law

---

**From:** Wilson, Emily J. <EJWilson@Venable.com>
**Sent:** Tuesday, May 6, 2025 8:18 PM
**To:** Austin Baxter <austin@werge.law>; Rosenberg, Joshua M. <JMRosenberg@Venable.com>; Nico Brancolini <nico@frostllp.com>; Thomas Werge <tom@werge.law>; Jackson, Samantha <SJackson@Venable.com>; Lasher, Rodney S <RSLasher@Venable.com>
**Cc:** Chris Frost <chris@frostllp.com>; Paul Ghazaryan <Paul@frostllp.com>; Allison Mayo-Andrews <allison@frostllp.com>; Kelsey Martin <kelsey@werge.law>; Joseph MacHatton <joseph@werge.law>; Hayden Oliveira <Hayden@werge.law>; Nica Yoshimura <nica@werge.law>
**Subject:** RE: Spatola v. Desrouleaux, et al.; USDC Case No. 2:23-cv-06191-MWF-E | Defendants' Amended Notice of Issuance of Subpoena to Testify at a Deposition in a Civil Action as to T-Mobile US, Inc.

Hi Austin,

A revised draft is attached for your review in line with what we've discussed below. Please let us know if we have your authorization to file.

Thanks,

Emily

**Emily J. Wilson, Esq. | Venable LLP**
t 410.244.7749 | f 410.244.7742 | m 443.472.8422
750 E. Pratt Street, Suite 900, Baltimore, MD 21202
(pronouns: she/her/hers)

EJWilson@Venable.com | www.Venable.com

---

**From:** Austin Baxter <austin@werge.law>
**Sent:** Tuesday, May 6, 2025 5:54 PM
**To:** Wilson, Emily J. <EJWilson@Venable.com>; Rosenberg, Joshua M. <JMRosenberg@Venable.com>; Nico Brancolini <nico@frostllp.com>; Thomas Werge <tom@werge.law>; Jackson, Samantha <SJackson@Venable.com>; Lasher, Rodney S <RSLasher@Venable.com>
**Cc:** Chris Frost <chris@frostllp.com>; Paul Ghazaryan <Paul@frostllp.com>; Allison Mayo-Andrews <allison@frostllp.com>; Kelsey Martin <kelsey@werge.law>; Joseph MacHatton <joseph@werge.law>; Hayden Oliveira <Hayden@werge.law>; Nica Yoshimura <nica@werge.law>
**Subject:** Re: Spatola v. Desrouleaux, et al.; USDC Case No. 2:23-cv-06191-MWF-E | Defendants' Amended Notice of Issuance of Subpoena to Testify at a Deposition in a Civil Action as to T-Mobile US, Inc.

**Caution: External Email**

Hello Emily,

I think we may have had the same idea, we were mostly concerned about rescheduling, especially given that the Court needs to enter the order approving the amendment. We propose that the Stipulation acknowledges the subpoena and identifies that the deposition will be rescheduled for a later date, and that the deposition transcript will be deemed timely discovery upon entry of the order. We are happy to get this authorized tonight if that revision is agreeable to you.

Best,
Austin

Austin J. Baxter
Associate Attorney
Werge & Corbin Law Group
1736 Race Street
Denver, CO 80206
303-586-4900 x5
www.werge.law

---

**From:** Wilson, Emily J. <EJWilson@Venable.com>
**Sent:** Monday, May 5, 2025 6:06 PM
**To:** Austin Baxter <austin@werge.law>; Rosenberg, Joshua M. <JMRosenberg@Venable.com>; Nico Brancolini <nico@frostllp.com>; Thomas Werge <tom@werge.law>; Jackson, Samantha <SJackson@Venable.com>; Lasher, Rodney S <RSLasher@Venable.com>
**Cc:** Chris Frost <chris@frostllp.com>; Paul Ghazaryan <Paul@frostllp.com>; Allison Mayo-Andrews <allison@frostllp.com>; Kelsey Martin <kelsey@werge.law>; Joseph MacHatton <joseph@werge.law>; Hayden Oliveira <Hayden@werge.law>; Nica Yoshimura <nica@werge.law>

**Subject:** RE: Spatola v. Desrouleaux, et al.; USDC Case No. 2:23-cv-06191-MWF-E | Defendants' Amended Notice of Issuance of Subpoena to Testify at a Deposition in a Civil Action as to T-Mobile US, Inc.

Austin,

Thanks for your email. Defendants will consent to a re-opening of all third party discovery, including expert discovery, as Plaintiff's edits to this draft propose, but Defendants will not agree to withdraw the April 8, 2025 subpoena to T-Mobile. Please let me know if Plaintiff will agree to this approach. If so, we will revise the draft accordingly, including by making further revisions for clarity and accuracy, and we will work with you to schedule a mutually agreeable date for the T-Mobile deposition.

Thanks,

Emily

**Emily J. Wilson, Esq. | Venable LLP**
t 410.244.7749 | f 410.244.7742 | m 443.472.8422
750 E. Pratt Street, Suite 900, Baltimore, MD 21202
(pronouns: she/her/hers)

EJWilson@Venable.com | www.Venable.com

---

**From:** Austin Baxter <austin@werge.law>
**Sent:** Monday, May 5, 2025 7:01 PM
**To:** Wilson, Emily J. <EJWilson@Venable.com>; Rosenberg, Joshua M. <JMRosenberg@Venable.com>; Nico Brancolini <nico@frostllp.com>; Thomas Werge <tom@werge.law>; Jackson, Samantha <SJackson@Venable.com>; Lasher, Rodney S <RSLasher@Venable.com>
**Cc:** Chris Frost <chris@frostllp.com>; Paul Ghazaryan <Paul@frostllp.com>; Allison Mayo-Andrews <allison@frostllp.com>; Kelsey Martin <kelsey@werge.law>; Joseph MacHatton <joseph@werge.law>; Hayden Oliveira <Hayden@werge.law>; Nica Yoshimura <nica@werge.law>
**Subject:** Re: Spatola v. Desrouleaux, et al.; USDC Case No. 2:23-cv-06191-MWF-E | Defendants' Amended Notice of Issuance of Subpoena to Testify at a Deposition in a Civil Action as to T-Mobile US, Inc.

