UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*** R E D A C T E D ***

CIVIL MINUTES—GENERAL

**Case No.**  CV 23-6191-MWF(Ex)               **Date:**  April 7, 2026
Title:     Matthew Spatola v. Jason Desrouleaux, et al.

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:                          Court Reporter:
Rita Sanchez                           Not Reported

Attorneys Present for Plaintiff:       Attorneys Present for Defendant:
None Present                           None Present

**Proceedings (In Chambers):**  ORDER RE: MOTIONS IN LIMINE [101] [102] [103] [104] [109] [110] [160] [162]; COURT'S ORDER TO SHOW CAUSE [182]; SCHEDULING ORDER

Before the Court are eight Motions in Limine filed by the parties along with the parties' responses to the Court's Order to Show Cause.

The Motions in Limine and associated briefing are reflected on the docket as follows:

- Defendants' Motion in Limine No. 1 to Exclude Irrelevant and Prejudicial Evidence and Argument filed on December 16, 2024. (Docket No. 101). Plaintiff filed an Opposition on March 16, 2026. (Docket No. 200).
- Defendants' Motion in Limine No. 2 to Disqualify or, in the Alternative, Exclude Plaintiff's Expert Witness Jeff Rougvie filed on December 16, 2024. (Docket No. 102). Plaintiff filed an Opposition on March 16, 2026. (Docket No. 201).
- Defendants' Motion in Limine No. 3 to Exclude Plaintiff's Expert Witness Dr. Ethan Lustig filed on December 16, 2024. (Docket No. 103). Plaintiff filed an Opposition on March 16, 2026. (Docket No. 202).
- Defendants' Motion in Limine No. 4 to Bifurcate Trial, to Strike Plaintiff's Jury Demand as to Counts II and III, and Exclude Evidence

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*** **R E D A C T E D** ***

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 23-6191-MWF(Ex)**                    **Date:  April 7, 2026**
Title:      Matthew Spatola v. Jason Desrouleaux, et al.

from First Phase of Trial filed on December 16, 2024.  (Docket No. 104).  Plaintiff filed an Opposition on March 16, 2026.  (Docket No. 203).
- Defendants' Motion in Limine No. 5 to Exclude Ron Perry as a Trial Witness filed on February 2, 2026.  (Docket No. 162).  Plaintiff filed an Opposition on February 9, 2026.  (Docket No. 167).
- Plaintiff's Motion in Limine No. 1 to Exclude "Work for Hire" Evidence and Testimony filed on December 16, 2024.  (Docket No. 109).  Defendants filed an Opposition on March 16, 2026.  (Docket No. 210).
- Plaintiff's Motion in Limine No. 2 to Exclude the Testimony of Defendants' Expert filed on December 16, 2024.  (Docket No. 110).  Defendants filed an Opposition on March 16, 2026.  (Docket No. 211).
- Plaintiff's Motion in Limine No. 3 to Exclude Defendants' Rebuttal Expert Dr. William Rayner filed on February 2, 2026.  (Docket No. 160).  Defendants filed an Opposition on February 9, 2026.  (Docket No. 172).

Finally, the Court issued an Order to Show Cause ("OSC") to Plaintiff as to why he may recover monies flowing from lost business opportunities or reputational harm through his selected remedy of a constructive trust.  (Docket No. 182).  On March 11, 2026, Plaintiff filed a Response to the OSC.  (Docket No. 193).  On March 18, 2026, Defendants filed a Reply to Plaintiff's Response.  (Docket No. 213).

The Court has read and considered the papers on the Motions and OSC and held a hearing on **April 1, 2026**.

The Court rules as follows on the Motions in Limine:

- Defendants' Motion in Limine No. 1 is **GRANTED** *in part* **and DENIED** *in part*.

     o  The Motion is **GRANTED** as to evidence of financial condition, which is inadmissible under Rules 402 and 403;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*\*\* R E D A C T E D \*\*\***

CIVIL MINUTES—GENERAL

Case No.  **CV 23-6191-MWF(Ex)**                    Date:  **April 7, 2026**
Title:        Matthew Spatola v. Jason Desrouleaux, et al.

- o  The Motion is **GRANTED** as to evidence of Derulo's international touring during COVID-19 under Rule 403;
- o  The Motion is **GRANTED** as to the dispute between Derulo and Harris, but **DENIED** as to the suggestion that Derulo properly credited Heap; and
- o  The Motion is **DENIED** as to the evidence of settlement discussions, although a limiting instruction shall be given that evidence of these negotiations is not to be taken as evidence of liability.

- Defendants' Motion in Limine No. 2 is **GRANTED,** and the Rougvie Report will be excluded under Rule 702.

- Defendants' Motion in Limine No. 3 is **GRANTED** as to Dr. Lustig's opinion on copyrightability, although he may opine on Spatola's contributions to the Song as compared to *LSB* and he may critique Dr. Ferrara's filtering.  The Motion is also **GRANTED** as to Dr. Lustig's opinions on the credibility of witnesses, although he may opine on the musical aptitudes of Derulo and Hogarth based on their own deposition testimony.

- Defendants' Motion in Limine No. 4 is **GRANTED** *in part* **and DENIED** *in part*.  The Motion is **GRANTED** as to bifurcation of the trial, with the declaratory judgment claim to be tried to a jury first.  The Motion is **DENIED** as to the motion to exclude evidence of financial success of the Song.

- Defendants' Motion in Limine No. 5 is **GRANTED**, and Perry will be excluded from testifying at trial under the apex doctrine and Rules 401 and 403.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*\*\* R E D A C T E D \*\*\***

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 23-6191-MWF(Ex)**                    **Date:  April 7, 2026**
Title:       Matthew Spatola v. Jason Desrouleaux, et al.

- Plaintiff's Motion in Limine No. 1 is **DENIED** because the B-4 forms are relevant and not subject to exclusion under Rule 403.

- Plaintiff's Motion in Limine No. 2 is **DENIED** because the Motion fails to make cognizable arguments under the Rule 702 standard, and because Defendants have put forward sufficient reasons to credit Dr. Ferrara's expert qualifications and methodology.

- Plaintiff's Motion in Limine No. 3 is **DENIED** because Dr. Rayner's rebuttal report is properly responding to Dr. Lustig's Supplemental Report and the report was timely disclosed.

Finally, as to the Order to Show Cause, Spatola's Response confirms that he is not entitled to damages for lost opportunities or reputational harm.  Nor can Spatola now claim entitlement to a full "disgorgement" of profits remedy, over and above his pro rata share, as such a remedy was never pled.

## I.      **<u>BACKGROUND</u>**

The parties are by now quite familiar with the factual background of this action, which is largely set forth in the Court's Order Denying Defendants' Motion for Summary Judgment.  (Docket No. 125).  Therefore, the Court will not repeat all of those facts here but incorporates by reference the factual background from that Order.

## II.     **<u>DEFENDANTS' MOTIONS IN LIMINE</u>**

### A.      **<u>Defendants' MIL No. 1 (Docket No. 101)</u>**

Defendants' Motion in Limine No. 1 seeks to exclude evidence of (1) the relevant wealth of the parties and any party's financial condition; (2) actions alleged to be taken by Derulo in connection with international touring; (3) unrelated legal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*** R E D A C T E D ***

CIVIL MINUTES—GENERAL

Case No.  CV 23-6191-MWF(Ex)                    Date:  April 7, 2026
Title:      Matthew Spatola v. Jason Desrouleaux, et al.

disputes involving Defendants; and (4) the existence and substance or content of any of the parties' settlement discussions.  (Motion at 1).  Defendants seek to exclude this evidence on the basis of Rule 401 and 403.  (*Id.* at 2).  The Court will address each category in turn.

*Financial Condition:*  As to the financial condition and relative wealth of the parties, Spatola responds that such evidence is relevant to establish motive, knowledge, or intent of Defendants in seeking to deprive Plaintiff of proper credit "[g]iven Derulo's focus on always maximizing financial gains."  (*See* Opp. at 2-3).  Spatola argues that Derulo "kept bringing Mr. Spatola back to his lavish home and home studio" and that Derulo "had a clear incentive to deny Mr. Spatola recognition and retain full control over the song's revenues."  (*Id.* at 3).

None of these putative "motives" are compelling.  If anything, the relevant "financial" evidence to establish motive or intent is the success of the Song and the revenue derived from it, which the Court will discuss in the context of Defendants' Motion in Limine No. 4.  Spatola has put forward no theory that Derulo's own wealth is relevant to the inquiry.  In fact, the fact that Derulo was independently wealthy actually undercuts Plaintiff's "motive" theory of relevance, given that it would make Derulo *less* incentivized to cut Spatola out of his share of the profits.  Even if this evidence were somehow relevant, it is the type of evidence that is routinely excluded under Rule 403 as substantially prejudicial.  *See Reiling v. Hobby Lobby Stores, Inc.,* EDCV 22-124-MWF (SHKx), 2023 WL 6178477, at *3-4 (C.D. Cal. Aug. 21, 2023) (holding evidence of profits is irrelevant to a personal injury action and in any event is barred under each prong of Rule 403).

