SHEPPARD MULLIN RICHTER & HAMPTON LLP
JOSHUA M. ROSENBERG, Cal Bar No. 274473
jrosenberg@sheppardmullin.com
KENT RAYGOR, Cal Bar No. 117224
kraygor@sheppardmullin.com
ALLISON C. WONG, Cal Bar No. 341178
acwong@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:   (310) 228-3700
Facsimile:    (310) 228-3701

Attorneys for Defendants
JASON DESROULEAUX p/k/a JASON
DERULO; and SONY MUSIC
ENTERTAINMENT d/b/a COLUMBIA
RECORDS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MATTHEW SPATOLA p/k/a MATTY SPATS,<br><br>Plaintiff,<br><br>v.<br><br>JASON DESROULEAUX p/k/a JASON DERULO; and SONY MUSIC ENTERTAINMENT d/b/a COLUMBIA RECORDS,<br><br>Defendants. | Case No. 2:23-cv-06191 MWF-E<br><br>Assigned to the Honorable Michael W. Fitzgerald<br><br>**DEFENDANT JASON DERULO'S AND DEFENDANT SONY MUSIC ENTERTAINMENT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW FILED AFTER THE CLOSE OF EVIDENCE**<br><br>[FED. R. CIV. P. 50(a)]<br><br>Action Filed:    July 31, 2023<br>FAC Filed:      December 21, 2023<br>Trial Date:      April 21, 2026 |

SMRH:4931-1890-8067

# NOTICE OF MOTION

TO THE COURT, THE PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Defendants Jason Desrouleaux p/k/a Jason Derulo and Sony Music Entertainment d/b/a Columbia Records (collectively, "**Defendants**") move pursuant to FEDERAL RULE OF CIVIL PROCEDURE 50(a) for judgment as a matter of law, following the close of evidence in the trial of this matter on May 5, 2026 and before submission of this matter to the jury for deliberation.

This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, any further briefing in connection with this Motion, all pleadings and other records filed in this action, and upon such further evidence and arguments as might be presented to the Court at the time of the hearing, and any and all other materials the Court deems proper.

Dated:  May 6. 2026                 SHEPPARD MULLIN RICHTER & HAMPTON LLP


                                     By:  _____/s/ *Kent Raygor*_____
                                              JOSHUA M. ROSENBERG
                                              KENT RAYGOR
                                              ALLISON C. WONG

                                     Attorneys for Defendants JASON
                                     DESROULEAUX p/k/a JASON DERULO;
                                     and SONY MUSIC ENTERTAINMENT d/b/a
                                     COLUMBIA RECORDS

# **TABLE OF CONTENTS**

NOTICE OF MOTION..................................................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES............................................7

I.     INTRODUCTION ...........................................................................................7

II.    LEGAL STANDARD ......................................................................................9

III.   SPATOLA HAS FAILED TO MEET HIS BURDEN TO PRESENT EVIDENCE SUFFICIENT TO CREATE A FACTUAL ISSUE ....................10

    A.   Spatola's Attempt To Assert A Copyright Interest In The Entirety Of The SL Copyrights (Which Are Derivative Works) Is Improper........10

    B.   Spatola Failed To Prove That He Made A Substantial And Valuable Contribution To Any Of The SL Copyrights.....................................12

    C.   Spatola Failed To Present Evidence To Support The Intent Element.13

        1.   Spatola did not present sufficient evidence to show he exercised control over any of the SL Copyrights............................................14

            a.   *Spatola failed to present evidence to establish his control over the SL Composition or the SL Recording*...................... 15

            b.   *Spatola failed to establish his control over the Session File Sound Recording or Session Musical Composition* .............. 16

        2.   Spatola did not present evidence to support that *each* of the putative co-authors intended to be co-authors ...........................................17

        3.   Spatola presented no evidence on the audience appeal factor ......20

            a.   *The "Audience Appeal" of the SL Recording and SL Composition is attributable to the viral TikTok dance trend, not Spatola's guitar playing*...................................................20

            b.   *Spatola cannot establish "audience appeal" as to the Session File or Session Composition* ................................................. 21

    D.   Spatola Failed To Present Evidence To Support Any Finding That He Made Independently Copyrightable Contributions ...........................21

        1.   Spatola's work on *Savage Love* was not original .......................22

        2.   Spatola did not fix his guitar and bass parts................................25

    E.   Spatola Failed To Present Evidence To Support That He Superintended The Whole Of The SL Copyrights ...................................................26

IV. CONCLUSION ...............................................................................27

SMRH:4931-1890-8067

Case No. 2:23-cv-06191 MWF-E

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Aalmuhammed v. Lee*
202 F.3d 1227 (9th Cir. 2000) .................... 8, 9, 10, 13, 14, 15, 16, 18, 20, 21, 26

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) ............................................................................... 9, 10

*Andreas Carlsson Prod. v. Barnes*
No. CV 15-6049 DMG(AJWx), 2016 WL 11499656 (C.D. Cal. Oct. 11, 2016) .................................................................................................. 11, 17, 18

*Archibald v. Cty. of San Bernardino*
No. EDCV 16-01128-AB(SPx), 2018 WL 6017032 (C.D. Cal. Oct. 2, 2018) ................................................................................................................ 10

*Armes v. Post*
No. 2:20-cv-03212-ODW, 2022 WL 1136163 (C.D. Cal. Apr. 18, 2022) ............................................................... 14, 15, 16, 17, 22, 25, 26

*Ashton-Tate Corp. v. Ross*
916 F.2d 516 (9th Cir. 1990) ............................................................... 10, 22

*Childress v. Taylor*
945 F.2d 500 (2d Cir. 1991) ...................................................................... 11

*DC Comics v. Towle*
802 F.3d 1012 (9th Cir. 2015) ................................................................... 12

*Ford v. Ray*
130 F. Supp. 3d 1358 (W.D. Wash. 2015) ........................................... 14, 16, 26

*Garcia v. Google, Inc.*
786 F.3d 733 (9th Cir. 2015) ..................................................................... 25

*Gray v. Hudson*
28 F.4th 87 (9th Cir. 2022) ........................................................................ 10

*Greene v. Warner Music*
No. 23 CIV. 1555 (KPF), 2024 WL 3045966 (S.D.N.Y. June 18, 2024) ......... 24

*Heger v. Kiki Tree Pictures*
     No. CV 17-03810 SJO (Ex), 2017 WL 5714517 (C.D. Cal. July 24, 2017) ..... 14

*James W. Newton v. Diamond*
     204 F. Supp. 2d 1244 (C.D. Cal. 2002) ........................................................... 21

*Jefferson v. Raisen*
     No. CV 19-9107-DMG (MAAx), 2020 WL 6440034 (C.D. Cal. Aug. 14,
     2020) ................................................................................................................. 12