**Caution: External Email**

Hello all:

Please see the attached redlines to the Draft Joint Stipulation and Draft Proposed Order. While we think there is certainly room for agreement on this joint stipulation, there are two main areas that Plaintiff identified in the draft that we would like to be addressed.

First, Plaintiff seeks clarification as to the T-Mobile deposition which Defendants noticed for later this week. The document is silent as to whether the deposition is going forward and as to the reason for the deposition. Plaintiff's position is that the subpoena was still issued without authorization from the Court, and that either (1) the Order on the Joint Stipulation is entered, or (2) Defendants successfully move to amend the scheduling order, is required for the subpoena to testify be valid. Second, based on the discussion that third-party discovery is non-prejudicial without a set trial date, the availability of third-party discovery should not be limited to non-expert discovery. Based on our mutual understanding of the effect of the lack of trial date on any claimed discovery prejudice, the argument of timeliness that Defendants presented at oral argument is undermined by this Joint Stipulation. We have been careful to craft the language such that only timeliness arguments are waived, and that the Court may rule on Defendants' motion to strike on any other grounds presented by Defendants.

Best,
Austin

Austin J. Baxter
Associate Attorney
Werge & Corbin Law Group
1736 Race Street
Denver, CO 80206
303-586-4900 x5
www.werge.law

---

**From:** Austin Baxter <austin@werge.law>
**Sent:** Monday, May 5, 2025 1:15 PM
**To:** Wilson, Emily J. <EJWilson@Venable.com>; Rosenberg, Joshua M. <JMRosenberg@Venable.com>; Nico Brancolini <nico@frostllp.com>; Thomas Werge <tom@werge.law>; Jackson, Samantha <SJackson@Venable.com>; Lasher, Rodney S <RSLasher@Venable.com>
**Cc:** Chris Frost <chris@frostllp.com>; Paul Ghazaryan <Paul@frostllp.com>; Allison Mayo-Andrews <allison@frostllp.com>; Kelsey Martin <kelsey@werge.law>; Joseph MacHatton <joseph@werge.law>; Hayden Oliveira <Hayden@werge.law>; Nica Yoshimura <nica@werge.law>
**Subject:** Re: Spatola v. Desrouleaux, et al.; USDC Case No. 2:23-cv-06191-MWF-E | Defendants' Amended Notice of Issuance of Subpoena to Testify at a Deposition in a Civil Action as to T-Mobile US, Inc.

Hi Emily,

Thank you again for taking the first pen. We are currently in review of your draft and will have a substantive response by the end of the day.

Best,
Austin

Austin J. Baxter
Associate Attorney
Werge & Corbin Law Group
1736 Race Street
Denver, CO 80206
303-586-4900 x5
www.werge.law

---

**From:** Wilson, Emily J. <EJWilson@Venable.com>
**Sent:** Monday, May 5, 2025 1:11 PM
**To:** Rosenberg, Joshua M. <JMRosenberg@Venable.com>; Austin Baxter <austin@werge.law>; Nico Brancolini <nico@frostllp.com>; Thomas Werge <tom@werge.law>; Jackson, Samantha <SJackson@Venable.com>; Lasher, Rodney S <RSLasher@Venable.com>
**Cc:** Chris Frost <Chris@frostllp.com>; Paul Ghazaryan <Paul@frostllp.com>; Allison Mayo-Andrews <allison@frostllp.com>; Kelsey Martin <kelsey@werge.law>; Joseph MacHatton <joseph@werge.law>; Hayden Oliveira <Hayden@werge.law>; Nica Yoshimura <nica@werge.law>
**Subject:** RE: Spatola v. Desrouleaux, et al.; USDC Case No. 2:23-cv-06191-MWF-E | Defendants' Amended Notice of Issuance of Subpoena to Testify at a Deposition in a Civil Action as to T-Mobile US, Inc.

All:

I'm following up on my email from Thursday. Please let us know if you have any comments on the Joint Stipulation and Proposed Order or if we have your permission to file.

Thanks,

Emily

**Emily J. Wilson, Esq.** | **Venable LLP**
t 410.244.7749 | f 410.244.7742 | m 443.472.8422
750 E. Pratt Street, Suite 900, Baltimore, MD 21202
(pronouns: she/her/hers)

EJWilson@Venable.com | www.Venable.com

---

**From:** Wilson, Emily J.
**Sent:** Thursday, May 1, 2025 9:50 PM
**To:** Rosenberg, Joshua M. <JMRosenberg@Venable.com>; Austin Baxter <austin@werge.law>; Nico Brancolini <nico@frostllp.com>; Thomas Werge <tom@werge.law>; Jackson, Samantha <SJackson@Venable.com>; Lasher, Rodney S <RSLasher@Venable.com>
**Cc:** Chris Frost <Chris@frostllp.com>; Paul Ghazaryan <Paul@frostllp.com>; Allison Mayo-Andrews <allison@frostllp.com>; Kelsey Martin <kelsey@werge.law>; Joseph MacHatton <joseph@werge.law>; Hayden Oliveira <Hayden@werge.law>; Nica Yoshimura <nica@werge.law>
**Subject:** RE: Spatola v. Desrouleaux, et al.; USDC Case No. 2:23-cv-06191-MWF-E | Defendants' Amended Notice of Issuance of Subpoena to Testify at a Deposition in a Civil Action as to T-Mobile US, Inc.

All:

A draft Joint Stipulation and Proposed Order are attached for your review. Please let us know if we have permission to file.