At the hearing, Spatola clarified that he did not seek to admit direct evidence of wealth such as net worth, but he does seek to testify as to his experience working with Derulo at his home studio.  Obviously, such circumscribed testimony that is within Spatola's own personal knowledge would seem admissible.  Accordingly, such

CIVIL MINUTES—GENERAL                                    5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*** **R E D A C T E D** ***

CIVIL MINUTES—GENERAL

**Case No.  CV 23-6191-MWF(Ex)**                    **Date:  April 7, 2026**
Title:       Matthew Spatola v. Jason Desrouleaux, et al.

objections may be raised and adjudicated during trial within the precise context of the testimony.

But as to evidence of financial condition, such as net worth or other facts that would not be within Spatola's personal knowledge, the MIL is **GRANTED** under Rules 402 and 403, as it is irrelevant to any fact in issue and would be unduly prejudicial, confusing, or misleading.

*International Touring:*  Next, Defendants seek to exclude evidence that Derulo allegedly ███████████████████████████████████████████████████ ███████████████████████████████████████ (Motion at 5).  Spatola responds that he should be permitted to cross-examine Derulo at trial on these specific instances under Rule 608(b)(1), and does not intend to use extrinsic evidence to do so. (Opp. at 5-6; *id.* at 6, n.1).  Spatola argues that the claims in this action "center[] on Derulo's misrepresentations regarding the creation and authorship of *Savage Love,*" and thus these incidents "demonstrate a broader pattern of behavior that directly bears on his credibility and truthfulness."  (*Id.* at 6).

It is true that this action is one where the jury will be asked to make many determinations based on the credibility of the witnesses, and so specific instances of conduct that go to character for truthfulness could theoretically be relevant.  But the subject matter of the evidence is so remote to the subject matter of this claim that any probative value is quite low.  And "where the evidence is of very slight (if any) probative value . . . even a modest likelihood of unfair prejudice or a small risk of misleading the jury will justify excluding that evidence."  *U.S. v. Espinoza-Baza,* 647 F.3d 1182, 1189 (9th Cir. 2011).

The unduly prejudicial purpose is only made clearer by Spatola's arguments in support of admissibility.  Spatola asserts that "a person who is willing to lie ████████ ████████████ so that he can make more money touring, may-well be less believable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*** R E D A C T E D ***

CIVIL MINUTES—GENERAL

Case No.  CV 23-6191-MWF(Ex)                    Date:  April 7, 2026
Title:       Matthew Spatola v. Jason Desrouleaux, et al.

when he testifies that he independently created the instrumental bed for Savage Love
… and should keep all the money." (Opp. at 7).  Spatola then argues that "[t]his
evidence is being asserted to support Jason Derulo's lack of truthfulness and
credibility, not to provoke negative thoughts among jury members ███████████
███████████." (*Id.*).  But the improper inferences suggested by Spatola are
precisely why the minor relevance to Derulo's credibility is outweighed by prejudice
— there is a substantial risk that the jury will be distracted by their feelings around the
COVID-19 pandemic rather than whether Derulo is a truthful person.  Accordingly,
this evidence is excluded under Rule 403.

  ***Unrelated Legal Disputes:***  Defendants argue that evidence of unrelated legal
disputes should be excluded from trial, including at least two prior incidents that
Defendants identify in the Motion: allegations by Spatola that Derulo did not obtain
Imogen Heap's permission for the song *Whatcha Say*; and a dispute involving Derulo's
former business manager Frank Harris, who previously sued Derulo.  (Motion at 8).

  As to the putative Imogen Heap dispute, Plaintiff responds that the evidence is
probative of character for truthfulness and that it goes to show that Derulo "has
operated in conformity with a pattern and plan of his conduct." (Opp. at 8).  But
Plaintiff then goes on to assert that there actually was no dispute between Derulo and
Heap, specifically stating that "[s]uch permission [to use Heap's work] was granted in
that instance, but had Heap pushed back … the jury may find that the result may have
been the same – that Derulo would have chosen to release the work without
permission." (*Id.*).  But such a theory of purported relevance is pure speculation.
Indeed, Spatola's own argument demonstrates that there is no relevance to the facts
surrounding Derulo's use of Heap's song.

  Next, Spatola asserts that the evidence surrounding Imogen Heap is relevant to
the claims here because that incident makes it more likely that "Derulo [knew] that he
needs to give joint authorship credit to other musicians whose works he incorporates

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*\*\* R E D A C T E D \*\*\***

CIVIL MINUTES—GENERAL

**Case No.  CV 23-6191-MWF(Ex)**                    **Date:  April 7, 2026**

Title:      Matthew Spatola v. Jason Desrouleaux, et al.

into his songs." (Opp. at 9).  For such a limited purpose, the Court will permit the evidence essentially to demonstrate that Derulo has collaborated with other artists before and given proper credit.  But Spatola may not suggest that there was a dispute between the Derulo and Heap or that Derulo released the song without Heap's permission, as Spatola has admitted here that that was not the case.

As to the dispute between Derulo and Harris, Spatola offered no theory of relevance in the Opposition.  Therefore, this evidence shall be excluded from trial.

***Settlement Discussions:***  Defendants next seek to exclude evidence of settlement discussions between the parties as irrelevant and inadmissible under Rule 408. (Motion at 9).  But as Spatola responds, evidence that the parties entered a tolling agreement in order to negotiate a possible settlement prior to filing this lawsuit is made relevant by Defendants' defenses that center around delay.  As outlined in Rule 408(b), compromise offers and negotiations are admissible to "negat[e] a contention of undue delay."  Accordingly, Plaintiff may present this evidence for this limited purpose, along with a limiting instruction that such negotiations are not to be taken as evidence of liability.

In sum, as to Defendants' MIL No. 1, the Court rules as follows:

- The Motion is **GRANTED** as to evidence of financial condition, which is inadmissible under Rules 402 and 403;
- The Motion is **GRANTED** as to evidence of Derulo's international touring during COVID-19 under Rule 403;
- The Motion is **GRANTED** as to the dispute between Derulo and Harris, but **DENIED** as to the suggestion that Derulo properly credited Heap; and
- The Motion is **DENIED** as to the evidence of settlement discussions, although a limiting instruction shall be given that evidence of these negotiations is not to be taken as evidence of liability.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

***R E D A C T E D ***

CIVIL MINUTES—GENERAL

Case No.  CV 23-6191-MWF(Ex)                    Date:  April 7, 2026
Title:      Matthew Spatola v. Jason Desrouleaux, et al.

### B.      Defendants' MIL No. 2 (Docket No. 102)

Defendants' Motion in Limine No. 2 seeks either to disqualify Spatola's expert Jeff Rougvie or exclude his testimony.  The Court will address each argument in turn.

### 1.  Disqualification

Defendants first argue that Rougvie should be disqualified because Plaintiff's counsel retained him as an expert in this action while Rougvie was employed as an expert in a case for Defendant Sony.  (Motion at 4-6).  Sony retained Rougvie as an expert through its wholly owned subsidiary, Ultra Records, in the action *Ultra Records, LLC v. Ultra International Music Publishing, LLC,* No. 22-cv-9667 (AS) in the Southern District of New York.  (*Id.* at 2).  Indeed, this retention is cited in Rougvie's report submitted in this action.  Defendants contend that Rougvie's contact at Sony for the *Ultra Records* litigation was Wade Leak, who was designated as Sony's Rule 30(b)(6) witness in this action.  (*Id.*).

But as Defendants themselves acknowledge in their Motion, courts in the Ninth Circuit typically require a showing that an expert in such a scenario possesses confidential or privileged information that could be shared with an adversary in another litigation.  *See, e.g., Erickson v. Newmar Corp.,* 87 F.3d 298, 300 (9th Cir. 1996); *Calendar Research LLC v. StubHub, Inc.,* 2017 WL 10378337, at *3 (C.D. Cal. Sep. 22, 2017); *Aventis Pharma S A v. Amphastar Pharmaceuticals, Inc.,* 2005 WL 8165801, at *1 (C.D. Cal. Jan. 5, 2005).  Here, while Defendants argue that there is a danger of confidential information from the *Ultra Records* litigation being shared with Spatola in this action, Defendants never explain what the confidential information would be.  Accordingly, the Court cannot discern the conflict of interest or prejudice that would result were Rougvie permitted to testify for Spatola in this action.  The Court thus declines to disqualify Rougvie on this basis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*** R E D A C T E D ***

CIVIL MINUTES—GENERAL

Case No.  CV 23-6191-MWF(Ex)                    Date:  April 7, 2026
Title:      Matthew Spatola v. Jason Desrouleaux, et al.

### 2.  Exclusion Under Rule 702

Next, Defendants argue that Rougvie's report should be excluded because his opinions are inadmissible under Rule 702.  (*See* Motion at 6-10).  Rule 702 provides that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that" all of the following elements are met:

> a.   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> b.   the testimony is based on sufficient facts or data;
> c.   the testimony is the product of reliable principles and methods; and
> d.   the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The inquiry into the admissibility of an expert opinion under Rule 702 is a "flexible one."  *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–94 (1993)).

Defendants argue that Rougvie both (1) offers ultimate opinions on legal issues in the action and (2) is unqualified to opine on the topics discussed in his report.  The Court agrees on both arguments.