*Maurizio v. Goldsmith*
     84 F. Supp. 2d 455 (S.D.N.Y. 2000), *aff'd*, 230 F.3d 518 (2d Cir. 2000) ......... 12

*McGonigle v. Combs*
     968 F.2d 810 (9th Cir. 1992) ............................................................................ 9

*Moi v. Chihuly Studio, Inc.*
     No. C17-0853RSL, 2019 WL 2548511 (W.D. Wash.
     June 20, 2019) ......................................................................................... 15, 16, 26

*Reinsdorf v. Skechers U.S.A.*
     922 F. Supp. 2d 866 (C.D. Cal. 2013) ......................................................... 17, 18

*Richlin v. MGM Pictures, Inc.*
     531 F.3d 962 (9th Cir. 2008) ....................................................... 14, 20, 21

*Satava v. Lowry*
     323 F.3d 805 (9th Cir. 2003) ........................................................................... 22

*Seventh Chakra Films, LLC v. Alesse*
     666 F. Supp. 3d 1250 (S.D. Fla. 2023) ............................................................ 15

*Skidmore v. Led Zeppelin*
     952 F.3d 1051 (9th Cir. 2020) ................................................................... 22, 24

*Spatola v. Desrouleaux, et al.*
     No. CV 23-6191-MWF-E, 2026 WL 1104319 (C.D. Cal. Apr. 17, 2026) ........ 22

*Stillwater Ltd. v. Basilotta*
     No. 21-55241, 2022 WL 1486825 (9th Cir. May 11, 2022) ............................. 20

*U.S. Auto Parts Network v. Parts Geek*
     692 F.3d 1009 (9th Cir. 2012) ......................................................................... 12

Case No. 2:23-cv-06191 MWF-E

SMRH:4931-1890-8067

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT

**Statutes**

17 U.S.C. § 101................................................................................12, 13, 21, 26

17 U.S.C. § 102(a) ...................................................................................21, 25

17 U.S.C. § 103(b) ...................................................................................11, 22

**Other Authorities**

FED. R. CIV. P. 50(a) ...........................................................................7, 9, 10, 27

HARVARD DICTIONARY OF MUSIC (4th ed. 2003) .......................................24

1 NIMMER ON COPYRIGHT § 6.05 (2026) ....................................................11

NINTH CIRCUIT MODEL JURY INSTRUCTION 17.9 ..................8, 10, 12, 13, 14, 20, 26

2 William F. Patry, PATRY ON COPYRIGHT, § 3:47 ....................................12

SMRH:4931-1890-8067

Case No. 2:23-cv-06191 MWF-E

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Pursuant to FED. R. CIV. P. 50(a), Defendants Jason Derulo ("**Derulo**") and Sony Music Entertainment ("**Sony**") (collectively "**Defendants**"), request that judgment be entered against Plaintiff Matthew Spatola ("**Spatola**") and in Defendants' favor.

Spatola failed to present a sufficient evidentiary basis for a jury to reasonably find for him on his declaratory relief claim for any of the four claimed works related to *Savage Love (Laxed – Siren Beat)* ("***Savage Love***"):  (1) the musical composition at the First Session[1] (the "**Session Composition**"); (2) the First Session sound recording ("**Session File**"); (3) the musical composition for *Savage Love* (the "**SL Composition**") as commercially released; or (4) the sound recording for *Savage Love* (the "**SL Recording**") as commercially released (collectively the "**SL Copyrights**").

To the extent Spatola asserts a copyright interest in the entirety of the SL Copyrights, his claim fails outright.  It is undisputed that *Savage Love* is a derivative work based on Jawsh685's ("**Jawsh**") composition *Laxed – Siren Beat* ("***Laxed***") and Sony's recording of *Laxed*.  [ECF:204, ¶6(b); ECF:233, ¶2.]  A copyright interest in a derivative work can only be asserted in "new" material added in *Savage Love*. But Spatola has failed to carry his burden as to any such "new" material in the SL Copyrights.

To establish joint authorship to this "new" material, Spatola must prove each author:  (1) made a substantial and valuable contribution to the work; (2) intended that his contribution be merged into inseparable or interdependent parts of a unitary whole; (3) contributed material to the joint work which could have been independently copyrighted; and (4) must be a person to whom the work owes its

---

[1]  The "**First Session**" refers to the first recording session Spatola attended on April 22-23, 2020 at Derulo's home recording studio.  The "**Second Session**" refers to the second recording session Spatola attended on April 27, 2020 at Derulo's studio.

origins and who superintended the whole work. NINTH CIRCUIT MODEL JURY INSTRUCTION 17.9 ("**Instruction 17.9**"); *see also Aalmuhammed v. Lee*, 202 F.3d 1227, 1231 (9th Cir. 2000).

*First*, Spatola failed to present sufficient evidence to support any reasonable finding he made a "substantial and valuable" contribution to any of the SL Copyrights. His guitar playing largely mimicked the pre-existing work *Laxed* or otherwise employed commonplace musical building blocks and standard, commonplace guitar and bass practices, and made no significant modification or transformation of material already present in the prior art.

*Second*, Spatola failed to present sufficient evidence to support any reasonable finding that the intent element has been satisfied: consisting of the "control", "intent" and "audience appeal" factors. *See* Instruction 17.9.

As to <u>control</u> – recognized by this Court as the most important factor – the evidence shows Spatola had no control over the whole (or any part) of the SL Copyrights. Spatola only attended part of two of ten recording sessions for *Savage Love*, for a total of six out of 60 hours. He admits he never controlled the work of anyone else who worked on *Savage Love* and concedes Derulo at all times had veto power over whether Spatola's guitar playing was used. Moreover, Spatola never possessed the Session File or Session Recording.

As to <u>intent</u>, Spatola likewise failed to establish that *each* of the joint authors of the SL Copyrights intended to be joint authors with him. He concedes he never communicated with Jawsh, never met JKash, and barely knew Greiss. Spatola produced no evidence of any such intent expressed by Derulo, much less Jawsh, JKash or Greiss. As to Sony, it was entirely unaware of Spatola because it did not know that *Savage Love* was being made. Spatola was paid for his work and never requested authorship credit on *Savage Love* in the 2 ½ years preceding this litigation.

As to <u>audience appeal</u>, Spatola has presented no evidence to support a reasonable finding that his playing impacted the song's audience appeal. The only

evidence on this factor shows that the success of the SL Composition and SL Recording was due in large part to a viral TikTok video that featured the *Chorus*—to which Spatola has never asserted that he contributed anything copyrightable. There is no evidence to support any finding that Spatola is responsible for the audience appeal of *Savage Love*.