Thanks,

Emily

**Emily J. Wilson, Esq.** | **Venable LLP**
t 410.244.7749 | f 410.244.7742 | m 443.472.8422
750 E. Pratt Street, Suite 900, Baltimore, MD 21202
(pronouns: she/her/hers)

EJWilson@Venable.com | www.Venable.com

---

**From:** Rosenberg, Joshua M. <JMRosenberg@Venable.com>
**Sent:** Wednesday, April 30, 2025 7:24 PM
**To:** Austin Baxter <austin@werge.law>; Wilson, Emily J. <EJWilson@Venable.com>; Nico Brancolini <nico@frostllp.com>; Thomas Werge <tom@werge.law>; Jackson, Samantha <SJackson@Venable.com>; Lasher, Rodney S <RSLasher@Venable.com>
**Cc:** Chris Frost <Chris@frostllp.com>; Paul Ghazaryan <Paul@frostllp.com>; Allison Mayo-Andrews <allison@frostllp.com>; Kelsey Martin <kelsey@werge.law>; Joseph MacHatton <joseph@werge.law>; Hayden Oliveira <Hayden@werge.law>; Nica Yoshimura <nica@werge.law>
**Subject:** RE: Spatola v. Desrouleaux, et al.; USDC Case No. 2:23-cv-06191-MWF-E | Defendants' Amended Notice of Issuance of Subpoena to Testify at a Deposition in a Civil Action as to T-Mobile US, Inc.

Thanks Austin and Nico. We'll prepare the first draft of the Joint Stipulation and Proposed Order and send it to your office for review.

Best,
Josh

**Joshua M. Rosenberg | Partner | Venable LLP**
t 310.229.9931 | f 310.229.9901 | m 310.770.0721
2049 Century Park East, Suite 2300, Los Angeles, CA 90067

JMRosenberg@Venable.com | www.Venable.com

---

**From:** Austin Baxter <austin@werge.law>
**Sent:** Wednesday, April 30, 2025 3:23 PM
**To:** Wilson, Emily J. <EJWilson@Venable.com>; Rosenberg, Joshua M. <JMRosenberg@Venable.com>; Nico Brancolini <nico@frostllp.com>; Thomas Werge <tom@werge.law>; Jackson, Samantha <SJackson@Venable.com>; Lasher, Rodney S <RSLasher@Venable.com>
**Cc:** Chris Frost <Chris@frostllp.com>; Paul Ghazaryan <Paul@frostllp.com>; Allison Mayo-Andrews <allison@frostllp.com>; Kelsey Martin <kelsey@werge.law>; Joseph MacHatton <joseph@werge.law>; Hayden Oliveira <Hayden@werge.law>; Nica Yoshimura <nica@werge.law>
**Subject:** Re: Spatola v. Desrouleaux, et al.; USDC Case No. 2:23-cv-06191-MWF-E | Defendants' Amended Notice of Issuance of Subpoena to Testify at a Deposition in a Civil Action as to T-Mobile US, Inc.

**Caution: External Email**

Hi Emily, Josh, and Rodney:

Thank you for the conferral call today. We confirm that Defendants have discharged their LR 7-3 conferral obligations related to Defendants' Motion to Amend, if one becomes necessary to file.

With all rights reserved pending the review of the language in the Joint Stipulation, Plaintiff's counsel is open in principle to the concept of a joint stipulation. For abundance of clarity, in the event that agreement cannot be reached in the Joint Stipulation, Plaintiff will maintain its opposition to the Motion to Amend, and no further LR 7-3 conferral is necessary for such motion. We understand Defendants' counsel will take the first pen at this joint stipulation. We look forward to review of your draft and seeing if we can find a resolution without court intervention.

Best,
Austin

Austin J. Baxter
Associate Attorney
Werge & Corbin Law Group
1736 Race Street
Denver, CO 80206
303-586-4900 x5
www.werge.law

---

**From:** Wilson, Emily J. <EJWilson@Venable.com>
**Sent:** Wednesday, April 30, 2025 12:39 PM

**To:** Rosenberg, Joshua M. <JMRosenberg@Venable.com>; Nico Brancolini <nico@frostllp.com>; Thomas Werge <tom@werge.law>; Jackson, Samantha <SJackson@Venable.com>; Lasher, Rodney S <RSLasher@Venable.com>
**Cc:** Chris Frost <Chris@frostllp.com>; Paul Ghazaryan <Paul@frostllp.com>; Allison Mayo-Andrews <allison@frostllp.com>; Kelsey Martin <kelsey@werge.law>; Joseph MacHatton <joseph@werge.law>; Austin Baxter <austin@werge.law>; Hayden Oliveira <Hayden@werge.law>; Nica Yoshimura <nica@werge.law>
**Subject:** RE: Spatola v. Desrouleaux, et al.; USDC Case No. 2:23-cv-06191-MWF-E | Defendants' Amended Notice of Issuance of Subpoena to Testify at a Deposition in a Civil Action as to T-Mobile US, Inc.

Counsel:

Thank you, Nico and Austin, for speaking with us by Zoom just now.

We have met and conferred regarding Defendants' Motion to Amend the Scheduling Order, and as we agreed during our call, Defendants have discharged their obligations to meet and confer with Plaintiff under Local Rule 7-3. During the course of our call, Nico raised the possibility of entering into a joint stipulation for a limited reopening of discovery. Defendants agree with this approach. We understand that Austin will let us know by end of day today whether Tom agrees with this proposal. If the proposal is rejected, then the parties agree that Defendants have discharged their Local Rule 7-3 obligations, and Defendants will proceed with filing the motion we discussed.

Thanks,

Emily

**Emily J. Wilson, Esq.** | **Venable LLP**
t 410.244.7749 | f 410.244.7742 | m 443.472.8422
750 E. Pratt Street, Suite 900, Baltimore, MD 21202
(pronouns: she/her/hers)

EJWilson@Venable.com | www.Venable.com

---

**From:** Rosenberg, Joshua M. <JMRosenberg@Venable.com>
**Sent:** Tuesday, April 29, 2025 4:36 PM
**To:** Nico Brancolini <nico@frostllp.com>; Thomas Werge <tom@werge.law>; Jackson, Samantha <SJackson@Venable.com>; Lasher, Rodney S <RSLasher@Venable.com>; Wilson, Emily J. <EJWilson@Venable.com>
**Cc:** Chris Frost <Chris@frostllp.com>; Paul Ghazaryan <Paul@frostllp.com>; Allison Mayo-Andrews <allison@frostllp.com>; Kelsey Martin <kelsey@werge.law>; Joseph MacHatton <joseph@werge.law>; Austin Baxter <austin@werge.law>; Hayden Oliveira <Hayden@werge.law>; Nica Yoshimura <nica@werge.law>
**Subject:** RE: Spatola v. Desrouleaux, et al.; USDC Case No. 2:23-cv-06191-MWF-E | Defendants' Amended Notice of Issuance of Subpoena to Testify at a Deposition in a Civil Action as to T-Mobile US, Inc.