*First*, the law is clear that an expert may not offer opinions on an ultimate issue of law.  *See Nationwide Transport Fin. v. Cass Info. Sys's, Inc.,* 523 F.3d 1051, 1058 (9th Cir. 2008).  Rougvie's report contains such legal opinions throughout, particularly in the latter half of the report.  (*See* Declaration of Joshua M. Rosenberg ISO Defendants' Motion in Limine No. 2 at Ex. A ("Rougvie Report")).  Specifically,

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*** **R E D A C T E D** ***

CIVIL MINUTES—GENERAL

Case No.  **CV 23-6191-MWF(Ex)**                      Date:  **April 7, 2026**
Title:       Matthew Spatola v. Jason Desrouleaux, et al.

Rougvie attempts to explain the law around "work for hire" contracts, opining that the communications between Derulo and Spatola were not work for hire contracts under the provisions of the Copyright Act.  (*See* Rougvie Report at 9-10).  Rougvie further criticizes Derulo's decision to release the Song without proper authorization to use Jawsh's original song, *Laxed – Siren Beat* ("*LSB*"), and asserts that Derulo misunderstands copyright law.  (*See id.* at 12).  In the same section, Rougvie asserts that "Mr. Derulo did not have Mr. Spatola's rights [at the time he signed an agreement with Sony] and still doesn't today."  (*Id.*).  Again, such an "opinion" is clearly an improper legal conclusion.

**Second**, the Court agrees that Rougvie further offers opinions about the contributions Spatola made as a musician where Rougvie has no qualifications regarding musicology or guitar playing.  (*See* Motion at 8).  For example, in Rougvie's Report, he opines that Spatola made "unique" contributions as a writer and producer on the Song, and states that "[c]reating a new part on a song is a special gift. It is a product of the unique talents of that individual playing the part, not only in how they devise the part, but how they uniquely play them."  (Rougvie Report at 8).  Rougvie then gives several anecdotal examples of how other musicians have contributed to hit songs, and ends this section with his final opinion that "when Mr. Spatola created and played guitar and bass on *Savage Love,* he created unique contributions that are considered crucial parts of the production and songwriting."  (*Id.* at 9).  But Rougvie is neither a musician nor a musicologist, and thus has no ability to opine on whether Spatola made "unique" musical contributions to the Song.  Indeed, Spatola has another expert entirely for this purpose.

At the hearing, Spatola argued that the Rougvie Report was nonetheless relevant to explain how the music industry works insofar as the typical or normal procedure for a producer who works with an artist.  To an extent, it seems fair that Rougvie could testify based on his experience in the industry that musicians typically require musicians to sign work for hire contracts to ensure a clear record of contributions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*** **R E D A C T E D** ***

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 23-6191-MWF(Ex)**                      **Date:  April 7, 2026**
Title:      Matthew Spatola v. Jason Desrouleaux, et al.

Rougvie does make a putative opinion on this topic, that "it is shocking [Derulo] doesn't have a simple work for hire agreement on hand for musicians to sign."  (*Id.* at 11).  Rougvie goes on to state that he has "personally seen and used [such a contract] many times, going back to the late '80s."  (*Id.*).

But those two lines in the Rougvie Report are then bolstered by irrelevant and inappropriate opinions about the way Derulo putatively mistreated Jawsh, the original producer of *Laxed – Siren Beat*.  For example, Rougvie cites an article from *Variety* magazine that characterizes Derulo as "going 'rogue'" in his release of the Song and critiques Derulo for "unauthorized use and cultural appropriation of Jawsh's song."  (*Id.* at 11).  Rougvie then states his opinion on Derulo's understanding of copyright law, an inappropriate topic for Rougvie to opine on.  (*Id.* at 11-12).  Moreover, as Defendants argued at the hearing, it is unclear that such putative expert testimony will be helpful to the jury, as required under Rule 702(a), where Spatola himself intends to call at least one other fact witness who is going to testify as to the "customary industry practices" of crediting collaborators.  (*See* Joint Witness List (Docket No. 188) at 10).

Finally, it is notable that while Spatola has the burden of proving admissibility under Rule 702, Spatola fails to do so in his Opposition.  Rather than substantively rebut the arguments put forward by Defendants, Spatola merely asserts in conclusory terms that (1) Rougvie's opinions merely provide "necessary context" for the legal questions in the case and (2) Rougvie's opinions are "well-reasoned in light of his extensive expertise and they are supported by evidence in the record."  (*See* Opp. at 8).  But Spatola offers no more than these conclusory assertions in opposing the Motion and fails to explain the reasoning or evidence behind Rougvie's opinion.  Such assertions are simply insufficient to justify admissibility of the Rougvie Report under the preponderance standard required by Rule 702.

Defendants' Motion in Limine No. 2 is thus **GRANTED**, and the Rougvie Report will be excluded under Rule 702.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*** **R E D A C T E D** ***

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 23-6191-MWF(Ex)**                   **Date:  April 7, 2026**
**Title:**      Matthew Spatola v. Jason Desrouleaux, et al.

## C.      <u>**Defendants' MIL No. 3 (Docket No. 103)**</u>

Defendants next argue that the testimony of Spatola's expert witness, Dr. Ethan Lustig, should be excluded on several bases.  First, Defendants argue that Dr. Lustig's opinions fail to satisfy Rule 702 because he did not filter out unprotectable elements of Spatola's contributions to the Song.  (Motion at 4-7).  Second, Defendants argue that Dr. Lustig's opinions are improper legal conclusions or speculative.  (*Id.* at 7-10).

Dr. Lustig's opinions are explained in his Initial Report (Declaration of Joshua M. Rosenberg ISO MIL No. 3 at Exhibit A (Docket No. 103-2)) and Rebuttal Report (*Id.* at Exhibit B (Docket No. 103-3)).  Spatola also submitted a Supplemental Report by Dr. Lustig.  (*See* Declaration of Joshua M. Rosenberg ISO Defendants' Motion to Strike Supplemental Report of Dr. Ethan Lustig at Exhibit E (Docket No. 123-6)).

### 1.  Lack of Prior Art Analysis and Filtration

On the first argument, the analysis is somewhat impacted by the Court's Order Granting in Part Defendants' Motion to Strike Supplemental Expert Report of Dr. Ethan Lustig.  (Docket No. 137 (the "Prior Order")).  There, the Court held that even if Dr. Lustig did not explicitly discuss his own prior art and filtration analysis in his Initial Report and Rebuttal Report, the fact that he conducted such analyses were implied in certain statements in his Rebuttal Report.  (*See id.* at 8).  Nonetheless, the fact that he may have done these analyses does not immunize his opinions from attack from Rule 702, and the Court denied in part the Motion to Strike without prejudice to this Motion in Limine. (*Id.* at 11).

With that background in mind, the Court considers Defendants' argument that Dr. Lustig's methodology cannot support an opinion that Spatola made an independently copyrightable contribution to the Song.  (*See* Motion at 4-7).  Defendants argue that Dr. Lustig erred in failing to utilize the extrinsic test, which is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*** R E D A C T E D ***

<u>CIVIL MINUTES—GENERAL</u>

Case No.  CV 23-6191-MWF(Ex)                    Date:  April 7, 2026

Title:       Matthew Spatola v. Jason Desrouleaux, et al.

typically used in copyright actions to "compare[] the objective similarities of specific expressive elements in the two works" at issue in an infringement action.  *See Skidmore v. Led Zeppelin,* 952 F.3d 1051, 1064 (9th Cir. 2020).  Inherent in such a comparison is the requirement that only protectable elements be included in the substantial similarity analysis, which requires courts to "filter out" the elements that are not protectable by copyright.  *Smith v. Weeknd,* CV 19-2507 PA (MRWx), 2020 WL 4932074, at *5 (C.D. Cal. July 22, 2020).

        Again, the present Motion was filed prior to the filing of Dr. Lustig's Supplemental Report, which clarified that he had in fact performed prior art and filtration analyses.  (*See generally* Prior Order).  While the Motion takes aim at the lack of any mention of prior art and filtration analyses, the Court construes the Motion now as an attack on the admissibility of any opinions on copyrightability by Dr. Lustig.  Such an attack is still cognizable because Dr. Lustig does not explain his opinions as grounded in any comparison of Spatola's contributions to the Song with any prior art, nor does he state that his opinions on Spatola's contributions have been "filtered" of any unprotectable elements.  Indeed, the Court excluded Dr. Lustig's opinion in his Supplemental Report regarding any prior art search because it was not encompassed in his Initial Report.  (*See* Prior Order at 9).

        Specifically, Dr. Lustig makes two principal opinions in his Initial Report.  First, he opines that "21% of the sound recording is purely Spatola."  (Initial Report ¶ 14).  In the analysis to come to that opinion, Dr. Lustig specifically compares the sections of the arrangement "where only Spatola is contributing to an arrangement layer and [*Laxed – Siren Beat* ("*LSB*")] is not playing."  (*See id.* ¶¶ 11-14).  Second, Dr. Lustig opines that Spatola made unique contributions to 12.38% of the Song's composition.  (*Id.* at ¶ 45).  While this analysis is more in-depth than the analysis of the recording, the analysis again centers around comparisons between *LSB* and the Song in order to discern the percentage of Spatola's unique contributions.  (*See id.* at ¶¶ 15-45).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*\*\* R E D A C T E D \*\*\***

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 23-6191-MWF(Ex)**                    **Date:  April 7, 2026**
**Title:**        Matthew Spatola v. Jason Desrouleaux, et al.