*Third*, Spatola failed to present sufficient evidence to establish he made an independently copyrightable contribution to the SL Copyrights. He played guitar at Derulo's direction within the confines of the pre-existing work, *Laxed*, on which *Savage Love* was built. Spatola's guitar work was limited to commonplace and basic music building block rhythms, chords, a chord progression, a harmonic rhythm, and practices already well-established in *Laxed* and other prior art and, as such, cannot be copyrightable. Spatola's musicology expert provided no opinions or evidence to the contrary. Spatola likewise failed to present evidence that he fixed any of the musical material himself into any of the SL Copyrights. He admitted that after he left each of the two sessions he had no input or control over the work done by Derulo and Derulo's co-authors. It is further undisputed that Spatola could not have controlled the work across eight other sessions that he did not attend.

*Fourth*, for the same reasons showing he failed to present any evidence on which a reasonable jury could find that he exercised control over the entire work, Spatola failed to produce any evidence upon which a reasonable jury could find he was the "mastermind" or person who "superintended" the work underlying the SL Copyrights. *Aalmuhammed*, 202 F.3d at 1233-34.

## II.   LEGAL STANDARD

Under Rule 50(a), judgment as a matter of law is proper "when the evidence permits only one reasonable conclusion as to the verdict." *McGonigle v. Combs*, 968 F.2d 810, 816 (9th Cir. 1992); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (the relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law."). The existence of a mere "scintilla" of evidence is insufficient to present a question for the jury. *Anderson*, 477 U.S. at 252; *Gray v. Hudson*, 28 F.4th 87, 95 (9th Cir. 2022) (standard applicable to motion for judgment as a matter of law under Rule 50(a) are essentially the same as that for summary judgment).

"[T]he denial of a motion for summary judgment does not mandate that a Rule 50 motion be denied, because the latter tests the sufficiency of evidence actually presented at trial." *Archibald v. Cty. of San Bernardino*, No. EDCV 16-01128-AB(SPx), 2018 WL 6017032, at *4 n.3 (C.D. Cal. Oct. 2, 2018). "Furthermore, after trial, the court [may have] a better basis on which to determine the existence of material issues, including that there was never a true issue of fact at all." *Id.* (citing *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 772 (9th Cir. 1981).

## III.    SPATOLA HAS FAILED TO MEET HIS BURDEN TO PRESENT EVIDENCE SUFFICIENT TO CREATE A FACTUAL ISSUE

To establish joint authorship under the COPYRIGHT ACT, Spatola must prove that: "(1) each author made a substantial and valuable contribution to the work; (2) each author intended that his contribution be merged into inseparable or interdependent parts of a unitary whole; (3) each author contributed material to the joint work which could have been independently copyrighted; and (4) each author must be a person to whom the work owes its origins and who superintended the whole work." [ECF:244, p. 23 (citing Instruction 17.9)]; *see also Aalmuhammed*, 202 F.3d at 1231; *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 520 (9th Cir. 1990).

Spatola was tasked with establishing *all* four elements as to *each* of the SL Copyrights in which he purports to be a joint author. He has failed to meet that burden.

### A.    Spatola's Attempt To Assert A Copyright Interest In The Entirety Of The SL Copyrights (Which Are Derivative Works) Is Improper

The parties have stipulated that *Savage Love* is a derivative work based on

-10-                    Case No. 2:23-cv-06191 MWF-E

*Laxed*.  [ECF:204 ¶6(b); ECF:233 ¶2.]  Therefore, Spatola can only assert a claim of joint authorship in the SL Copyrights *to the extent they include original additions that were not already present in* **Laxed***, and is limited to asserting a joint authorship claim to just the* <u>additional</u> *musical contributions on* **Savage Love**.  Any claim to joint authorship of the entirety of the SL copyrights must be rejected.[2]

"The copyright in a . . . derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material."  17 U.S.C. § 103(b).  Accordingly, Spatola's copyright interest in *Savage Love*—if any—is strictly limited to "those original aspects of the work that the derivative creator contributed" – here, the "new" portions of the *Savage Love* composition and recording he claims to have contributed that did not already exist in *Laxed* or other prior art.  Any claimed interest ***does not and cannot*** extend to the entirety of the SL Copyrights, as the copyrights in *Savage Love* are "independent of, and [do] not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material."  17 U.S.C. § 103(b).

Because *Savage Love **as a whole*** is a derivative work, it necessarily is ***not*** a "joint work."  *See Andreas Carlsson Prod. v. Barnes*, No. CV 15-6049 DMG(AJWx), 2016 WL 11499656, at *7 (C.D. Cal. Oct. 11, 2016) (distinguishing between joint works and derivative works); *see also Childress v. Taylor*, 945 F.2d 500, 505 (2d Cir. 1991) ("The touchstone [of a joint work] is the *intention, at the time writing is done*, that the parts be absorbed or combined into an integrated unit.") .  Because *Laxed*

---

[2] *Savage Love* also cannot be deemed a derivative work of the Session Files.  The final version of a work is not considered a derivative work of early drafts of the work unless **the author(s) treat each such draft as a distinct version**.  *See* 2 William F. Patry, Patry On Copyright, § 3:47, n.4; *Maurizio v. Goldsmith*, 84 F. Supp. 2d 455, 467 (S.D.N.Y. 2000), *aff'd*, 230 F.3d 518 (2d Cir. 2000); *Jefferson v. Raisen*, No. CV 19-9107-DMG (MAAx), 2020 WL 6440034, at *3 (C.D. Cal. Aug. 14, 2020). Spatola provided ***no*** evidence that he (assuming, for the sake of argument only, that he was an "author"), Derulo, Jawsh, JKash, and Greiss ever treated each separate session file as a distinct version of the final *Savage Love* as commercially released.

long predated the creation (indeed, even the contemplation) of *Savage Love*, *Savage Love – in its entirety –* does not constitute a "joint work" as a matter of law.[3]  Rather, ***only the new portions of Savage Love may constitute a joint work***.

Because any copyright interest in the SL Copyrights would necessarily be limited to "new" material not present in *Laxed*, Spatola's claim of joint authorship in the ***entirety*** of the SL Copyrights fails as a matter of law.[4]  *See DC Comics v. Towle*, 802 F.3d 1012, 1023 (9th Cir. 2015); *see also U.S. Auto Parts Network v. Parts Geek*, 692 F.3d 1009, 1016 (9th Cir. 2012) (noting that a "derivative work may be independently copyrightable, but the scope of this copyright is limited" to only the material contributed by the author of the derivative work).

What that leaves, then, is Spatola's contention that he is a joint author of the "*new*" material allegedly contributed by him and Derulo to *Savage Love* (in which, for the reasons noted above, his copyright interest would be limited to just that new material, and not to *Savage Love* as a whole).  Spatola, however, has failed to present sufficient evidence for a jury to find in his favor.