Dear Mr. Brancolini,

Thank you for your response. We obviously disagree with the substance of it. We are also available to meet and confer tomorrow at 11:00am PST to comply with Local Rule 7-3. I'll send you all a Zoom invite. Speak with you then.

Best,
Josh

**Joshua M. Rosenberg | Partner | Venable LLP**
t 310.229.9931 | f 310.229.9901 | m 310.770.0721
2049 Century Park East, Suite 2300, Los Angeles, CA 90067

JMRosenberg@Venable.com | www.Venable.com

---

**From:** Nico Brancolini <nico@frostllp.com>
**Sent:** Tuesday, April 29, 2025 1:29 PM
**To:** Rosenberg, Joshua M. <JMRosenberg@Venable.com>; Thomas Werge <tom@werge.law>; Jackson, Samantha <SJackson@Venable.com>; Lasher, Rodney S <RSLasher@Venable.com>; Wilson, Emily J. <EJWilson@Venable.com>
**Cc:** Chris Frost <Chris@frostllp.com>; Paul Ghazaryan <Paul@frostllp.com>; Allison Mayo-Andrews <allison@frostllp.com>; Kelsey Martin <kelsey@werge.law>; Joseph MacHatton <joseph@werge.law>; Austin Baxter <austin@werge.law>; Hayden Oliveira <Hayden@werge.law>; Nica Yoshimura <nica@werge.law>
**Subject:** RE: Spatola v. Desrouleaux, et al.; USDC Case No. 2:23-cv-06191-MWF-E | Defendants' Amended Notice of Issuance of Subpoena to Testify at a Deposition in a Civil Action as to T-Mobile US, Inc.

**Caution: External Email**

Good afternoon Mr. Rosenberg,

We have received your email regarding Plaintiff's objections to the T-Mobile deposition subpoena. Your email, however, misstates and conflates several distinct procedural issues, notably attempting to justify Defendants' clear violation of the Court's scheduling order by referencing unrelated procedural events in the case.

First, under Federal Rule of Civil Procedure 16(b), the Court's scheduling order can be modified only upon a showing of good cause and with the Court's explicit consent. Defendants served the deposition subpoena on T-Mobile on April 8, 2025, nearly six months after the non-expert discovery cut-off of October 18, 2024. This subpoena, regardless of its characterization as a "trial preservation deposition," plainly constitutes an attempt to obtain new evidence and is thus subject to the same discovery deadlines. Courts consistently hold that labeling a deposition as a "trial preservation deposition" does not exempt it from compliance with scheduling orders. *See, e.g., Integra Lifesciences I, Ltd. v. Merck KGaA*, 190 F.R.D. 556, 559-60 (S.D. Cal. 1999).

Second, Defendants have provided no credible explanation or justification for failing to conduct this deposition within the original discovery period, nor have they sought leave from the Court to amend the scheduling order. The claim that the deposition became necessary only after Mr. Akinwande's deposition testimony lacks merit, as Defendants were clearly aware, well before discovery closed, of their intended reliance on T-Mobile records.

Third, Defendants' repeated references to Plaintiff's procedural actions are misplaced and inappropriate. Defendants previously asserted—in emails dated February 28, 2025, and March 3, 2025—that depositions scheduled months after the discovery cut-off violate Federal Rule of Civil Procedure 16 and explicitly required Plaintiff to formally seek and obtain leave of court to amend the scheduling order prior to proceeding. And even when Plaintiff filed a formal motion to reopen discovery, Defendants vigorously opposed it. Then Defendants characterized Plaintiff's deposition notices as "untimely and inadmissible" and emphasized that "trial preservation depositions" are not exempt from discovery deadlines. Yet, Defendants now precisely seek such depositions themselves without even attempting to formally amend the Court's Scheduling Order. Defendants' actions here are inconsistent at best and reflect a glaring double standard—employing the very procedural tactics they previously condemned so vigorously.

Fourth, your assertion that Plaintiff's objection "seeks to suppress irrefutable evidence" and implies a desire to "prevent the truth" is both inappropriate and inaccurate. Plaintiff's objection is procedural, asserting that Defendants' subpoena violates the Court's scheduling order and Federal Rules. Plaintiff has not objected to authentic and properly disclosed evidence; Plaintiff objects solely to Defendants' attempt to circumvent the Court's established procedural rules. Any prejudice Plaintiff identifies arises precisely from Defendants' attempt to introduce new evidence outside the allowed discovery period, thereby impairing Plaintiff's ability to respond adequately.

Additionally, Defendants' claim that Plaintiff lacks standing to object under Rule 45(d)(2)(B) is misguided. Plaintiff clearly has standing to object to discovery conducted after the deadline imposed by Rule 16 and the Court's scheduling order, as this directly impacts Plaintiff's trial preparations and strategy.

Furthermore, as T-Mobile's compliance would entail unnecessary burden and potential procedural complications due to the untimeliness of Defendants' subpoena, Plaintiff reiterates that T-Mobile is under no obligation to comply unless and until Defendants obtain explicit Court approval.

Finally, and in the interest of candor, Plaintiff is skeptical about the productivity of further oral conferral based on Defendants' prior conduct during meet-and-confer conferences. The aggressive posturing, consistent mischaracterization of Plaintiff's positions, and Defendants' tendency to transform routine doctrinal disagreements into accusations of outright fabrication not only waste Plaintiff's time and resources but fundamentally undermine the spirit of the meet-and-confer requirements. When Plaintiff makes straightforward factual observations—such as noting Defendants' counsel's stated strategic motivation for filing the Motion to Strike to secure a reply brief—Defendants respond with baselessly disproportionate accusations of dishonesty and insinuations of misconduct. Indeed, Defendants demand we steelman their positions while simultaneously treating every minor disagreement or occasional misunderstanding as justification for allegations of willful misconduct. It's pernicious, unproductive, and a disservice to both our clients and the Court.