Defendants' critique thus remains valid to an extent.  The Supplemental Report clarifies that Dr. Lustig "did not find any precedents for Spatola's specific contributions" within the prior art.  (*See* Supplemental Report ¶ 5).  Dr. Lustig then asserts in a conclusory fashion that his Initial Report "does address the question of originality, including by demonstrating the unique musicological characteristics of Spatola's voicings …, harmonies …, and rhythms …." (*Id.* ¶ 6).  But nowhere does Dr. Lustig state that he filtered out any unprotectable elements in his assessment of the "unique" characteristics of Spatola's contributions.  Dr. Lustig does state that he disagrees with Dr. Ferrara's filtering methodology, but his disagreement with the use of filtering does not absolve him from conducting his own filtering when he purports to opine on copyrightability.  (*See id.* ¶ 7).

Rather, as Defendants have argued, for Dr. Lustig to opine on copyrightability, Dr. Lustig must have performed a filtration analysis in order to filter out any unprotectable elements of Spatola's contributions to the Song.  Defendants offer cases from this District where courts have disqualified expert opinions under Rule 702 or disregarded such opinions at summary judgment for that very reason.

In *Smith v. Weeknd,* the court held that the plaintiff's expert's report did not filter out unprotectable elements and thus does not "assist the [c]ourt in performing the 'analytic dissection' required of the extrinsic test."  2020 WL 4932074, at \*6.  The defendant's expert in *Smith* (who was also Dr. Ferrara) had pointed out that any similar elements between the two songs at issue in that infringement action were commonplace or existed in prior art.  *Id.*  The court held that the plaintiff's expert had failed to rebut these assertions of common or prior art elements because he had "not attempted to filter out the unprotectable elements" in his reports.  *Id.*  Rather, the plaintiff's expert merely "dismisse[d] these similarities."  *Id.*

Additionally, in *Johannsongs-Publishing Ltd. v. Lovland,* CV 18-10009-AB (SSx), 2020 WL 2315805, at \*5-6 (C.D. Cal. April 3, 2020), the court similarly

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*\*\* R E D A C T E D \*\*\***

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 23-6191-MWF(Ex)**                    **Date:  April 7, 2026**
Title:       Matthew Spatola v. Jason Desrouleaux, et al.

excluded the plaintiff's expert's opinion regarding copyrightability for failure to adequately consider prior art and filter out unprotectable elements.  Because the expert had failed to compare the two songs at issue in that infringement action under the extrinsic test, the expert's "opinion about the similarities between [the two songs] are legally deficient and irrelevant." *Id.* at \*5.  Even considering a more detailed rebuttal report by that expert (which, again, was set off against the defendant's expert, Dr. Ferrara), the court noted that the rebuttal report "repeat[ed] the fatal flaw of the preliminary [] Report — it fail[ed] to filter out prior art from [the two songs] before comparing them."  Even though the rebuttal report in *Johannsongs* did "discuss the most important prior art … it [did] not do so in a legally relevant way" because it did not filter out elements of the prior art songs from the songs at issue in the action and "compare the remainder as the case law requires." *Id.*

As his first substantive response to this argument, Spatola asserts that Dr. Lustig's report "identifies the unique elements of Spatola's contributions" by "comparing Spatola's guitar and bass parts with the preexisting elements of *Savage Love*." (Opp. at 4).  Spatola asserts that Dr. Lustig "has exhibited that Spatola's contributions are original and distinct from the preexisting elements of *Savage Love*. (*Id.* at 5).  But again, it is not enough that Dr. Lustig has concluded that Spatola made "unique" contributions to the Song as compared to the original *LSB* recording and composition in order for Dr. Lustig to opine on the ***copyrightability*** of those contributions.  Mere comparisons between the underlying *LBS* work and the Song are not an adequate basis for opining that Spatola made an independently copyrightable contribution to the Song.

At the hearing, Spatola asserted that Dr. Lustig did perform filtration, and specifically cited to portions of Dr. Lustig's Supplemental Report, including his searches on the Hooktheory database and his analysis of the Eb major (add6) harmony in the Song.  While Dr. Lustig opines on the use of the Eb major (add6) harmony in his Initial Report, he consistently refers to its use in the Song as compared to the use of "a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*** **R E D A C T E D** ***

CIVIL MINUTES—GENERAL

Case No.  CV 23-6191-MWF(Ex)                     Date:  April 7, 2026
Title:      Matthew Spatola v. Jason Desrouleaux, et al.

regular EbM triad" that was used in *LSB*, but he does not opine on whether the use of such a harmony is a common or unprotectable element.  (*See, e.g.,* Initial Report ¶¶ 16, 33, 54, 74).  While Dr. Lustig does make an observation about the Eb major (add6) harmony in his Supplemental Report, specifically comparing it to a search for prior art, the Court has already excluded this opinion informed by a prior art search precisely because it did not appear in the Initial Report.  (*See* Prior Order at 9; Supplemental Report ¶¶ 13-14).

Spatola next argues against the use of the extrinsic test at all in this context given that this action is not about copyright infringement.  (Opp. at 4-5).  But as the Ninth Circuit has explained, the purpose of this test is to "distinguish between the protected and unprotected material in a plaintiff's work."  *See Skidmore v. Led Zeppelin,* 952 F.3d 1051, 1064 (9th Cir. 2020).  Accordingly, the extrinsic test would perform the exact function that is necessary here of proving that Spatola's contributions to the Song are independently protectable under copyright law.  As explained in *Skidmore* and summarized by the district court in *Smith*, "copyright <u>does</u> require at least a modicum of creativity and does not protect every aspect of a work; … Nor does copyright extend to 'common or trite' musical elements, or 'commonplace elements that are firmly rooted in the genre's tradition.'"  *See Smith,* 2020 WL 4932074, at *6 (quoting *Skidmore,* 952 F.3d at 1069) (emphasis in original).

Accordingly, in order to have a sufficient basis to opine that Spatola's contributions are "independently copyrightable," Dr. Lustig must ground his analysis in a prior art analysis and filtering out of uncopyrightable elements.  And courts perform the "gatekeeping" function under the elements of Rule 702 to exclude opinions on copyrightability that are not grounded in such analysis because they are irrelevant and unhelpful to the jury.  *See Johannsongs,* 2020 WL 2315805, at *5-7.

At the hearing, Spatola repeated his critique of Defendants' reliance on the extrinsic test and stated that there are other tests for determining copyrightable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*\*\* R E D A C T E D \*\*\***

CIVIL MINUTES—GENERAL

**Case No.  CV 23-6191-MWF(Ex)**                    **Date:  April 7, 2026**
Title:      Matthew Spatola v. Jason Desrouleaux, et al.

expression.  But Spatola did not offer any such alternative test, either in the Opposition or at the hearing, nor does Dr. Lustig state an alternative method for discerning copyrightability in his Initial or Rebuttal Reports.

To be clear, Dr. Lustig may still opine on the "uniqueness" of Spatola's contributions as compared between *LSB* and the Song.  But contrary to Spatola's assertions in his Opposition, Dr. Lustig's conclusion that Spatola made "unique" contributions is not sufficient, without filtration, to establish that Spatola's contributions to the Song were independently copyrightable because they are "original" elements. (*See* Opp. at 5 (quoting *Smith v. Weeknd,* 2020 WL 4932074, at *6-7)).  As the *Johannsongs* court explained, "[a] comparison that includes both unprotectible and protectible elements is invalid under the extrinsic test and is legally irrelevant."  2020 WL 2315805 at *6.

To the extent that Dr. Lustig purports to opine on copyrightability, Dr. Lustig has not reliably applied the appropriate methodology to do so, and his opinion on copyrightability is inadmissible under Rule 702.  Dr. Lustig may opine on "unique" elements added to the Song by Spatola as compared to the original *LBS* composition and recording, without more.  Moreover, Dr. Lustig can certainly critique Dr. Ferrara's methodology to the extent he disagrees with his opinions at trial, as discussed in Dr. Lustig's Rebuttal Report.

### 2.  Improper and Unfounded Legal Conclusions

Apart from the methodological flaws with any opinion on copyrightability, Defendants also argue that Dr. Lustig makes improper and unsupported opinions on Spatola's "agency."  (*See* Motion at 7-8).  The Court again agrees.

As Defendants assert, a key legal element to the claim at issue in this action is control.  *See* Ninth Circuit Model Civil Jury Instruction 17.9; *see Aalmuhammed v.*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*** **R E D A C T E D** ***

CIVIL MINUTES—GENERAL

Case No.  CV 23-6191-MWF(Ex)                    Date:  April 7, 2026
Title:     Matthew Spatola v. Jason Desrouleaux, et al.

*Lee,* 202 F.3d 1227, 1234 (9th Cir. 2000).  In the Initial Report, Dr. Lustig opines that Spatola's "musical contributions were very much *his* decisions, rather than those of Derulo."  (*See* Initial Report ¶ 47 (emphasis in original)).  While Dr. Lustig first makes certain critiques as to Derulo's showing of musical aptitude and understanding of music theory from Derulo's deposition, he then veers into an ultimate opinion that is clearly unfounded by anything in Dr. Lustig's background:  Dr. Lustig asserts that "[i]t is my opinion that it is far more likely that Spatola, a deeply skilled musician, simply gracefully let Derulo fit into his self-perceived role as ringleader, let Derulo sing away, but made essentially all of his own key musical choices."  (Initial Report ¶ 63).