**B.    Spatola Failed To Prove That He Made A Substantial And Valuable Contribution To Any Of The SL Copyrights**

Joint Authorship Element 1:  Spatola is required to prove he made a "substantial and valuable contribution to the work."  Instruction 17.9.  Spatola failed to present sufficient evidence from which a jury could reasonably find that his contributions to any of the SL Copyrights were substantial or valuable.  *See* 17 U.S.C. § 101.  He made no effort to distinguish between his contributions to the Session File or Session Composition, on the one hand, and the SL Composition or SL Recording, on the other hand.  As addressed in Section III(D), below, Spatola's contributions to the SL Composition and SL Recording, which he claims were all completed during

---

[3]  1 NIMMER ON COPYRIGHT § 6.05 (2026) discusses this distinction.
[4]  Spatola has implicitly admitted that he is not a joint author to the entire SL composition or recording because he disclaimed his interests.  ECF 158.

the First Session on April 22-23, 2020, largely either mimic the pre-existing work *Laxed* or otherwise employed commonplace musical building blocks using standard and commonplace guitar and bass practices, and made no significant modification or transformation of material that already existed in the prior art.  [Trial Tr. ("**Tr.**") 1835:24-1836:15; 1875:13-22.]  Moreover, as Dr. Rayner testified, the prominent sound in in the SL Recording or SL Composition is the siren melody from *Laxed* and Derulo's vocals, and Spatola's guitar playing is merely in the background of the song. [*Id.* 1709:16-24.]  The undisputed evidence also establishes that *Savage Love*'s popularity was mostly due to a short clip of the song going viral on TikTok, which featured *only the Chorus*.  [*Id.* 1586:25-1588:5.]  To the extent Spatola's guitar-playing is present in the chorus, Spatola's own expert agreed that Spatola was "closely" imitating the chords already contained in Jawsh's *Laxed.*  [*Id.* 1100:8-10; 1113:14-21; 353:1-5.]

No reasonable juror could conclude Spatola's contributions to the SL Copyrights were substantial or valuable.

**C.    Spatola Failed To Present Evidence To Support The Intent Element**

Joint Authorship Element 2:  Spatola is required to prove that ***each*** author of the work "intended that his contribution be merged into inseparable or interdependent parts of the unitary whole."  Instruction 17.9; 17 U.S.C. § 101; *Aalmuhammed*, 202 F.3d at 1231.

In deciding whether parties intended that their separate contributions be merged, in the absence of a written agreement with the alleged joint author, the jury considers three factors:  (1) whether each of the parties exercised control over the work; (2) whether each of the parties' actions showed that they shared the intent to be co-authors when they were creating the work, for instance by publicly stating that the work was their shared project; and (3) whether the audience appeal of the work depends on the contribution of each party so that the share of each party's contribution to the work's success cannot be appraised.  Instruction 17.9;

*Aalmuhammed*, 202 F.3d at 1231; *Richlin v. MGM Pictures, Inc.*, 531 F.3d 962, 968 (9th Cir. 2008).[5]

Spatola failed to present sufficient evidence to support any of those factors.

**1.**   **Spatola did not present sufficient evidence to show he exercised control over any of the SL Copyrights**

Element 2, Factor 1:  "Control will often be the most important factor" in determining the existence of joint authorship.  *Richlin*, 531 F.3d at 968; *accord Heger v. Kiki Tree Pictures,* No. CV 17-03810 SJO (Ex), 2017 WL 5714517, at *5 (C.D. Cal. July 24, 2017).  Control refers to the requirement that an alleged joint author "superintended" the work by exercising control over its creation.  *Armes v. Post*, No. 2:20-cv-03212-ODW (PJWx), 2022 WL 1136163, at *7 (C.D. Cal. Apr. 18, 2022); *Aalmuhammed*, 202 F.3d at 1233 (an author must have "superintended the whole work," acting as the "master mind" with "artistic control").

Control over the "whole work", rather than merely an individual contribution to it, is required.  *See Aalmuhammed*, 202 F.3d at 1233; *Ford v. Ray*, 130 F. Supp. 3d 1358, 1363 (W.D. Wash. 2015) (finding no "control" over a song where plaintiff had "control over his contribution to [the song]," but the "decision as to how or whether to incorporate plaintiff's creations was left to defendant").

Judgment is appropriate where the evidence reflects that a defendant "possessed and exercised control over the final product . . . ."  *Moi v. Chihuly Studio, Inc.*, No. C17-0853RSL, 2019 WL 2548511, at *3 (W.D. Wash. June 20, 2019);

---

[5]  Spatola did not enter into any written agreement related to his work on *Savage Love*.  Sony, Jawsh and Derulo entered into an agreement on June 4, 2020.  [Trial Exhs. 3, 118, 120; ECF 233 ¶ 41.]  That agreement outlines publishing ownership interests for the musical composition of the commercially released version of *Savage Love*, and provides the following publishing splits: [Jawsh] 50%; Derulo 25%; J Kash 20%; Phil [Greiss] 5%.  [Trial Exh. 3; ECF 233 ¶ 42.]  Accordingly, Sony registered its copyright in the *Savage Love* Sound Recording on July 1, 2020.  [Trial Exh. 158; ECF 233 ¶ 21.]  Derulo filed a copyright for the *Savage Love* musical composition which identified co-authors (a) DeRulo, (b) Greiss, (c) JKash, and (d) Jawsh.  [ECF 233 ¶ 22.]

*Armes*, 2022 WL 1136163, at *13 ("courts may find a lack of mutual control when one party has veto power over another party's contributions, or control over how the other party's contributions are used."); *Seventh Chakra Films, LLC v. Alesse*, 666 F. Supp. 3d 1250, 1263 (S.D. Fla. 2023) (finding no "control" where the putative co-author admitted she "had no role, authority, or decision-making responsibility as to the final content of the Film").

The Court previously has determined that "Defendants have established that there is no genuine dispute of material fact as to [the issue of control]" and that "Spatola did not have joint creative control." [ECF:125 at 8.]  As the evidence at trial now has proved, Spatola never had control over any of the work in the SL Copyrights *at any time* – and he certainly did not "superintend[] the whole work" or act as its "master mind." *Aalmuhammed*, 202 F.3d at 1233-34.  [Tr. 589:6-17; 595:4-13; 596:22-597:5; 780:19-23; 984:16-22.]

a. <u>*Spatola failed to present evidence to establish his control over the SL Composition or the SL Recording*</u>

The evidence reflects that Spatola did not have control over the whole (or even any part) of the SL Composition or SL Recording.  He only attended two of the nine recording sessions for *Savage Love*.  [Tr. 461:16-21; 975:18-24.]  The First Session he attended was on April 22-23, 2020 [*id.* 461:12-21; 965:4-17] and the Second was on April 27, 2020 [*id.* 468:16-18].  Spatola attended for about three hours, for a total of six.  [*Id.* 461:22-462:1; 608:14-19.]