Nevertheless, acknowledging the requirements of Local Rule 37-1, Plaintiff remains willing to engage in a brief (no more than 30-minute) telephonic meet-and-confer discussion. We are available at 11:00 a.m. tomorrow PT or mid-afternoon (2 p.m. and onward). Alternatively, Plaintiff is also open to continuing conferral in writing. Should Defendants elect to seek relief from the Court, Plaintiff will address these issues fully in briefing before the Court.

Thank you,
--Nico



Nico L. Brancolini
Senior Associate Attorney
Email: nico@frostllp.com
Phone: (424) 254-0441
10960 Wilshire Blvd., Suite 2100
Los Angeles, CA 90024

---

**From:** Rosenberg, Joshua M. <JMRosenberg@Venable.com>
**Sent:** Monday, April 28, 2025 12:11 PM
**To:** Thomas Werge <tom@werge.law>; Jackson, Samantha <SJackson@Venable.com>; Chris Frost <Chris@frostllp.com>; Paul Ghazaryan <Paul@frostllp.com>; Nico Brancolini <nico@frostllp.com>; Allison Mayo-Andrews <allison@frostllp.com>; Kelsey Martin <kelsey@werge.law>; Joseph MacHatton <joseph@werge.law>; Austin Baxter <austin@werge.law>; Hayden Oliveira <Hayden@werge.law>
**Cc:** Lasher, Rodney S <RSLasher@Venable.com>; Wilson, Emily J. <EJWilson@Venable.com>
**Subject:** RE: Spatola v. Desrouleaux, et al.; USDC Case No. 2:23-cv-06191-MWF-E | Defendants' Amended Notice of Issuance of Subpoena to Testify at a Deposition in a Civil Action as to T-Mobile US, Inc.

[External E-mail]

Counsel,

I write to follow up again on my email below from Tuesday, April 22, 2025.  Because of the delivery receipts I've sent and the read receipts I've received, I know that you (including Mr. Werge) are receiving and reading my emails, but you are not responding to them.  We are entitled to a response.

Please provide us with your availability to have a videoconference meet and confer call this week (April 28-May 2, 2025) regarding the issues below and in accordance with Local Rule 7-3, also as set forth below.

Thanks,
Josh

**Joshua M. Rosenberg | Partner | Venable LLP**
t 310.229.9931 | f 310.229.9901 | m 310.770.0721
2049 Century Park East, Suite 2300, Los Angeles, CA 90067

JMRosenberg@Venable.com | www.Venable.com

---

**From:** Rosenberg, Joshua M.
**Sent:** Friday, April 25, 2025 11:01 AM

**To:** 'Thomas Werge' <tom@werge.law>; Jackson, Samantha <SJackson@Venable.com>; 'chris@frostllp.com' <chris@frostllp.com>; 'Paul@frostllp.com' <Paul@frostllp.com>; 'nico@frostllp.com' <nico@frostllp.com>; 'allison@frostllp.com' <allison@frostllp.com>; 'Kelsey Martin' <kelsey@werge.law>; 'Joseph MacHatton' <joseph@werge.law>; 'Austin Baxter' <austin@werge.law>; 'Hayden Oliveira' <Hayden@werge.law>
**Cc:** Lasher, Rodney S <RSLasher@Venable.com>; Wilson, Emily J. <EJWilson@Venable.com>
**Subject:** RE: Spatola v. Desrouleaux, et al.; USDC Case No. 2:23-cv-06191-MWF-E | Defendants' Amended Notice of Issuance of Subpoena to Testify at a Deposition in a Civil Action as to T-Mobile US, Inc.
**Importance:** High

Counsel,

Following up on my email below from Tuesday, April 22, 2025.

Please provide us with your availability to have a videoconference meet and confer call next week (April 28-May 2, 2025) regarding the issues below and in accordance with Local Rule 7-3, also as set forth below.

Thanks,
Josh

**Joshua M. Rosenberg | Partner | Venable LLP**
t 310.229.9931 | f 310.229.9901 | m 310.770.0721
2049 Century Park East, Suite 2300, Los Angeles, CA 90067

JMRosenberg@Venable.com | www.Venable.com

---

**From:** Rosenberg, Joshua M.
**Sent:** Tuesday, April 22, 2025 9:26 AM
**To:** Thomas Werge <tom@werge.law>; Jackson, Samantha <SJackson@Venable.com>; chris@frostllp.com; Paul@frostllp.com; nico@frostllp.com; allison@frostllp.com; Kelsey Martin <kelsey@werge.law>; Joseph MacHatton <joseph@werge.law>; Austin Baxter <austin@werge.law>; Hayden Oliveira <Hayden@werge.law>
**Cc:** Lasher, Rodney S <RSLasher@Venable.com>; Wilson, Emily J. <EJWilson@Venable.com>
**Subject:** RE: Spatola v. Desrouleaux, et al.; USDC Case No. 2:23-cv-06191-MWF-E | Defendants' Amended Notice of Issuance of Subpoena to Testify at a Deposition in a Civil Action as to T-Mobile US, Inc.

Dear Mr. Werge, Mr. Frost, Mr. MacHatton, Mr. Brancolini, Mr. Baxter, Mr. Ghazaryan, and others on Werge & Corbin Law Group and Frost LLP teams:

We write to address the Objection dated April 21, 2025 and served by Plaintiff Matthew Spatola p/k/a Matty Spats ("Spatola") in response to Defendants Jason Desrouleaux p/k/a Jason Derulo and Sony Music Entertainment d/b/a Columbia Records' (collectively, "Defendants") Notice of Deposition and Amended Deposition Notice of T-Mobile (the "T-Mobile Depo Notice). On March 24, 2025, Defendants served the attached T-Mobile trial subpoena on Spatola (to which Spatola has never objected) seeking testimony and production of documents from T-Mobile for the then-scheduled May

6, 2025 trial.  On April 1, 2025, the Court vacated the May 6, 2025 trial date (ECF No. 130).  As a result and given the uncertainty of T-Mobile's availability for trial, Defendants served the initial notice of the T-Mobile trial preservation deposition on April 8, 2025.  Thereafter, Defendants properly served T-Mobile with the trial preservation deposition subpoena.  Defendants then served an amended notice on April 18, 2025 simply to correct the time for such deposition with no other changes to the T-Mobile Depo Notice or underlying subpoena.