In making such an opinion, Dr. Lustig repeatedly characterizes deposition testimony, opining that Spatola's telling of the collaboration process "is more consistent with the musical record" given that Derulo may not perceive his own weaknesses in composing.  (*See* Initial Report ¶ 62).  Dr. Lustig asserts that "the reality was likely consistent with the way Spatola described it," with Spatola in control of musical direction.  (*Id.*).  Indeed, in characterizing the testimony of Hogarth, another fact witness to the collaboration between Spatola and Derulo, Dr. Lustig states "we begin to see that Hogarth was not a reliable witness to assess the musicological relationship between what Derulo sang and what Spatola played."  (*Id.* ¶ 64).  Such "opinion" testimony clearly goes too far by telling the jury who is more credible.

While Dr. Lustig may opine on Derulo's own aptitude for musical theory using Derulo's deposition testimony to do so, Dr. Lustig may not characterize the testimony of Spatola as more credible than Derulo or Hogarth.  Such a determination is an ultimate opinion in the case that is within the exclusive province of the jury.

In sum, Defendants' Motion in Limine No. 3 is **GRANTED**.  Dr. Lustig may not opine on copyrightability without having performed the filtration analysis, although he may opine on Spatola's contributions to the Song as compared to *LSB* and he may critique Dr. Ferrara's filtering.  Dr. Lustig further may not opine on credibility of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*** R E D A C T E D ***

CIVIL MINUTES—GENERAL

Case No.  CV 23-6191-MWF(Ex)                    Date:  April 7, 2026
Title:      Matthew Spatola v. Jason Desrouleaux, et al.

witnesses, although he may opine on the musical aptitudes of Derulo and Hogarth based on their own deposition testimony.

### D.      Defendants' MIL No. 4 (Docket No. 104)

Next, Defendants move to strike the jury demand for Spatola's putatively equitable claims: for an accounting and for a constructive trust over a pro rata share of the profits from the Song.  (*See* Motion at 3-5).  Defendants argue that these claims are appropriately tried to the Court rather than a jury.  If the trial is bifurcated, Defendants then argue that evidence of financial success of the Song would be irrelevant to the declaratory judgment trial.  (*Id.* at 6-8).

#### 1.  Bifurcation of Equitable Claims

As described in *Siegel v. Warner Bros. Entertainment Inc.,* 581 F. Supp. 2d 1067, 1069 (C.D. Cal. 2008), courts assessing whether a claim carries an entitlement to a jury trial under the Seventh Amendment first "compare the … action to 18th-century actions brought in the courts of law and equity.  Second, [courts] examine the remedy sought and determine whether it is legal or equitable in nature."  *Id.* (citing *Tull v. United States,* 481 U.S. 412, 417-18 (1987)).  As to both the accounting and constructive trust claims, Defendants have put forward persuasive (or binding) cases holding both to be equitable claims.

As to the accounting claim, in *Siegel*, the court examined the two-step inquiry from *Tull* in the context of an accounting claim for a share of the profits.  *See* 581 F. Supp. 2d at 1069-70.  The court held that, historically, a claim for an accounting that does not arise from tort or contract "was considered equitable in nature."  *Id.*  In so holding, the court quoted from Justice Story's *Commentaries on Equity Jurisprudence* and an opinion by Judge Learned Hand that support the historical roots of an accounting as a claim to be tried before a court of equity.  *Id.* at 1070-71.  Next, the

---

**CIVIL MINUTES—GENERAL                                                    20**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*** R E D A C T E D ***

CIVIL MINUTES—GENERAL

Case No.  CV 23-6191-MWF(Ex)                    Date:  April 7, 2026
Title:      Matthew Spatola v. Jason Desrouleaux, et al.

court considered the requested remedy of a "division of profits" and held that whether this remedy is legal or equitable is dependent on the underlying claim—and where, as here, the underlying claim is not arising out of contract or tort, the remedy of profits is equitable in nature.  *See id.* at 1071-74.

As to the constructive trust claim, the Ninth Circuit has held that such a remedy is "purely an equitable remedy and equitable remedies are not triable of right by a jury."  *American Universal Ins. Co. v. Pugh,* 821 F.2d 1352, 1355-56 (9th Cir. 1987).  In distinguishing between a constructive trust and legal damages, the court noted that "where a plaintiff seeks to recover monies alleged to be wrongfully withheld, the basis for such an action is wholly equitable."  *Id.* at 1356.  Spatola seeks precisely such "wrongfully withheld" monies, rather than legal damages, as has been previously discussed by this Court in another Order.  (*See* Order Denying Plaintiff's Motion to Amend Scheduling Order and For Leave to File Second Amended Complaint (Docket No. 182) at 3-4).

In responding to this case law as to the equitable nature of both claims, Spatola argues that when legal and equitable claims "share factual issues," there is a right to a jury trial.  (*See* Opp. at 4-5).  Yet Spatola does not explain why such an issue arises where, as here, the jury will decide the necessary factual predicates to establish liability first, and the Court would only then apply those factual determinations to the resulting accounting and constructive trust claims.  Spatola does not point to any factual determination that is necessary to the accounting or constructive trust claim that will not necessarily be decided by the declaratory judgment claim at trial.

Notwithstanding Spatola's entitlement to a jury determination on these claims, the question remains whether bifurcation is appropriate under Rule 42.  Rule 42(b) provides courts with discretion to order separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize."  As indicated by Defendants at the hearing, there are at least three witnesses who would not be needed were the Court to bifurcate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*** R E D A C T E D ***

CIVIL MINUTES—GENERAL

Case No.  CV 23-6191-MWF(Ex)                    Date:  April 7, 2026
Title:      Matthew Spatola v. Jason Desrouleaux, et al.

the trial and hear the equitable claims separately.  Moreover, there are myriad exhibits of financial statements and profit and loss statements that would not be needed at the first jury trial.  Bifurcating the trial would thus clearly expedite and economize the issues for the jury's determination, especially as Spatola conceded at the hearing that any jury opinion on these questions would be strictly an advisory opinion.

Indeed, on this point, the Court notes that it does not appear that either party has submitted proposed jury instructions for how exactly the jury should determine the accounting claim or the claim for a remedy of a constructive trust.  At the hearing, Spatola asserted that he submitted a verdict question on how much money Derulo made from the royalties of the Song, but the fact remains that Spatola has not presented a jury instruction that would actually tell the jury how to determine that question.

Accordingly, the Court **STRIKES** the jury demand as to these two claims because they are equitable.  The Court further **ORDERS** the trial to be bifurcated so that these two claims are considered in a second trial if the jury finds for Spatola under the declaratory judgment claim.

## 2.  Exclusion of Evidence of Financial Success of the Song

Next, Defendants argue that if the trial is bifurcated, then financial success of the Song is irrelevant to the claims or defenses at trial.  (*See* Motion at 6-8).

The Ninth Circuit's Model Jury Instruction 17.9 on Joint Authors requires the plaintiff to prove that: (1) each author made a substantial and valuable contribution to the work; (2) each author intended that his contribution be merged into inseparable or interdependent parts of a unitary whole; (3) each author contributed material to the joint work which could have been independently copyrighted; and (4) each author must be a person to whom the work owes its origins and who superintended the whole work.  Further, as to element (2), the jury will be asked whether (a) the parties exercised

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*** R E D A C T E D ***

CIVIL MINUTES—GENERAL

Case No.  CV 23-6191-MWF(Ex)                    Date:  April 7, 2026
Title:     Matthew Spatola v. Jason Desrouleaux, et al.

control over the work; (b) the parties' actions showed they shared intent to be co-authors; and (c) the audience appeal of the work depends on the contribution of each party.  *See* Ninth Circuit Model Jury Instruction 17.9.

Defendants' point is thus well taken that the financial success of the Song is not directly probative of these elements.  However, Spatola responds that financial success of the Song is nevertheless pertinent to the Defendants' motive to deprive Spatola of proper credit and compensation as "context [] relevant to the jury's assessment of credibility and intent."  (Opp. at 6).  This relevance theory is persuasive — the success of the Song helps to explain why Derulo may have denied credit to Spatola, and where the jury's determination is heavily premised on credibility, as here, there is some probative value to the success of the Song.  Moreover, the Court notes that such evidence can cut against either party as evidence of motive.

Finally, such evidence will not confuse the jury and does not pose a risk of prejudice that substantially outweighs its probative value under Rule 403.  Again, the evidence of financial success of the Song can cut against either party's motive in this instance, so it is not unduly prejudicial to either side.  Additionally, the Court has already excluded evidence of the financial status or wealth of the parties themselves, above, undercutting any improper "deep pockets" inference.  To the extent the parties are concerned about the evidence being used for an improper purpose, they may request a limiting instruction.