The First Session lasted nine hours, but Spatola was only present for three.  [*Id.* 461:22-462:1; 965:4-17.]  After he left it, Spatola admits he had no input or control over the work that Derulo and his sound engineer Ben Hogarth ("**Hogarth**") continued to perform on *Savage Love* during that session.  [*Id.* 592:25-593:15.]  Spatola likewise admits that, after he left the Second Session, he did not participate in any further recording sessions [*id.* 598:10-12] and had no input or control over the SL Recording or SL Composition because he "wasn't there" [*id.* 596:22-597:2].

Spatola concedes, ***Derulo had the ultimate authority to accept or reject whatever guitar or bass portions Spatola played during these sessions***. [*Id.* 590:2-7; 589:6-8; 599:24-600:2.]  The only other person present at the First Session, Ben Hogarth, further confirmed that Derulo was in control.  [*Id.* 991:6-16; 1005:25-1006:2.]  No one asked for Spatola's input on *Savage Love* after he left the Second Session.  [*Id.* 598:6-9.]  In fact, Spatola did not hear the final recording of *Savage Love* until it was released to the public.  [Spatola Depo 225:1-10.]

Spatola's assertions that he had "control" over his own guitar and bass playing when he was present at the First and Second Sessions do not present facts from which a jury could find that he "superintended" the ***entirety*** of any of the SL Copyrights. [Tr. 377:1-5; 379:15-21; 594:2-4; 597:6-7.]  Courts have repeatedly made clear that control over the "***whole*** work", rather than merely an individual contribution to a work, is required.  *Aalmuhammed*, 202 F.3d at 1234 (emphasis added); *Ford*, 130 F. Supp. 3d at 1363; *Armes*, 2022 WL 1136163, at *13; *Moi*, 2019 WL 2548511, at *2. Spatola concedes Derulo had veto power over whether the guitar or bass portions Spatola played during these two sessions were even used.  [Tr. 590:2-7; 589:6-8; 599:24-600:2.]

***Spatola also admits he never controlled the work of anyone else who worked on*** Savage Love.  [*Id.* 593:24-594:1.]  He did not control Derulo [*id.* 597:3-5; 780:19-21], Greiss [*id.* 598:24-599:7; 596:13-18], Hogarth the sound engineer [*id.* 595:14-24] or JKash, and JKash did not even know who Spatola was [*id.* 598:13-23; 1223:6-13; 1236:12-17; 1263:8-1264:15].  Spatola never even *spoke* to Jawsh – the sole creator of the original work *Laxed* on which *Savage Love* is based.  [*Id.* 581:6-9.] Spatola testified that Derulo is "in control in every room that he's in." [*Id.* 780:19-21.]

      b.    <u>*Spatola failed to establish his control over the Session File Sound Recording or Session Musical Composition*</u>

To the extent Spatola asserts he is a joint author of the Session File or Session Composition from the First Session, the evidence reflects that Spatola had no input or control over those works. [Tr. 593:4-6.] Spatola never had possession of the Session File [*id.* 595:9-13] and never asked for it [*id.* 594:13-17]. Spatola's sole involvement in the First Session was during the three hours he was present. [*Id.* 461:22-462:1; 965:4-17.] He had no control over anyone working on the Session File or Session Composition. [*Id.* 592:25-593:15.] Spatola concedes that Derulo at all times had veto power over whether Spatola's guitar playing was used. [*Id.* 590:2-7; 589:6-8; 599:24-600:2; 780:19-21.]

As the Court has previously found, there is no genuine dispute of material fact as to [the issue of control]". [ECF:125 at 8.]

### 2. Spatola did not present evidence to support that *each* of the putative co-authors intended to be co-authors

Element 2, Factor 2: "A joint work requires that *each* of the putative co-authors intended to share authorship of the work." *Andreas Carlsson Prod.*, 2016 WL 11499656, at *8 (C.D. Cal. Oct. 11, 2016) (citing *Aalmuhammed*, 202 F.3d 1227). To determine whether *each* of the parties' actions showed a shared intent to be co-authors, courts have looked to a number of factors including, *inter alia*: "statements and admissions of the putative co-authors at or around the time the work was created", "the testimony of the parties regarding their intent at the time the work was created", and "whether one party paid the other." *Armes*, 2022 WL 1136163, at *12 .

Courts have recognized that "[a] party intending to jointly produce a finished work generally would not require payment from a co-author and, conversely, would not likely agree to pay for a purported co-author's contribution" and *the existence of such payment is "[p]erhaps [the] most important[]" fact in this regard*. *Reinsdorf v. Skechers U.S.A.*, 922 F. Supp. 2d 866, 874 (C.D. Cal. 2013) (emphasis added).

At trial, Spatola failed to present evidence that *each* of the Defendants, or any of the other putative co-authors, had the requisite intent to be "co-authors" with him

-17-
Case No. 2:23-cv-06191 MWF-E

on any of the SL Copyrights.  Spatola concedes he did not intend to be joint authors with Jawsh, JKash, or Greiss [Spatola Depo Tr. 226:1-14], has never met or communicated with Jawsh [Tr. 581:6-9], barely knew Greiss [*id.* 581:12-14], and did not even know who JKash was at the time *Savage Love* was created [*id.* 598:21-23; 581:10-11; 1263:8-1264:15.][6]  Nor has he presented any evidence that there was any intent to be a co-author in the sound recording with Sony.  [Tr. 1387:13-1388:10.] These facts alone are fatal to Spatola's claims.  *Aalmuhammed*, 202 F.3d 1227; *Andreas*, 2016 WL 11499656, at *8.  Derulo confirmed he had no intent to be co-authors with Spatola.  [Tr. 1540:1-1542:11]

Spatola concedes that, on April 28, 2020 he sent Derulo a $2,000 invoice for his six hours of work on the sessions [*id.* 479:16-18; 480:21-481:6; 480:24-25; 481:23-482:2; Trial Exhs. 2, 88, 134, 135] which Derulo then paid [*id.* 482:4-20; 482:21-24; Trial Exh. 89].  The words "advance", "producer advance", "writer", "cowriter", "producer", "coproducer", or "day rate" appear nowhere on the invoice.  [*Id.* 483:2-10; Trial Exhs. 88; 135.]  There is no evidence Derulo paid JKash, Jawsh, or Phil Greiss in connection with creating *Savage Love*.  [Tr. 1262:4-12.]  Derulo's undisputed payment to Spatola evidences a lack of intent to be co-authors.  *See Reinsdorf*, 922 F. Supp. 2d at 874.