In short, Spatola's April 21 objections to the T-Mobile Depo Notice appear to be as follows: (1) the discovery cut-off has passed; (2) Defendants did not list T-Mobile on their witness list or claim T-Mobile was unavailable prior to noticing this deposition; (3) the testimony and responsive documents to be produced/provided by T-Mobile were not previously disclosed to Spatola; (4) Defendants did not confer with Spatola prior to serving the T-Mobile Depo Notice; (5) Defendants have not shown that T-Mobile is unavailable; and (6) Defendants did not move to amend the scheduling order.  Spatola's current position and objections cannot be reconciled with his prior conduct and the contrary positions he has repeatedly taken in this case, especially in the past two months.  That Spatola will ignore deadlines when it serves him and observe them when it doesn't is unreasonable and inconsistent with the principles that this Court has explained to the parties.

The T-Mobile Depo Notice was served in the interests of efficiency and as promptly as possible, and Defendants have acted with diligence in pursuing the very limited testimony and documents at issue from T-Mobile.  The impetus for T-Mobile's testimony authenticating documents stems from the Court's March 7, 2025 Order denying Defendants' Ex Parte Application and permitting the depositions of third party witnesses Akintunde Akinwande p/k/a TuneDaRula and Pedro Fontes Viega p/k/a June Freedom to proceed after the discovery cut-off.  In particular, it results from the unexpected allowance of the deposition of Mr. Akinwande, which centered on a purported April 22, 2020 telephone call between he and Defendant Derulo, as well as the alleged telephone call between Derulo and Spatola that supposedly occurred on the evening of April 22, 2020.  Once Mr. Akinwande's testimony was permitted and revealed, it led to further investigative efforts, and the Court vacating the May 6, 2025 trial date led to the service of the trial preservation deposition subpoena on T-Mobile.  The deposition of T-Mobile is aimed at avoiding a scenario where T-Mobile's designated representative is forced to needlessly fly out for trial (where the date is not currently scheduled) or there are issues with the breadth of the subpoena power because T-Mobile's primary address is identified as being in Sacramento, California (*i.e.*, beyond the permitted geographic distance for the Court's subpoena power such that T-Mobile would, in fact, be unavailable).  Relatedly, and of equal importance, **this testimonial and documentary evidence from T-Mobile will be introduced at trial one way or another due to the FRCP 45 trial subpoena (which also requests the production of documents) that was also validly served on T-Mobile and the Notice of which was served upon Plaintiff's counsel (see attached)**.  Effectively, Defendants have done everything they can to lessen the burden on this third-party witness by creating different pathways for the truth to be revealed—something all parties, their counsel, and the Court should desire.

We are surprised that Plaintiff Spatola seeks to suppress irrefutable evidence of telephone calls that were made (or not made) on or about the evening of April 22, 2020, which is when Spatola claims the most crucial telephone communications occurred.  There is no prejudice to Spatola of a short trial preservation deposition of T-Mobile that seeks only to have T-Mobile authenticate records that have been produced and that T-Mobile was subpoenaed to produce at trial.  Spatola cannot validly argue any prejudice where such records and testimony from a completely unbiased third party will only provide transparency and expose the truth of what did (or did not) occur on the evening of April 22,

2020. Why would Spatola want to prevent the truth from coming out about these alleged telephone calls that supposedly occurred on or about April 22, 2020?

Despite your March 2025 averments that you learned in December 2024 that Mr. Akinwande and Mr. Fontes Viega were unavailable for our initial trial date in January 2025, as you know well (and despite what was stated in the declarations in support of Spatola's Opposition to Defendants' Ex Parte Application and in support of Spatola's Motion to Amend the Scheduling Order), you ***never*** mentioned that these witnesses were unavailable at that time, including when requesting that these witnesses be permitted to testify remotely (*i.e.*, in December 2024). Instead, it was not until February 11, 2025 that you expressed, for the first time, that Spatola intended "to take trial preservation depositions" of these witnesses because, as you explained multiple weeks later, you learned that both Mr. Akinwande and Mr. Fontes Viega were also purportedly unavailable for a May 2025 trial date. The Court allowed these depositions to proceed after the discovery cut-off and without a showing of their unavailability beyond your own superficial, hearsay statements, which declaration testimony was contradicted by Mr. Akinwande's deposition testimony (you prevented Defendants from completing their cross-examination of Mr. Akinwande, knowing that they planned to ask him about telephone records that we produced and provided to you as exhibits for Mr. Akinwande's deposition). Even if Mr. Fontes Viega did not appear for his deposition after he was served in Reseda, California (*i.e.*, within the subpoena power of the Court), we anticipate a new notice will be forthcoming. The Court also indicated in its April 14, 2025 Tentative Ruling that a "short additional deposition" is not "too prejudicial." You do not and cannot articulate any prejudice to Spatola from permitting a short trial preservation deposition of T-Mobile authenticating telephone records.

Further, we must also remind you that even if the fact and expert discovery cut-offs have passed, this did not stop Spatola from: (1) unilaterally noticing the deposition of Mr. Akinwande; (2) threatening the imminent deposition of Mr. Fontes Veiga; and (3) serving Dr. Ethan Lustig's supplemental report. Spatola did all of this after discovery was closed, without conferring with Defendants at all (which Spatola's objection ironically complains of as relates to the T-Mobile Depo Notice), and without Spatola first moving to amend the scheduling order. While Spatola later moved to amend the scheduling order (only to withdraw such motion), the discovery cut-offs (like the deadlines for Initial and Rebuttal Expert Disclosures) and FRCP are apparently something Spatola alone can disregard when he chooses. We urge you to reconsider your position due to these facts and because, again, this discovery stems from the post-cut-off discovery Spatola in which was allowed to engage.