Accordingly, Defendants' Motion in Limine No. 4 is **GRANTED *in part* and DENIED *in part***.  The Motion is **GRANTED** as to bifurcation of the trial, with the declaratory judgment claim tried to a jury first.  The Motion is **DENIED** as to the motion to exclude evidence of financial success of the Song because such evidence is relevant to the parties' motives and will not be unduly prejudicial to Defendants or confusing to the jury.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*\*\* R E D A C T E D \*\*\***

<u>CIVIL MINUTES—GENERAL</u>

Case No.  **CV 23-6191-MWF(Ex)**               **Date:  April 7, 2026**
Title:      Matthew Spatola v. Jason Desrouleaux, et al.

### E.      <u>Defendants' MIL No. 5 (Docket No. 162)</u>

Finally, Defendants argue that the CEO and Chairman of Columbia Records, Ron Perry, should be excluded as a witness at trial under the so-called apex doctrine. (Motion at 2-8).  Defendants alternatively argue that Perry's testimony should be excluded because the topics that Plaintiff wishes him to testify about are irrelevant to this proceeding.  (*Id.* at 8-9).

### 1. Apex Doctrine

In arguing that Perry should not be called as a witness at trial, Defendants cite to the "apex doctrine," which is typically employed when a party seeks deposition of a high-level corporate witness.  (*See* Motion at 2-3).  Spatola does not dispute that the doctrine may be applied here, but argues instead that consideration of the factors under this discovery doctrine support admissibility of Perry's testimony at trial.  (Opp. at 3-7).

In the discovery context, courts consider two factors when determining whether a high-level executive should be deposed:  "(1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *See Apple Inc. v. Samsung Electronics, Co., Ltd.,* 282 F.R.D. 259, 263 (N.D. Cal. 2012).  Courts also recognize that the opponent of the deposition "carries a heavy burden to show why discovery should be denied." *Id.*

Both of these factors favor exclusion here.  First, Perry has no "unique first-hand, non-repetitive knowledge" of any facts at issue in this case.  As proffered by Spatola, Perry is necessary to testify to the following:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*\*\* R E D A C T E D \*\*\***

CIVIL MINUTES—GENERAL

Case No.  **CV 23-6191-MWF(Ex)**                    Date:  **April 7, 2026**
Title:       Matthew Spatola v. Jason Desrouleaux, et al.

"[The] classification of writers and producers on Savage Love, as he gave explicit confirmation regarding which individuals would or would not receive producing credit for the BTS remix of Savage Love.  Mr. Perry's statement regarding the lack of additional producers is evidence of his knowledge of Sony's internal policies and procedures to determine the proper producing and writing credits for the songs that Sony intends to create or distribute.  Mr. Perry has knowledge as to why Spatola was not given the proper credit for Savage Love when Sony was negotiating the BTS remix.

Rosenberg Decl. ¶ 6, Ex. D.

But as Defendants argue, none of these topics are relevant to the issues in this action.  Whether Perry became involved as to credit decisions as to another work (the BTS remix of the Song) has no bearing on whether he has knowledge of any facts relevant to the Song here.  Rather, Spatola seems to argue that the fact that Perry may have made decisions about crediting on the BTS remix means that he has knowledge about how authorship and crediting decisions are made more generally at Sony.  (Opp. at 4-5).  But Perry's knowledge of Sony "policies and procedures" is clearly repetitive of the 30(b)(6) witness already deposed in this action.  Indeed, as Defendants argue, Wade Leak was deposed to answer precisely these questions about Sony policies and procedures for determining credits and rights associated with songs.  (*See* Motion at 5-6).  Accordingly, Perry has no relevant or unique first-hand knowledge of any of the topics for which Spatola seeks to call him.

Spatola further responds as to the first factor that Perry "personally confirmed producer and writer credit determinations for *Savage Love,* including during negotiations for the BTS remix."  (Opp. at 5).  Even assuming that Perry did have a personal hand in crediting decisions for the remix, it is far from clear why testimony about that decision putatively made by Perry would be relevant to the issues in this case, as will be discussed more below.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*\*\* R E D A C T E D \*\*\***

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 23-6191-MWF(Ex)**                **Date:  April 7, 2026**
**Title:**       Matthew Spatola v. Jason Desrouleaux, et al.

Second, Defendants point out that Spatola made no effort to seek information from Perry during the discovery period.  (*See* Motion at 6-7).  Again, Defendants offered a Rule 30(b)(6) witness, Wade Leak, and Spatola made no objection at the time to the naming of Leak as the witness.  (*Id.* at 5-6).  Furthermore, at Leak's deposition, he disclosed that Perry was putatively involved in the decisions around crediting for the BTS remix, but Spatola never requested additional discovery or followed up on that portion of Leak's deposition.  (*Id.*at 6-7).  Accordingly, Spatola did not seek to use any less-intrusive means to seek information from Perry during discovery, and the second factor thus points towards exclusion at trial as well.

Spatola responds that Defendants "ignore[] the practical reality that any attempt by Plaintiff to depose Ron Perry during discovery would almost certainly have been met with the same apex-based objections Defendants now advance[,]" and thus calling Perry at trial was a "reasonabl[e]" attempt to avoid "prolonged motion practice." (Opp. at 5).  This purported excuse for failing to seek discovery from Perry earlier is unavailing.

### 2.  Relevance of Perry's Testimony

Of course, Spatola correctly contends that CEOs or other high-ranking executives may be compelled to testify at trial where they have relevant testimony.  But Spatola fails to clear even the low bar of Rules 401 and 403.

It appears from the Opposition that Spatola believes Perry's testimony to be relevant to show how Sony treated crediting decisions when made aware of various co-contributors.  (*See* Opp. at 7-8).  Spatola argues that unlike the crediting decisions made on the BTS remix, "Plaintiff's situation diverged at a single, critical point: … Plaintiff's involvement was never disclosed to Defendant Sony at the executive level by Defendant Derulo." (*Id.* at 7).  Spatola asserts that "Perry's testimony is therefore

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*** **R E D A C T E D** ***

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 23-6191-MWF(Ex)**                **Date:  April 7, 2026**
Title:       Matthew Spatola v. Jason Desrouleaux, et al.

---

critical to explaining how Defendant Sony confirmed credits for known contributors on a record of this magnitude, how credit issues were addressed when properly disclosed … and how the failure to disclose Plaintiff's involvement affected the final credit determinations." (*Id.*).  But all of these topics boil down to Sony's internal processes for making crediting decisions once the co-authors or producers are disclosed to Sony, which is clearly within the province of Sony's 30(b)(6) witness.  Such topics were specifically covered in the 30(b)(6) witness notice sent by Spatola, and for which Wade Leak was provided as a witness.  (*See* Motion at 5).  Spatola has offered no reason why Perry's testimony would cover any unique topic solely in Perry's personal knowledge.

Spatola further argues that Perry's testimony cannot be substituted precisely because he is so high ranking at Sony.  (Opp. at 8-9).  But Spatola again conflates Perry's putative decision regarding credits for the BTS remix with credit allocation for the Song at issue in this action.  Spatola has offered no reason to believe Perry was involved in any way with the decision to exclude Spatola from joint authorship or co-producer credit on the Song, and thus there is *de minimis* probative value, if any at all, to Perry's testimony.  The cumulative nature of Perry testifying about general Sony practices, when considered in light of Sony's 30(b)(6) testimony, would then substantially outweigh any probative value.

The Court's conclusion on this Motion is bolstered by the fact that Spatola estimated Perry's testimony to be only 0.125 hours in the Joint Witness List.  (*See* Docket No. 188 at 6).  At the hearing, the parties also represented that there may be a stipulated exhibit containing the email where Perry was mentioned.  After the hearing, however, the parties disagreed as to what exhibit would be designated for trial.  The Court thus makes no ruling on the admissibility of either proffered exhibit.

Accordingly, Defendants' Motion in Limine No. 5 is **GRANTED** and Perry will be excluded from testifying at trial under the apex doctrine and Rules 401 and 403.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*** **R E D A C T E D** ***

CIVIL MINUTES—GENERAL

Case No.  **CV 23-6191-MWF(Ex)**                    Date:  **April 7, 2026**
Title:       Matthew Spatola v. Jason Desrouleaux, et al.

### III.   **PLAINTIFF'S MOTIONS IN LIMINE**

#### A.      **Plaintiff's MIL No. 1 (Docket No. 109)**

Plaintiff's Motion in Limine No. 1 seeks to exclude "work for hire" evidence and testimony at trial.  (*See generally* Motion).  Spatola argues that such a determination of whether Spatola's contributions to the Song are merely a "work made for hire" is a legal determination for the Court, not a jury.  (*Id.* at 1-2).

Defendants respond that whether Spatola's contributions were "work for hire" should be submitted to the jury as a question of contract.  (Opp. at 1).  At the hearing, Defendants clarified that such a defense only applies to the sound recording.  As explained by Defendants, Spatola submitted AFM B-4 forms to Sony in connection with various songs that Spatola worked on, including for the Song, and by doing so he "agreed to be bound by the terms of the Sound Recording Labor Agreement ('SLRA') such that Spatola's contributions to the Savage Love sound recording became a 'work for hire' for Sony under the terms of that agreement."  (*Id.*).  Because Defendants assert that Spatola agreed to be a musician "for hire" by contract, rather than by statute, such evidence could be properly submitted to the jury.  Indeed, the Court stated as much in its Order Denying Defendants' Motion for Summary Judgment, when the Court noted that "[a] jury could certainly find that no employment relationship existed here" given factual disputes around these putative contracts.  (*See* Order Denying Defendants' Motion for Summary Judgment (Docket No. 125) at 13).