Spatola's and his representative Ghena Nasser Spatola's ("**Ghena**") testimony also supports a finding that Spatola had no intent to be a co-author, and that he actually intended to only be given guitar and bass credit.  [Trial Exhs. 58, 46.]  Indeed, Ghena testified that although she and Spatola knew the difference between additional guitar and bass credit on the one hand, and producer and writing credit or master points or publishing on the other, neither ever asked for anything beyond additional guitar and bass credit.  [Tr. 742:15-24; 741:21-742:3; 739:23-740:23; 719:17-22; 538:14-18; 539:1-4; Trial Exhs. 5, 45, 46, 47, 50, 56, 58, 95, 97, 375, 376.]

---

[6] Sony could not have intended that Spatola would be a co-author as it did not know that Derulo was making the song in the first instance.  [Trial Tr. 1387:23-1388:10.]

Consistent with this understanding, a month *after* requesting and receiving an additional guitar and bass credit on *Savage Love*, Spatola expressly asked Mr. Derulo's manager to assist him in securing "writing and/or pub" and "a point on master" *for a different song by a different artist*—but never asked for such credits or compensation on *Savage Love* from Derulo.  [*Id.* 547:7-549:6; Trial Exhs. 377, 378, 379, 380, 381.]  Following the commercial release of *Savage Love* in 2020, Spatola frequently posted on Instagram and identified songs where he had served as producer, but he never made any such representation regarding *Savage Love*.  [Trial Exhs. 6, 7, 60, 59, 61, 62, 64, 66, 74.]  In applying for certain benefits from the American Federation of Musicians Union, Spatola never identified himself as a producer of *Savage Love*.  [*Id.* 46, 47, 48, 49, 50, 56, 95.]

Derulo confirmed that the only credit Spatola asked him for was additional guitar and bass, despite working with Spatola for two and a half years after *Savage Love* was commercially released.  [*Id.* 1653:25-1654:11; 1663:23-1665:4; 1540:1-1542:11; Trial Exh. 100.]  Spatola has presented no evidence to the contrary.  Charles Gibson—a close friend of Spatola's, and the first guitarist Derulo contacted the night of April 22, 2020 to play on *Savage Love*—testified that Spatola never told him that he had done anything more than play as a session musician on *Savage Love*.  [*Id.* 1809:6-1811:23; Trial Exh. 348.]  In fact, Spatola specifically asked Gibson to put him in contact with Derulo's management so he could secure "additional guitar and bass credit," and never mentioned seeking anything else.  [*Id.*; ECF:233 ¶26.]

Spatola's only argument that Derulo expressed any intent to co-author *Savage Love* with him is that he says Derulo called him and said, "I want to create this song with you."  But Derulo denies any such call and phone records do not reflect any such call. [Tr. 1462:15-1463:12; Trial Exhs. 391; 393; 394; 395; 396; 397.]  Indeed, the Parties have stipulated that April 22, 2020 was the *first* time Spatola and Derulo had ever spoken. [ECF:233 ¶8.]  It defies logic that Derulo would contact someone he had never spoken to before, and manifest an intent to co-author and produce a song with

him, particularly given that when he first tried to contact his go-to session guitarist Gibson on April 22, 2020, Derulo made clear he was looking for a session guitarist ("paid session"). [Trial Exh. 348]. Spatola's version of events is further undermined by the fact that Derulo had a preexisting relationship with JKash and Greiss, and specifically asked Jawsh, in writing, if he wanted to create a song together. [Trial Exhs. 1, 3, 4, 10, 131.] Throughout the creation of *Savage Love*, Derulo shared the status of the song with JKash, Jawsh and Greiss, but Derulo never sent anything to Spatola; nor did Spatola ask for any updates. [*Id*. 1, 4, 131, 139; Tr. 595:4-13; 2042:8-22.]

In short, Spatola has provided no evidence to establish *each* of the co-author's "objective manifestations of a shared intent" to be co-authors with him on any of the SL Copyrights. *Richlin*, 531 F.3d at 968.

### 3. Spatola presented no evidence on the audience appeal factor

Element 2, Factor 3: Under the third factor, the jury must determine whether the audience appeal of the work depends on the contribution of each party such that the share of each in its success cannot be appraised. Instruction 17.9; *Aalmuhammed*, 202 F.3d at 1231. This factor weighs against the putative co-author where the evidence reflects that "audience appeal" can be attributed to influences other than those of the putative co-author. *See Stillwater Ltd. v. Basilotta*, No. 21-55241, 2022 WL 1486825, at *2 (9th Cir. May 11, 2022) (finding "audience appeal" of music record associated with one performer's music videos).

a. *The "Audience Appeal" of the SL Recording and SL Composition is attributable to the viral TikTok dance trend, not Spatola's guitar playing*

Regarding the SL Recording and SL Composition, Spatola failed to present any evidence supporting a reasonable finding that his contribution to *Savage Love* had any impact on the "audience appeal" of the song. To the contrary, the evidence establishes that *Savage Love's* popularity was mostly due to a short clip of the song going viral on

TikTok whereby individuals would repost the clip along with a specific dance move that featured *only the Chorus*.  [Tr. 1586:25-1588:5.]  To the extent Spatola's guitar-playing is present in the chorus, Spatola's own expert agreed that Spatola was "closely" imitating the chords already found in Jawsh's *Laxed*—the work on which *Savage Love* is based.  [*Id.* 1100:8-10; 1113:14-21; *see also id.* 353:1-5.]  Thus, Spatola has failed to establish that the audience appeal of *Savage Love* is attributable to his individual contributions at all.

> b. <u>*Spatola cannot establish "audience appeal" as to the Session File or Session Composition*</u>

By its own terms, "audience appeal" requires an audience.  At trial, Spatola did not present any evidence to support the "audience appeal" factor of the Session File or Session Composition – likely because the Session File was never released to the public.

**D.    <u>Spatola Failed To Present Evidence To Support Any Finding That He Made Independently Copyrightable Contributions</u>**

<u>Joint Authorship Element 3</u>:  A "joint work" requires that each author make "an independently copyrightable contribution."  *Richlin*, 531 F.3d at 968; *see also Aalmuhammed*, 202 F.3d at 1231.  To gain copyright protection, an original work must be fixed in a tangible medium expression.  17 U.S.C. § 102(a).  Copyright vests in an author when the work is fixed directly by the author or "by or under the authority of the author."  17 U.S.C. § 101.