Moreover, we produced certain T-Mobile telephone records to Spatola almost a month ago (*i.e.*, on March 25 and 28, 2025, respectively). Spatola did not object to these records, nor did Spatola object to any of the other documents produced at or around that time; rather, **<u>Spatola actually used</u>** certain of the documents Defendants produced on March 25, 2025 during the deposition of Mr. Akinwande and even listed some of them on Spatola's "Amended Exhibit List" that he unilaterally filed on March 31, 2025, about which you also did not confer with us.

None of Rules 16, 30, 32, or 45 of the Federal Rules of Civil Procedure ("FRCP") support the validity or stated effect of Spatola's objections, including that the T-Mobile Depo Notice is "void" or that any documents produced thereunder "cannot be used at trial" or are "inadmissible" such that "this deposition is unduly burdensome as it cannot legally lead to any discoverable information, as discovery is closed." For example, FRCP 45(d)(2)(B) contemplates objections being served by the "person commanded to produce documents or tangible things or to permit inspection[.]" In other words, that would be T-Mobile and ***not*** Spatola. FRCP 32 discusses objections to the deposition

notice, including that any objection "to an error or irregularity in a deposition notice is waived unless promptly served in writing on the party giving notice." *See* Fed. R. Civ. P. 32(d)(1). Of course, there does not appear to be any basis upon which Spatola could genuinely and in good faith challenge the competence, relevance, or materiality of documents and testimony relating to whether there was, for example, a telephone phone call between Defendant Derulo and Mr. Akinwande (where Mr. Akinwande's entire testimony centered on a purported phone call between the two) or between Derulo and Spatola on April 22, 2020. *See* Fed. R. Civ. P. 32(d)(3)(A). FRCP 16 and 30 likewise do not support Spatola's outright rejection of this trial preservation deposition.

The appropriateness of Spatola's objections aside (which will not be decided by you or by us but, if necessary, by the Court), Defendants' position remains that the T-Mobile Depo Notice is proper and that your e-mail proclamation accompanying service of the Objection purporting to make T-Mobile "aware that the subpoena is invalid and that T-Mobile need not comply" is without merit. As such, **please let us know your availability to meet and confer over these issues more fully so that we can try to reach a resolution that obviates the need for further motion practice and the Court's intervention**. If we cannot reach an agreement relating to this trial preservation deposition or a suitable stipulation concerning the authenticity of the telephone records produced by T-Mobile, we will need to confer pursuant to Local Rule 7-3 prior to Defendants being forced to bring a Motion to Amend the Scheduling Order.

Please advise as your earliest convenience when you are able meet and confer.

All rights and remedies reserved.

Thanks,
Josh

**Joshua M. Rosenberg | Partner | Venable LLP**
t 310.229.9931 | f 310.229.9901 | m 310.770.0721
2049 Century Park East, Suite 2300, Los Angeles, CA 90067

JMRosenberg@Venable.com | www.Venable.com

---

**From:** Thomas Werge <tom@werge.law>
**Sent:** Monday, April 21, 2025 5:39 PM
**To:** Jackson, Samantha <SJackson@Venable.com>; chris@frostllp.com; Paul@frostllp.com; nico@frostllp.com; allison@frostllp.com; Kelsey Martin <kelsey@werge.law>; Joseph MacHatton <joseph@werge.law>; Austin Baxter <austin@werge.law>; Hayden Oliveira <Hayden@werge.law>
**Cc:** Rosenberg, Joshua M. <JMRosenberg@Venable.com>; Lasher, Rodney S <RSLasher@Venable.com>; Wilson, Emily J. <EJWilson@Venable.com>; ler2@t-mobile.com; lerinbound@t-mobile.com; lercourtorders@t-mobile.com
**Subject:** RE: Spatola v. Desrouleaux, et al.; USDC Case No. 2:23-cv-06191-MWF-E | Defendants' Amended Notice of Issuance of Subpoena to Testify at a Deposition in a Civil Action as to T-Mobile US, Inc.

**Caution: External Email**

Dear Venable Team,

Please see the attached objection to the notice and amended notice for the subpoena issued to T-Mobile. As identified in the objection, the subpoena is facially invalid, including for being issued after the close of discovery. Accordingly, the subpoena is void, the deposition cannot be taken, and the request to produce documents is also void. I have copied T-Mobile on this communication so that it is aware that the subpoena is invalid and that T-Mobile need not comply.

Thomas Werge
Werge & Corbin Law Group
303-586-4900 x1
tom@werge.law

---

**From:** Jackson, Samantha <SJackson@Venable.com>
**Sent:** Friday, April 18, 2025 5:03 PM
**To:** chris@frostllp.com; Paul@frostllp.com; nico@frostllp.com; allison@frostllp.com; Thomas Werge <tom@werge.law>; Kelsey Martin <kelsey@werge.law>; Joseph MacHatton <joseph@werge.law>; Austin Baxter <austin@werge.law>; Hayden Oliveira <Hayden@werge.law>; Connor Madden <Connor@werge.law>
**Cc:** Rosenberg, Joshua M. <JMRosenberg@Venable.com>; Lasher, Rodney S <RSLasher@Venable.com>; Wilson, Emily J. <EJWilson@Venable.com>
**Subject:** Spatola v. Desrouleaux, et al.; USDC Case No. 2:23-cv-06191-MWF-E | Defendants' Amended Notice of Issuance of Subpoena to Testify at a Deposition in a Civil Action as to T-Mobile US, Inc.