Additionally, separate from such a contractual defense, the AFM B-4 forms would also be relevant to the element of objective manifestations of intent required by Spatola's joint authorship claim.  (*See* Opp. at 5-6).  Specifically, when Spatola submitted these forms for Savage Love and other songs, the forms reflect that for certain other songs Spatola specifically identified himself as "producer."  (*Id.*).  Spatola did not, however, do the same for Savage Love.  (*Id.* at 6).  Indeed, when submitting

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*** **R E D A C T E D** ***

CIVIL MINUTES—GENERAL

Case No.  CV 23-6191-MWF(Ex)                    Date:  April 7, 2026
Title:     Matthew Spatola v. Jason Desrouleaux, et al.

"session reports" for Savage Love and two other songs for purposes of being paid benefits by the musician's union, Spatola's representative wrote to the union representative that "[Spatola] has been paid in full for all sessions reported, both where he was just a musician for hire as well as a producer that also played an instrument on the track." (*Id.*).  And while Spatola identified himself as a producer for two of those session reports, he did not do so for the Savage Love session reports.  (*Id.*).  Such evidence is thus probative as a "manifestation of intent as to his role in Savage Love," as Defendants argue.  (*Id.* at 7).

Under either theory, then, the evidence identified in the Motion and Opposition is relevant.  Spatola next argues that the evidence is unduly prejudicial under Rule 403 because he submitted the forms after he had been denied credit for the Song.  (Motion at 6).  But the Court does not agree that the fact that Spatola made these statements mere "months" after the song was recorded diminishes the probative value of the evidence in any material way.  Nor does the Court understand how such evidence would be unduly prejudicial or otherwise misleading or confusing to the jury.

Finally, Spatola argues that even if the AFM-B4 forms are admissible, the Court should exclude any reference to the phrases "works-made-for-hire" and "musician for hire."  (Motion at 6-7).  At the hearing, Spatola withdrew that request since it was mooted by the Court's summary judgment ruling.  As recounted above, Defendants contend that there was a work-for-hire contract for the sound recording of the Song, if not the composition.  And even for the composition, the forms are probative of Spatola's intent under the *Aalmuhammed* factors.  The forms are thus admissible.

Accordingly, Plaintiff's Motion in Limine No. 2 is **DENIED**.

///
///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*\*\* R E D A C T E D \*\*\***

CIVIL MINUTES—GENERAL

Case No.  **CV 23-6191-MWF(Ex)**                    Date:  **April 7, 2026**
Title:      Matthew Spatola v. Jason Desrouleaux, et al.

### B.      Plaintiff's MIL No. 2 (Docket No. 110)

Plaintiff's Motion in Limine No. 2 next seeks to exclude the testimony of Defendants' expert, Dr. Lawrence Ferrara under Rule 702.  (*See generally* Motion).

The Court need not spend much time explaining why this Motion in Limine must be rejected.  Upon review of the Motion itself, Spatola merely critiques Dr. Ferrara's conclusions.  (*See* Motion at 3-10).  Indeed, each paragraph of the Motion makes bare assertions that various aspects of Dr. Ferrara's report and the methodologies employed therein are "incorrect," and cites only to the rebuttal report of Spatola's own expert for support.  (*See id.*).  While Spatola frames these attacks in the language of Rule 702, purporting to critique Dr. Ferrara's methodology and the application of that methodology, a review of the substance quickly dispenses with that framing.  Taking just one example, in arguing that Dr. Ferrara applied an incorrect methodology, Spatola asserts: "Dr. Ferrara's filtering criteria is incorrect, Plaintiff's guitar voicings in the Intro are markedly different than *LSB*'s piano and cannot simply be filtered out as 'similar chords'…" citing to Dr. Lustig's Report for support.  (*See* Motion at 4).  While this critique is framed as one regarding "methodology," it is clearly an attack on Dr. Ferrara's conclusions.

Of course, as the proponent of his testimony, Defendants bear the burden of proving that Dr. Ferrara's testimony passes muster under Rule 702 by a preponderance of the evidence.  Defendants have met this burden.  First, Dr. Ferrara used an accepted methodology for his musicological analysis in his report, which has been accepted recently by another court in this District.  *See Stone v. Carey,* 2025 WL 1190518, at \*4 (C.D. Cal. March 19, 2025); (*See* Dr. Ferrara Report at ¶ 6).  Indeed, Spatola's own expert, Dr. Lustig, agreed with Dr. Ferrara's methodologies at Dr. Lustig's deposition. (*See* Docket No. 110-2 at 11-12).  Next, as evidenced by Dr. Ferrara's curriculum vitae, it is not difficult to conclude that he possesses the requisite "knowledge and experience of the relevant discipline" to opine on the topics in his report as a full-time

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*** **R E D A C T E D** ***

CIVIL MINUTES—GENERAL

Case No.  CV 23-6191-MWF(Ex)                    Date:  April 7, 2026
Title:      Matthew Spatola v. Jason Desrouleaux, et al.

faculty member at New York University with the rank of Full Professor of Music, in addition to his extensive experience as an expert on these topics.  *See City of Pomona v. SQM North America Corp.,* 750 F.3d 1036, 1044 (9th Cir. 2014).

Because the Motion fails to make cognizable arguments under the Rule 702 standard, and because Defendants have put forward sufficient reasons to credit Dr. Ferrara's expert qualifications and methodology, the Motion is **DENIED**.

## C.      Plaintiff's MIL No. 3 (Docket No. 160)

Finally, Spatola contends that rebuttal testimony from Defendants' expert Dr. William Rayner should be excluded as untimely and duplicative of Dr. Ferrara's testimony.  (Motion at 1).  Spatola makes the Motion under Rule 26(a)(2) and Rule 37. (*Id.* at 2-3).

Spatola first takes issue with the timing of the report.  (*See id.* at 4-6).  Dr. Rayner's report was first disclosed to Spatola on June 20, 2025, several days before the Court issued the Order on the Motion to Strike Dr. Lustig's Supplemental Expert Report.  (*Id.* at 4).  The reason proffered by Defendants for the disclosure of Dr. Rayner's report at this date was to respond to Dr. Lustig's Supplemental Report.  (*Id.*).

But as Defendants respond, the third-party discovery period was re-opened by stipulation of the parties, and it was during this period that Defendants submitted Dr. Rayner's report.  (*See* Opp. at 2).  Indeed, Defendants contend that it was Spatola who insisted that the deadline for all third-party discovery, rather than only nonexpert third-party discovery, be reopened by the stipulation.  (*Id.*).  The deadline was extended by the Court through stipulation of the parties through June 20, 2025.  (*See* Docket No. 136).  Accordingly, the disclosure of Dr. Raynor on June 20, 2025, was timely pursuant to the stipulation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*** **R E D A C T E D** ***

CIVIL MINUTES—GENERAL

**Case No.  CV 23-6191-MWF(Ex)**                    **Date:  April 7, 2026**
**Title:**       Matthew Spatola v. Jason Desrouleaux, et al.

Even if the disclosure of Dr. Raynor's rebuttal report was untimely, any late disclosure would be justified or harmless under Rule 37.  The parties agree that the Court should consider four factors under this analysis:  (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence.  *See Liberty Ins. Corp. v. Brodeur,* 41 F.4th 1185, 1192 (9th Cir. 2022).

As Defendants argue, there was no prejudice or surprise to Spatola by this disclosure on June 20, 2025, the final day of the re-opened discovery period.  (*See* Opp. at 3-4).  Indeed, Spatola first raised an objection to Dr. Rayner's report nearly six months after its disclosure.  (*Id.* at 4).  When Spatola first objected in December 2025, Defendants then offered a deposition of Dr. Rayner and offered Spatola an opportunity to submit another expert report in response to the Rayner rebuttal.  (*Id.*).  But Spatola rejected such an offer, even though trial was still four months away.  (*Id.*).  Spatola then waited to file this Motion until February 2, 2026.

As this Court has recognized in this action when Spatola's expert report was challenged under Rule 37, any minimal prejudice would have been cured by the opportunity to take Dr. Rayner's deposition months before trial began.  (*See* Order Granting in Part Defendants' Motion to Strike Supplemental Expert Report of Dr. Ethan Lustig (Docket No. 137) (the "Prior Order") at 6).  Trial would not have been disrupted had Spatola timely objected to Dr. Rayner's report.  Moreover, Spatola's bald assertion that Defendants "engaged in bad faith or willfulness in failing to timely disclose their new expert" is unavailing because Defendants disclosed Dr. Rayner within the extended discovery period, contrary to Spatola's representations in his Motion.  (*See* Motion at 9).

The final question is whether Dr. Rayner's report is "impermissibly overbroad" because Dr. Rayner purports to rebut Dr. Lustig's Initial, Rebuttal, and Supplemental

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*** R E D A C T E D ***

CIVIL MINUTES—GENERAL

Case No.  CV 23-6191-MWF(Ex)                    Date:  April 7, 2026
Title:      Matthew Spatola v. Jason Desrouleaux, et al.