To be copyrightable, a work must contain sufficient originality of expression.  17 U.S.C. § 102(a); *James W. Newton v. Diamond*, 204 F. Supp. 2d 1244, 1253 (C.D. Cal. 2002) ("Copyright protection extends only to those components of the work that are original and non-trivial.").  "A collaborator's contribution will not produce a joint work, and a contributor will not obtain a co-ownership interest, unless the contribution represents original expression that could stand on its own as the subject matter of copyright."  *Ashton-Tate*, 916 F.2d at 521.  Given that *Savage Love* is a

derivative work, Spatola must show that his contributions are in fact **new** and do not exist in the prior work *Laxed* or in other prior art in order to secure copyright protection for the additional portions he contributed.  *See* 17 U.S.C. § 103(b).

### 1.   Spatola's work on *Savage Love* was not original

Spatola was tasked with proving that his guitar work was original, which requires that he show:  (1) he created his guitar work independently; and (2) his guitar work contains at least some minimal creativity.  *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1071-72 (9th Cir. 2020).  Copyright protection does not "extend to common or trite musical elements or commonplace elements that are firmly rooted in the genre's tradition.  These building blocks belong in the public domain and cannot be exclusively appropriated by any particular author."  *Armes*, 2022 WL 1136163, at *11 (quoting *Skidmore*, 952 F.3d at 1069); *see Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003) ("[E]xpressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law.").  As this Court has recognized, to determine what is independently copyrightable in music a court must look to prior art analyses that filter out uncopyrightable elements.  *Spatola v. Desrouleaux, et al*., No. CV 23-6191-MWF-E, 2026 WL 1104319, at *9 (C.D. Cal. Apr. 17, 2026).

Spatola presented no evidence that his guitar work on *Savage Love* is original.  The only other person who was in the studio with him and Derulo during the First Session, Ben Hogarth, testified Spatola performed guitar work at Derulo's direction based on the preexisting work, *Laxed*.  [Tr. 970:23-971:2; 971:6-972:12; 1575:3-14.]  It is undisputed *Savage Love* was intended to capitalize on the existing virality and popularity of *Laxed*, and it would have been counter-productive to make substantial changes to that existing beat.  [*Id*. 1524:9-1525:7; 1563:15-25; 668:10-669:5; 1528:25-1529:13.]  Spatola did not work independently to produce his guitar parts that appear on *Savage Love*.  [*Id.* 590:2-18; 970:23-971:2; 971:6-972:12.]

SMRH:4931-1890-8067
DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT

Dr. Lawrence Ferrara's prior art filtration analysis revealed that all of Spatola's guitar and bass performance on *Savage Love* filters out because his performance exists in prior art or repeats commonplace musical elements or music building blocks that are not copyright protected. [Tr. 1835:24-1836:15.]

Spatola's expert, Dr. Lustig, was prohibited from testifying to independent copyrightability. [*See* ECF:222.] Instead, he identified only four aspects of Spatola's guitar playing that suggest his playing was different and unique in *Savage Love*: (1) Spatola's switch from "swung" rhythms to "non-swung" rhythms in the Pre-Chorus sections [Tr. 1106:10-1108:8]; (2) Spatola's syncopated guitar playing in the Verses [*id.* 1092:4-13]; (3) Spatola's electric and acoustic guitar chord "voicings" [*id.* 1048:12-1049:19]; and (4) his occasional addition of an Eb major (add6) chord to the Eb major chord in the C minor/Ab major/Eb major/Bb major chord progression [*id.* 1088:24-1091:23]. None of these features of Spatola's guitar work, however, are anything more than commonplace musical building blocks and standard and commonplace guitar and bass practices, and made no significant modification or transformation of material already present in *Laxed* and other prior art. [*Id.* 1835:24-1836:15.]

Dr. Lustig testified that the idea of the Pre-Chorus guitar in *Savage Love* is an entirely new contribution by Spatola to *Savage Love*. [Tr. 1107:3-1108:1; 1113:7-13.] But Lustig failed to address Dr. Ferrara's and Dr. Rayner's observations that (1) the pre-chorus acoustic guitar copies the chord progression and harmonic rhythm of *Laxed* [*id.*1835:24-1836:15; 1862:25-1868:1; 1868:3-22]; (2) Spatola's acoustic guitar chord spacing (or chord voicing) uses commonplace "barre chord" spacing [*id.* 1837:9-18; 1845:22-1847:22]; (3) switching from swung to not-swung and back to swung sections in pop songs is common, as shown in the Beatles, Beach Boys, and *Annie Get Your Gun* works cited by Dr. Ferrara [*id.* 1861:7-1862:24]; and (4) Derulo testified that he has previously employed similar pre-choruses that switch from swung

SMRH:4931-1890-8067

to not-swung and back to swung in 13 of his 25 prior Platinum hit songs and the idea to do that again in *Savage Love* was his [*id.* 1581:10-1582:3].

Dr. Lustig also suggested that Spatola's syncopated guitars in the Verses were a new contribution. Dr. Ferrara testified, however, that the syncopated guitars follow the commonplace Charleston and tresillo rhythms, both of which are commonplace music building blocks and standard fare in the prior art. *Id.* 1880:1-1882:20; *see Greene v. Warner Music*, No. 23 CIV. 1555 (KPF), 2024 WL 3045966, at *9 (S.D.N.Y. June 18, 2024) ("a common musical pattern called a "*tresillo*," part of a family of rhythmic sequences that are a basic building block of music that, for the most part, cannot be subject to copyright"); THE HARVARD DICTIONARY OF MUSIC, p. 163 (4th ed. 2003) (recognizing the commonplace Charleston rhythm).

Dr. Lustig testified that Spatola's supposed "chord voicings" throughout his guitar parts in *Savage Love* signaled a new contribution. [Tr. 1100:16-21.] But he failed to address that chord voicings simply refer to the spacing of chords, which is analogous to an arpeggio, something that also is not copyrightable. Dr. Lustig acknowledged that Spatola's "special chord voicings" could in fact be mimicked if you "vocally arpeggiated." [*Id.* 1132:8-14.] But the Ninth Circuit has determined that an arpeggio is a non-copyrightable basic building block of music. *Skidmore*, 952 F.3d at 1070-71. Dr. Ferrara likewise testified that there is no merit to Dr. Lustig's "chord voicings" argument. [Tr. 1837:9-18; 1845:22-1847:22.]