Dear Counsel,

Please see attached copy of the following document:

- *DEFENDANTS JASON DESROULEAUX P/K/A JASON DERULO AND SONY MUSIC ENTERTAINMENT D/B/A COLUMBIA RECORDS' AMENDED NOTICE OF SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION AS TO T-MOBILE US, INC.*

Thank you,

Samantha Jackson | **Legal Administrative Assistant** | Venable LLP
*Legal Administrative Assistant to Joshua M. Rosenberg*
t 310.229.0476 | f 310.229.9901
2049 Century Park East, Suite 2300, Los Angeles, CA 90067

SJackson@Venable.com | www.Venable.com

**************************************************************************************
This electronic mail transmission may contain confidential or

privileged information. If
you believe you have received this message in error, please notify the sender by reply
transmission and delete the message without copying or disclosing it.
***********************************************************************************
*****************

**WERGE & CORBIN LAW GROUP**
Thomas E.M. Werge (State Bar # 362485)
*tom@werge.law*
1736 Race Street
Denver, CO 80206
Telephone: (303) 586-4900
Facsimile: (720) 554-8042
**FROST, LLP**
Christopher Frost (State Bar No. 200336)
*chris@frostllp.com*
10960 Wilshire Blvd., Suite 2100
Los Angeles, CA 90024
Telephone: (424) 254-0441
Facsimile: (424) 600-8504

*Attorneys for Plaintiff*
MATTHEW SPATOLA p/k/a
MATTY SPATS

UNITED STATES DISTRICT COURT
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MATTHEW SPATOLA p/k/a MATTY SPATS,<br><br>Plaintiff,<br><br>v.<br><br>JASON DESROULEAUX p/k/a JASON DERULO; and SONY MUSIC ENTERTAINMENT d/b/a COLUMBIA RECORDS,<br><br>Defendants. | CASE NO. 2:23-cv-06191-MWF-E<br><br>**DECLARATION OF NICO L. BRANCOLINI IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE NO. 3 TO EXCLUDE TESTIMONY OF DEFENDANTS' PROPOSED REBUTTAL EXPERT DR. WILLIAM RAYNER**<br>*(Concurrently Filed with Notice of Motion and Motion; Memorandum of Points and Authorities; [Proposed] Order)*<br>Action Filed: July 31, 2023<br>FAC Filed: December 21, 2023<br>Final Pretrial Conf.: March 30, 2026<br>Trial Date: April 21, 2026 |

**DECLARATION OF NICO L. BRANCOLINI**

I, Nico Brancolini, declare as follows:

1. I am an attorney admitted to practice law in the State of California. I am an Attorney with Frost, LLP, and counsel of record for Plaintiff Matthew Spatola p/k/a Matty Spats ("Plaintiff" or "Spatola").

2. I am over eighteen years of age, I have personal knowledge of the following facts, and if called as a witness, I could and would competently testify thereto.

3. I submit this declaration in support of Plaintiff's Motion in Limine No. 3 to exclude the testimony and report of Defendants' proposed expert, Dr. William Rayner.

4. Pursuant to Local Rule 7-3, Plaintiff's counsel (myself, Thomas E.M. Werge, Joseph A. MacHatton, and Veronica A. Phifer) met and conferred via Zoom with Defendants' counsel (Joshua Rosenberg, Kazim Naqvi, and Allison Wong) regarding the subject Motion on January 12, 2026, at 2:00 PM PT.

5. During the January 12, 2026 conferral, Plaintiff's counsel took the position that Dr. Rayner's report should be excluded as untimely, unauthorized, and duplicative. Defendants' counsel took the position that Dr. Rayner's report was properly disclosed and justified, contending that Dr. Lustig's supplemental report could not be read in isolation from his prior reports. The parties were unable to reach a resolution.

6. Prior to the Parties' meeting on January 12, 2026, I conferred via email with Defendants' counsel between April 18, 2025 and May 6, 2025.

7. Through these conferral emails, I explained that Plaintiff opposed Defendants conducting third-party discovery on T-Mobile after the Court's discovery deadline passed.

8. Pursuant to Local Rule 7-3, Plaintiff's counsel (myself and former counsel Austin Baxter) met with Defendants' counsel (Joshua Rosenberg, Emily

Wilson, and Rodney Lasher) on April 30, 2025 to discuss Defendants' interest in conducting additional third-party discovery on T-Mobile.

9.    In an effort to cooperate with Defendants' counsel, I proposed a joint stipulation with the primary purpose of allowing Defendants to engage in additional third-party discovery.

10.    During our meet and conferral meeting on April 30, 2025, and in several emails following that conferral, Defendants never once suggested that they intended to hire a new rebuttal expert.

11.    The Parties entered a Joint Stipulation on May 7, 2025, agreeing to extend the discovery deadline to June 13, 2025. A true and correct copy of that Joint Stipulation is included in the docket as **Document 134**.

12.    The Parties subsequently entered a Joint Stipulation on June 19, 2025, further extending the discovery deadline to June 20, 2025. A true and correct copy of that Joint Stipulation is included in the docket as **Document 135**.

13.    Attached hereto as **Exhibit 1** is a true and correct copy of Dr. Lustig's Initial report, submitted to Defendants on October 11, 2024.

14.    Attached hereto as **Exhibit 2** is a true and correct copy of Dr. Ferrara's Rebuttal report, received by Plaintiff on October 25, 2025.

15.    Attached hereto as **Exhibit 3** is a true and correct copy of Dr. Lustig's Rebuttal report to Dr. Ferrara's Initial report, submitted by Plaintiff to Defendants on October 25, 2025.

16.    Attached hereto as **Exhibit 4** is a true and correct copy of Dr. Lustig's Supplemental report, submitted by Plaintiff to Defendants on February 7, 2025.

17.    Attached hereto as **Exhibit 5** is a true and correct copy of Dr. Rayner's Rebuttal report, received by Plaintiff on June 20, 2025.

18.    Attached hereto as **Exhibit 6** is a true and correct copy of the email communications in anticipation of the Parties' Joint Stipulation agreeing to extend the discovery deadline. The emails are dated between April 18, 2025 and May 6, 2025.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 2, 2026, in Los Angeles, California

*/s/ Nico. L. Brancolini*
Nico L. Brancolini

4

Case No. 2:23-cv-06191-MWF-E
Plaintiff's Motion in Limine No. 3
to Exclude Dr. William Rayner