Reports.  (*See* Motion at 6).  Spatola argues that Dr. Rayner's report offers four new critiques of Dr. Lustig that are not confined to the information in Dr. Lustig's Supplemental Report.  (*Id.* at 7).  Defendants respond that Dr. Lustig's Supplemental Report does not exist in a vacuum, and so Dr. Rayner had to consider all of Dr. Lustig's reports in order to rebut the additional information contained in the Supplemental Report.  (Opp. at 8).  Moreover, Defendants argue that Dr. Rayner's four critiques are tailored to attacking the assumptions relied upon by Dr. Lustig in his reports, which were made more explicit in Dr. Lustig's Supplemental Report.  (*Id.* at 9).

Defendants' arguments are persuasive.  While the Court excluded the one new opinion expressed by Dr. Lustig in the Supplemental Report, the Court held that primarily the Supplemental Report corrected inaccuracies or "fill[ed] the interstices" of Dr. Lustig's Initial and Rebuttal Reports.  (*See generally* Prior Order).  Accordingly, Dr. Rayner is permitted to rebut the qualifications that were clarified in Dr. Lustig's Supplemental Report and question the assumptions upon which Dr. Lustig made his opinions, which again were clarified only in his Supplemental Report.  (*See* Opp. at 9-10).  Contrary to Spatola's argument, Dr. Rayner's rebuttal *is* intended to "solely contradict or rebut" the new, albeit interstitial, clarifications in Dr. Lustig's Supplemental Report.  (*See* Motion at 7 (quoting *Speaks v. Mazda Motor Corp.,* CV 14-25-M-DWM, 2018 WL 882815, at *2 (D. Mont. Feb. 14, 2018)).

Accordingly, Plaintiff's Motion in Limine No. 3 is **DENIED**.

## IV.   <u>ORDER TO SHOW CAUSE</u>

On March 3, 2026, following the denial of Plaintiff's Motion to Amend, the Court ordered Spatola to show cause as to why he may recover monies flowing from lost business opportunities or reputational harm through the remedy of a constructive trust.  (*See* Order Denying Plaintiff's Motion to Amend Scheduling Order and for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### *** R E D A C T E D ***

CIVIL MINUTES—GENERAL

**Case No.  CV 23-6191-MWF(Ex)**                    **Date:  April 7, 2026**
Title:      Matthew Spatola v. Jason Desrouleaux, et al.

Leave to File Second Amended Complaint (Docket No. 182) at 6-7).  It was unclear how such monies could be traced to "a res, an 'identifiable property or entitlement in defendant's hands.'"  (*Id.* at 6 (quoting *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1150 (2003))).  On March 11, 2026, Spatola submitted his Response. (Docket No. 193).  On March 18, 2026, Defendants submitted their optional Reply. (Docket No. 213).

Upon review, the Response fails to answer the only question posed by the Order to Show Cause.  Rather, Spatola responds that "Plaintiff does not seek damages for reputational harm or lost opportunities," as "those losses suffered at the hands of Defendant Derulo's conduct are simply demonstrative of why, in equity, more than the pro rata share should be given to Plaintiff."  (Response at 2).  Accordingly, as an initial matter, it appears that Spatola is once again abandoning his pursuit of monies flowing from lost business opportunities or reputational harm.  Spatola therefore may not seek to recover these monies at trial.

But the further argument that Spatola is entitled to "more than the pro rata share" of the profits makes little sense.  Spatola acknowledges that a constructive trust requires an identifiable res, and insists that royalties obtained by Derulo are such a res. (Response at 3).  Fair enough — and such a remedy is certainly encompassed within the request for a pro rata share of the profits obtained by Derulo, which no one is questioning may be an appropriate remedy achieved through a constructive trust and that is properly alleged in the FAC.  But Spatola goes on to argue that "[s]hould the Court find that Plaintiff is seeking an unidentifiable res, it should find that Plaintiff is entitled to additional money under the additional equitable remedy of disgorgement." (*Id.*).  Spatola argues that the Court may extend the remedy that he is entitled to "all benefits received" by Derulo beyond a pro rata share.  (*Id.* at 4).  As confirmed at the hearing, this argument is designed to get at not just a pro rata share of royalty revenues or profits, but rather to assert that Plaintiff is entitled to *all* "economic benefits obtained by Defendant Derulo through the misattribution of authorship."  (*Id.* at 6-7).

---

**CIVIL MINUTES—GENERAL**                                           **34**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*** R E D A C T E D ***

CIVIL MINUTES—GENERAL

Case No.  CV 23-6191-MWF(Ex)                    Date:  April 7, 2026
Title:      Matthew Spatola v. Jason Desrouleaux, et al.

The Court agrees with Defendants' characterization in the Reply that Spatola is once again impermissibly shifting the goal posts of his arguments.  (Reply at 2).  Spatola first claimed he should be entitled to legal damages for lost opportunities in his Motion to Amend.  (*See* Motion to Amend (Docket No. 163)).  Then at the hearing on his Motion, he asserted that such monies were recoverable not as legal damages, but were recoverable under the alleged constructive trust remedy.  (*See* Order Denying Plaintiff's Motion to Amend at 6).  And finally, having now conceded that such monies are not available through constructive trust, Plaintiff seeks the "additional remedy of disgorgement" of *all* profits and benefits obtained by Derulo.  (*See* Response at 6).

Spatola is not entitled to again shift the goal posts to a completely new remedy of disgorgement at this late stage after his attempts to argue for other theories have all concededly failed.  And all of Spatola's arguments made in response to the Court's OSC and at the hearing further ignore that Spatola pled only the circumscribed relief of a pro rata share of the profits derived from the Song.  (*See, e.g.,* FAC ¶¶ 84, 85, 90, 91, 92; *Id.* at Prayer for Relief ¶ 3).  Spatola is restricted to the remedies articulated in his FAC, which is a constructive trust over his share of the profits.

## V.      SCHEDULING ORDER

At the hearing on the Motions in Limine, the Court indicated that a further pretrial conference would be scheduled to discuss trial length in light of bifurcation and any other trial logistics.  The Court hereby **SETS** a further pretrial conference to take place via Zoom on **Monday, April 13, 2026,** at **11:00 a.m.**

## VI.     CONCLUSION

The Court rules as follows on the Motions in Limine:

- Defendants' Motion in Limine No. 1 is **GRANTED** *in part* **and DENIED** *in part*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*** **R E D A C T E D** ***

<u>CIVIL MINUTES—GENERAL</u>

Case No.  **CV 23-6191-MWF(Ex)**                    Date:  **April 7, 2026**
Title:      Matthew Spatola v. Jason Desrouleaux, et al.

- o The Motion is **GRANTED** as to evidence of financial condition is inadmissible under Rules 402 and 403;
- o The Motion is **GRANTED** as to evidence of Derulo's international touring during COVID-19 under Rule 403;
- o The Motion is **GRANTED** as to the dispute between Derulo and Harris, but **DENIED** as to the suggestion that Derulo properly credited Heap.
- o The Motion is **DENIED** as to the evidence of settlement discussions, although a limiting instruction shall be given that evidence of these negotiations is not to be taken as evidence of liability.

- Defendants' Motion in Limine No. 2 is **GRANTED,** and the Rougvie Report will be excluded under Rule 702.

- Defendants' Motion in Limine No. 3 is **GRANTED** as to Dr. Lustig's opinion on copyrightability, although he may opine on Spatola's contributions to the Song as compared to *LSB* and he may critique Dr. Ferrara's filtering.  The Motion is also **GRANTED** as to Dr. Lustig's opinions on the credibility of witnesses, although he may opine on the musical aptitudes of Derulo and Hogarth based on their own deposition testimony.

- Defendants' Motion in Limine No. 4 is **GRANTED** *in part* **and DENIED** *in part*.  The Motion is **GRANTED** as to bifurcation of the trial, with the declaratory judgment claim to be tried to a jury first.  The Motion is **DENIED** as to the motion to exclude evidence of financial success of the Song.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*\*\* R E D A C T E D \*\*\***

CIVIL MINUTES—GENERAL

Case No.  **CV 23-6191-MWF(Ex)**                    Date:  **April 7, 2026**
Title:        Matthew Spatola v. Jason Desrouleaux, et al.

- Defendants' Motion in Limine No. 5 is **GRANTED** and Perry will be excluded from testifying at trial under the apex doctrine and Rules 401 and 403.

- Plaintiff's Motion in Limine No. 1 is **DENIED** because the B-4 forms are relevant and not subject to exclusion under Rule 403.

- Plaintiff's Motion in Limine No. 2 is **DENIED** because the Motion fails to make cognizable arguments under the Rule 702 standard, and because Defendants have put forward sufficient reasons to credit Dr. Ferrara's expert qualifications and methodology.

- Plaintiff's Motion in Limine No. 3 is **DENIED** because Dr. Rayner's rebuttal report is properly responding to Dr. Lustig's Supplemental Report and the report was timely disclosed.

Finally, as to the Order to Show Cause, Spatola's Response confirms that he is not entitled to damages for lost opportunities or reputational harm.  Nor can Spatola now claim entitlement to a full "disgorgement" of profits remedy, over and above his pro rata share, as such a remedy was never pled.

IT IS SO ORDERED.