Finally, Dr. Lustig asserted that there was an Eb major (add6) chord added to *Savage Love* by Spatola. [*Id.* 1088:24-1091:5.] Dr. Lustig relied on software called Melodyne to support his position that the chord exists in *Savage Love* by virtue of Spatola's guitar playing. [*Id.* 1858:23-1860:17.] But, as confirmed by Dr. Rayner, over the entire course of *Savage Love*, Dr. Lustig could find only two instances where the Eb major (add6) chord sounded. [*Id.* 1791:18-1793:5.] Moreover, neither Dr. Ferrara nor Dr. Rayner could hear the Eb major (add6) chord in *Savage Love* as commercially released and Dr. Ferrara testified that he would only slightly hear it on

one occasion when listening to the isolated stems of Spatola's guitar playing, and then only in the left side of a headphone set. [*Id.* 1702:12-16; 1705:12-15; 1781:20-1782:12; 1792:2-4; 1849:25-1851:16.]

Because Dr. Lustig, failed to perform the necessary filtration analysis in conjunction with prior art searches to determine what, if anything, remained protectable in its own right, Spatola presented no evidence that his "new" contributions to *Savage Love* are in fact independently copyrightability. This alone is fatal to Spatola's joint authorship claim.

### 2.    Spatola did not fix his guitar and bass parts

"Fixation refers to the statutory rule providing that in order to gain copyright protection a work must be fixed in a tangible medium expression. 17 U.S.C. § 102(a). Copyright vests in an author when the work is fixed directly by the author or 'by or under the authority of the author.'" *Armes*, 2022 WL 1136163, at *7.

Spatola presented no evidence he fixed any of the musical material himself into either the Session File/Composition or the SL Recording/Composition. At the First Session, Spatola left hours before Derulo and his sound engineer, Hogarth, completed the session and finalized the Session File. [Tr. 461:22-462:1; 592:2-20; 965:4-17.] After he left the First Session, Spatola had no input or control over the work Derulo and Hogarth continued to perform on *Savage Love*. [*Id.* 592:25-593:15.] Spatola admitted Derulo exercised final control over whether to accept or reject what Spatola played. [*Id.* 589:6-17.] Spatola therefore has presented insufficient evidence that he fixed any purported work in the Session File or Session Composition by the time he left the First Session. Further, the Ninth Circuit has warned against making "swiss cheese of copyrights" by "treating every acting performance as an independent work" because it would "not only be a logistical and financial nightmare, it would turn cast of thousands into a new mantra: copyright of thousands." *Garcia v. Google, Inc.*, 786 F.3d 733, 743 (9th Cir. 2015)(performance in film was not fixed by actor or under her authority).

Fixation of the SL Composition and SL Recording also could not possibly have been under Spatola's authority.  Spatola attended one additional session after the First Session and, again, he was only there for a portion.  [Tr. 461:16-462:21; 469:14-20; 975:18-24; 965:4-17; 293:11-12.]  In the meantime, Derulo held additional recording sessions on April 23 and 24.  [Trial Exhs. 12; 17; 20; 26; 29; 30; 34; 36; 37.]  Spatola likewise admits that, after he left the Second Session, he did not participate in any further recording sessions.  [Tr. 469:14-20; 598:10-12; 293:11-12.]  Derulo completed at least five other sessions before fixing the final version of *Savage Love*.  [*Id.* 975:18-24; 987:6-9; 1593:22-1595:15; Trial Exhs. 12; 17; 20; 26; 29; 30; 34; 36; 37.]  Spatola had no input or control over the SL Recording or SL Composition because he "wasn't there."  [Tr. 596:22-597:2.]

Given that Spatola was not involved in the SL Recording or SL Composition for those sessions and had no input in the intervening weeks between the last session he attended on April 27 and the June 11, 2020 commercial release of *Savage Love*, Spatola cannot show that he fixed his purported work in the SL Recording or SL Composition ***or that it was fixed under his authority***.  [Tr. 1617:2-14; 291:23-24; 293:11-13; ECF:233 ¶¶1;13]; *see Armes*, 2022 WL 1136163, at *8 (finding that "[b]ecause Armes [the putative co-author] was not involved for the several months following the August 8 Session when Post and others continued to fix aspects of the Circles Composition, the fixation could not have possibly been done under Armes's authority.").

**E.     Spatola Failed To Present Evidence To Support That He Superintended The Whole Of The SL Copyrights**

Joint Authorship Element 4:  To prove his claim for joint authorship, Spatola must establish that he is "a person to whom [*Savage Love*] owes its origins and who superintended the whole work."  Instruction 17.9; 17 U.S.C. § 101.  "[A]n author 'superintends' the work by exercising control."  *Aalmuhammed*, 202 F.3d at 1235; *see also Ford*, 130 F. Supp. 3d at 1363; *Armes*, 2022 WL 1136163, at *7; *Moi*, 2019 WL

2548511, at *3.  The analysis for this element is essentially identical to the factor discussed in Section C(1), *supra*.

As set forth above, the evidence reflects that Spatola did not have control over the whole (or even any part) of *Savage Love*.  [Tr. 461:16-21; 975:18-24; 461:22-462:1; 608:14-19; 461:22-462:1; 965:4-17.]  He did not control any of the other contributors or putative co-authors.  [*Id.* 593:24-594:1; 597:3-5; 780:19-21; 598:24-599:7; 596:13-18; 581:6-9.]  And Derulo maintained veto power over whether and to what extent Spatola's guitar playing was ultimately used.  [*Id.* 590:2-7; 589:6-8; 599:24-600:2.]

Spatola has presented no evidence from which a jury could find that he acted as the "master mind" with "artistic control" over *Savage Love*.

## IV.    CONCLUSION

Defendants respectfully request that the Court grant the relief sought herein pursuant to Rule 50(a).

Dated:  May 6, 2026                SHEPPARD MULLIN RICHTER & HAMPTON LLP


                                        By    _____/s/ *Kent Raygor*_____
                                              JOSHUA M. ROSENBERG
                                              KENT RAYGOR
                                              ALLISON C. WONG

                                              Attorneys for Defendants JASON
                                              DESROULEAUX p/k/a JASON DERULO; and
                                              SONY MUSIC ENTERTAINMENT d/b/a
                                              COLUMBIA RECORDS

## CERTIFICATE OF COMPLIANCE L.R. 11-6.2

The undersigned, counsel of record for Defendants Jason Desrouleaux p/k/a Jason Derulo and Sony Music Entertainment d/b/a Columbia Records, certifies that this brief contains **6,997** words, which complies with the word limit of L.R. 11-6.1.

Dated: May 6. 2026             SHEPPARD MULLIN RICHTER & HAMPTON LLP


By:        _____/s/ *Kent Raygor*_____
                      JOSHUA M. ROSENBERG
                      KENT RAYGOR
                      ALLISON C. WONG

                      Attorneys for Defendants JASON
                      DESROULEAUX p/k/a JASON DERULO; and
                      SONY MUSIC ENTERTAINMENT d/b/a
                      COLUMBIA RECORDS

SMRH:4931-1890-8067     DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT